1
2
3
4
5
6
7

C. D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua Robert Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
Alexander A. Frank – SBN 311718
afrank@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

8
9

Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Charles Messel, Brian Weimer, Clarence Rigali, Keith Reeves, Cynthia Gabaldon, and Stephen Hoover

10

*Additional Counsel listed on the next page.*

11

## UNITED STATES DISTRICT COURT

12

## CENTRAL DISTRICT OF CALIFORNIA

13
14
15
16
17
18
19
20
21
22

CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; ERICK VELASQUEZ, an individual; CHARLES MESSEL, an individual; BRIAN WEIMER, an individual; CLARENCE RIGALI, an individual; KEITH REEVES, an individual, and CYNTHIA GABALDON, an individual; STEPHEN HOOVER, an individual,

Plaintiffs,

v.

23
24
25
26
27
28

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT LUNA, in his official capacity; LA VERNE POLICE DEPARTMENT; LA VERNE CHIEF OF POLICE COLLEEN FLORES, in her official capacity; ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,

Defendants.

**CASE NO:**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**42 U.S.C. §§ 1983 & 1988**

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff The Second Amendment Foundation

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Charles Messel, Brian Weimer, Clarence Rigali, Keith Reeves, Cynthia Gabaldon, and Stephen Hoover and, through their respective counsel, bring this action against Defendants Los Angeles County Sheriff's Department, Sheriff Robert Luna in his official capacity as Los Angeles County Sheriff, La Verne Police Department, La Verne Chief of Police Colleen Flores, California Attorney General Robert Bonta in his official capacity, and Does 1-10, inclusive, and make the following allegations:

## INTRODUCTION

1.      This action challenges the constitutionality of carry permit issuance policies and laws that make it extremely difficult, if not outright impossible or impermissibly time consuming, for Plaintiffs to obtain permits to carry a concealed firearm in public and therefore to exercise their right to be armed in public, as guaranteed by the Second Amendment's text "bear arms," and as recognized by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

2.      The main policies that Plaintiffs target here are: 1) Defendants' failure to timely process carry permit applications, 2) the grossly excessive fees Defendants are charging to process permit applications and satisfy various permit requirements, 3) the use of highly subjective suitability criteria in evaluating applicants, and 4) the refusal to honor permits issued by other states. These practices and policies, some of which are enabled by state law, violate the Second and Fourteenth Amendments.

3.      Some Constitutional rights have a preliminary step required before their exercise, such as permitting (e.g., parades, demonstrations) or registration (e.g., voting, lobbying). But the administration of such permits or registration requirements may not be so onerous as to exclude whole demographics due to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

expense or subjectivity, nor may it force them to wait inordinate amounts of time.[1]

4.      In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry**." *Id*. (emphasis added).

5.      The policies that Plaintiffs challenge have gone far beyond "abus[ing]" constitutional rights. Defendants have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with exorbitant poll tax-like fees, egregious wait times lasting well over a year, and nefarious discretionary requirements designed to flout the Supreme Court's precedents.

6.      This suit challenges whether Defendants are engaged in a permit process that subjects applicants seeking to lawfully carry for self-defense in California by the only manner allowed under law—with a concealed carry weapons permit ("CCW permit") issued by a local jurisdiction, to excessive wait times, exorbitant fees, and suitability criteria that are unnecessary, burdensome, and

---

[1] It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926). "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

subjective; and whether those permit processes violate the right to bear arms in public as explained by the Supreme Court in *Bruen*.  Examples abound.

7.     For starters, Los Angeles County Sheriff's Department ("LASD") admits that it takes "a year to a year and a half" to process CCW applications.

8.     While the La Verne Police Department's ("LVPD") permit application processing wait time is not as severe as LASD's, its application process is cost prohibitive. Applicants pay between $900 to $1100 depending on the varying costs that third parties charge for the mandatory training course and live scan services. And even after obtaining a permit, LVPD even charges over $500 for renewal applications every two years ($250 per year to exercise an enumerated right).

9.     In stark contrast, applicants in other California counties can avoid high local-municipality fees by applying with their county's sheriff's department instead of the city where they reside, as California law provides — But LASD Sheriff Luna has refused to process CCW permit applications for Los Angeles County residents who live in one of that county's many distinct "non-contract" municipalities.

10.    Because La Verne is a "non-contract" city, residents who want to exercise their right to carry have no alternative; they must pay LVPD's exorbitant fees if they wish to lawfully carry a concealed firearm.

11.    Additionally, both LASD and LVPD impose subjective permit-issuance criteria, in open defiance of *Bruen* which rejected such unmoored standards for determining who gets the privilege of exercising an enumerated right For example, LVPD subjects applicants to an invasive psychological examination. This absurd policy is an outlier, even in California.

12.    Yet under Senate Bill 2 ("SB 2"), effective January 2024, issuing authorities that opt to require the psychological exam may charge the applicant the actual cost of the exam. Whereas under prior law, that expense was capped at $150, and left the issuing authority responsible for paying the balance if it chose to require an examination, now the full cost will be borne by the applicant.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

13.     LASD's adopted policies in issuing and renewing CCW permits also include impermissible subjective criteria, including punishing victims of crimes.

14.     Even if Plaintiffs wanted to avoid delay, expense, and suitability requirements from LASD and LVPD by simply obtaining a carry permit from another state, as some of these Plaintiffs have done, California does not honor permits issued by *any* other state.

15.     In fact, nonresidents have no way to lawfully carry firearms in California, even if they are willing to apply to a California issuing authority for a permit, because California law does not permit in-state issuing authorities to issue permits to nonresidents.

16.     This is plainly unconstitutional under both *Bruen* and the precedent established in *Obergefell v. Hodges*, 576 U.S. 644, 648 (2015). If California must honor a broad right to marry, which is unenumerated, then it must also honor the right to carry firearms, which is enumerated.

17.     Separately from Plaintiffs' Second Amendment claim, the United States Supreme Court has consistently held that regulations and classifications that impose a penalty or an impermissible burden on the right to travel violate the Equal Protection Clause of the Fourteenth Amendment, unless absolutely necessary to promote a compelling government interest. *Saenz v. Roe*, 526 U.S. 489 (1999); *Shapiro v. Thompson*, 394 U.S. 618 (1969). Accordingly, California's policy of denying out-of-state residents the ability to lawfully exercise their constitutionally protected right to be armed in public for self-defense inhibits the free interstate passage of citizens and violates equal protection doctrines by treating Americans differently merely on account of their state of residency.

18.     Furthermore, the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "The Citizens of each State shall be entitled to all privileges and immunities of Citizens in the several States." The Privileges and Immunities Clause bars discrimination against citizens of other states

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

19.    Plaintiffs seek to enjoin Defendants' flagrantly unconstitutional practices and uphold Plaintiffs' Second Amendment rights.

**PARTIES**

**Plaintiffs**

20.    The individual Plaintiffs are ordinary, law-abiding, adult residents of either Los Angeles County or the City of La Verne, who have applied for CCW permits but have not received them, or have been dissuaded or prevented from applying due to the high fees or the psychological examination requirement.

21.    The associational Plaintiffs are non-profit organizations dedicated to the preservation of the Second Amendment and other enumerated constitutional rights, which are representing their members and supporters who reside in Los Angeles County or La Verne and have either: (1) already applied for a CCW permit and are faced with a lengthy wait time; (2) would apply for a permit if not for the high fees and psychological examination requirement; and/or (3) have CCW permits that were issued by other states and wish to have their permits honored when they visit California. Plaintiffs thus bring this action to vindicate their Second Amendment rights to publicly bear arms for self-defense, including the rights of the members and supporters of the associational Plaintiffs, to do so.

22.    The associational Plaintiffs also have members and supporters in other states who have CCW permits in those states, and wish to have their permits honored when they visit California. Plaintiffs thus bring this action to vindicate their own Second Amendment rights to publicly bear arms for self-defense, or the rights of their members and supporters to do so.

23.    All individual Plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law, and currently own at least one firearm. Each individual Plaintiff desires to carry a firearm in

public for lawful self-defense and would do so, but for the challenged statutes, policies, and practices.

24.     Plaintiff Erick Velasquez is a resident of Los Angeles County, California, and a law-abiding citizen of the United States. He is a member of Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA"). Mr. Velasquez had a CCW permit issued pursuant to California Penal Code Section 26150 by Los Angeles County Sheriff's Department. He carried a handgun daily for two years, without any incident.

25.     On April 10, 2023, Mr. Velasquez submitted his CCW permit renewal application with Los Angeles County Sheriff's Department, expecting a simple process and quick approval given there had been no issues the last two years.

26.     Then, on May 3, 2023, Mr. Velasquez was the unfortunate victim of a crime. A burglar broke into his vehicle and stole three handguns, along with other valuables. The handguns were stored in a range bag in the locked trunk of the car, in compliance with California Penal Code section 25610(a)(1).

27.     Mr. Velasquez promptly called the police to report the theft. An officer from the Vernon Police Department arrived at the scene and took a report, which noted that Mr. Velasquez was eager to have the thief brought to justice. But as of this date, the perpetrator has not been found.

28.     On August 23, 2023, Defendant Luna denied Mr. Velasquez's renewal application. As a reason for denial, the letter had the box for "other" but provided no further explanation for the denial.   Seeking clarity, Mr. Velasquez eventually communicated with LASD Sergeant Berner, who explained that the theft of the firearms was the reason for the denial. Mr. Velasquez asked how he could appeal, but Sergeant Berner told him there was no appeal process. He encouraged Mr. Velasquez to apply again with the City of Downey instead, as they might not have similar restrictions.

29.     Plaintiff Charles Messel is a resident of Los Angeles County, a law-

abiding citizen, and a member of Plaintiff CRPA. Mr. Messel submitted his CCW permit application to LASD on July 1, 2022. Having heard nothing by April 2023, he contacted the department to inquire about his application.

30.     The response he received stated: "We were several months behind in opening and entering applications in our tracking system. Although you applied earlier, your application wasn't entered into our tracking system until 11/2/22. We are currently working on applications that went into our tracking system in July of 2022. Thank you for your patience."

31.     As of the filing of this action, Mr. Messel has still not been issued a permit or received further communications about his application's status from LASD. More than 17 months have elapsed since his initial application.

32.      Plaintiff Brian Weimer is a resident of Los Angeles County, a law-abiding citizen, and a member of Plaintiff CRPA. Mr. Weimer is employed by Los Angeles County as a firefighter on Catalina Island.

33.     Like Mr. Messel, Mr. Weimer applied for a CCW permit with LASD and still has not been issued one. Mr. Weimer applied in January 2023, over nine months ago, but still has not been issued a permit or a denial. His constitutional right to carry a firearm for self-defense has been denied to him.

34.     Plaintiff Clarence Rigali is a resident of La Verne, a law-abiding citizen, and a member of CRPA. Mr. Rigali is 60 years old and disabled. He was a Union Millwright from 1981 until 2003, when he was injured in a serious power plant accident. He possesses a Utah CCW permit, which required a criminal background check to obtain.

35.     Mr. Rigali lives in a senior citizen mobile home park. Given his fixed income, the unreasonable and unjustifiable $900 to $1100 in fees and costs to apply for and obtain a La Verne CCW permit exceeds his modest means and that has prevented him even from applying for a permit.  He has been priced out of his constitutional rights.

9

36.     Mr. Rigali also objects to the psychological exam LVPD requires, which is an unconstitutional suitability determination. When he sustained his work-related injury in 2003, a protracted lawsuit ensued following that injury, and Mr. Rigali was sent to several antagonistic psychologists for examination as the defense tried to disprove his injuries and claim he was a malinger. That horrible experience has made Mr. Rigali especially apprehensive about subjecting himself to another such exam, let alone as a precondition to exercising an enumerated right. Further, LVPD requires that applicants undergo psychological exams not locally, but in San Bernardino, 35 miles away. Such a travel requirement is burdensome for all applicants, but particularly so for Mr. Rigali given his disability.

37.     Plaintiff Keith Reeves is a resident of La Verne, a law-abiding citizen, and a member of Plaintiffs The Second Amendment Foundation, Gun Owners of America, and CRPA. He is a certified NRA pistol instructor and a range safety officer. He has CCW permits issued by both Arizona and Utah, which are honored by several states but not California. Both of Mr. Reeves' permits required a criminal background check to obtain.

38.     Mr. Reeves applied for a CCW permit in January 2014, and was denied in May 2015 because he was deemed to lack sufficient "good cause," a criterion the Supreme Court struck down in *Bruen* seven years later. Post-*Bruen*, Mr. Reeves wishes to reapply for a permit, but cannot afford to do so due to the excessive application and issuance fees charged by LVPD.

39.     Mr. Reeves also refuses to subject himself to an unconstitutional psychological exam. Once the unconstitutional requirements are removed or invalidated, he will apply for a permit without delay, but has refrained from doing so due to the challenged restrictions.

40.     Plaintiff Cynthia Gabaldon is a resident of La Verne, a law-abiding citizen, and a member of Plaintiff CRPA.  She has trained with firearms for most of her life.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

41.     Encouraged by the Supreme Court's ruling in *Bruen*, Mrs. Gabaldon decided it was time to obtain a CCW permit. Unfortunately, the exorbitant fees LVPD charges have dissuaded her from applying. Mrs. Gabaldon is self-employed and has a son in college. Given her limited income and her expenses, she cannot afford LVPD's excessive fees to exercise an enumerated right.  Mrs. Gabaldon also objects to subjecting herself to a psychological examination.

42.     Plaintiff Stephen Hoover is a resident of Florida, and a law-abiding citizen. He is a PhD candidate at the Center for Complex Systems and Brain Sciences in the Charles E. Schmidt College of Science at Florida Atlantic University. He owns firearms and has a Florida-issued CCW permit. He is also a member of Plaintiff CRPA and The Second Amendment Foundation.

43.     Mr. Hoover spent a significant amount of time in California in the summer of 2023 and plans to return for work and leisure purposes in the near future.

44.     While he was in California, he sought to obtain a California CCW permit from the Monterey County Sheriff's Department, as California would not honor his Florida CCW permit, but he still desired to be able to exercise his right to carry for self-defense. Yet in spite of otherwise meeting the criteria for eligibility, his application was denied because he was deemed ineligible for a CCW permit under Penal Code Section 26150(a)(3), as he is not a resident of the county he applied in, nor a resident of California.

45.     Mr. Hoover joins this lawsuit against California Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry against citizens from other states.

46.     Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. SAF is

dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also incurs significant expenses to sponsor public interest litigation to defend its interests and to disseminate information to like-minded individuals. SAF members who want CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times, exorbitant fees, and unconstitutionally subjective permit issuance criteria that violate the U.S. Constitution.

47.   Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation and a not-for-profit membership organization with its principal place of business in Springfield, Virginia, and is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. It has more than 2 million members and supporters across the country, including residents within this judicial district and throughout the State of California. GOA members who wish to obtain CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria.

48.   Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation and a not-for-profit legal defense and educational foundation with its principal place of business in Springfield, Virginia and is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code. GOF was formed in 1983 and is supported by gun owners across the country, within this judicial district, and throughout the State of California who, like the individual

1  Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB
2  2.  GOF supporters who wish to obtain CCW permits but reside in Los Angeles
3  County or La Verne are subject to lengthy wait times or exorbitant fees, and also
4  unconstitutionally subjective criteria.

5       49.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit
6  organization incorporated under the laws of the state of California with
7  headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of
8  the Second Amendment in California. GOC members who wish to obtain CCW
9  permits but reside in Los Angeles County or La Verne are subject to lengthy wait
10  times or exorbitant fees, and also unconstitutionally subjective criteria.

11       50.    Plaintiff CRPA is a non-profit membership and donor-supported
12  organization qualified as tax-exempt under Section 501(c)(4) of the Internal
13  Revenue Code, with its headquarters in Fullerton, California. Founded in 1875,
14  CRPA seeks to defend the civil rights of all law-abiding individuals, including the
15  enumerated right to bear firearms for lawful purposes like self-defense.  CRPA
16  regularly participates as a party or amicus in litigation challenging unlawful
17  restrictions on the right to keep and bear arms. It also provides guidance to
18  California gun owners regarding their legal rights and responsibilities. CRPA
19  members include law enforcement officers, prosecutors, professionals, firearm
20  experts, and the general public.  CRPA members who want CCW permits but reside
21  in Los Angeles County or the City of La Verne are subject to lengthy wait times or
22  exorbitant fees, and also unconstitutionally subjective criteria.

23  **Defendants**

24       51.    Defendant LASD is a local government entity created under the laws
25  of California, and it exists as an agency of Los Angeles County. LASD is a political
26  subdivision of Los Angeles County. LASD is responsible for issuing CCW permits.
27       52.    Defendant Robert Luna is the elected Sheriff of Los Angeles County.
28  Defendant Luna is and, at all times relevant to this complaint, was one of the

1    ultimate policy makers for Defendant LASD, and he has authority and

2    responsibility under California Penal Code Section 26150 to issue carry permits

3    within the county. He is directly responsible for promulgating, enforcing, and

4    continuing the policies of his Department, including the unlawful policies and

5    procedures complained of herein. Luna is sued solely in his official capacity.

6       53.    Defendant LVPD is a local government entity created under the laws

7    of California, and it exists as an agency and subdivision of the City of La Verne.

8    LVPD CCW permit applications and renewals for residents of the city.

9       54.    Defendant Colleen Flores is the Chief of Police of LVPD. She is sued

10   in her official capacity. She has authority and responsibility under California Penal

11   Code Section 26155 to issue carry permits to residents of La Verne.

12      55.    Defendant Robert Bonta is the Attorney General of California. He is

13   the chief law enforcement officer of California. Defendant Bonta is charged by

14   Article V, section 13 of the California Constitution with the duty to see that the

15   laws of California are uniformly and adequately enforced. Defendant Bonta also

16   has direct supervision over every district attorney and sheriff in all matters

17   pertaining to the duties of those respective officers. Defendant Bonta's duties also

18   include informing the public, local prosecutors, and law enforcement regarding the

19   meaning of the laws of California.

20      56.    The true names or capacities–whether individual, corporate, associate,

21   or otherwise–of the Defendants named herein as Does 1 through 10 are presently

22   unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs

23   pray for leave to amend this Complaint to show the true names or capacities of

24   these Defendants if and when they have been determined.

25                        **JURISDICTION AND VENUE**

26      57.    The Court has original jurisdiction of this civil action under 28 U.S.C.

27   § 1331, because the action arises under the Constitution and laws of the United

28   States, thus raising federal questions. The Court also has jurisdiction under 28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

58.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and their claim for attorney's fees is authorized by 42 U.S.C. § 1988.

59.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district. Los Angeles County Sheriff's Department and La Verne Police Department are both located within this district.

### GENERAL ALLEGATIONS

60.     The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms and protects, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

61.     The Supreme Court has also held that the Second Amendment right to keep and bear arms, via Fourteenth Amendment incorporation, applies equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty") (emphasis added).

62.     *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded

that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

63.     Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).

64.     In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

**California's Law Regarding CCW Permit Issuance**

65.     Following the California Legislature's enactment of SB 2, which takes effect in January of 2024, California law imposes the following CCW permit application requirements:

> (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:
>
> (1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.
>
> (2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.
>
> (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a

substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a) (West 2023); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance).

66.     Under the recently revised Penal Code Section 26205 operative January 2024, a licensing authority:

shall give written notice to the applicant indicating if the license under this chapter is approved or denied. The licensing authority shall give this notice within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later. The licensing authority shall give this notice within 120 days[2] of receiving the completed application for a license renewal.

67.     Under Penal Code Section 26190(b)(2), only 50 percent[3] of the "additional local fee"—what the issuing authority may charge CCW permit applicant above the DOJ's application fees—may be charged at the time the CCW permit application is submitted. The balance may be collected only when a permit is issued. Furthermore, the additional local fee cannot exceed the actual reasonable costs incurred by the locality in processing the application.

68.     While *Bruen* expressly forbids subjective criteria be used during a

_____

[2] The 120-day time limit was 90 days prior to the passage of SB 2.

[3] This additional local fee was capped at 20 percent prior to the passage of SB 2.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

licensure process, California law does too, at least to the extent the standard DOJ CCW permit application does not require such information. According to Penal Code Section 26175(g), "[a]n applicant shall not be required to complete any additional application or form for a license, except to clarify or interpret information provided by the applicant on the standard application form." Thus, local requirements (such as Defendant LASD's) that an applicant produce copies of past employment files or identify a need for self-defense are not within the ambit of the DOJ's standard permit application.

69.     California law authorizes a local issuing authority to conduct psychological testing prior to issuance of a concealed carry license. This provision of California's CCW licensing regime manages to violate more than just the Second Amendment. It violates the presumption of sanity, it places an impressible burden on exercising an enumerated right, and violates the procedural due process guarantees of the Fourteenth Amendment.

70.     Psychological testing has the effect of transferring the discretionary issuance of a permit to exercise an enumerated right from a government official to a psychologist. *Bruen's* holding rejects "suitability" determinations in permit issuance schemes, and a psychological evaluation is a per se a suitability determination. Such an evaluation impermissibly introduces the subjective impressions and opinions of the person conducting the evaluation into the permit issuance determination, rather than using objective criteria such as prior mental health adjudications. In that sense, a psychological exam to determine whether an applicant has the proper temperament to bear arms is nothing more than a requirement that an applicant demonstrate "good moral character" in order to bear arms – something that *Bruen* definitively forecloses by rejecting "suitability" determinations. And that is to say nothing about the utter dearth of a Founding-era tradition of testing the mental condition of each and every individual seeking to exercise their rights to carry arms in public.

71.     What is more, California law permits local issuing authorities to impose this unconstitutional and subjective psychological-suitability determination on individuals as a prerequisite to carry a firearm, even after they have already demonstrated their lawful entitlement to possess a firearm.  In other words, the CCW applicant has already passed a background check (including a check of a history of prior disqualifying mental health commitments or holds) as a condition of purchasing a firearm.  And this already-passed background check is the same background check that a CCW permit applicant will again have to pass during the permit-issuance process, prior to any psychological evaluation being performed.

72.     Furthermore, the excessive cost and financial burden of such a psychological test impermissibly shifts the burden to CCW applicants in violation of *Bruen.*

73.     California law already provides for fully disarming any person subjected to a psychological hold when a qualified professional has determined that the individual is a danger to themselves or others. *See* Cal. Welf. & Inst. Code §§ 5150, 5250, 8100-8108.  A person's disqualifying mental health hold is a mandatory record forwarded to and maintained by the California Department of Justice for regulating firearm possession. *Id.,* §§ 8104-06.  Yet even after a mental health hold, the State of California, not the individual citizen, bears the burden of proving a threat to public safety based on evidence of psychological disqualification. *Id.,* § 8103(f)(6). SB 2 contradicts existing law in California by requiring a law-abiding resident to prove a negative – i.e., that they are not insane or psychologically impaired.

74.     For all of these reasons, Plaintiffs also challenge the constitutionality of California Penal Code Section 26190(e),[4] which permits issuing authorities to mandate psychological testing. That is the primary reason the Attorney General is

---

[4]  Designated 26190(f) prior to the passage of SB 2.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   included as a Defendant in this lawsuit.

2       75.    SB 2 also added new subsections to the Penal Code that allow issuing

3   authorities to disqualify a permit applicant due to loss or theft (being a victim of

4   crime) of a firearm. Specifically, an applicant is disqualified if: "In the 10 years

5   prior to the licensing authority receiving the completed application for a new

6   license or a license renewal, [he] has experienced the loss or theft of multiple

7   firearms due to the applicant's lack of compliance with federal, state, or local law

8   regarding storing, transporting, or securing the firearm. For purposes of this

9   paragraph, "multiple firearms" includes a loss of more than one firearm on the same

10  occasion, or the loss of a single firearm on more than one occasion." *See* Cal. Penal

11  Code § 26202(a)(9) (West 2023).

12      76.    An applicant can also be denied if he: "[f]ailed to report a loss of a

13  firearm as required by Section 25250 or any other state, federal, or local law

14  requiring the reporting of the loss of a firearm." *See id.* § 26202(a)(10).

15      77.    None of these additional criteria imposed on license applicants

16  comport with the Second Amendment, as there is no broad and enduring historical

17  tradition of disarming Americans because they have been victimized by criminals.

18  Thus, Plaintiffs seek to enjoin Defendants from enforcing these statutory

19  provisions.

20
21  **LASD Is Misled by the Attorney General and Does Not Address Lengthy Wait**
    **Times Despite Several Letters from CRPA Warning of Litigation**

22      78.    Following the *Bruen* ruling, CRPA sent letters to all California

23  sheriff's departments, including Los Angeles County. The first letter was sent the

24  day after the June 2022 *Bruen* ruling, and explained that the "good cause" portion

25  of California's CCW permit issuance laws was no longer enforceable.

26      79.    But rather than complying with the Supreme Court's decision, the

27  Attorney General rebelled, responding to the *Bruen* ruling by claiming that local

28  sheriffs and police chiefs in fact could *add* more steps and impose *additional*

subjective considerations to the permit application process in light of *Bruen*. On June 24, 2022, the Attorney General sent a Legal Alert to law enforcement officials across California, instructing it was proper under *Bruen* to apply a heightened "good moral character" requirement to the application process which included subjective considerations beyond the applicant passing a criminal and mental health background check.

80.     In response to the Attorney General's malicious and intentional attempt to undermine the *Bruen* ruling, CRPA sent a second letter to several sheriff's departments, including LASD, reiterating that the Second Amendment, as clarified by the *Bruen* ruling, will only permit "narrow, objective, and definite" standards to be used in issuing permits to law-abiding citizens,[5] and that they should ignore the Attorney General's unlawful instruction to his subordinate law enforcement agencies.

81.     In the months following CRPA's correspondences to the county sheriffs, CRPA received responses from several departments stating that they would begin complying with *Bruen*. In contrast, LASD never responded. It did begin to process CCW permit applications, albeit at an unlawfully slow pace, with wait times routinely stretching beyond one year for many CRPA members. However, CRPA abstained from litigation, believing it best to allow the law enforcement authorities some time to adjust to the implied mandate of *Bruen*.

82.     In August 2022, former LASD Sheriff Alex Villanueva announced that "LASD will only accept first-time CCW applications from those who reside within our contract cities or unincorporated communities. Applicants residing in a municipality other than those served by LASD shall contact their local police department and apply for a CCW license." This meant that several cities in Los

---

[5] Again, Plaintiffs do not concede that any mandatory permitting scheme was found permissible by *Bruen*, as most of the states that have such objective "shall issue" schemes also allow constitutional carry or open carry without a license.

Angeles County, that had not set up a CCW permit program, like La Verne, would now need to do so, even though the Sheriff is obligated to accept and process such applications from *any* county resident—whether they live in a "non-contract" city or not—under California Penal Code section 26150.

83.    This illegal LASD policy change has contributed to the high fees problem. LASD's refusal to grant permits to residents of municipalities inside the county eliminates a cheaper route to obtaining a permit for county residents, and gives them no way around the exorbitant fees that some municipalities, like LVPD, have imposed.

84.    As CRPA received an ever-increasing volume of complaints about waiting times and fees from its members in the months following *Bruen*, it sent a letter to newly elected Sheriff Luna on February 21, 2023. The letter advised that long wait times contravene *Bruen's* express language, violate the Second Amendment, and are unlawful under California law, and promised to forbear litigation should the Sheriff imminently address the long wait times at issue.

85.    Sheriff Luna's office responded by letter dated March 9, 2023, stating that LASD was "taking steps to reduce processing times and improve our overall processes." That letter detailed how the adoption of new application processing software (Permitium) may reduce processing times and alluded to potentially increasing staffing in the CCW unit to address the backlog of applications. The Sheriff stated that he hoped the situation would be much better in six months, and he promised to provide regular progress updates (that never materialized).

86.    CRPA responded on March 14, 2023 writing that, while Sheriff Luna's letter was encouraging, another six months was not an acceptable timeframe, given the thousands of applications lingering for a year or more. CRPA also noted that LASD previously admitted that long wait times are unconstitutional. In a July 7, 2022, letter to the Chief of Police of San Gabriel explaining why LASD could no longer accept applications from residents of San Gabriel, the Department wrote in

pertinent part:

> Although the LASD can process CCW applications, as currently staffed, there will be significant delays because we do not have sufficient personnel required for the anticipated surge. As such, any unnecessary delays would violate the SCOTUS decision, thus violating the rights of the citizens of Los Angeles County and opening the LASD and other law enforcement agencies to otherwise avoidable litigation.
>
> RECEIVED
> JUL 1 1 2022
> SAN GABRIEL PD
> ADMINISTRATION
>
> 211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012
> *A Tradition of Service*
> — *Since 1850* —

87.     CRPA's March 14, 2023 letter also expressed CRPA's view that adopting a policy of not processing permit applications from LA County residents living in non-contract municipalities was illegal.  CRPA is unaware of any other California county sheriff that refuses to process CCW permit applications for that county's residents merely because those residents live in a "non-contract city."

88.     Unfortunately, in a responsive letter dated March 24, 2023, the Sheriff only repeated his vague promise to "improve efficiency and reduce processing times," but refused to resume accepting applications from residents of non-contract cities.

89.     As of the filing of this lawsuit, the wait times for LASD permit applicants in fact have grown worse instead of better, with CRPA members complaining of wait times in excess of 15 months. Some individuals who submitted applications at the time of the *Bruen* ruling in June 2022 have not even been contacted for their initial interview, as of November 2023.

90.     LASD does not deny that its wait times are absurdly long. In response to a Public Records Act request by Attorney Jason Davis, the Department confirmed that applicants could expect wait times of, "from application entry to issuance . . . a year to a year and a half."

91.     CRPA sent a final letter to the Sheriff on September 14, 2023, warning that litigation was imminent if no immediate changes to accelerate application processing were made.  A response was received from the Sheriff on November 1,

2023, making the same vague promises as before, however, no concrete steps to implement these purported fixes or timelines for doing so were identified.

**LVPD's Exorbitant Fees and Unconstitutional Psychological Exam Requirement**

*A.     LVPD's Permit Application Fees Are Dramatically Higher Than Most Other Issuing Authorities in California and Elsewhere*

92.     Like many other municipalities in California, La Verne did not historically have a CCW permitting process, but instead referred applicants to LASD. But as discussed *supra*, after *Bruen*, LASD announced that it "will only accept first-time CCW applications from those who reside within our contract cities or unincorporated communities and encourage applicants residing in a municipality other than those served by LASD to contact their local police department and apply for a CCW license."[6] Consequently, La Verne and other cities were forced to establish their own permitting programs.

93.     LVPD took several months to set up its permit process, during which time its residents had no operative permitting authority to which to apply in order to obtain a permit to exercise the constitutional right to bear arms outside the home. Eventually, LVPD announced in early 2023 that it would begin accepting applications, and published the schedule of fees.

94.     However, the outrageous fee schedule included $398 for "processing," $150 for "administrative" costs, $93 for "licensing," $20 for fingerprinting, $150 for a psychological exam, $20 for a card-issuance fee, and $250 for a training course. Applicants would thus have to pay *more than $1,000* merely to be approved to exercise their constitutional self-defense right.

95.     This cumulative fee schedule significantly exceeds what CCW applicants in other states pay. For example, in Arizona, where applying for a permit is entirely optional because Arizona is a constitutional carry state, the application

---

[6] *See* <https://lasd.org/ccw/#ccw_fees>  (as of November 30, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

fee is $60 plus the cost of fingerprinting that must be submitted with the application.[7] In Texas, the application fee is $40.[8] Florida charges $55 for its issuance fee and $42 for fingerprinting.[9] Utah charges $53.25 for Utah residents, and $63.25 for non-residents.[10] In Minnesota, the fee may not exceed $100.[11] Nevada charges $100.25.[12] Washington State charges $36 plus fingerprinting fees.[13]

96.    California's short two-year permit period is also an outlier that makes the average annual to exercise the carry right much greater than other states. An Arizona CCW permit, for example, is good for five years and costs only $60. Thus, an Arizona permit costs roughly $12 a year, whereas a La Verne permit costs no less than $500 per year.

97.    The fees LVPD charges eclipse even other issuing authorities *within California*. Defendant LASD, for example, charges a $43 initial fee,[14] a $173

---

[7] *See* "Concealed Weapons & Permits | Arizona Department of Public Safety," <https://www.azdps.gov/services/public/cwp> (as of November 30, 2023).

[8] *See* "Licensing & Registration | Department of Public Safety," <https://www.dps.texas.gov/section/handgun-licensing/licensing-registration> (as of November 30, 2023).

[9] *See* "Concealed Weapons License Fees," <https://www.fdacs.gov/content/download/7438/file/Concealed-Weapons-License-Fees-06-26-2017.pdf> (as of November 30, 2023).

[10] *See* "How do I Apply for a Concealed Firearm Permit? | DPS – Criminal Identification (BCI)," <https://bci.utah.gov/concealed-firearm/how-do-i-apply-for-a-concealed-firearm-permit> (as of November 30, 2023).

[11] *See* "Administrative Services – Permit to Carry FAQ," <https://dps.mn.gov/divisions/bca/bca-divisions/administrative/Pages/Permit-to-Carry-FAQ.aspx> (as of November 30, 2023).

[12] *See* "Concealed Firearms Permits," < https://www.lvmpd.com/en-us/RecordsFingerprintBureau/Pages/ConcealedFirearms.aspx > (as of November 30, 2023).

[13] *See* "*Fees: Firearms*" <https://www.dol.wa.gov/business/firearms/fafees.html> (as of November 30, 2023).

[14] *See* <https://lasd.permitium.com/entry> (as of November 30, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

issuance fee, plus the cost of training[15] and livescan,[16] which applicants contract for on their own through a third party. The San Diego County Sheriff's Department charges a $27.60 application fee,[17] a $93 livescan fee, and a $110.40 final fee, with the training provider chosen and contracted with by the applicant. The Orange County Sheriff's Department's fees total $169 for the application,[18] with applicants completing the livescan and training through third parties they choose and contract with.

98.     LVPD's claimed processing costs are not only excessive, but not even comparable to similar cities' fees. La Verne's next-door neighbor Glendora charges $243 in total for processing (including livescan), plus the cost of the training course.[19] Burbank charges $100, plus the cost of livescan and the training course.[20] Whittier charges $243 (including livescan), plus the cost of the training course.[21] Even the City of Los Angeles is not as expensive as La Verne, charging $268 plus the cost of livescan and the training course[22]. Moreover, none of the examples listed here require a psychological exam, which saves applicants $150.  Permit renewal

---

[15] Training courses are typically offered by an approved list of providers, with the class costing between $175 and $400 depending on the provider.

[16] Typically around $100, depending on the provider.

[17] *See* <https://www.sdsheriff.gov/i-want-to/get-a-permit-or-license/regulatory-licenses-and-fees/concealed-weapons-license> (as of November 30, 2023).

[18] *See* <https://ocsd.permitium.com/ccw/start> (as of November 30, 2023).

[19] *See* <https://glendorapdca.permitium.com/ccw/start> (as of November 30, 2023).

[20] *See* <https://burbankpdca.permitium.com/ccw/start> (as of November 30, 2023).

[21] *See* <https://whittierpdca.permitium.com/ccw/start> (as of November 30, 2023).

[22] *See* <https://www.lapdonline.org/office-of-the-chief-of-police/office-of-special-operations/detective-bureau/detective-services-group/ccw-carry-concealed-weapon-license/> (as of November 30, 2023).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   fees for these localities are generally under $100.

2       99.    In general, most applicants in California will spend around $400-$600

3   to get their permits.  While this is expensive, it is a relative bargain compared to

4   LVPD's astronomical $1,000 price tag for government approval to bear arms in

5   public.

6       *B.*    *Outsourcing Application Processing to Third-party Processor*
    *MyCCW is Why LVPD is so Much Costlier Than Other Issuing*
7   *Authorities.*

8       100.    Of the 88 distinct municipalities in Los Angeles County, the only ones

9   with grossly excessive fee schedules similar to LVPD are those cities which, like

10  La Verne, have outsourced CCW processing to a third-party private contractor

11  called "MyCCW." These include cities like Santa Monica, San Gabriel, and Signal

12  Hill.[23]

13      101.    To use MyCCW to process residents' CCW Permit applications, those

14  cities, including La Verne, pass on a number of exorbitant or illegal fees charged by

15  MyCCW, including:

16      a.    the entire application fee charged at the time the application is

17  submitted, in violation of Penal Code section 26190, which caps the percentage of

18  the total fee collected until after the application is approved;

19      b.    a renewal fee of $348, in excess of the current renewal fee allowed

20  under Section 26190.[24]

21

22       [23] *See* <https://www.myccw.us/> (as of November 30, 2023).

23       [24] It is unclear how contracting with MyCCW to perform CCW Permit
    application processing for LVPD is legal in any aspect because, while a licensing
24  authority may charge an additional fee for processing an application beyond the
    standard DOJ charges in an amount equal to that local authority's reasonable costs
25  for processing, the Penal Code expressly requires that the additional fee collected
    be deposited in the local authority's treasury, not shared with a private contractor as
26  profit. See Cal. Penal Code § 26190(b) (West 2023). However, Plaintiffs do not
    challenge the legality of the use of third-party processors such as MyCCW in this
27  action, and limit their challenge to only the costs passed along to applicants for
    such use.
28

102.   LVPD passes these unconstitutionally high and contrary to state law fees imposed by MyCCW's use onto its applicants. The $398 application fee, plus the $150 psychological examination—which most other cities and LASD do not require—explains in part why LVPD's CCW fee schedule is exorbitantly high, an outlier among outliers.

C.   *LVPD's Burdensome Psychological Examination.*

103.   LVPD's required psychological exam administered is invasive and burdensome, it violates procedural due process, and is fundamentally incompatible with the exercise of Second Amendment rights.

104.   The exam is administered at a facility in San Bernardino on weekdays. That drive takes approximately an hour each way for a typical La Verne resident. The facility applicants are required to use was designed to test applicants applying for roles in law enforcement, not citizens exercising their Second Amendment rights.  Yet, for reasons having no grounding in science or empirical evidence, LVPD requires CCW permit applicants to fill out a psychological exam asking applicants the same questions that are used to screen its law enforcement personnel.

105.   Applicants are then interviewed by a psychologist, who ultimately makes a recommendation to the City with respect to whether the person should be entrusted with Second Amendment rights.

106.   From start to finish, including drive time, an applicant will likely spend at least four hours on this examination.

107.   Furthermore, the requirement that a law-abiding person affirmatively and subjectively prove that they are psychologically suitable to exercise the right of self-defense is not grounded in any history or tradition of the right to bear firearms.

108.   Plaintiff CRPA sent several letters to La Verne identifying these issues with their CCW Permit scheme, but never received a response.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**California Must Honor CCW Permits Issued by Other States**

109.   A number of states issue permits to nonresidents.  Most states require no permit at all for nonresidents to carry within their borders. Others allow open carry.  Although California does not honor any other states' CCW permits, dozens of states do honor each other's permits. For example, a Utah CCW permit is valid in Nevada, Idaho, Montana, Washington, and 32 other states.

110.   In addition to a lack of any reciprocity for other states' permits, there is no process for nonresidents like Plaintiff Hoover to get a California CCW permit, even if they were willing to put up with the time and expense such a process would likely involve. In other words, if you are visiting California from another state, or if you need to cross into the state regularly for work, you check your federally enumerated right to carry for self-defense at California's border.

111.   California also does not honor nonresident permits even if they are held by its own residents, such as Plaintiffs Rigali and Reeves, who hold CCW permits issued by Utah and Arizona.

112.   California has no more authority to deny nonresidents' rights to public carry than it does to deny their rights to speak within its borders. On the contrary, the Second Amendment's reference to "'the people[]' … unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

113.   An analogous issue was already decided in 2015. Because Ohio would not allow for same sex marriages, James Obergefell and John Arthur decided to marry in Maryland. After learning that Ohio would not recognize their marriage, they filed a lawsuit. The Supreme Court ultimately held, in pertinent part, that "[t]he Fourteenth Amendment requires a State . . . to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-State." *Obergefell v. Hodges*, 576 U.S. 644, 644 (2015). In reaching this conclusion, the Court explained that:

For some couples, even an ordinary drive into a neighboring State to visit family or friends risks causing severe hardship in the event of a spouse's hospitalization while across state lines. In light of the fact that many States already allow same-sex marriage—and hundreds of thousands of these marriages already have occurred—the disruption caused by the recognition bans is significant and ever-growing. As counsel for the respondents acknowledged at argument, if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined.

*Id.* at 680-681.

114.   This holding and its logic, with respect to an unenumerated right, apply just as much to the enumerated right to bear arms, and thus applies equally to CCW permits issued by other states as the Supreme Court instructs that it does to marriage licenses issued by other states. California may not completely deny Americans the right to carry for self-defense within California's borders just because they are not California residents.

115.   In the free speech context, an individual "faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Similarly, if a non-resident's permit is not honored in California, and there is no way for them to get a California CCW permit, their only avenue to exercise their right to carry in defiance of California law.

**PLAINTIFFS SEEK DECLARATORY AND INJUNCTIVE RELIEF**

116.   Under *Bruen*, Defendants bear the burden of proving their policies comply with the Second Amendment. They will fail to do so, because their practices are entirely atextual and ahistorical, novel schemes developed in recent years or decades, and completely without any historical analogue.

117.   Accordingly, Plaintiffs seek declaratory relief confirming that Los Angeles County Sheriff's Department's current CCW permit application regime violates the Second Amendment, imposing extraordinary delays and including

30

1   forbidden suitability determinations. LASD's wait times also violate California

2   Penal Code Section 26205 because they exceed the 90 days (or 120 days after

3   January 1, 2024) permitted by statute.[25]

4      118.   LASD also violates California Penal Code Section 26150 by refusing

5   to accept applications from all residents of Los Angeles County.

6      119.   Plaintiffs also seek declaratory relief confirming that LVPD's current

7   CCW permit application regime violates the Second Amendment because: it

8   includes an unconstitutional psychological exam the City purports to utilize for

9   applicants under California Penal Code Section 26190(f)(1), because its fee

10  schedule is astronomically expensive, and because permit issuance is conditioned

11  upon unconstitutional suitability determinations instead of narrow, objective, and

12  definite standards.

13     120.   LVPD also violates Penal Code Section 26190(b)(2) by collecting the

14  entire application fee upfront, prior to licensure. LVPD's use of "MyCCW" violates

15  Penal Code Sections 26190(b)(1) because it does not transfer its "additional fees" to

16  the city treasury, instead paying a third-party provider. By charging over $25 for a

17  renewal application, LVPD also violates Penal Code Section 26190(b) ("The

18  licensing authority may charge an additional fee, not to exceed twenty-five dollars

19  ($25), for processing the application for a license renewal, and shall transmit an

20  additional fee, if any, to the city, city and county, or county treasury.").

21     121.   Defendant Bonta has the burden of proving that Penal

22  Code Section 26190(f)(1)'s psychological examination requirement for obtaining a

23  CCW license comports with the Second Amendment in light of *Bruen*'s prohibition

24  on suitability determinations for CCW licenses.  He will fail to do so.

25  Constitutional rights are not conditioned on a quasi-medical professional's opinion

26  of a person's emotional bona fides.

27

28  _____

[25] Plaintiffs do not concede that either of these time periods is a permissible impediment to the exercise of an enumerated right.

31

122.   Plaintiffs seek a declaration that *all* "the people" have the right to bear arms in public and, because of that, California must honor CCW permits issued by other states or allow residents of other states to apply for California CCW permits.[26]

123.   Finally, Plaintiffs seek preliminary and permanent injunctive relief to compel Defendants to comply with the Second Amendment as clarified by *Bruen* and California law by correcting the violations listed above.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

124.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

125.   As described previously, LASD violated and continues to violate the rights of CCW permit applicants by taking over a year to process applications and by engaging in forbidden suitability determinations.

126.   As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

127.   Defendants are propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

128.   Defendants cannot meet their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising their enumerated rights.

---

[26] Again, Plaintiffs do not concede that permitting itself is constitutional, as there is no broad and enduring historical tradition of government licensure to bear arms in public.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

129.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE
CHIEF OF POLICE COLLEEN FLORES, AND DOES 1-10

130.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

131.   As described previously, LVPD has violated and continues to violate the rights of CCW permit applicants by charging nearly $600 in total fees (not including the cost of training, livescan, and psychological review) and by engaging in forbidden suitability determinations with its psychological examination requirement.

132.   As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

133.   Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

134.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising their enumerated rights.

135.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

136.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

137.   The Supreme Court has explained that permitting regimes which deny licenses based on a "perceived lack of need or suitability" are unconstitutional. *Bruen*, 142 S. Ct. at 2123.

138.   As described previously, California violates the right of CCW permit applicants by allowing issuing authorities to demand psychological exams at their discretion under California Penal Code Section 26190(f) (soon to be 26190(g) under SB2).

139.   California also refuses to recognize CCW permits issued by other states, whether they are held by residents or nonresidents. California also refuses to grant CCW permits to non-residents, thus providing no way for nonresidents to exercise their right to carry within its borders.

140.   As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

141.   The Attorney General is thus enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

142.   Plaintiffs are entitled to declaratory and injunctive relief against such unconstitutional laws, customs, policies, and practices.

**FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

143.   Plaintiffs hereby re-allege and incorporate by reference the allegations

34

in the foregoing paragraphs as if set forth fully herein.

144.   LASD's CCW permit process violates California Penal Code Section 26205 by taking over a year to process permit applications.

145.   Additionally, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

146.   Defendants LASD and Sheriff Robert Luna are thus enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

147.   Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE COLLEEN FLORES, AND DOES 1-10

148.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

149.   LVPD's CCW permit process violates several portions of the California Penal Code.

150.   By inflating its own costs through the imposition of additional requirements beyond a simple DOJ background check and an interview with an applicant, LVPD charges more than its reasonable costs for permit processing and violates California Penal Code Section 26190(b)(1).

151.   By collecting the entirety of its fees at the time the application is submitted, LVPD violates California Penal Code Section 26190(b)(2).

152.   Additionally, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

153.   The La Verne defendants are enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

154.   Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**EQUAL PROTECTION**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

155.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

156.   Plaintiff Steven Hoover is a Florida resident. He does not have residency in California, and thus cannot obtain a California identification card or driver's license.

157.   Nevertheless, he often visits California and desires to be able to lawfully conceal-carry a firearm when visiting the State.

158.   He applied to the Monterey County Sheriff for a CCW permit but the Sheriff rejected his application because he is not a California resident.

159.   Indeed, California law does not allow a resident of another state to apply for and obtain a CCW permit whatsoever.

160.   This policy violates Plaintiff Hoover's right to equal protection of the law as guaranteed and protected under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it favors California residents and discriminates against non-California residents like Hoover.

161.   This policy is especially egregious because here California's policy prevents Plaintiff Hoover from exercising the constitutionally protected right to be armed in public recognized in *Bruen.* It also violates the constitutionally protected right to travel under the Equal Protection Clause of the Fourteenth Amendment, and forces Hoover to choose between exercising his Second Amendment right to be

armed and his constitutional right to travel. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *United States v. Guest*, 383 U.S. 745 (1966); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Zobel v. Williams*, 457 U.S. 55 (1981).

**SEVENTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. IV, § 2**
**PRIVILEGES AND IMMUNITIES CLAUSE**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

162.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

163.   The Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." This Constitutional provision removes "from the citizens of each State the disabilities of alienage in the other States." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1868)). The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

164.   Plaintiff Steven Hoover is a Florida resident who desires to lawfully conceal-carry a firearm when visiting California.

165.   He does not have residency in California, and thus cannot obtain a California identification card or driver's license.

166.    Hoover applied for a CCW with the Monterey County Sheriff but was denied because of his Florida Residency.

167.   California's law of refusing to accept CCW applications from citizens of other states, like Plaintiff Hoover, violates this constitutional provision because California's policy discriminates against out of state residents solely because they are out-of-state residents. This policy does not even offer a non-resident a chance at applying for a permit. This policy denies a non-resident the ability to exercise the

enumerated right to be armed in public, and thus violates the privilege and immunities clause.

**EIGHTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDMENT XIV**
**DUE PROCESS OF LAW**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

168.   The psychological testing component of California's CCW permit regime violates both the substantive and procedural due process of law mandate set forth in Amendment XIV, Sec. 1, of the U.S. Constitution.

169.   California's law violates substantive due process because it arbitrarily and capriciously imposes a presumption of psychological unfitness to exercise a fundamental right, and requires the individuals seeking to exercise that fundamental right to bear the burden of proving a negative. Furthermore, by presuming that all CCW applicants should be subject to psychological screening, the requirement is overinclusive. Furthermore this state law, by allowing individual issuing authorities to require psychological testing or not, makes the law arbitrary and underinclusive. Furthermore, by failing to legislate objective standards for psychological testing, the law empowers government bureaucrats to exercise subjective discretion in regulating a fundamental right.

170.   California Penal Code Section 26190(f) (soon to be 26190(g) under SB2) violates procedural due process rights because it impermissibly shifts the burden of proof of a constitutionally significant fact to an individual seeking to exercise a fundamental right. Furthermore, the psychological testing regime does not permit an adversarial process to adjudicate the scientific validity of the underlying test or the validity of the psychologists' opinions and conclusions. Furthermore, there is no provision in this law for a right to appeal the results of the psychological testing. Furthermore, there is no provision in this law to discover or test the impartiality of the personnel administering the psychological testing. Furthermore, there is no provision in this law allowing the CCW applicant to

1   submit evidence from their own medical expert to rebut the government's evidence,

2   on a crucial question that might result in denial of a constitutional right.

3        171.   Finally, the CCW psychological testing requirement contradicts

4   existing law in California that already regulates firearms possession in the context

5   of mental health holds and mental health adjudications. *See* California Welfare and

6   Institutions Code §§ 5150, 5250, 8100-8108.

7                           **PRAYER**

8        WHEREFORE, Plaintiffs request that judgment be entered in their favor and

9   against Defendants as follows:

10        1.     A declaration that LASD taking over a year to process permits violates

11   the constitutional right to carry;

12        2.     A declaration that these delays also violate California Penal Code

13   Section 26205;

14        3.     A declaration that LASD's denial of Plaintiff Velasquez's CCW

15   permit renewal application violates his constitutional right to carry;

16        4.     A declaration that LVPD charging nearly $1,000 for CCW permits

17   violates the constitutional right to carry;

18        5.     A declaration that, by inflating its own costs through the imposition of

19   additional requirements beyond a simple DOJ background check and an interview

20   with an applicant, LVPD charges more than its reasonable costs for permit

21   processing and violates California Penal Code Section 26190(b)(1);

22        6.     A declaration that, by collecting the entirety of its fees at the time the

23   application is submitted, LVPD violates California Penal Code Section

24   26190(b)(2).

25        7.     A declaration that LVPD's psychological examination requirement

26   violates *Bruen's* prohibition on using "suitability" criteria when it comes to Second

27   Amendment rights.

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8. A declaration that California Penal Code Section 26190(f) (soon to be revised to section 26190(g)), in allowing psychological examinations, is unconstitutional as a constitutionally-forbidden suitability determination;

9. A declaration that the Attorney General must honor CCW permits issued by other states, whether the permit holder is a resident of California or not, and/or a declaration that the Attorney General must permit residents of other states to acquire CCW permits in California;

10. An order preliminarily and permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing California Penal Code Section 26190(f);

11. An order preliminarily and permanently enjoining Los Angeles LASD, and Sheriff Luna in his official capacity, from refusing to process or issue a CCW Permit to any qualified applicant 120 days after receipt of such applicant's initial application for a new license or a license renewal, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later;

12. An order preliminarily and permanently enjoining LASD, and Sheriff Luna in his official capacity, from requiring more information from applicants in the CCW permitting process that are not based on "narrow, objective, and definite" standards;

13. An order preliminarily and permanently enjoining LVPD and La Verne Chief of Police Colleen Flores in her official capacity, from charging applicants nearly $1,000 for processing CCW Permit applications;

14. An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing all laws prohibiting concealed carry if the person accused of that crime has an otherwise-valid CCW permit issued by any state, and is not otherwise prohibited from owning firearms;

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

15.    An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Equal Protection Clause;

16.    An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Privileges and Immunities Clause;

17.    Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

18.    Nominal damages; and

19.    All other relief the court deems appropriate.

Respectfully Submitted,

Dated: December 4, 2023          **MICHEL & ASSOCIATES, P.C.**

_/s/ C.D. Michel_
C.D. Michel
Counsel for Plaintiffs

Dated: December 4, 2023          **LAW OFFICES OF DON KILMER**

_/s/ Don Kilmer_
Don Kilmer
Counsel for Plaintiff The Second Amendment Foundation

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF