Bruce A. Lindsay, Esq., SBN 102794
bal@jones-mayer.com
Monica Choi Arredondo, Esq., SBN 215847
mca@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendants,
LA VERNE POLICE DEPARTMENT and LA VERNE CHIEF OF POLICE COLLEEN FLORES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA INC.; ERICK VELASQUEZ, an individual; CHARLES MESSEL, an individual; BRIAN WEIMER, an individual; CLARENCE RIGALI, an individual; KEITH REEVES, an individual; CYNTHIA GABALDON, an individual; and STEPHEN HOOVER, an individual,

Plaintiffs,

v.

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT LUNA in his official capacity; LA VERNE POLICE DEPARTMENT; LA VERNE CHIEF OF POLICE COLLEEN FLORES, in her official capacity; ROBERT BONTE, in his official capacity as Attorney General of the State of California; and DOES 1-10,

Defendants.

Case No. 2:23-cv-10169-SPG-ADS

*Honorable Sherilyn Peace Garnett*
*Magistrate Judge Autumn D. Spaeth*

**DEFENDANTS LA VERNE POLICE DEPARTMENT AND LA VERNE CHIEF OF POLICE, COLLEEN FLORES' NOTICE OF AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with: Declaration of Acting Chief Sam Gonzalez; Declaration of Chief Colleen Flores; Declaration of Lt. Chris Dransfeldt; and Objections to Plaintiffs' Evidence]*

Hearing Date: March 13, 2024
Hearing Time: 1:30 p.m.
Courtroom: 5C



TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Defendants LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE COLLEEN FLORES ("La Verne Defendants") submit this opposition to Plaintiffs' Motion for Preliminary Injunction (the "Motion").

The Motion improperly seeks to enjoin the City's Police Department and its Police Chief from maintaining and administering a concealed carry weapon ("CCW") permit application and approval process that complies in all respects with the permitting process established by the State of California. In doing so, the Plaintiffs ask this Court to unilaterally expand the holding of the *Bruen*[1] decision of the United States Supreme Court far beyond its actual holding, in effect seeking to create new law based on their misconstruction of the majority decision in *Bruen*. As such, the Plaintiffs' case is not likely to prevail on the merits, and the Plaintiffs will suffer no irreparable harm, making granting the preliminary injunction legally without merit.

This Opposition is based on this Notice; the attached Memorandum of Points and Authorities; the concurrently submitted Declarations of Chief Flores, Acting Chief Gonzalez and Lt. Chris Dransfeldt (and exhibit thereto); concurrently submitted Objections to Plaintiffs' Evidence; and such arguments as may be presented at the hearing of the Motion.

Thus, the La Verne Defendants respectfully request that the Plaintiffs' Motion be denied in its entirety.

Dated: February 21, 2024

JONES MAYER

By: */s/Bruce A. Lindsay*
Bruce A. Lindsay
Monica Choi Arredondo
Attorneys for Defendants,
LA VERNE POLICE DEPARTMENT and
LA VERNE CHIEF OF POLICE
COLLEEN FLORES

---

[1] *N.Y. State Rifle & Pistol Ass'n v. Bruen* (2022) 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387. ("*Bruen*")

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .......... 1

II. LEGAL AUTHORITY .......... 3

A. Standard for Granting a Preliminary Injunction .......... 3

B. Plaintiffs Have Failed to Establish they Are Likely to Succeed on the Merits .......... 3

1. Plaintiffs Grossly Misconstrue the Ruling in *Bruen* .......... 3

2. The LVPD Follows California Law in Administering its CCW Permit Application Process .......... 6

3. The *Bruen* Holding Does Not Invalidate the Fees or the Psychological Examination Requirement of the LVPD CCW Permit Process .......... 6

4. The Fees Charged by the LVPD Are Not Unreasonable, Let Alone "Exorbitant" .......... 8

5. The Psychological Examination Required by the LVPD Does Not Impose a Discretionary Component in the CCW Permit Application and Approval Process .......... 9

C. Plaintiffs Have Failed to Establish They Will Suffer Irreparable Harm .......... 10

D. The Public Interest Weighs in Favor of Denying the Preliminary Injunction .......... 10

III. CONCLUSION .......... 11



# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cox v. New Hampshire*,
312 U.S. 569, 61 S. Ct. 762, 85 L. Ed. 1049 (1941) .......... 10

*Mazurek v. Armstrong*,
520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) .......... 3

*Murphy v. Guerrero*,
2016 WL 5508998 (D. N. Mar. I. Sept. 28, 2016) .......... 9

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) .......... *passim*

**Statutes**

Cal. Pen. Code
§ 26150 *et seq*. .......... 1, 4, 9
§ 26155 .......... 1, 5, 6
§ 26155(a) .......... 1
§ 26190 .......... 2, 9
§ 26190(e) .......... 1, 2, 6

**Other Authorities**

First Amendment .......... 10

Second Amendment .......... 4, 5, 6, 7

Fourteenth Amendment .......... 5

Federal Constitution .......... 11



# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

When the Los Angeles County Sheriff elected to no longer process concealed carry weapon ("CCW") permits for County residents that did not live in unincorporated parts of the County, the burden fell on local police departments, including the La Verne Police Department ("LVPD"), to take in applications for and to administer the issuance of CCW permits to qualified applicants. In recognition of this new responsibility, La Verne Police Chief Colleen Flores and her staff studied the legal landscape involved in the CCW permitting process and regulations, including California's CCW permitting regulations set forth in California Penal Code §§ 26150 *et seq*., in order to devise a permitting process that complied with California law. The result was a Code-compliant CCW permitting process that fairly meets the requirements of the CCW permitting regulations of the California Penal Code, using a permissible fee structure adopted by the La Verne City Council.

California law requires a Chief of Police, such as the Chief of the LVPD, to issue a CCW permit to any applicant that meets all of the requirements of California Penal Code § 26155.[2] Once the applicant has met the requirements, the LVPD **must issue** the CCW permit to the applicant. Contrary to the claims of the Plaintiffs, the City and LVPD do not have "discretion" to issue the CCW permit once the applicant meets the requirements and pays the legally required fees. The process is a "shall-issue" CCW permit regime, in compliance with California and Federal law, which clearly distinguishes it from the completely discretionary, and arbitrary, CCW permitting process of New York found to be unconstitutional by the Supreme Court in *N.Y. State*

[2] The requirements to be met by CCW applicants include: 1) they are not disqualified to receive the license, 2) they are at least 21 years old, 3) they are a resident of the city, 4) they have completed the necessary firearms training course; and 5) they are the recorded owner of the firearm for which the permit will be issued. Cal. Pen. Code § 26155(a). In addition, if required by the City, as here, they must pass the required psychological exam. *Id.* § 26190(e).



*Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) (hereinafter "*Bruen*"), upon which Plaintiffs incorrectly rely in challenging LVPD's constitutional CCW permit process.

The average processing time for a CCW permit under the LVPD program is approximately three months, due in large measure to the decision of the LVPD to use an outside vendor, MyCCW, to facilitate the application process and to reduce the need for LVPD staff to spend significant time reviewing and processing the applications, thereby avoiding the additional expense that CCW permit applicants would have to pay. (Declaration of Acting Chief Sam Gonzalez ("Gonzalez Dec."), ¶ 7.) As permitted by California Penal Code § 26190, the City charges CCW applicants $190, which represents the reasonable costs that LVPD incurs in the processing of the CCW application. In addition, applicants must pay: (1) the fee required by the State of California Department of Justice ("DOJ") for the LiveScan report ($93): (2) the cost of the program administration vendor MyCCW ($398); (3) the fee for the required third party firearms training provider ($250), which is paid directly by the applicant to the provider; and (4) the psychological examination fee ($150), which is explicitly permitted by California Penal Code § 26190(e). As stated in the Declaration of Acting Chief Gonzalez, the City underwrites half of the $300 fee for the psychological exam, such that the cost of the exam to the applicant has not exceeded the $150 fee that was previously allowed by section 26190. (Gonzalez Dec., ¶¶ 8-10; Declaration of Chief Colleen Flores ("Flores Dec."), ¶¶ 9-10.)

Since the City underwrites half of the cost of the psychological examination, it actually nets only $40 of the $190 fee it collects from an applicant, hardly an "exorbitant" fee, as claimed by Plaintiffs. (Gonzales Dec., ¶ 10.) The other fees do not go to the City, they go to the DOJ, MyCCW, the psychological examiner and the firearms training provider.

///

///



## II. LEGAL AUTHORITY

### A. Standard for Granting a Preliminary Injunction

Granting a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997). The substantive standard for ruling on a preliminary injunction is the same as that for ruling on a temporary restraining order.

To obtain a preliminary injunction, Plaintiffs must establish all of the following: (1) that they will likely succeed on the merits, (2) that they will suffer irreparable harm in the absence of injunctive relief, (3) that the balance of equities weighs in their favor, and (4) that it is in the public's interest to grant injunctive relief. *Id.*, 555 U.S. at 20, 129 S. Ct. at 374, 172 L. Ed. 2d at 261.

Plaintiffs fail to establish that they are entitled to injunctive relief, as they are not likely to prevail on the merits; will not suffer irreparable harm by complying with the LVPD CCW permitting process and paying the reasonable fees that are required; cannot establish that the balance of equities weighs in their favor; and the City has a strong public interest in protecting the safety of its residents and community, as shown below.

### B. Plaintiffs Have Failed to Establish they Are Likely to Succeed on the Merits

#### 1. Plaintiffs Grossly Misconstrue the Ruling in *Bruen*

As an initial matter, the Plaintiffs are asking this Court to expand *Bruen* far beyond its holding. The Court in *Bruen* was presented with a challenge to the constitutionality of New York's CCW license law, which required the applicant to prove to the licensing authority (usually a judge or law enforcement officer) that they had "proper cause" to carry a concealed pistol or revolver outside the home. The term was not defined, but case law construed "proper cause" to mean a special need for self-protection distinguishable from that of the general community. Living or working in an area noted for high criminal activity did not suffice as a proper purpose. *Bruen*, 597



U.S. at 11-13, 142 S. Ct.at 2122-23, 213 L. Ed. 2d at 402. Worse, judicial review of the denial of a license under New York's CCW scheme was limited, as the courts deferred to the finding of the licensing authority unless it was found to be arbitrary and capricious, essentially leaving denied applicants without a remedy. *Id.*

The Court deemed the New York CCW scheme to be a "may issue" licensing law that impermissibly allowed a New York licensing authority to deny a CCW license to an applicant that otherwise met all of the statutory requirements for the license. *Id.*, 597 U.S. at 13-15, 142 S. Ct. at 2123-24, 213 L. Ed. 2d at 402-403.

In doing so, however, the Court acknowledged that "the right secured by the Second Amendment is not unlimited." *Id.*, 597 U.S. at 21, 142 S. Ct. at 2128, 213 L. Ed 2d at 407. The Court explained that "[f]rom Blackstone through the 19th-century cases, commentators and courts have routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. (internal quote and citation omitted.) Hence, the Supreme Court recognized that certain checks on the right granted by the Second Amendment are permissible, even desirable.

In *Bruen*, the Court found that the petitioners were "ordinary, law-abiding, adult citizens," who the Second Amendment gives the right to carry handguns in public for self-protection. The Court concluded that they were wrongly denied this right by the New York licensing authorities. *Id.*, 597 U.S. at 31-32, 142 S. Ct. at 2134, 213 L. Ed. 2d at 414. Implicit in this ruling by the Court is the fact that people that are not "ordinary, law-abiding, adult citizens" are not given the right to carry handguns in public by the Second Amendment.

Because of this, it is incumbent on the licensing authority to determine whether or not an applicant for a CCW permit or license is an ordinary, law-abiding, adult citizen before issuing them a CCW permit. It is precisely this duty that California's CCW licensing laws of Penal Code §§ 26150 *et seq.,* and the LVPD's CCW application process are designed to determine: to prevent dangerous, non-law-abiding people from



being given a license or permit to carry concealed guns in public and the potential danger and tragedy that could very well ensue.

It should be noted that following the announcement of the decision in *Bruen*, California amended its CCW laws such that it is now a "shall issue" license jurisdiction, not a "may issue" license jurisdiction as before. See Cal. Penal Code § 26155 (providing that upon application for a CCW license "… the chief … of a municipal police department of any city … **shall issue** or renew a [CCW] license to that person upon proof of all of the following….") (*emphasis added*.)

The *Bruen* Court held, "New York's proper cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with self-defense needs from exercising their right to keep and bear arms." *Id*., 597 U.S. at 71, 142 S. Ct.at 2156, 213 L. Ed. 2d at 438. The Court in *Bruen* did not hold, since the issues were not before it, that a CCW licensing authority could not charge an applicant for the reasonable cost of processing the application or that the licensing authority could not require a psychological examination to confirm that the applicant is law-abiding and not a danger to themselves, to others or the community at large. Nevertheless, Plaintiffs ask the Court to interpret the *Bruen* Court's narrow holding to bar reasonable CCW application fees and psychological examinations altogether.

Most importantly, the Supreme Court did not hold that requiring a person to obtain a license or permit to carry a concealed handgun in public was unconstitutional. What was unconstitutional about New York's CCW scheme was the fact that law-abiding adults that felt a need to carry a handgun in public for self-defense were denied that right granted by the Second Amendment by the New York authorities even though they otherwise met the requirements for the license or permit, if they could not demonstrate a specialized or unique need for self-defense, to the satisfaction of the licensing authority. That is not the case under California's CCW licensing requirements, nor under the LVPD CCW permit process. Neither California's nor LVPD's CCW licensing scheme requires an applicant to demonstrate a specialized or



unique need for self-defense, as the New York scheme struck down in *Bruen* did.

**2. The LVPD Follows California Law in Administering its CCW Permit Application Process**

Cal. Penal Code § 26155 sets forth the requirements to be observed by the LVPD and its Chief in considering and processing CCW permit applications. In particular, that section requires the LVPD to issue a CCW permit or "license" to an applicant that meets all of the criteria, including that: (1) the applicant is not disqualified from having a CCW permit; (2) the applicant is at least 21 years of age; (3) the applicant is a resident of the City; (4) the applicant has completed the required firearms training course; and (5) the applicant is the recorded owner of the firearm for which the permit will be issued. In addition, State law allows, and the LVPD requires, that the applicant undergo a psychological examination. See Cal. Pen. Code § 26190(e). Each of these requirements is necessary and designed to ensure that a CCW applicant is an "ordinary, law-abiding, adult citizen" for whom the Second Amendment right to carry a concealed handgun in public exists.

**3. The *Bruen* Holding Does Not Invalidate the Fees or the Psychological Examination Requirement of the LVPD CCW Permit Process**

As indicated, Plaintiffs seek to expand the holding of *Bruen* beyond the issue that was actually considered and ruled upon, by (1) latching onto dictum in a footnote regarding "exorbitant" fees (footnote 9), and (2) mischaracterizing a psychological examination as an improper exercise of discretion by the LVPD. *Bruen*, 597 U.S. at 133, 142 S. Ct. at 2191, 213 L. Ed. 2d at 478. However, a clear reading of *Bruen* demonstrates that these issues were not before the Court. There was no discussion of either issue in the case. The Court in *Bruen* simply did not elucidate what constitutes an "exorbitant" fee. *Id.* Nor did it hold that a psychological examination of an applicant using the time-honored and proven Minnesota Multiphasic Personality Inventory ("MMPI") personality evaluator is a forbidden violation of an applicant's Second



Amendment rights. In fact, the *Bruen* decision makes absolutely no mention of a psychological exam component of a CCW permit application.

Since the Supreme Court has not decided what constitutes an "exorbitant" fee for processing a CCW permit application, one can turn to the dictionary for the ordinary meaning of the word. The Merriam-Webster Dictionary defines it as "exceeding the customary or appropriate limits in intensity, quality, amount, or size."[3]

Plaintiffs have not explained how charging the actual cost for the LVPD to process a CCW permit application is somehow exorbitant (i.e., exceeding the customary or appropriate limits or amount).

The LVPD and the City have a foremost concern for the safety of their residents and community and that involves taking the steps necessary to confirm that CCW permit applicants are law-abiding citizens that do not pose a danger to themselves, to others or to the community. At a time when mass shootings have unfortunately become the norm all across the country, the City has a duty to its residents and community to ensure the safety of its entire community to the best of its ability. That other agencies choose not to make the same robust inquiry and determination that applicants are not disqualified from possessing a CCW permit does not make the fees charged by the LVPD exorbitant or the requirement of a psychological exam unreasonable. Some of the other agencies charge less, whether because they are not making a thorough investigation of the key requirement for the Second Amendment right to apply to applicants at all, in the very words of the Supreme Court, that the applicants are "ordinary, law-abiding, adult citizens," or because they have chosen to subsidize some or all of the costs involved.

Others choosing less oversight of the permitting process should not be the measure of reasonable fees or whether psychological examinations of applicants are constitutional.

///

[3] See https://www.merriam-webster.com/dictionary/exorbitant.




**4. The Fees Charged by the LVPD Are Not Unreasonable, Let Alone "Exorbitant"**

The City is not profiting from the CCW permit application process and the fees that are collected. In reality, the City receives only $40 of the $190 in fees that are charged by the City for the initial permit. This is because the psychological examination costs $300 and the applicant pays just $150 for the exam, with the City underwriting the remaining $150 charge. The remaining fees for the application process are charges by the State DOJ ($93), the processing and administrative fees of MyCCW ($398), and the cost of the required firearms safety training course ($250). (Gonzalez Dec., ¶¶ 8 and 10.)

The total cost for the initial permit is $936, of which the City receives a net fee of $40 (after paying the $150 for the psychological exam), as the City simply passes on the fees of the DOJ and MyCCW. The applicant must pay the $150 charge for the psychological exam and the fee for the firearms training course, which fee is paid directly to the training provider. (*Id.* at ¶¶ 8-10.)

The fees charged by the LVPD are the result of a studied analysis of the investigation needed to meet the requirements of the State's CCW permitting laws. In other words, the City analyzed the time that would be needed for its LVPD staff to process initial and renewal CCW permit applications and determined that it would cost the applicants less if the process was performed by an outside vendor, MyCCW, than by City staff. (*Id.* at ¶¶ 3-6.)

Plaintiffs base their claim that LVPD's fees are exorbitant by comparing them to the lesser charges of only five (5) other agencies. (See Plaintiffs' Brief, at 11:17 to 12:6; Complaint, ¶ 98.)

By comparison, the City's Acting Chief cited a dozen cities in Los Angeles County whose CCW permit application costs exceed those of the City of La Verne, including Santa Monica ($1,281), Palos Verdes ($1,259), Southgate ($1,121), Alhambra ($1,096), Hawthorne ($1,016), Baldwin Park ($960), Bell Gardens ($960)

and Claremont ($941), Signal Hill ($941), Downey ($941), El Segundo ($941), and San Gabriel ($941) for CCW permit applications. (See Gonzalez Dec., ¶¶ 13-14 & Exh. 1 thereto.) Santa Monica's cost in particular is $345 more than LVPD's. (*Id.* at ¶¶ 8, 13-14 & Exh. 1 thereto.)

Plaintiffs also base their claim that LVPD's fees are exorbitant by relying on an ***unpublished*** decision from the U.S. District Court of the Northern Mariana Islands, which is neither binding on this Court nor persuasive. *See Murphy v. Guerrero*, 2016 WL 5508998, at *24 (D. N. Mar. I. Sept. 28, 2016).

Charging applicants for the actual costs involved in processing their CCW permit applications is reasonable and clearly does not "exceed[] customary or appropriate limits or amounts." Citing five examples of agencies in Los Angeles County that charge less than LVPD and an unpublished, non-binding decision from another district court jurisdiction does not establish that LVPD's charges are exorbitant.

**5. The Psychological Examination Required by the LVPD Does Not Impose a Discretionary Component in the CCW Permit Application and Approval Process**

The City requires a psychological examination of applicants as part of its investigation into their status as law-abiding citizens. The examination utilizes the MMPI, which is a personality and psychopathology indicator that has been widely used throughout the nation for decades. The City uses the same contractor to perform the psychological examinations of CCW applicants that it uses for applicants for employment with the LVPD. (Flores Dec., ¶ 8.) The goal of the psychological examinations is to ensure that the applicants are not a danger to themselves, to others or to the community at large, as required by California Penal Code § 26190. (*Id.* at ¶ 7.)

The examination is the City's tool for determining that applicants who are issued their CCW permit are ordinary, law-abiding adults who have the right to carry a concealed handgun, as the Supreme Court made clear in *Bruen*, and as California's CCW permit or licensing regulations of California Penal Code § 26150, *et seq*. require.



Plaintiffs proffer no evidence that the psychological examination utilizing the MMPI is a "discretionary tool" used by the LVPD or the City to deny ordinary, law-abiding adults a permit to carry a concealed handgun. Rather, the MMPI is a standardized psychometric test of adult personality and psychopathology with an established rubric. (Flores Dec., ¶¶ 7-8.) Enjoining the City from requiring that CCW applicants pass a psychological examination would increase the likelihood that applicants who are not law-abiding, or who are a danger to themselves, to others or to the community to, will be issued a permit to carry a concealed weapon in public.

**C. <u>Plaintiffs Have Failed to Establish They Will Suffer Irreparable Harm</u>**

Plaintiffs Gabaldon, Rigali and Reeves' purported inability to pay the fees necessary to obtain a CCW permit from the City is not an "irreparable" harm. The charging of fees required to exercise constitutional rights has been upheld by the Supreme Court for over 80 years. *See, e.g.*, *Cox v. New Hampshire*, 312 U.S. 569, 577, 61 S. Ct. 762, 85 L. Ed. 1049 (1941) (fees charged to hold rallies or parades constitutional though affecting First Amendment rights.) Moreover, these Plaintiffs have only stated in conclusory terms, without any substantive basis, that they cannot afford the CCW fees. They have not demonstrated how the CCW fees are beyond their means, as opposed to an expense that they would rather not incur.

On the other hand, the City will be irreparably harmed if it is forced to (1) subsidize an even larger portion of the CCW permit processing costs than it has already undertaken, (Gonzalez Dec., ¶ 10; Flores Dec., ¶¶ 9-10); and (2) grant CCW permits to applicants without requiring a psychological examination, which would potentially result in the issuance of CCW permits to individuals who may present a danger to themselves, to others, and/or to the community at large.

**D. <u>The Public Interest Weighs in Favor of Denying the Preliminary Injunction</u>**

With the ever-increasing number of mass shootings across the country, many of which involve individuals who are clearly dangers to others and to themselves,

municipalities such as the City have a strong interest in protecting the safety of their residents and community. (Flores Dec., ¶ 9.) The public at large stands to benefit from the LVPD CCW permit application process which seeks to ensure that applicants are law-abiding adults who do not pose a danger to themselves or others. This public benefit should not be cast aside by granting an injunction based on Plaintiffs' unfounded claims that the LVPD CCW application fees are "exorbitant" or that the psychological examination based on the MMPI is akin to the completely discretionary, and arbitrary, CCW permitting system of New York that violated the Federal Constitution.

## III. <u>CONCLUSION</u>

Based on the above, the La Verne Defendants respectfully request that Plaintiffs' Motion for Preliminary Injunction be denied in its entirety.

Dated: February 21, 2024

JONES MAYER

By: */s/Bruce A. Lindsay*
Bruce A. Lindsay
Monica Choi Arredondo
Attorneys for Defendants,
LA VERNE POLICE DEPARTMENT and
LA VERNE CHIEF OF POLICE
COLLEEN FLORES