1 MARK SELWYN (CA Bar No. 244180)
mark.selwyn@wilmerhale.com
2 WILMER CUTLER PICKERING
  HALE AND DORR LLP
3 2600 El Camino Road
Palo Alto, California 94306
4 Telephone: (650) 858-6031
Facsimile: (650) 858-6100

5 *Attorneys for Defendants Los Angeles County*
*Sheriff's Department and Sheriff Robert Luna*
6
7 *(additional counsel listed below)*

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11 CALIFORNIA RIFLE & PISTOL | Case No. 2:23-cv-10169-SPG-ADS
ASSOCIATION, INCORPORATED;
12 THE SECOND AMENDMENT
FOUNDATION; GUN OWNERS OF | **DEFENDANTS LOS ANGELES**
13 AMERICA, INC.; GUN OWNERS | **COUNTY SHERIFF'S**
FOUNDATION; GUN OWNERS OF | **DEPARTMENT AND SHERIFF**
14 CALIFORNIA, INC.; ERICK | **ROBERT LUNA'S OPPOSITION**
VELASQUEZ, an individual; CHARLES | **TO PLAINTIFFS' MOTION FOR**
15 MESSEL, an individual; BRIAN | **PRELIMINARY INJUNCTION**
WEIMER, an individual; CLARENCE
16 RIGALI, an individual; KEITH REEVES,
an individual; CYNTHIA GABALDON, | Judge:        Hon. Sherilyn Peace
17 an individual; and STEPHEN HOOVER, |                  Garnett
an individual, | Hearing Date:  March 13, 2024
18 | Hearing Time:  1:30 p.m.
19                 Plaintiffs, | Courtroom:     5C
20        v.
21 LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT; SHERIFF ROBERT
22 LUNA, in his official capacity; LA
VERNE POLICE DEPARTMENT; LA
23 VERNE CHIEF OF POLICE COLLEEN
FLORES, in her official capacity;
24 ROBERT BONTA, in his official
capacity as Attorney General of the State
25 of California; and DOES 1-10,
26                 Defendants.
27
28

---

ALAN SCHOENFELD (*pro hac vice* forthcoming)
alan.schoenfeld@wilmerhale.com
NOAH LEVINE (*pro hac vice* forthcoming)
noah.levine@wilmerhale.com
RYAN CHABOT (*pro hac vice* forthcoming)
ryan.chabot@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

*Attorneys for Defendants Los Angeles County
Sheriff's Department and Sheriff Robert Luna*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    A.    Los Angeles County's CCW Licensing Process ........................2

    B.    *Bruen* Creates Backlog Of CCW Permit Applications...............2

    C.    Plaintiffs' CCW License Applications .......................................5

LEGAL STANDARD...........................................................................................7

ARGUMENT .......................................................................................................8

    I.    Plaintiffs Fail To Demonstrate A Likelihood Of Success On The Merits............................................................................................8

        A.    Plaintiffs Are Not Likely To Succeed On The Merits Of Their Backlog Claim..............................................................8

            1.    Plaintiffs do not demonstrate that their backlog claim is likely to succeed at *Bruen* step one ..................................9

            2.    Plaintiffs do not prove that their backlog claim is likely to succeed at *Bruen* step two ...........................................13

        B.    Plaintiffs Are Not Likely To Succeed On The Merits Of Their Subjective-Criteria Claim .........................................15

            1.    Plaintiffs do not prove that their subjective-criteria claim is likely to succeed at *Bruen* step one............................15

            2.    Plaintiffs do not prove that their subjective-criteria claim is likely to succeed at *Bruen* step two ...........................19

    II.    The Other Factors Weigh Against Plaintiffs' Motion........................21

        A.    Plaintiffs Do Not Prove That Irreparable Harm Will Result Absent Relief.............................................................21

        B.    Plaintiffs Do Not Prove That The Equities Favor Relief..........22

        C.    Plaintiffs Do Not Prove That The Public Interest Favors Relief ..................................................................................23

    III.    Plaintiffs Lack Standing To Seek Their Requested Injunction..........24

CONCLUSION...................................................................................................24

i

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1980) ..................................................................14, 21

*Baird v. Bonta*,
  2023 WL 9050959 (E.D. Cal. Dec. 29, 2023) ........................................3, 14, 19

*California v. Trump*,
  379 F. Supp. 3d 928 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th
  Cir.), *cert. granted*, 141 S. Ct. 618 (2020) ........................................................22

*Connecticut Citizens Defense League, Inc. v. Thody*,
  2024 WL 177707 (2d Cir. Jan. 17, 2024) ............................................................10

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)..............................................................................................20

*Doe v. Snyder*,
  28 F. 4th 103 (9th Cir. 2022) ..........................................................7, 8, 10, 13, 22

*Drakes Bay Oyster Co. v. Salazar*,
  921 F. Supp. 2d 972 (N.D. Cal.), *aff'd*, 729 F.3d 967 (9th Cir.),
  *amended & superseded*, 747 F.3d 1073 (9th Cir. 2013) ....................................23

*Dred Scott v. Sandford*,
  19 How. 393 (1857) ..............................................................................................14

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ................................................................................8

*Gill v. Whitford*,
  585 U.S. 48 (2018)................................................................................................24

*In re D.L.*,
  93 Cal. App. 5th 144 (2023) .................................................................................16

*In re T.F.-G.*,
  94 Cal. App. 5th 893 (2023) .................................................................................16

ii

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

*Kaahumanu v. Hawaii,*
   682 F.3d 789 (9th Cir. 2012) ...............................................................11

*Matthews v. City of Los Angeles,*
   2023 WL 8414865 (C.D. Cal. Oct. 31, 2023) ................................8, 16

*May v. Bonta,*
   2023 WL 8946212 (C.D. Cal. Dec. 20, 2023)................................2, 12

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   597 U.S. 1 (2022)................ 2, 3, 8, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23

*Nordstrom v. Dean,*
   2016 WL 10933077 (C.D. Cal. Jan. 8, 2016) ......................................9

*People v. Cortes,*
   2024 WL 470525 (Cal. Ct. App. Feb. 7, 2024) ..................................16

*People v. Miller,*
   94 Cal. App. 5th 935 (2023) ...............................................................16

*People v. Mosqueda,*
   97 Cal. App. 5th 399 (2023) ...............................................................16

*Rocky Mountain Gun Owners v. Polis,*
   2023 WL 8446495 (D. Colo. Nov. 13, 2023).....................................10

*Southern Oregon Barter Fair v. Jackson County,*
   372 F.3d 1128 (9th Cir. 2004) ...........................................................10

*Thomas v. Chicago Park District,*
   534 U.S. 316 (2002).............................................................................10

*United States v. Gamble,*
   2023 WL 6460665 (D. Nev. Oct. 4, 2023) .........................................20

*United States v. Lewis,*
   2023 WL 6066260 (S.D.N.Y. Sept. 18, 2023) ...................................19

*United States v. Padgett,*
   2023 WL 2986935 (D. Alaska Apr. 18, 2023) ...................................20

iii

*United States v. Rahimi,*
   143 S. Ct. 2688 (2023).......................................................................21

*United States v. Roberts,*
   2024 WL 50889 (D. Alaska Jan. 4, 2024).......................................20

*Whole Woman's Health v. Jackson,*
   141 S. Ct. 2494 (2021).......................................................................10

*Winter v. Natural Resources Defense Council, Inc.,*
   555 U.S. 7 (2008).................................................................................7

*Worth v. Harrington,*
   666 F. Supp. 3d 902 (D. Minn. 2023)..............................................19

**Statutes & Codes**

Cal. Penal Code
   § 25400.................................................................................................2
   § 25850(a)............................................................................................2
   § 26150.......................................................................................2, 3, 23
   § 26150(c)............................................................................................4
   § 26155.................................................................................................2
   § 26202..........................................................................................2, 15
   § 26202(a)(3).....................................................................7, 17, 18, 19
   § 26202(a)(3)(A)-(E).........................................................................21
   § 26202(a)(5)...........................................................................6, 17, 18
   § 26202(a)(9)...........................................................................6, 17, 18
   § 26205.................................................................................................9
   § 26350(a)............................................................................................2

**Other Authorities**

2023 Cal. Legis. Serv. Ch. 249 (S.B. 2) .......................................................3

Adam Winkler, *Racist Gun Laws and the Second Amendment*, 135
   Harv. L. Rev. F. 537 (2022)..............................................................14

William Baude & Stephen E. Sachs, *Originalism & the Law of the Past*,
   37 L. & Hist. Rev. 809 (2019)..........................................................14

iv

**INTRODUCTION**

When the Supreme Court's decision in *Bruen* brought about a sea change in Second Amendment jurisprudence overnight, a tsunami of applications for licenses to carry concealed weapons (CCW) in Los Angeles County immediately followed. Los Angeles County stopped applying California law's "good cause" requirement for issuing a CCW license, as directed by the California Attorney General, and began processing this deluge of applications on a "shall issue" basis—by confirming that objective statutory criteria were met by the applicant and, if so, issuing a license. This process—designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens—takes time. LA County has been steadfastly working through the application backlog that *Bruen* prompted and has adopted several measures intended to decrease processing time.

Plaintiffs—CCW applicants and pro-firearms organizations—filed this lawsuit claiming that the processing backlog and current objective statutory criteria are unconstitutional. Based on their allegations and self-interested personal declarations alone, they ask the Court to issue a preliminary injunction forcing Los Angeles County to issue all of them CCW licenses immediately (since more than 120 days has passed since they applied)—even the ones whose applications have been processed and *denied* as objectively disqualified—or prohibiting Los Angeles County from prosecuting them if they carry a concealed weapon without a license. But Plaintiffs are not likely to succeed on the merits of their Second Amendment claim at either step of *Bruen*. Nor do they show that irreparable harm will result without the extreme step of invalidating the indisputably constitutional licensing regime that ensures that only law-abiding citizens bear arms in Los Angeles County, or that the balance of equities or the public interest supports doing so. Their motion for preliminary injunction should be denied.

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

## BACKGROUND

### A.     Los Angeles County's CCW Licensing Process

Subject to certain exceptions, it is a crime to carry firearms in California in public without a license.  *See* Cal. Penal Code §§ 25400, 25850(a), 26350(a), 26150, 26155.  Licenses to carry concealed weapons (CCW) are issued in California at the county and municipal levels.  Cal. Penal Code §§ 26150, 26155.  Under this licensing regime, LA County "*shall issue* or renew a license" where the applicant (1) is not a disqualified person; (2) is 21 years or older; (3) is a county resident; (4) completes a course of training; and (5) is the recorded owner, with the Department of Justice, of the firearm for which the applicant seeks the CCW license.  Cal. Penal Code § 26150 (emphasis added).  Thus, "[t]o obtain such a permit in California, a person must go through a rigorous screening process."  *May v. Bonta*, 2023 WL 8946212, at \*1 (C.D. Cal. Dec. 20, 2023).  This process helps ensure that applicants meet all statutory requirements that, for example, prohibit issuing CCW permits to applicants who are dangerous to themselves or the community, irresponsible with their handling of firearms, or convicted criminals. *See generally* Cal. Penal Code § 26202.  In short, the application process is "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022).

### B.     *Bruen* Creates Backlog Of CCW Permit Applications

In June 2022, the Supreme Court announced a new two-step test for determining whether firearm regulations violate the Second Amendment— (1) whether the text of the amendment covers plaintiff's conduct and if so (2) whether the government can show that the regulation is rooted in historical tradition of firearms regulation—and applied that test to invalidate New York's "proper cause" requirement for granting a license to carry a handgun in public.

*Bruen*, 597 U.S. at 4.  California, similar to New York, included a "good cause" requirement for CCW licenses, which limited the number of applications that LA County received.  After the *Bruen* decision, however, the California Attorney General "instructed prosecutors not to enforce that part of the state's licensing statute."  *Baird v. Bonta*, 2023 WL 9050959, at *2 (E.D. Cal. Dec. 29, 2023).  In 2023, California passed a bill that formally removed the "good cause" requirement for CCW licenses.  2023 Cal. Legis. Serv. Ch. 249 (S.B. 2).  That bill took effect on January 1, 2024.  *See* Cal. Penal Code § 26150.  Since *Bruen*, then, Los Angeles County has operated under a "shall issue" firearms licensing regime, pursuant to which CCW applications are issued or renewed if they meet objective, threshold requirements set forth in the California Penal Code.

Following the *Bruen* decision, LASD received a massive influx of CCW applications—1,000 to 1,200 CCW applications per month for at least the next six months.  *See* Declaration of Regina R. Chavez (Chavez Decl.) ¶ 5.  Whereas the staff of the Los Angeles Sheriff's Department (LASD) had been able to handle the far smaller volume of incoming CCW applications prior to *Bruen*, the post-*Bruen* influx strained LASD's capacity.  *Id*.

As a result, LASD has made a number of changes to its application processing in an effort to improve the processing times.  First, LASD implemented an electronic application system.  Chavez Decl. ¶ 7.  Before May 2023, LASD received all applications for CCWs by hard paper copy.  *Id.*  LASD employees then manually inputted those applications into LASD's online system—a time- and labor-intensive process.  *Id.*  On May 22, 2023, LASD launched its automated application system called Permitium.  *Id.*  This system has significantly reduced the amount of time spent inputting new applications.  *Id.*  Second, LASD staff members have been putting forth their best efforts to timely process CCW applications, including working overtime.  *Id.* ¶ 8.  Before January 2024, LASD

3

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

typically had around five investigators who handled both renewals and initial applications, though the number of agents fluctuated. *Id*. During that time, the staff could process approximately 20-30 applications per week. *Id*. LASD, with the assistance of available support personnel from other units, now has four permanent investigators dedicated to initial applications who are assigned approximately 45 applications each week and one investigator focused solely on CCW renewals who can process in the background on approximately 40 applications per week. *Id*. Third, LASD leveraged additional local resources. Prior to *Bruen*, LASD accepted CCW applications from any LA County resident, even when those residents lived in municipalities that could process their CCW applications instead, thereby increasing the volume of applications to LA County. As of August 2022, LASD limited first-time applicants to residents residing within LASD's contract cities and LASD's unincorporated communities, as permitted under Cal. Penal Code § 26150(c). *Id*. ¶ 9. Due to this change, the number of monthly applications significantly declined. *Id.*

Additional factors have affected the timeline for processing the deluge of post-*Bruen* applications. Applications as received often require LASD investigators to follow up with applicants to procure further documentation and information, causing additional delays. Chavez Decl. ¶ 12. For a period of time, background checks conducted by the Department of Justice often took longer than anticipated to complete—a process that was entirely outside LASD's control. *Id.* ¶ 12. LASD experienced staffing shortages, budget constraints, and office relocation measures, which delayed processing applications. *Id.* ¶ 14. Last, LASD also had a change in administration following the election of a new sheriff, causing delay in the approval and issuance of CCW licenses. *Id.* ¶ 15.

Despite LASD's ongoing efforts to improve processing times, a significant backlog of post-*Bruen* license application remains. Approximately 7,300 paper

applications submitted before the shift to Permitium and approximately 2,100 applications submitted via Permitium remain to be processed. Chavez Decl. ¶ 10. In addition, the county-wide applications that LASD granted before the *Bruen* decision are now up for renewal, which adds to the backlog. *Id*. Currently, LASD is working through paper applications that its investigators manually entered into LASD's electronic system in December 2022, though LASD would have received these hard copy applications months before then. *Id.*

### C.  Plaintiffs' CCW License Applications

Plaintiffs, or members of the organization plaintiffs, include four individuals with CCW applications pending with LA County: Charles Messel (application dated July 1, 2022), Jack Skadsem (July 8, 2022), Woodrow Stalter (July 11, 2022), Brian Weimer (January 2023).

Plaintiffs, or members of the organization plaintiffs, also include two individuals whose CCW applications have been processed and denied. Erick Velasquez's CCW application was denied on August 23, 2023. *See* Chavez Decl. Ex. 1 ("Velasquez App."). There were two reasons for the denial. *Id.* at 4. First, Mr. Velasquez has a history of irresponsibly handling firearms. *Id.* at 4. On April 20, 2021, Mr. Velasquez mishandled his pistol and accidentally fired a bullet into a wall. *Id.* at 4. The police responded to reports of fired shots and confirmed Mr. Velasquez's unsafe handling of his firearm. Chavez Decl. Ex. 2 ("Velasquez Police Rep.") at 12.  Second, Mr. Velasquez has lost multiple firearms due to his failure to comply with safety regulations for storing firearms. Velasquez App. at 4. On May 4, 2023, Mr. Velasquez left three firearms in an unsecured gun-range bag in the trunk of his car. Velasquez Police Rep. at 4. The three firearms were stolen, and the police report confirmed that the suspect had left "no damage to the vehicle," suggesting that Mr. Velasquez had left his car unlocked and left his

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

firearms in an unsecured container (gun-range bag) in violation of California's firearm regulations.  *Id.*

These circumstances disqualified Mr. Velasquez from receiving a CCW license.  California Penal Code Section 26202(a)(9) prohibits issuing a CCW permit when an "applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm" has led to "loss or theft of multiple firearms."  California Penal Code Section 26202(a)(5) prohibits LASD from issuing a CCW permit to anyone who has engaged in "reckless use, display, or brandishing of a firearm."

Sherwin Partowashraf's CCW application was denied on October 3, 2023. *See* Partowashraf Decl. (Dkt. 20-25) ¶ 3.[1]  The basis for denial was his being previously subject to a temporary restraining order.  *Id.* ¶ 4.  In June 2022, the Superior Court of California issued a restraining order requiring Mr. Partowashraf to stay 100 yards away from his former girlfriend, her home, her workplace, and her vehicle.  Chabot Decl. Ex. 2 ("TRO") at 4.  The TRO request explains that eight days before the TRO, Mr. Partowasharf frightened the victim by brandishing his firearms "one of which he placed to his side of the forehead, acting out a suicide."  Chabot Decl. Ex. 1 ("TRO Request") at 17.  Two days before the TRO, Mr. Partowashraf "proceeded to rape and sodomize" the victim where she "was screaming and struggling for [Mr. Partowashraf] to stop, which he did not."  *Id.* at 16.  The day before the TRO, Mr. Partowasharaf repeatedly struck the victim's arm, causing "noticeable cuts and bruises."  *Id.*  The request for TRO was also based on Mr. Partowashraf's threat to kill the victim's father.  *Id.* at 7, 17.  Based

---

[1]    Mr. Partowasharaft is not a plaintiff, but a member of plaintiff California Rifle & Pistol Association.  *See* Declaration of Sherwin David Partowashraf in Support of Plaintiffs' Motion for Preliminary Injunction, ECF No. 20-25.

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

on these facts, the court issued the TRO against Mr. Partowashraf, which was in place for 24 days, from June 24, 2022 until July 18, 2022.  TRO at 1.

These circumstances disqualified Mr. Partowasharaf from a CCW license. California Penal Code Section 26202(a)(3) prohibits LASD from issuing a CCW if the application "[h]as been subject to any restraining order … unless that order expired or was vacated or otherwise canceled more than five years prior to the licensing authority receiving the completed application."

## LEGAL STANDARD

"For a preliminary injunction to issue, a plaintiff must establish a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, a balance of equities in the movant's favor, and that the injunction is in the public interest."  *Doe v. Snyder*, 28 F. 4th 103, 111 (9th Cir. 2022).  Preliminary injunctions are an extraordinary remedy that are not granted lightly or awarded as of right.  *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008).

Where, as here, plaintiffs seek a mandatory injunction, they are required to make an even more heightened showing.  A mandatory injunction, as opposed to a prohibitory injunction, "goes beyond simply maintaining the status quo and orders the responsible party to take action pending the determination of the case on its merits."  *Snyder*, 28 F.4th at 111.  Plaintiffs ask the Court to require LASD to "reach a decision on CCW permit applications within 120 days of the application being filed" and, if it does not, to refrain from prosecuting people for unlicensed public carry while their applications pend.  Proposed Order ("PO"), ECF No. 20-28, at 2.  Plaintiffs also ask the Court to require LASD to deny CCW applications only "if they fail the California Department of Justice background check."  PO at 2-3.  Their motion thus seeks to force LASD to take certain actions, rather than "simply maintain[] the status quo."  *Snyder*, 28 F.4th at 111.  "The standard for issuing a mandatory injunction is high."  *Id.*  A plaintiff must prove that, under the

7

preliminary injunction standard, (1) "'the facts and law clearly favor the moving party,'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); (2) "'extreme or very serious damage will result'" absent relief, *Snyder*, 28 F.4th at 111; and (3) the injury complained of is not "'capable of compensation in damages." *Id.* Mandatory injunctions do not issue in "'doubtful cases.'" *Id.*

## ARGUMENT

## I. Plaintiffs Fail To Demonstrate A Likelihood Of Success On The Merits

Plaintiffs bring two challenges to Los Angeles County's CCW licensing regime—one premised on a post-*Bruen* processing backlog, the other on LASD's use of purportedly subjective criteria in permit decision-making. As discussed above, *Bruen* announced a new two-part test for assessing Second Amendment challenges to government conduct. First, the Court asks whether the Second Amendment's plain text covers the plaintiff's conduct. If it does not, there is no constitutional violation, and the claim fails. Second, if the conduct is encompassed by the Second Amendment's text, the government must justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearms regulation. *See Bruen*, 597 U.S. at 4. Plaintiffs have failed to show that they are likely to succeed—let alone that the facts and law clearly favor them—on the merits of either of their claims under this test.

### A. Plaintiffs Are Not Likely To Succeed On The Merits Of Their Backlog Claim

Since *Bruen*, California has had a "shall issue" CCW regime that does not require good cause for a permit to issue. Plaintiffs do not, and could not, take issue with that regime. Indeed, courts have already recognized that it remains constitutional following *Bruen*. *See, e.g.*, *Matthews v. City of Los Angeles*, 2023 WL 8414865, at *4 (C.D. Cal. Oct. 31, 2023) (dismissing post-*Bruen* Second Amendment challenge to California's CCW permitting regime because plaintiff

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

lacked constitutional right to carry without a license).[2]  Instead, Plaintiffs contend that unprecedented backlogs in CCW processing time resulting from the *Bruen* decision violate their Second Amendment rights.  Plaintiffs are unlikely to succeed on the merits of this backlog claim.

> ### 1.  Plaintiffs do not demonstrate that their backlog claim is likely to succeed at *Bruen* step one

Plaintiffs fail to show that they are likely to succeed on their claim that the Second Amendment's plain text entitles them to a concealed carry permit on a specific timeline where the agency issuing the permits is confronting unprecedented backlogs following a sea change in the governing law.

*First*, Plaintiffs can point to no case that says they are entitled to a concealed carry permit on a particular timeline.  For good reason.  The plain text of the Second Amendment does not afford a right to a concealed carry license without delay—especially where that delay is the result of a backlog created by a change in the governing law.  While courts have considered licensure delays in the context of other constitutional rights, whether and if so when a licensure delay in a shall-issue firearms licensing regime violates the Second Amendment is a novel issue on which few courts have opined.  As the Second Circuit recently observed in a decision on qualified immunity, where courts must determine if a right is clearly established in the case law, "despite Supreme Court precedent affirming 'that the Second and Fourteenth Amendments protect an individual right to keep and bear

---

[2]     Plaintiffs allege that LASD is not complying with the notice requirements in California Penal Code Section 26205.  Mot. at 8-9.  But this does not give rise to a claim under Section 1983, which "applies only to the violation of federal constitutional or statutory rights."  *Nordstrom v. Dean*, 2016 WL 10933077, at *9 (C.D. Cal. Jan. 8, 2016).  "Violation of a state statutory time limit for issuing a permit may not be challenged under section 1983."  *Id.* (denying 1983 claim for violation of time limits in Cal. Penal Code § 26205).

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

arms for self-defense,'" the court could "not [find] any case to hold that a seven-month (or even a two-year) delay in obtaining a firearm permit violates the Constitution." *Connecticut Citizens Def. League, Inc. v. Thody*, 2024 WL 177707, at *6 (2d Cir. Jan. 17, 2024); *cf. Rocky Mountain Gun Owners v. Polis*, 2023 WL 8446495, at *8 (D. Colo. Nov. 13, 2023) (concluding at *Bruen* step one that "the receipt of a paid-for firearm without delay" was not covered by Second Amendment's plain text). The novelty of Plaintiffs' theory alone renders the extraordinary preliminary relief they seek inappropriate. *See, e.g.*, *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (denying request for preliminary injunctive relief that "raised serious questions regarding the constitutionality of the … law at issue" but "also presents complex and novel … questions" the answers to which were not "clear … under existing precedent"). That is especially true here, given Plaintiffs' request for mandatory relief. *See Snyder*, 28 F.4th at 111 (mandatory injunctions not permitted in "doubtful cases").

Moreover, courts have long recognized that constitutional rights can permissibly be subject to licensure delays. Take content-neutral time, place, and manner restrictions on First Amendment speech. In *Southern Oregon Barter Fair v. Jackson County*, a fair organizer sued the county alleging that the Oregon Mass Gathering Act, which required a permit for the fair, violated the First Amendment. 372 F.3d 1128 (9th Cir. 2004). The court upheld the Act as a constitutional content-neutral time, place, and manner regulation— even though the Act lacked a deadline for the local governing body to grant or deny permit applications. *Id.* at 1138. The court affirmed the Act's constitutionality despite acknowledging "[t]he uncertainty of knowing when, if ever, the local governing body will act on the permit application may hamstring the arrangements for … large events, which must be made far in advance." *Id.*; *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002) (upholding local regulation that required permits for public

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

assemblies and gave regulator 28 days to review applications); *cf. Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012) (regulations requiring permits to hold commercial weddings on public beaches did not violate the First Amendment or the fundamental right to marry).

*Second*, while *Bruen* did not entirely "rule out" constitutional challenges to shall-issue regimes, the kinds of challenges that the Court contemplated were aimed at regimes "put toward abusive ends," *Bruen*, 597 U.S. at 38 n.9—in other words, where the parameters of a shall-issue licensing regime were weaponized to intentionally and abusively withhold the issuance of licenses.  There is no way to construe Los Angeles County's conduct as abusive in nature.  The backlog that LASD is facing is not of its own creation.  Rather, it is the direct effect of—and directly correlated with—the decision in *Bruen*, after which LASD experienced the unprecedented deluge of CCW applications at issue.  That volume, as discussed, surged to a high of 1,000 to 1,200 applications per month, including when LASD was processing applications from any county resident even where the resident had access to a local CCW permitting process in their city.  Chavez Decl. ¶ 5.

Far from weaponizing its processes for "abusive ends," LASD recognized the backlog and has proactively taken steps to address it.  *First*, it made its application process more efficient.  LASD transitioned from a paper application system to an electronic application system to remove LASD employee time spent inputting applications into the system.  *Id.* ¶ 7.  *Second*, it increased and optimized its staffing.  LASD employees have been working overtime to process as many applications as possible.  *Id.* ¶ 8.  LASD is also endeavoring to add investigators to its team.  *Id*.  *Third*, it leveraged local resources.  As of August 2022, LASD is only processing applications for County residents in contract cities or unincorporated communities—a change that caused applications to significantly decline from the post-*Bruen* high.  *Id.* ¶ 9.

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

1   The remaining backlog is eminently understandable given the circumstances.
2   Government agencies need time to adapt to changes in the law and routinely face
3   backlogs when they must do so.  More generally, "shall-issue regimes … often
4   require applicants to undergo a background check or pass a firearms safety course"
5   in order "to ensure only that those bearing arms in the jurisdiction are, in fact,
6   'law-abiding, responsible citizens.'"  *Bruen*, 597 U.S. at 38 n.9.  These processes
7   take time.  *See May*, 2023 WL 8946212, at *1 (acknowledging that "[t]o obtain
8   such a permit in California, a person must go through a rigorous screening
9   process," "a lengthy application, a thorough background check involving
10  interviews, fingerprinting, and reviewing multiple government databases, and a
11  full-day, hands-on training course").  For a period of time, background checks
12  conducted by the Department of Justice took longer than anticipated to complete—
13  a process that is entirely outside LASD's control.  Chavez Decl. ¶ 13.  And LASD
14  has experienced staffing shortages and budget constraints.  *Id.* ¶ 14.

15      Plaintiffs make much of the *Bruen* Court's reference to "lengthy wait times
16  in processing applications," which the Supreme Court offered as one example of a
17  way in which a permitting scheme might be put toward an abusive end.  *Bruen*,
18  597 U.S. at 38 n.9.  What Plaintiffs misunderstand is that lengthy wait times,
19  standing alone, are not enough to make out a Second Amendment claim.  Instead,
20  lengthy wait times are an example of how a government agency can put a shall-
21  issue licensing regime to abusive ends—that is, a delay deployed with the aim of
22  infringing on rights.  Whether or not the wait times caused by the backlog here are
23  "lengthy"—the *Bruen* Court provided no guidance on this point—Plaintiffs have
24  no evidence that LA County is engaged in such abuse.

25      These facts all cut strongly against any conclusion that LA County's
26  "permitting scheme" has been "put toward abusive ends" in the way that *Bruen*
27  considered might give rise to a constitutional claim against a facially valid shall-
28

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

issue permitting regime.  597 U.S. at 38 n.9.  On the contrary, Los Angeles County has and continues to put forth more than good faith efforts to process the deluge of CCW applications that *Bruen* precipitated.  At minimum, Plaintiffs cannot prove that the law and facts clearly favor their claim against the operations of Los Angeles County's shall-issue licensing regime at *Bruen* step one, as they must for mandatory injunctive relief.  *See Snyder*, 28 F.4th at 111.

          **2.**      **Plaintiffs do not prove that their backlog claim is likely to succeed at *Bruen* step two**

Once a right under the Second Amendment is established at *Bruen* step one, the burden shifts to the government to show historical analogues.  For the reasons above, Plaintiffs do not show that they are likely enough to succeed on their Second Amendment backlog claim to shift the burden at this stage:  the Second Amendment's text does not provide a right to unlicensed carry, and Plaintiffs have not shown facts clearly demonstrating that Los Angeles County's licensing regime has been put to abusive ends.  The Court can stop there.

If the Court does proceed, Plaintiffs fail to show that LASD will not be able to identify any historical analogues such that they are likely to succeed at *Bruen* step two.  LASD need not identify a "historical twin" or a "dead ringer" in the historical record to justify its licensing regime.  *Bruen*, 597 U.S. at 30.  LASD need only identify "relevantly similar" historical restrictions.  *See id.* at 29, 37-38.

LASD's licensing regime including the time period between application and final decisioning—necessary to ensuring that those bearing arms in the jurisdiction are in fact law-abiding, responsible citizens—is "relevantly similar" to numerous historical statutes.  "[L]icensing systems fit comfortably within the historical tradition of firearm regulation."  *Baird*, 2023 WL 9050959, at *24.  Indeed, "[s]ome states and colonies … banned concealed weapons or concealed weapon carrying outright."  *Id.* (citing enactments from 1686 in New Jersey and 1801 in

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

Tennessee).  At this preliminary stage, LASD has identified 60 historical statutes that imposed licensing, permitting, or ticketing requirements as a pre-requisite to public carry.  *See* Defendant's Request for Judicial Notice.  Over half of those statutes—39—were enacted between 1700 and 1899, near in time to the ratification of the Second and Fourteenth amendments.  *Id.*[3]

Plaintiffs contend that it is "all but certain" that LASD cannot provide "evidence showing a representative historical tradition of forcing citizens to wait 18 months" for a CCW permit.  Mot. at 5.  But that misstates LASD's obligation—especially at this stage of the litigation.  LASD need only identify relevantly similar historical statutes at *Bruen*'s step two.  It has done so.  And, at the very least, LASD has shown that the law does not "clearly favor" Plaintiffs, as it must for a mandatory injunction to issue.  *See Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980).

---

[3]     Many of these early firearm restrictions were "based on racial prejudice and ugly biases."  *Baird*, 2023 WL 9050959, at *24.  Such laws are morally repugnant and condemnable, and today are obviously unconstitutional for reasons unrelated to the Second Amendment.  Such laws are nonetheless part of the history of the Second Amendment that *Bruen* requires courts to inquire into, and they are relevant to determining the traditions that define its scope, even though inconsistent with other constitutional protections.  *See, e.g.*, *Bruen*, 597 U.S. at 60-61 (citing *Dred Scott v. Sandford*, 19 How. 393 (1857) (enslaved party)); *see also* William Baude & Stephen E. Sachs, *Originalism & the Law of the Past*, 37 L. & Hist. Rev. 809, 813 (2019) ("Present law typically gives force to past doctrine, not to that doctrine's role in past society."); *see also* Adam Winkler, *Racist Gun Laws and the Second Amendment*, 135 Harv. L. Rev. F. 537, 539 (2022) ("Yet there will arise situations in which even a racially discriminatory gun law of the past might provide some basis for recognizing that lawmakers have a degree of regulatory authority over guns.").

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

**B.      Plaintiffs Are Not Likely To Succeed On The Merits Of Their Subjective-Criteria Claim**

Under Los Angeles County's existing CCW regime, LASD applies objective criteria designed to ensure that only those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens, and it exercises no discretion to deny a CCW application when those criteria are satisfied.  Plaintiffs nonetheless contend that LASD has improperly applied subjective criteria in denying CCW applications in violation of the Second Amendment.  They are unlikely to succeed on the merits of that claim.

**1.      Plaintiffs do not prove that their subjective-criteria claim is likely to succeed at *Bruen* step one**

California's "shall issue" licensing regime does not infringe on any historical right to bear arms because, as explained above, *Bruen* left untouched the constitutionality of "shall issue" firearms licensing regimes.   California sets objective statutory requirements that CCW applicants must satisfy to obtain a permit.  *See generally* Cal. Penal Code § 26202.  These requirements, meant to ensure that the applicants are "law-abiding citizens," are precisely the kind of "shall issue" criteria that *Bruen* identifies as constitutional because they ensure that applicants do not lack "the essential character of temperament necessary to be entrusted with a weapon."  597 U.S. at 13 n.1

For this reason, the Court in *Bruen* wrote, "[t]o be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].'"  597 U.S. at 38 n.9.  Rather, "[b]ecause these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry."  *Id.*  As Justice

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

Kavanaugh further explained in a concurrence joined by the Chief Justice: "the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense.  In particular, the Court's decision does not affect the existing licensing regimes—known as 'shall-issue' regimes." *Id.* at 80 (Kavanaugh, J., concurring).  In other words:  "shall-issue licensing regimes are constitutionally permissible." *Id.* at 81.

Numerous courts have already recognized that California's "shall issue" CCW regime, including its objective decisioning criteria, remains constitutional following *Bruen*.  Many of these courts stop their analysis at *Bruen* step one since the Second Amendment does not afford a right to *unlicensed* public carry.  "*Bruen* did not create … a constitutional right to carry publicly a concealed firearm without a license.  …  *Bruen* did not forbid states from applying … reasonable, well-defined restrictions to an individual's application for a CCW license." *Matthews*, 2023 WL 8414865, at *4 (dismissing post-*Bruen* Second Amendment challenge to California's CCW permitting regime because plaintiff lacked constitutional right to carry without a license); *see also People v. Cortes*, 2024 WL 470525, at *1 (Cal. Ct. App. Feb. 7, 2024) ("This court previously rejected [a challenge to California's CCW licensing regime] ….  Other California appellate courts addressing facial challenges to the constitutionality of this state's firearm licensing regime after *Bruen* have done the same.  Consistent with those decisions, we find that the statutes embodying the licensing regime were not rendered facially unconstitutional by *Bruen*." (citing *In re T.F.-G.*, 94 Cal. App. 5th 893 (2023); *In re D.L.*, 93 Cal. App. 5th 144 (2023); *People v. Miller*, 94 Cal. App. 5th 935 (2023); *People v. Mosqueda*, 97 Cal. App. 5th 399 (2023))).

Plaintiffs nevertheless challenge this "shall issue" regime.  Their challenge implicates three criteria: (1) California Penal Code Section 26202(a)(3), which prohibits LASD from issuing a CCW if the application "[h]as been subject to any

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

restraining order … unless that order expired or was vacated or otherwise canceled more than five years prior to the licensing authority receiving the completed application"; (2) California Penal Code Section 26202(a)(5), which prohibits LASD from issuing a CCW permit to anyone that has engaged in "reckless use, display, or brandishing of a firearm"; and (3) California Penal Code Section 26202(a)(9), which prohibits issuing a CCW permit when an "applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm" has led to "loss or theft of multiple firearms."

None of these statutes affords any discretion to the licensing official. At no point in the permitting process does the statutory regime require a determination influenced by any official's individual opinion or judgment as to the applicant's worthiness. Instead, they are objective statutory requirements. If they are satisfied, the applicant will receive a permit, and if they are not, the application must be denied. *Bruen* concluded that this kind of licensing regime was constitutional. Given the unequivocal objective and mandatory criteria of the statute, Plaintiffs' challenge fails at *Bruen* step one.

Plaintiffs also fail to offer facts clearly showing that these laws imposed impermissible subjective criteria as applied to them. Plaintiffs argue in their motion that the gun safety regulation and TRO regulations are unconstitutional as applied to Mr. Velasquez and Mr. Partowashraf. However, the facts involving these two denials do not clearly show that impermissible subjective criteria were applied. On the contrary, both Mr. Velasquez and Mr. Partowashraf clearly met the objective criteria for disqualification for a CCW license because both engaged in conduct that, under the statute, is an objective indication that they are a danger to themselves and the community and, thus, failed to meet the "law abiding" statutory requirements set forth in the California Penal Code.

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

1   Mr. Velasquez's CCW application was denied for failing to meet objective

2   statutory requirements.  California Penal Code Section 26202(a)(5) prohibits

3   LASD from issuing a CCW permit to anyone that has engaged in "reckless use,

4   display, or brandishing of a firearm."  And California Penal Code Section

5   26202(a)(9) prohibits issuing a CCW permit when an "applicant's lack of

6   compliance with federal, state, or local law regarding storing, transporting, or

7   securing the firearm" has led to "loss or theft of multiple firearms."  In the case of

8   Mr. Velasquez, police reports indicate that he fails to meet both statutory

9   requirements.  Mr. Velasquez engaged in the reckless use of firearms on April 20,

10  2021, when he discharged a loaded firearm and unintentionally fired a bullet into a

11  wall.  Velasquez Police Rep. at 12.  And Mr. Velasquez violated California gun

12  safety laws resulting in the theft of multiple firearms when he left three firearms in

13  the trunk of his unlocked car without placing the firearms in a locked container

14  within the vehicle.  *Id.* at 4.  Under these objective circumstances, LASD was

15  required to deny his CCW application and, thus, no subjective criteria was applied

16  in the denial.

17  Mr. Partowashraf's CCW application was also denied for failing to meet

18  objective statutory requirements.  California Penal Code Section 26202(a)(3)

19  prohibits LASD from issuing a CCW if the application "[h]as been subject to any

20  restraining order … unless that order expired or was vacated or otherwise canceled

21  more than five years prior to the licensing authority receiving the completed

22  application."  The Superior Court of California issued an injunction that was in

23  place from June 24, 2022 until July 18, 2022.  TRO at 1.  The restraining order was

24  based on Mr. Partowashaf's use of firearms to intimidate the victim by "acting out

25  a suicide," sexually assaulting the victims despite her "screaming and struggling

26  for [Mr. Partowashraf] to stop," inflicting "noticeable cuts and bruises," and

27  threatening to kill the victim's father.  TRO Request at 7, 16, 17.

28

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

Mr. Partowashaf's disagreement that the TRO was warranted, despite the facts the court accepted supporting it, does not bear on whether it disqualified his CCW application.  Instead, because this injunction was not dissolved more than five years before the CCW application, LASD was required under the California Penal Code to deny the application, and no subjective criteria was applied in the denial.

The law and facts therefore do not clearly favor Plaintiffs' subjective-criteria claim.  They clearly disfavor it.  The requirements at issue are not subjective at all, but objective and mandatory.  And Plaintiffs' denials were for reasons falling squarely within the objective parameters for disqualification.  They therefore fail to carry their burden to show they are likely to succeed at *Bruen* step one.

### 2.     Plaintiffs do not prove that their subjective-criteria claim is likely to succeed at *Bruen* step two

As with the backlog claim, because Plaintiffs have failed to carry their burden to show that they are likely to succeed on their subjective-criteria claim at *Bruen* step one, they have not shifted the burden to the government to identify historical analogues at *Bruen* step two and the Court can stop there.  If the Court continues, Plaintiffs fail to show they are likely to succeed on their claim at *Bruen* step two.  To the contrary, courts that have proceeded to step two of *Bruen* when assessing California's CCW regime have concluded the regime "fits comfortably within the history of licensing regimes adopted after the Fourteenth Amendment took effect," and so is constitutional.  *Baird*, 2023 WL 9050959, at *26.

The state statutes that required denial of Mr. Velasquez's CCW application (denial for reckless use of firearms/failure to comply with gun safety regulations) are established in a tradition of restricting firearms to those who are irresponsible with the handling of firearms.  *See, e.g.*, *United States v. Lewis*, 2023 WL 6066260, at *5 (S.D.N.Y. Sept. 18, 2023) (recognizing tradition of "disarming individuals considered lawless and irresponsible"); *Worth v. Harrington*, 666 F.

19

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

Supp. 3d 902, 924 n.28 (D. Minn. 2023) (recognizing laws before the civil war restricting gun rights for people "deemed irresponsible"); *United States v. Roberts*, 2024 WL 50889, at *1 (D. Alaska Jan. 4, 2024) (recognizing historical tradition of disarmament of drug addicts and the mentally ill). These historical examples need not be exact twins of the challenged statutes to be sufficient analogues. All involve regulation of those who cannot responsibly handle firearms. The California Penal Code aims to do the same thing by not allowing CCW permits for those engaged in "reckless use" of firearms or for those who failed to comply with "federal, state, or local law regarding storing, transporting, or securing the firearm." These historical analogues show that the facts and law do not favor Plaintiffs at *Bruen* step two, let alone clearly favor them.

Section 26202(a)(3)'s prohibition on issuing CCW licenses to individuals with temporary restraining orders entered against them under certain circumstances is similarly rooted in the longstanding historical tradition of having "limitations on the gun rights of suspect or dangerous individuals." *United States v. Gamble*, 2023 WL 6460665, at *4 (D. Nev. Oct. 4, 2023). In *United States v. Padgett*, for example, the court upheld a law banning firearms for those with a criminal history as being in accord with the nation's historic tradition of firearms regulation. 2023 WL 2986935, at *1 (D. Alaska Apr. 18, 2023). Indeed, the Supreme Court noted in *District of Columbia v. Heller* that that "opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." 554 U.S. 570, 626-627 (2008). The challenged statute here similarly prohibits CCW permits for dangerous individuals such as those that have engaged in violence or made a credible threat of violence at schools or workplaces, perpetrators of domestic violence, or applicants that have engaged in or credibly threatened to physically abuse minors or the elderly. Cal. Penal Code.

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

§ 26202(a)(3)(A)-(E).  Again, these historical analogues are more than sufficient to show that the facts and law do not favor Plaintiffs at *Bruen* step two.[4]

## II.    The Other Factors Weigh Against Plaintiffs' Motion

In addition to showing (1) that they are likely to succeed on the merits, Plaintiffs must also show (2) irreparable harm, (3) the balance of equities favor them, and (4) the public interest favors their relief.  Plaintiffs fail to satisfy any of the remaining requirements.

### A.    Plaintiffs Do Not Prove That Irreparable Harm Will Result Absent Relief

Plaintiffs have not proved irreparable harm will result from denying their motion for preliminary injunction.

On the backlog claim, the very nature of their complaint demonstrates that no such harm will result from maintaining the status quo.  That no injury has arisen over the time period that their applications have been pending undermines any such argument.  And Plaintiffs have not identified any concrete or imminent threat creating an immediate need for them to carry a concealed firearm.

Instead, Plaintiffs' entire argument on this factor turns on their likelihood of success on the merits, arguing that any deprivation of constitutional rights constitutes irreparable harm.  *See* Mot. at 23.  As explained above, Plaintiffs are unlikely to succeed on their claims.  Thus, Plaintiffs' argument fails on its face to meet the standard required for a *mandatory* injunction, and Plaintiffs' failure to carry their burden to show that extreme or very serious injury will result without an injunction as required is reason enough to deny their motion.  *See Anderson*, 612

---

[4]    The Supreme Court is currently considering whether prohibitions on the possession of firearms by persons subject to domestic-violence restraining orders violates the Second Amendment on its face.  *See United States v. Rahimi*, 143 S. Ct. 2688 (2023).

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

F.2d at 1115 (finding the district court abused its discretion in granting preliminary mandatory relief where the plaintiff "would not be damaged seriously if the mandatory injunction were not issued"); *see also Snyder*, 28 F.4th at 114-115 (affirming district court's denial of mandatory preliminary injunction because the plaintiff failed to show "extreme or very serious damage w[ould] otherwise result").

As for the subjective criteria claim, neither Mr. Velasquez nor Mr. Partowashraf offers any reason to think that the denial of their CCW applications has resulted in extreme or very serious and irreparable damage.  On the contrary, it is the denial of CCW applications under the objective public-safety criteria outlined in the California Penal Code sections that they challenge that *avoids* extreme and very serious irreparable harm. And regardless, as explained above, Mr. Velasquez and Mr. Partowashraft do not come close to satisfying the statutory requirements for a CCW permit.  *See California v. Trump*, 379 F. Supp. 3d 928, 959 (N.D. Cal. 2019) (holding that plaintiffs have a burden to show the likelihood of the harm, even if that harm is a constitutional violation, to have it recognized as an irreparable harm), *aff'd*, 963 F.3d 926 (9th Cir.), *cert. granted*, 141 S. Ct. 618 (2020)**.**

### B.    Plaintiffs Do Not Prove That The Equities Favor Relief

Nor do Plaintiffs show that the balance of equities favors their motion.

On the backlog issue, as explained above, Los Angeles County has taken extraordinary steps and its employees have made Herculean efforts and personal sacrifices to attend to the deluge of CCW applications that the Supreme Court's decision in *Bruen* instigated.  Steady progress has been, and continues to be, made. The equities therefore do not favor the mandatory injunctive relief that Plaintiffs seek, namely the impracticable, unadministrable, and frankly impossible task of ordering LASD to review and process all applications including the nearly 10,000

22

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

permit backlog within 120 days, or the extreme request to simply allow anyone with an application pending for that long—however incomplete the application or clearly disqualified or even dangerous the applicant—to carry a concealed weapon. Plaintiffs' proposed injunction would force LASD to immediately process these applications (many of which have already passed the 120-day deadline) and would risk the reckless issuance of CCW permits to applicants that are convicted criminals, mentally ill, drug addicts, non-compliant with gun safety regulations, or actively threatening to physically harm others. The equities disfavor that result.

As for the subjective-criteria claim, the equities plainly do not favor Mr. Velasquez and Mr. Partowashraf, who were ineligible for CCW licenses for objective circumstances related to community safety. The requested injunction seeks to bypass statutory licensing requirements while disrupting LA County's processes designed to ensure that only law-abiding citizens carry firearms in the jurisdiction. The equities, accordingly, favor LA County.

### C.    Plaintiffs Do Not Prove That The Public Interest Favors Relief

The public interest disfavors Plaintiffs' requested relief for similar reasons. Plaintiffs' only argument as to the public interest is, again, premised on their alleged likelihood of success on their underlying claims. *See* Mot. at 24-25. For the reasons above, they are not likely to succeed. And the public interest otherwise disfavors them, instead favoring the orderly resolution of their and other pending CCW applications in LA County's shall-issue licensing regime, which is constitutionally valid and "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Bruen*, 597 U.S. at 38 n.9. Were this injunction granted, it would allow dangerous individuals to carry concealed firearms and threaten public safety. *See Drakes Bay Oyster Co. v. Salazar*, 921 F. Supp. 2d 972, 995 (N.D. Cal.) ("In deciding whether to grant an injunction, 'courts must … pay particular regard for the public consequences in

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

employing the extraordinary remedy of injunction.'"), *aff'd*, 729 F.3d 967 (9th Cir.), *amended & superseded*, 747 F.3d 1073 (9th Cir. 2013).  The public interest would be disfavored by invalidating, based on only Plaintiffs' allegations and self-serving declarations, processes designed to ensure only law-abiding citizens may carry.

**III.    Plaintiffs Lack Standing To Seek Their Requested Injunction**

Even if Plaintiffs were entitled to an injunction (they are not), they lack standing to request the relief they seek—an injunction that would require LASD to change its CCW regime for all applicants.  *See* PO at 2-3.  Plaintiffs are individuals who claim to have been unconstitutionally deprived of CCW permits, as well as organizations that count such individuals as members.  That alleged injury would be completely redressed by an injunction limited to Plaintiffs, and Plaintiffs would not be injured by the application of the challenged regime to third parties.  Because "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), Plaintiffs lack standing to seek, and the Court lacks authority to grant, an injunction that extends beyond Plaintiffs' individual alleged harms.

**CONCLUSION**

For these reasons, Plaintiffs' motion for preliminary injunction should be denied.

Respectfully submitted,

Dated: February 21, 2024

*/s/ Mark Selwyn*

MARK SELWYN (CA Bar No. 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP

2600 El Camino Road
Palo Alto, California 94306
Telephone: (650) 858-6031
Facsimile: (650) 858-6100

ALAN SCHOENFELD (*pro hac vice* forthcoming)
alan.schoenfeld@wilmerhale.com
NOAH LEVINE (*pro hac vice* forthcoming)
noah.levine@wilmerhale.com
RYAN CHABOT (*pro hac vice* forthcoming)
ryan.chabot@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

*Attorneys for Defendants Los Angeles County Sheriff's Department and Sheriff Robert Luna*

LA COUNTY'S OPPOSITION TO PRELIMINARY INJUNCTION
*Cal. Rifle & Pistol Ass'n v. Los Angeles County Sheriff's Dep't*, No. 2:23-cv-10169

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief does not exceed 25 pages in length using Times New Roman 14-point font, which complies with this Court's Standing Order of October 24, 2023.

Dated:  February 21, 2024                    */s/ Mark Selwyn*
                                            Mark Selwyn