# EXHIBIT P

## No. 23-12551-HH

In the

# United States Court of Appeals for the Eleventh Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DAVID ROBINSON, JR.,

*Defendant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 5:22-CR-72-GAP-PRL-1

---

## BRIEF OF THE UNITED STATES

---

ROGER B. HANDBERG
United States Attorney

SEAN SIEKKINEN
Assistant United States Attorney
Appellate Division

HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 98960
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
March 29, 2024                                    (813) 274-6000

*United States v. David Robinson, Jr.*,
No. 23-12551-HH

## Certificate of Interested Persons and Corporate Disclosure Statement

In addition to the persons identified in the Certificate of Interested

Persons and Corporate Disclosure Statement in David Robinson, Jr.'s,

principal brief, the following person has an interest in the outcome of this case:

> Gershow, Holly L., Assistant United States Attorney,
> Deputy Chief, Appellate Division.

No publicly traded company or corporation has an interest in the

outcome of this appeal.

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ........ C-1

Statement Regarding Oral Argument ............................................................. i

Table of Contents ......................................................................................... ii

Table of Citations ........................................................................................ iv

Statement of Jurisdiction ............................................................................ vii

Statement of the Issues ................................................................................ 1

Statement of the Case .................................................................................. 1

    *Course of Proceedings* ............................................................................. 1

    *Statement of the Facts* ............................................................................ 3

    *Standard of Review* ................................................................................ 3

Summary of the Argument ........................................................................... 4

Argument and Citations of Authority ........................................................... 4

I.   The NFA does not exceed Congress's power to tax in violation of
    the Tenth Amendment ............................................................................ 5

II.  The NFA's registrations requirement for short-barreled rifles do
    not violate the Second Amendment ....................................................... 6

    A.  Controlling precedent forecloses Robinson's challenge to his
        § 5861(d) convictions for possession of an unregistered short-
        barreled rifle ...................................................................................... 7

    B.  Even if this Court were to look at this issue anew, § 5861(d)'s
        prohibition on unregistered short-barreled rifles passes
        constitutional muster under the *Bruen* framework ...................... 11

ii

*(1)*     *The Second Amendment does not cover the possession of unregistered short-barreled rifles* ................................................. 12

*(2)*     *The NFA's registration requirement for short-barreled shotguns and rifles is inconsistent with the Nation's historical tradition of firearm regulation* ...................................................................... 19

C.     Robinson's unconstitutional-tax argument is barred by *Bruen*'s rejection of means-end scrutiny and, in any event, is meritless...... 22

Conclusion ................................................................................... 25

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

iii

# Table of Citations

## Cases

*Cox v. New Hampshire,*
    312 U.S. 569 (1941) ................................................................22–23

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ................................................................ 6–12, 17

*Forsyth Cnty., Ga. v. Nationalist Movement,*
    505 U.S. 123 (1992) ................................................................ 23

*Johnson v. United States,*
    576 U.S. 591 (2015) ................................................................12–13

*Mock v. Garland,*
    75 F.4th 563 (5th Cir. 2023) .................................................... 13

*Murdock v. Pennsylvania,*
    319 U.S. 105 (1943) ................................................................ 23

**New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
    597 U.S. 1 (2022)........................................... 2, 4, 6–7, 11–12, 17–19, 21–24

*Ocean State Tactical, LLC v. Rhode Island,*
    95 F.4th 38 (1st Cir. 2024)....................................................... 22

*Planned Parenthood of Se. Pennsylvania v. Casey,*
    505 U.S. 833 (1992) ................................................................ 16

*Teixeira v. Cnty. of Alameda,*
    873 F.3d 670 (9th Cir. 2017) .................................................... 19–20

*Turner v. Burnside,*
    541 F.3d 1077 (11th Cir. 2008).................................................. 14

**United States v. Bolatete,*
    977 F.3d 1022 (11th Cir. 2020)..................................................3, 5, 18

*United States v. Cox,*
    906 F.3d 1170 (10th Cir. 2018).................................................. 7, 13

iv

*United States v. Dubois*,
  94 F.4th 1284 (11th Cir. 2024)........................................6–7, 10–11

*United States v. Fortes*,
  141 F.3d 1 (1st Cir. 1998)........................................... 14

*United States v. Gilbert*,
  286 F. App'x 383 (9th Cir. 2008) ................................ 8

*United States v. Jennings*,
  195 F.3d 795 (5th Cir. 1999) ...................................... 13

*\*United States v. Miller*,
  307 U.S. 174 (1939) ........................................ 7–11, 19

*United States v. Ross*,
  458 F.2d 1144 (5th Cir. 1972)................................... 5

*United States v. Simien*,
  655 F. Supp. 3d 540 (W.D. Tex. 2023) ...................... 15

*United States v. Spoerke*,
  568 F.3d 1236 (11th Cir. 2009)................................. 5

*United States v. Stepp-Zafft*,
  733 F. App'x 327 (8th Cir. 2018) .............................. 8

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505 (1992) ................................................ 13

*\*United States v. Wilson*,
  979 F.3d 889 (11th Cir. 2020)............................... 5, 10

**Statutes**

18 U.S.C. § 922(o)............................................................ 15

18 U.S.C. § 3231 ............................................................ vii

26 U.S.C. § 5811 .......................................................... 5, 17

26 U.S.C. § 5812 ....................................................... 5, 17–18

26 U.S.C. § 5821 ................................................................. 5, 17

26 U.S.C. § 5822 .............................................................. 5, 17–18

26 U.S.C. § 5845(a) ............................................................ 1, 5, 8

26 U.S.C. § 5861(d) ............................................... 1–2, 5, 7, 11, 19

26 U.S.C. § 5871 ..................................................................... 2

28 U.S.C. § 1291 ................................................................... vii

**Rules**

Fed. R. App. P. 4(b) ............................................................... vii

**Regulations**

27 C.F.R. § 478.98(a) ............................................................... 17

27 C.F.R. § 479.86 ............................................................... 5, 18

**Other Authorities**

6 Statutes at Large of Pennsylvania from 1682 to 1801 (1899) ...................... 20

The American Revolution Institute, *Blunderbuss, the "Thunder Box" of the Battlefield*, https://www.americanrevolutioninstitute.org/recent-acquisitions/english-blunderbuss/ (last visited March 14, 2024) .............. 22

Oliver Krawczyk, Dangerous and Unusual: How an Expanding National Firearms Act Will Spell Its Own Demise, 127 Dick. L. Rev. 273 (2022) ......................................................................... 14

Laws and Ordinances of New Netherland (1868) ........................................ 20

Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, 80 Law & Contemp. Probs. 55 (2017) ...................... 20

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered an amended judgment against David Robinson, Jr., on July 27, 2023, Doc. 85, and Robinson timely filed a notice of appeal on August 4, 2023, Doc. 86. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal. *See* 28 U.S.C. § 1291.

## Statement of the Issues

I.      Does the National Firearms Act exceed Congress's power to tax in violation of the Tenth Amendment? (Robinson's Issue III)

II.     Do the National Firearms Act's registration requirements for short-barreled rifles, 26 U.S.C. § 5861(d), violate the Second Amendment? (Robinson's Issue I–II)

## Statement of the Case[1]

After a stipulated bench trial, the district court found David Robinson, Jr., guilty of possessing an unregistered short-barreled rifle. In this direct criminal appeal, Robinson challenges the constitutionality of his conviction under the Second and Tenth Amendments.

### *Course of Proceedings*

The National Firearms Act (NFA) requires rifles and shotguns with short barrels (less than 16 or 18 inches, respectively) to be registered in the National Firearms Registration and Transfer record. *See* 26 U.S.C. §§ 5861(d), 5845(a). A grand jury returned an indictment charging Robinson with one count of possession of an unregistered firearm with an unlawfully short barrel,

---

[1]We cite district court documents using the page number that appears in the header generated by the court's electronic filing system. We cite Robinson's brief by its own page numbers.

in violation of 26 U.S.C. §§ 5861(d) and 5871. Doc. 1.

Robinson moved to dismiss the indictment because (1) the registration requirement of the NFA violated the Second Amendment, applying the framework set out by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and First Amendment jurisprudence; (2) the NFA violated the Tenth Amendment because it exceeded Congress's taxing authority; and (3) the NFA violated the Fifth Amendment because it was unconstitutionally vague. Doc. 32. The United States responded, Doc. 40, and Robison replied, Doc. 48.

The district court denied Robinson's motion for two reasons relevant here. Doc. 53. First, the court concluded that NFA's registration requirement did not violate the Second Amendment. The court explained, "The Supreme Court has plainly held that unregistered short-barreled shotguns are not protected by the Second Amendment and this Court discerns no meaningful distinction when it comes to short-barreled rifles." *Id*. at 8. The court also rejected Robinson's First Amendment argument as foreclosed *Bruen*, reasoning, "since the Supreme Court in *Bruen* decided to discard the scrutiny regime historically applied in the context of constitutional rights, like those protected by the First Amendment, … it follows that First Amendment fee jurisprudence would likewise be inapplicable in the Second Amendment context." Doc. 53 at 10. Second, the court found that precedent foreclosed

2

Robinson's argument that the NFA exceeded Congress's taxing authority.
Doc. 53 at 9.

Robinson waived his right to a jury trial and proceeded to a stipulated-
facts bench trial. Docs. 60–62. The district court found Robinson guilty as
charged, Doc. 64, and sentenced him to 18 months' probation, Doc. 85.

### Statement of the Facts

Around two in the morning, Citrus County Sheriff's Office deputies
received a complaint about a suspicious vehicle parked in front of the
complainant's house. Doc. 62-1 at 3. On investigation, deputies discovered
Robinson asleep in the car with a rolled-up ski mask on his head and a loaded,
short-barreled rifle between himself and the front-passenger seat. *Id*. at 3–4.
Robinson said that the length of the barrel was eight inches and that he did not
know that he had to register it with a tax stamp. *Id*. at 4–5.

The actual length of the rifle's barrel is 12.5 inches. Doc. 61-2 at 5. It was
not registered to Robinson in the National Firearms Registration and Transfer
record. *Id*. at 6.

### Standard of Review

I–II.   This Court reviews de novo the constitutionality of a statute.
*United States v. Bolatete*, 977 F.3d 1022, 1032 (11th Cir. 2020).

## Summary of the Argument

I.     The NFA does not exceed Congress's power to tax in violation of the Tenth Amendment. As Robinson concedes, this Court's precedent forecloses his arguments to the contrary. This Court must follow that precedent here.

II.     The NFA's registration requirements for short-barreled rifles do not violate the Second Amendment. The Supreme Court and this Court have held that these types of weapons are not typically possessed by law-abiding citizens for lawful purposes and are thus not protected by the Second Amendment. That precedent has not been overturned or abrogated, so this Court must follow it here. And even if it were an open question, the NFA's registration requirements satisfy *Bruen*'s two-step test. Finally, this Court should not rely on First Amendment fee jurisprudence to determine whether the NFA's $200 tax is constitutional because the First Amendment framework conflicts with *Bruen*'s framework.

## Argument and Citations of Authority

Robinson challenges on Second and Tenth Amendment grounds his conviction under the NFA for possession of an unregistered short-barreled rifle. The relevant part of the NFA states, "It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National

Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The NFA

defines "firearm" to include rifles and shotguns with barrels less than 16 or 18

inches long, respectively, 26 U.S.C. § 5845(a), often referred to as short-

barreled rifles and shotguns. Registering a firearm requires the payment of a

$200 tax; identification of the firearm to be registered; and identification of the

applicant—including fingerprints and a photograph. 26 U.S.C. §§ 5811, 5812,

5821, 5822. The only permissible reason for denying a properly completed

application is where its approval "would place the [possessor] in violation of

the law." 26 U.S.C. §§ 5812, 5822; *see also* 27 C.F.R. § 479.86.

## I.   The NFA does not exceed Congress's power to tax in violation of the Tenth Amendment.

As Robinson concedes, Robinson's brief at n.7, this Court's precedent

forecloses his argument that the NFA violates the Tenth Amendment because

it exceeds Congress's power to tax. *See United States v. Bolatete*, 977 F.3d 1022,

1031–32 (11th Cir. 2020) (holding that *United States v. Ross*, 458 F.2d 1144 (5th

Cir. 1972), and *United States v. Spoerke*, 568 F.3d 1236, 1245 (11th Cir. 2009),

foreclosed Bolatete's argument that the NFA is unconstitutional both facially

and as applied because it exceeds Congress's power to tax); *see also United States

v. Wilson*, 979 F.3d 889, 903 (11th Cir. 2020). This Court correctly decided

*Spoerke* and *Ross*, and, regardless, under the prior-panel-precedent rule this

Court must follow its precedent here. *See United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024).

## II.   The NFA's registration requirements for short-barreled rifles do not violate the Second Amendment.

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008), the Supreme Court held that the Second Amendment's right to keep and bear arms protects an individual's right to possess and use a firearm for lawful purposes, such as self-defense within the home. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022), the Court held that the Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home."

Robinson wrongly treats *Bruen* as a sea change requiring this Court to disregard *Heller* and this Court's post-*Heller* precedent. *See* Robinson's brief at 12. *Bruen* had no such effect. To start, "*Bruen* repeatedly stated that its decision was faithful to *Heller*." *Dubois*, 94 F.4th at 1293. Indeed, *Bruen* rejected the two-step framework "that then prevailed in most circuits," and which required means-end scrutiny at step two because that step conflicted with *Heller*. *Dubois*, 94 F.4th at 1292. And, contrary to Robinson's assertion, this Court had "never

actually applied the second, means-end-scrutiny step." *Id.* Thus, because "*Bruen* approved [s]tep one of the predominant framework as broadly consistent with *Heller*," *Dubois*, 94 F.4th at 1292, it follows that this Court's post-*Heller* jurisprudence conforms with *Bruen*'s framework.

With this post-*Bruen* landscape in place, we turn to the merits of Robinson's argument. As explained below, *United States v. Miller*, 307 U.S. 174 (1939), *Heller*, and this Court's post-*Heller* precedent foreclose Robinson's Second Amendment challenge to his conviction under the NFA for possessing an unregistered, short-barreled rifle. But even if it did not, the NFA's requirements for possessing a short-barreled rifle satisfy the *Bruen* test and are therefore constitutional under the Second Amendment.

## A.   Controlling precedent forecloses Robinson's challenge to his § 5861(d) convictions for possession of an unregistered short-barreled rifle.

Controlling precedent establishes that the Second Amendment does not protect the possession of short-barreled shotguns. And that precedent applies with equal force to short-barreled rifles. A short-barreled rifle, like a short-barreled shotgun, is "a long gun with a shortened barrel" which is "both dangerous, because its concealability fosters its use in illicit activity, and unusual, because of its heightened capability to cause damage." *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018). And Congress imposed identical

registration requirements on short-barreled rifles and shotguns. 26 U.S.C. §

5845(a). Thus, the following discussion of short-barreled shotguns applies

equally to short-barreled rifles. *See United States v. Stepp-Zafft*, 733 F. App'x 327,

329 (8th Cir. 2018) ("Other courts have seen no constitutional distinction

between short-barreled shotguns and rifles in the wake of *Heller*."); *United States*

*v. Gilbert*, 286 F. App'x 383, 386 (9th Cir. 2008) ("Under *Heller*, individuals still

do not have the right to possess … short-barreled rifles.").

In *Miller*, 307 U.S. 174, the Supreme Court considered a Second

Amendment challenge to the NFA brought by defendants indicted for

transporting an unregistered short-barreled shotgun. Rejecting the challenge,

the Court held that, absent "any evidence tending to show that possession or

use of a [short-barreled shotgun] at this time has some reasonable relationship

to the preservation or efficiency of a well regulated militia, we cannot say that

the Second Amendment guarantees the right to keep and bear such an

instrument." *Id.*, 307 U.S.  at 178.

Then, in *Heller*, while rejecting that *Miller* limited the protection of the

Second Amendment to those serving in a militia, the Supreme Court embraced

*Miller*'s limitation of the types of weapons covered by the Second Amendment,

stating that it "read *Miller* to say only that the Second Amendment does not

protect those weapons not typically possessed by law-abiding citizens for

lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 621–25.
That reading, the Court explained, "accords with the historical understanding
of the scope of the right." *Id*. at 625.

Robinson's attempts to avoid *Miller* fail. First, he argues that *Miller*
should not apply here because *Miller* dealt with short-barreled shotguns, not
rifles. Robinson's brief at 20. But he has failed to explain why short-barreled
rifles should be treated differently than short-barreled shotguns, and as
explained above, they should not be.

Second, he argues that *Miller*'s analysis focused on the use of short-
barreled firearms in the militia and is therefore limited by *Heller* because *Heller*
determined that there was an individual right to bear arms. Robinson's brief at
20. That argument misreads both *Miller* and *Heller.*

Starting with *Miller*, the Supreme Court there did consider whether short-
barreled shotguns were commonly used by individuals. *Miller* explained that
militia men "were expected to appear bearing arms supplied by themselves and
of the kind in common use at the time." *Id*., 307 U.S. at 179. It follows that, by
determining that short-barreled shotguns were not "any part of the ordinary
military equipment," *id*. at 178, the Court necessarily determined that those
weapons were not in common use for self-defense.

But even if *Miller* did not consider whether short-barreled shotguns were

commonly used for self-defense, *Heller* did—rejecting that they were so used. *Id.*, 554 U.S. at 625. In interpreting what types of weapons *Miller* permits, *Heller* noted that "weapons used by militiamen and weapons used in defense of person and home were one and the same." *Heller*, 554 U.S. at 625 (internal quotation marks omitted). Thus, *Heller* reaffirmed that weapons such as "short-barreled shotguns" are "not typically possessed by law-abiding citizens for lawful purposes" and, as a result, are not protected by the Second Amendment. *Id.* In other words, in determining that the Second Amendment guaranteed an individual's right to bear arms, *Heller* explicitly endorsed *Miller*'s exclusion of short-barreled shotguns from the Second Amendment's ambit. *Heller*, 554 U.S. at 625.

In any case, Robinson's argument ignores *Wilson*, which, post-*Heller*, continued to rely on *Miller* to hold that the Second Amendment does not guarantee the right to possess an unregistered short-barreled shotgun. *See Wilson*, 979 F.3d at 903 (rejecting as "frivolous" a Second Amendment challenge to a conviction for possessing an unregistered short-barreled shotgun). Under this Court's prior-precedent rule, this Court must follow the precedent unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc. *Dubois*, 94 F.4th at 1293. "To abrogate a prior-panel precedent, the later Supreme Court

10

decision must demolish and eviscerate each of its fundamental props." *Id.* (internal quotation marks omitted). *Bruen* expressly endorsed *Miller* and *Heller*, *see Bruen*, 597 U.S. at 21, *see also id.* at 51 (Kavanaugh, J., concurring), and thus does not undercut *Wilson*'s reliance on *Miller*. *Cf. Dubois*, 94 F.4th at 1293 (*Bruen* did not abrogate this Court's post-*Heller* precedent holding that felons are categorically disqualified from exercising their Second Amendment right).

Simply put, Robinson's argument runs headfirst into a wall of precedent—both from the Supreme Court and this Court—holding that short-barreled shotguns—and by extension short-barreled rifles—are not protected by the Second Amendment. This Court need look no further.

**B.    Even if this Court were to look at this issue anew, § 5861(d)'s prohibition on unregistered short-barreled rifles passes constitutional muster under the *Bruen* framework.**

*Bruen* reiterated that there is no "'right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Id.*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626). Rather, *Bruen* articulated the following standard for applying the Second Amendment: first, "[i]n keeping with *Heller*, … when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; and, second, if a challenged regulation burdens such presumptively protected conduct, the government must "justify its regulation by demonstrating that it is consistent

11

with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at

24. Robinson's challenge fails at both steps.

**(1)** ***The Second Amendment does not cover the possession of unregistered short-barreled rifles.***

To determine whether the Second Amendment's plain text covers an

individual's conduct, this Court must determine whether the challenger is "part

of 'the people' whom the Second Amendment protects," whether the weapon

at issue is "'in common use' today for self-defense," and whether the

"proposed course of conduct" falls within the Second Amendment. *Bruen*, 597

U.S. at 31–32. Robinson, at the time of his offense, was part of the people, but

short-barreled rifles are not in common use today for self-defense and his

course of conduct—possessing an *unregistered* short-barreled rifle—falls outside

the Second Amendment. Thus, the Second Amendment does not protect

Robinson's conduct.

Starting with the in-common-use requirement, the Supreme Court has

recognized that short-barreled shotguns are not "typically possessed by law-

abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. And, following

*Heller*, Justice Alito explained in dissent that a short-barreled shotgun is

"uniquely attractive to violent criminals." *Johnson v. United States*, 576 U.S.

591, 640, (2015) (Alito, J., dissenting). He continued: "Much easier to conceal

12

than long-barreled shotguns used for hunting and other lawful purposes, short-barreled shotguns can be hidden under a coat, tucked into a bag, or stowed under a car seat. And like a handgun, they can be fired with one hand—except to more lethal effect." *Id.* Thus, short-barreled shotguns "combine the deadly characteristics of conventional shotguns with the more convenient handling of handguns," but "[u]nlike those common firearms, [] they are not typically possessed for lawful purposes." *Id.*

Short-barreled rifles have those same attributes that make them dangerous and unusual. *See, e.g.*, *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) ("It is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used."); *Mock v. Garland*, 75 F.4th 563, 567 (5th Cir. 2023) ("[T]he NFA was designed to target "gangster-type weapons" that are 'especially dangerous and unusual.'"); *Cox*, 906 F.3d at 1185 (10th Cir. 2018) (noting that a long gun with a shortened barreled is both dangerous, because "its concealability fosters its use in illicit activity," and unusual, "because of its heightened capability to cause damage"); *accord United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (noting Congress's "specific declaration and finding that ... short-barreled rifles are primarily weapons of

war and have no appropriate sporting use or use for personal protection");

*United States v. Fortes*, 141 F.3d 1, 6 (1st Cir. 1998) (the NFA requires

registration of "only those firearms … that Congress has found to be inherently

dangerous and generally lacking usefulness, except for violent and criminal

purposes").

      Robinson's arguments to the contrary fail. He argues that short-barreled

rifles are not "dangerous and unusual" by pointing to data from a law student's

comment to argue that the number of registered short-barreled rifles increased

from 75,000 in 2011 to 532,000 in 2021. *See* Robinson's brief at 16 (citing

Oliver Krawczyk, Dangerous and Unusual: How an Expanding National

Firearms Act Will Spell Its Own Demise, 127 Dick. L. Rev. 273 (2022)). But

Robinson did not present data showing the increase in the number of

registrations to the district court, and this Court cannot consider facts outside

the record.[2] *See Turner v. Burnside*, 541 F.3d 1077, 1086 (11th Cir. 2008) ("We

do not consider facts outside the record.").

      In any event, those statistics do not establish that short-barreled riles are

commonly used by individuals for self-defense. To begin, Robinson has not

---

[2]In his motion, Robinson asserted that there were currently 162,267
registered short-barreled shotguns. Doc. 32 n.1. In his reply, Robinson then
asserted that there were over a half-million registered short-barreled rifles. Doc.
48 at 4–5.

shown how many of the 532,000 short-barreled rifles are registered to private citizens rather than to Federal Firearms Licensees that manufacturer, import, export, and sell short-barreled rifles to the United States, its allies, or state and local governments. Nor has he shown how many of the registered short-barreled rifles are registered to the same entity or individual. As a result, he has not shown that there a 532,000 such firearms in circulation, let alone that 532,000 citizens possess them. And, even if he had, as a district court that considered similar date for machine guns found, "Although the number of civilian-owned machineguns has increased [from about 176,000 in 2016] to about 740,000, this amount—which is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use."[3] *United States v. Simien*, 655 F. Supp. 3d 540, 553 (W.D. Tex. 2023); *see also* Robinson's brief at 17 (arguing that "short-barreled rifles make up roughly 1% of the *rifles* in the United States") (emphasis added). Based on Robinson's statistics, short-barreled rifles are less common than machine guns. Simply put, the statistics Robinson presents do very little—if anything at all—to meet his burden to show that short-barreled rifles are in common use for self-defense.

His argument that short-barreled rifles are not dangerous fairs no better.

---

[3]Machinegun possession must comply with 18 U.S.C. § 922(o).

To argue that short-barreled rifles are used for lawful purposes and not to
commit crimes, Robinson abandons the arguments he made to the district
court, *see* Doc. 32 at 11–12, and again relies on data not presented to it to argue
that short-barreled rifles are rarely used to commit murder, *see* Robinson's brief
at 16–18. And again, this Court should not consider this extra-record material.
Still, there are many other crimes besides murder, so these statistics prove very
little, if anything. As explained above, short-barreled rifles are inherently
dangerous given their concealability and their heightened capability to cause
damage, no matter how many people are murdered with them.

Turning to the proposed-course-of-conduct requirement, the NFA does
not prohibit the possession of short-barreled rifles; it prohibits only their
*unregistered* possession. The plain text of the Second Amendment does not say
that the right to keep and bear arms cannot be "burdened in any way," but that
it shall not be "infringed." Administrative burdens that stop far short of
disarming law-abiding citizens do not "infringe" the right to keep and bear
arms. *See* Webster's American Dictionary of the English Language (defining
"infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or
hinder"); *cf. Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 873
(1992) ("As our jurisprudence relating to all liberties … has recognized, not
every law which makes a right more difficult to exercise is, *ipso facto*, an

infringement of that right.").

Indeed, *Heller* and *Bruen* make clear that, while the government cannot *prohibit* the in-home possession and public carrying of firearms for self-defense purposes, "the Second Amendment allows a 'variety' of gun regulations." *See Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring); *see also id.* at 72 (Alito, J., concurring) ("Our holding decides nothing about … the requirements that must be met to buy a gun. … Nor have we disturbed anything that we said in *Heller* … about restrictions that may be imposed on the possession or carrying of guns."). Likewise, *Bruen* expressly left undisturbed the "shall-issue" licensing laws in 43 states. *Id.* at 38, n.9. And Justice Kavanaugh's concurrence emphasized that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 90.

The NFA imposes requirements akin to those of "shall-issue" licenses. It requires the payment of a $200 tax, identification of the firearm to be registered, and identification of the applicant—including fingerprints and a photograph. 26 U.S.C. §§ 5811, 5812, 5821, 5822. And, although the registration application requires the transferee to state the reasonable necessity of acquiring the short-barreled rifle, 27 C.F.R. § 478.98(a), the only permissible

17

reason for denying a properly completed application is where its approval "would place the [possessor] in violation of the law." 26 U.S.C. §§ 5812, 5822; *see also* 27 C.F.R. § 479.86. So contrary to Robinson's claim on page 22 of his brief, this is different from the "may-issue" license *Bruen* prohibited. Instead, the NFA is the type of *Bruen*-approved regulation "designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *See id*. 597 U.S. at n.9 (internal quotation marks omitted).

Finally, there is no merit to Robinson's claim on pages 23–24 of his brief that the purported six-month wait time converts the shall-issue licensing regime into an impermissible ban on possessing an unregistered short-barreled rifles. This in an as-applied challenge to the statute. *See Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring) (explaining that "shall-issue licensing regimes are constitutionally permissible, subject of course to an *as-applied* challenge if a shall-issue licensing regime does not operate in that manner in practice") (emphasis added). And, in *Bolatete*, this Court rejected an as-applied challenge to the constitutionality of the NFA because the evidence established that "Bolatete would not have registered the silencer he bought, even if he could have." *Bolatete*, 977 F.3d at 1034. "As a result," this Court reasoned, Bolatete could not "defeat the Act's application to him on the ground that he never had a chance to register the silencer that he would not have registered anyway or to

18

pay the transfer tax that he would not have paid anyway." *Id.* So too here. The
record contains no evidence that Robinson intended to register his short-
barreled rifle, let alone that he'd tried and found the wait time unbearable. To
the contrary, the record shows that Robinson did not know about the
registration requirement, Doc. 62-1 at 4–5—in other words he had no intention
of registering it. As a result, his as-applied challenge fails.

> For these reasons, the Second Amendment does not protect Robinson's
conduct. This Court may stop here.

### (2)   *The NFA's registration requirement for short-barreled shotguns and rifles is consistent with the Nation's historical tradition of firearm regulation.*

> If this Court does proceed to the second step of the *Bruen* analysis,
however, is should find that § 5861(d) satisfies that step, too. To start, in *Miller*,
the Supreme Court engaged in historical analysis demonstrating the Nation's
history of regulating the permissible length of firearms in the context of the
militia. *See id.*, 307 U.S. at 180 ("The musketeer should carry a 'good fixed
musket,' not under bastard musket bore, not less than three feet, nine inches,
nor more than four feet three inches in length"; "Every officer and soldier shall
appear … armed … with a good, clean musket … three feet eight inches long
in the barrel").

> More broadly, "colonial governments substantially controlled the

firearms trade." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, 80 Law & Contemp. Probs. 55, 76 (2017). "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" *Id.* In the early 17th century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. Virginia provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony." *Id.* at 685 n.18. And other colonial governments "controlled the conditions of trade" in firearms. *Id.* at 685. And at least six colonies made it a crime (with severe penalties) to sell or provide firearms or ammunition to Native Americans. *Id.* at 685 (citing 17th-century laws from Massachusetts, Connecticut, Maryland, and Virginia); *see also* 6 Statutes at Large of Pennsylvania from 1682 to 1801 at 319-320 (1899) (1763 law); Laws and Ordinances of New Netherland, 1638-1674 (1868) at 18-19 (1639 ordinance), 47 (1645 ordinance), 278 (1656 ordinance)). And, throughout the 1800s, the states imposed various taxes on personally held firearms. *See Spitzer*, *supra*, at 76–77.

Like these early laws, the NFA's registration requirements for short-

barreled rifles do not prohibit possessing them. Instead, the statute imposes
record-keeping and payment requirements to document the firearms and
prevented the possession of firearms by those who might be dangerous such as
(in the view of legislators at the time) Native Americans. Although the statutes
are not identical to those historical regulations, *Bruen* explained that the
government need only identify a "historical *analogue*, not a historical *twin*." *Id.*,
597 U.S. at 30. In this case, the practice of the colonies of regulating commerce
in firearms provides an acceptable historical analogue.

To argue otherwise, Robinson places too much weight on *Bruen*'s single
use of the term "distinctly similar." Robinson's brief at 21–22. *Bruen* said that,
if a modern regulation "addresses a general societal problem that has persisted
since the 18th century, the lack of a *distinctly similar* historical regulation . . . is
*relevant evidence* that the challenged regulation is inconsistent with the Second
Amendment." *Id.*, 597 U.S. at 26 (emphasis added). The Court did not state
that a "distinctly similar" regulation was necessary to uphold the statute. Nor
did it use the term "distinctly similar" anywhere else in its opinion, including
when considering the New York law at issue. *Id.* at 38–70. In short, *Bruen*'s
single reference to a "distinctly similar" regulation does not suggest that it
created a heightened standard for certain types of modern regulations.

In any event, Robinson has failed to show that this general societal

problem existed at the founding. In support of his argument, Robinson points to the blunderbuss. Robinson's brief at 21. But the blunderbuss is a precursor to a shotgun. *See* The American Revolution Institute, *Blunderbuss, the "Thunder Box" of the Battlefield*, https://www.americanrevolutioninstitute.org/recent-acquisitions/english-blunderbuss/ (last visited March 14, 2024). And if this Court reaches the second step of the *Bruen* analysis, it must have determined that short-barreled rifles are not analogous to short-barreled shotguns. Otherwise, this Court's precedent would have resolved the issue before reaching this step. And, more generally, a blunderbuss was still technologically primitive compared to modern short-barreled rifles and shotguns, which can be semi-automatic or pump-action. Additionally, the societal problem that the registration requirement was meant to address was the use of short-barreled firearms to commit crimes, specifically mass shootings by gangsters. *See Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 47 (1st Cir. 2024) ("Congress began regulating sawed-off shotguns in 1934, after they became popular with the 'mass shooters of their day'—notorious Prohibition-era gangsters."). There is no evidence that this problem existed at the founding.

**C.   Robinson's unconstitutional-tax argument is barred by *Bruen*'s rejection of means-end scrutiny and, in any event, is meritless.**

Robinson argues that under *Cox v. New Hampshire*, 312 U.S. 569 (1941),

and *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), the NFA impermissibly taxes the exercise of his constitutional right to bear arms. But, as the district court correctly concluded, the framework for deciding those First Amendment cases was rejected in the Second Amendment context by *Bruen*.

Under *Murdock* and *Cox*, the government may collect a fee to defray administrative and maintenance costs associated with the exercise of a First Amendment right, but it cannot impose a general revenue tax on the exercise of such a right. *Compare Murdock*, 319 U.S. at 113 (striking down a license tax on the exercise of the First Amendment right to free speech), *with Cox*, 312 U.S. at 576–77 (upholding a parade-licensing fee that the state charged "to meet the expense incident to the administration of [the parade] and to the maintenance of the public order").

This Court should not accept Robinson invitation to graft this First Amendment analysis onto the Second Amendment. He argues that "there is no reason to treat the Second Amendment differently from the First Amendment." Robinson's brief at 23. Not so. *Cox* and *Murdock* applied a mean-end scrutiny. As the Supreme Court later explained, "The tax at issue in *Murdock* was invalid because it was unrelated to any legitimate state interest." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 137 (1992). But, in *Bruen*, this Court rejected "applying means-end scrutiny in the Second

23

Amendment context." *Bruen*, 597 U.S. at 19. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. As discussed above, under this framework, a law is unconstitutional under the Second Amendment only if: (1) the plaintiff shows that the plain text of the Second Amendment protects an individual's course of conduct, and (2) the government fails to show that the challenged regulation adheres to this Nation's historical tradition of firearm regulation. If a law satisfies the *Bruen* framework, it is constitutional under the Second Amendment. No further analysis is needed.

   *Bruen*'s discussion of shall-issue licenses further supports rejecting applying the First Amendment's means-ends scrutiny to the Second Amendment. While discussing the constitutionality of shall-issue licenses, the Court explained that, "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, … exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 39. In other words, the purpose of the fee is irrelevant to the Second Amendment analysis, the question is whether the fee denies ordinary citizens the right to bear arms. And, notably, Robinson cites no post-*Bruen* law applying the fee-jurisprudence framework to the

Second Amendment.

But even if Robinson were correct that the First Amendment fee

jurisprudence applies to the Second Amendment, that does not help him here.

That's because, as discussed above, there Second Amendment does not protect

the right to possess an unregistered short-barreled rifle. As a result, the $200

tax is not a tax on the right to bear arms.

## Conclusion

The United States requests that this Court affirm the judgment of the

district court.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

SEAN SIEKKINEN
Assistant United States Attorney
Appellate Division


By:   *s/ Holly L. Gershow*
HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division
Florida Bar No. 98960
400 N. Tampa St., 3200
Tampa, FL 33602
(813) 274-6000
holly.gershow@usdoj.gov

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 5416 countable words under 11th Cir. R. 32-4,

complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was

sent by CM/ECF on March 29, 2024, to:

MATTHEW D. CAVENDER, ESQ.
Federal Public Defender's Office

*Counsel for David Robinson, Jr.*

<u>*s/ Holly L. Gershow*</u>
HOLLY L. GERSHOW
Assistant United States Attorney

Gkpr/no/3-18-24

*b_Robinson, David US response brief FNL.docx*