1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Joshua Robert Dale – SBN 209942
   jdale@michellawyers.com
3  Konstadinos T. Moros – SBN 306610
   kmoros@michellawyers.com
4  Alexander A. Frank – SBN 311718
   afrank@michellawyers.com
5  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
6  Long Beach, CA 90802
   Telephone: (562) 216-4444
7
8  Donald Kilmer-SBN 179986
   Law Offices of Donald Kilmer, APC
9  14085 Silver Ridge Road
   Caldwell, Idaho 83607
10 Telephone: (408) 264-8489
   Email: Don@DKLawOffice.com

11 Attorneys for Plaintiffs

12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14  CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE 15  SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA, INC.; 16  GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; 17  ERICK VELASQUEZ, an individual; CHARLES MESSEL, an individual; 18  BRIAN WEIMER, an individual; CLARENCE RIGALI, an individual; 19  KEITH REEVES, an individual, CYNTHIA GABALDON, an individual; and 20  STEPHEN HOOVER, an individual, | Case No.: 2:23-cv-10169-SPG (ADSx)  **STIPULATION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**  Sherilyn Peace Garnett, United States District Judge  Action Filed: December 5, 2023 |
| 21          Plaintiffs,         v. | |
| 22 | |
| 23  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT 24  LUNA, in his official capacity; LA VERNE POLICE DEPARTMENT; LA VERNE 25  CHIEF OF POLICE COLLEEN FLORES, in her official capacity; ROBERT BONTA, 26  in his official capacity as Attorney General of the State of California and DOES 1-10, | |
| 27          Defendants. | |
| 28 | |

STIPULATION FOR LEAVE TO FILE FIRST AM. & SUPP. COMPLAINT

1    Plaintiffs, along with Defendant Robert Bonta, in his official capacity as

2    Attorney General of the State of California, Defendants Los Angeles County

3    Sheriff's Department and Sheriff Robert Luna, in his official capacity, and

4    Defendants La Verne Police Department and La Verne Chief of Police Samuel

5    Gonzalez, in his official capacity (collectively the "Parties"), through their

6    respective attorneys of record, hereby stipulate and request as follows:

7    WHEREAS Plaintiffs desire to add clarity to some portions of their complaint

8    in light of the Court's recent ruling on their motion for preliminary injunction, and;

9    WHEREAS Defendant Coleen Flores is no longer the Chief of Police of the

10   La Verne Police Department, and Plaintiffs desire to add her successor La Verne

11   Chief of Police Samuel Gonzalez as a defendant to this action in his official

12   capacity; and

13   WHEREAS Plaintiffs desire to add additional waiting-time plaintiffs, and;

14   WHEREAS Sherwin David Partowashraf and David Broady, who each wrote

15   supporting declarations in support of Plaintiffs' pending motion for preliminary

16   injunction as members of Plaintiff CRPA, now desire to be plaintiffs themselves,

17   and;

18   WHEREAS the litigation is in its early stages and discovery has not begun,

19   and;

20   WHEREAS an amended and supplemental complaint will aid with discovery

21   so the proper parties can serve and be served with discovery, and;

22   WHEREAS Defendants do not oppose the filing of an amended complaint so

23   long as they have an appropriate amount of time to review it and prepare their

24   responsive pleadings;

25   NOW THEREFORE, the Parties stipulate to allowing Plaintiffs leave to file an

26   amended and supplemental complaint and by this stipulation seek the Court's leave

27   and order to do so. A proposed First Amended and Supplemental Complaint with

28   changes from the original tracked is included as **Exhibit A** to this stipulation. A

1  clean copy of the proposed First Amended and Supplemental Complaint is included

2  as **Exhibit B**.

3      The Parties also stipulate that Defendants have up to 45 days from the date the

4  First Amended and Supplemental Complaint is filed to file their responsive

5  pleadings, and by this stipulation seek the Court's order setting such deadline.

6

7      **IT IS SO STIPULATED.**

8

9  Dated:  September 5, 2024                Respectfully submitted,

10                                          MICHEL & ASSOCIATES, P.C.

11                                          */s/ Konstadinos Moros*

12                                          KONSTADINOS MOROS
                                            *Attorneys for Plaintiffs*
13

14

15  Dated:  September 5, 2024               ROB BONTA
                                            Attorney General of California
16                                          MARK R. BECKINGTON
                                            Supervising Deputy Attorney General
17                                          JANE E. REILLEY
                                            Deputy Attorney General
18
                                            */s/ Christina R.B. Lopez*
19
                                            CHRISTINA R.B. LÓPEZ
20                                          Deputy Attorney General
                                            *Attorneys for Defendant Robert Bonta*
21

22  Dated:  September 5, 2024               WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
23
                                            */s/ Ryan Chabot*
24

25                                          RYAN CHABOT
                                            *Attorneys for Defendants Los Angeles*
26                                          *County Sheriff's Department and Sheriff*
                                            *Robert Luna*
27

28

STIPULATION FOR LEAVE TO FILE FIRST AM. & SUPP. COMPLAINT

Dated:  September 5, 2024

JONES MAYER

/s/ Bruce A. Lindsay

BRUCE A. LINDSAY
MONICA CHOI ARREDONDO
*Attorneys for Defendants La Verne Police Department and La Verne Chief of Police Colleen Flores*

**ATTESTATION OF E-FILED SIGNATURES**

I, Konstadinos Moros, am the ECF User whose ID and password are being used to file this STIPULATION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: September 5, 2024

*s/ Konstadinos Moros*
Konstadinos Moros

STIPULATION FOR LEAVE TO FILE FIRST AM. & SUPP. COMPLAINT

# EXHIBIT A

1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Joshua Robert Dale – SBN 209942
   jdale@michellawyers.com
3  Konstadinos T. Moros – SBN 306610
   kmoros@michellawyers.com
4  Alexander A. Frank – SBN 311718
   afrank@michellawyers.com
5  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
6  Long Beach, CA 90802
   Telephone: (562) 216-4444
7
8  Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, Gun
   Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc.,
9  Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer,
   Jung Yun, Albert Medalla, Clarence Rigali, Keith Reeves, Cynthia Gabaldon,
10 David Broady, and Stephen Hoover

11 *Additional Counsel listed on the next page.*

12                **UNITED STATES DISTRICT COURT**

13                **CENTRAL DISTRICT OF CALIFORNIA**

14 CALIFORNIA RIFLE & PISTOL          | CASE NO:
   ASSOCIATION, INCORPORATED;
15 THE SECOND AMENDMENT              | **FIRST AMENDED AND**
   FOUNDATION; GUN OWNERS OF         | **SUPPLEMENTAL COMPLAINT**
16 AMERICA, INC.; GUN OWNERS          | **FOR DECLARATORY AND**
   FOUNDATION; GUN OWNERS OF          | **INJUNCTIVE RELIEF**
17 CALIFORNIA, INC.; ERICK
   VELASQUEZ, an individual; CHARLES  | **42 U.S.C. §§ 1983 & 1988**
18 MESSEL, an individual; BRIAN
   WEIMER, an individual; CLARENCE
19 RIGALI, an individual; KEITH
   REEVES, an individual, and CYNTHIA
20 GABALDON, an individual; STEPHEN
   HOOVER, an individual,

21            Plaintiffs,

22        v.

23 LOS ANGELES COUNTY SHERIFF'S
   DEPARTMENT; SHERIFF ROBERT
24 LUNA, in his official capacity; LA
   VERNE POLICE DEPARTMENT; LA
25 VERNE CHIEF OF POLICE COLLEEN
   FLORES, in her official capacity;
26 ROBERT BONTA, in his official
   capacity as Attorney General of the State
27 of California; and DOES 1-10,

28            Defendants.

                                    1
   FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

1
2    Donald Kilmer-SBN 179986
     Law Offices of Donald Kilmer, APC
3    14085 Silver Ridge Road
     Caldwell, Idaho 83607
4    Telephone: (408) 264-8489
     Email: Don@DKLawOffice.com
5
     Attorney for Plaintiff The Second Amendment Foundation
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

1    NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated,

2    The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners

3    Foundation, Gun Owners of California, Inc., Erick Velasquez, Sherwin David

4    Partowashraf, Charles Messel, Brian Weimer, Jung Yun, Albert Medalla, Clarence

5    Rigali, Keith Reeves, Cynthia Gabaldon, David Broady, and Stephen Hoover and,

6    through their respective counsel, bring this action against Defendants Los Angeles

7    County Sheriff's Department, Sheriff Robert Luna in his official capacity as Los

8    Angeles County Sheriff, La Verne Police Department, former La Verne Chief of

9    Police Colleen Flores, current La Verne Chief of Police Samuel Gonzalez,

10   California Attorney General Robert Bonta in his official capacity, and Does 1-10,

11   inclusive, and make the following supplemental and amended allegations:

## INTRODUCTION

12   

13   1.    This action challenges the constitutionality of carry permit issuance

14   policies and laws that make it extremely difficult, if not outright impossible or

15   impermissibly time consuming, for Plaintiffs to obtain permits to carry a concealed

16   firearm in public and therefore to exercise their right to be armed in public, as

17   guaranteed by the Second Amendment's text "bear arms," and as recognized by the

18   Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct.

19   2111 (2022).

20   2.    The main policies that Plaintiffs target here are: 1) Defendants' failure

21   to timely process carry permit applications, 2) the grossly excessive fees

22   Defendants are charging to process permit applications and satisfy various permit

23   requirements, 3) the use of highly subjective suitability criteria in evaluating

24   applicants, and 4) the refusal to honor permits issued by other states, and/or accept

25   applications for permits from non-residents. These practices and policies, some of

26   which are enabled by state law, violate the Second and Fourteenth Amendments.

27   3.    Some Constitutional rights have a preliminary step required before

28   their exercise, such as permitting (e.g., parades, demonstrations) or registration

3

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

(e.g., voting, lobbying). But the administration of such permits or registration requirements may not be so onerous as to exclude whole demographics due to expense or subjectivity, nor may it force them to wait inordinate amounts of time.[1]

4.      In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry**." *Id.* (emphasis added).

5.      The policies that Plaintiffs challenge have gone far beyond "abus[ing]" constitutional rights. Defendants have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with exorbitant poll tax-like fees, egregious wait times lasting well over a year, and nefarious discretionary requirements designed to flout the Supreme Court's precedents.

6.      This suit challenges whether Defendants are engaged in a permit process that subjects applicants seeking to lawfully carry for self-defense in California by the only manner allowed under law—with a concealed carry weapons permit ("CCW permit") issued by a local jurisdiction, to excessive wait times,

---

[1] It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926). "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275.

4

1  exorbitant fees, and suitability criteria that are unnecessary, burdensome, and
2  subjective; and whether those permit processes violate the right to bear arms in
3  public as explained by the Supreme Court in *Bruen.* Examples abound.
4      7.    For starters, Los Angeles County Sheriff's Department ("LASD")
5  admits that it takes "a year to a year and a half" to process CCW applications.
6      8.    While the La Verne Police Department's ("LVPD") permit application
7  processing wait time is not as severe as LASD's, its application process is cost
8  prohibitive. Applicants pay ~~between~~approximately $900 ~~to $1100~~ depending on the
9  varying costs that third parties charge for the mandatory training course and live
10 scan services. And even after obtaining a permit, LVPD even charges over $500 for
11 renewal applications every two years ($250 per year to exercise an enumerated
12 right).
13      9.    In stark contrast, applicants in other California counties can avoid high
14 local-municipality fees by applying with their county's sheriff's department instead
15 of the city where they reside, as California law provides — But LASD Sheriff Luna
16 has refused to process CCW permit applications for Los Angeles County residents
17 who live in one of that county's many distinct "non-contract" municipalities.
18      10.   Because La Verne is a "non-contract" city, residents who want to
19 exercise their right to carry have no alternative; they must pay LVPD's exorbitant
20 fees if they wish to lawfully carry a concealed firearm.
21      11.   Additionally, both LASD and LVPD impose subjective permit-
22 issuance criteria, in open defiance of *Bruen* which rejected such unmoored
23 standards for determining who gets the privilege of exercising an enumerated right
24 For example, LVPD subjects applicants to an invasive psychological examination.
25 This absurd policy is an outlier, even in California.
26      12.   Yet under Senate Bill 2 ("SB 2"), effective January 2024, issuing
27 authorities that opt to require the psychological exam may charge the applicant the
28 actual cost of the exam. Whereas under prior law, that expense was capped at $150,

5

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT ~~FOR~~

Formatted: Line spacing: Exactly 8 pt

Formatted: Line spacing: Exactly 10 pt

Formatted Table

Formatted: Line spacing: single

Formatted: Footer

1   and left the issuing authority responsible for paying the balance if it chose to

2   require an examination, now the full cost will be borne by the applicant.

3       13.    LASD's adopted policies in issuing and renewing CCW permits also

4   include impermissible subjective criteria, including punishing victims of crimes.

5       14.    Even if Plaintiffs wanted to avoid delay, expense, and suitability

6   requirements from LASD and LVPD by simply obtaining a carry permit from

7   another state, as some of these Plaintiffs have done, California does not honor

8   permits issued by *any* other state.

9       15.    In fact, nonresidents have no way to lawfully carry firearms in

10  California, even if they are willing to apply to a California issuing authority for a

11  permit, because California law does not permit in-state issuing authorities to issue

12  permits to nonresidents.

13      16.    This is plainly unconstitutional under both *Bruen* and the precedent

14  established in *Obergefell v. Hodges*, 576 U.S. 644, 648 (2015). If California must

15  honor a broad right to marry, which is unenumerated, then it must also honor the

16  right to carry firearms, which is enumerated.

17      17.    Separately from Plaintiffs' Second Amendment claim, the United

18  States Supreme Court has consistently held that regulations and classifications that

19  impose a penalty or an impermissible burden on the right to travel violate the Equal

20  Protection Clause of the Fourteenth Amendment, unless absolutely necessary to

21  promote a compelling government interest. *Saenz v. Roe*, 526 U.S. 489 (1999);

22  *Shapiro v. Thompson*, 394 U.S. 618 (1969). Accordingly, California's policy of

23  denying out-of-state residents the ability to lawfully exercise their constitutionally

24  protected right to be armed in public for self-defense inhibits the free interstate

25  passage of citizens and violates equal protection doctrines by treating Americans

26  differently merely on account of their state of residency.

27      18.    Furthermore, the Privileges and Immunities Clause of Article IV, § 2

28  of the United States Constitution provides that "The Citizens of each State shall be

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

entitled to all privileges and immunities of Citizens in the several States." The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

19.    Plaintiffs seek to enjoin Defendants' flagrantly unconstitutional practices and uphold Plaintiffs' Second Amendment rights.

### PARTIES

**Plaintiffs**

20.    The individual Plaintiffs are ordinary, law-abiding, adult residents of either Los Angeles County or the City of La Verne, who have applied for CCW permits but have not received them, or have been dissuaded or prevented from applying due to the high fees or the psychological examination requirement.

21.    The associational Plaintiffs are non-profit organizations dedicated to the preservation of the Second Amendment and other enumerated constitutional rights, which. These associational Plaintiffs use their resources and economies of scale to ensure the broadest possible protection for their members and supporters by bringing suits on behalf of individual plaintiffs — who are also members — who would otherwise lack the financial resources and litigation experience to bring cases like this themselves. The associational Plaintiffs are representing their members and supporters who reside in Los Angeles County or La Verne and have either: (1) already applied for a CCW permit and are faced with a lengthy wait time; (2) would apply for a permit if not for the high fees and psychological examination requirement; and/or (3) have CCW permits that were issued by other states and wish to have their permits honored when they visit California. The associational Plaintiffs thus bring this action to vindicate their members' and supporters' Second Amendment rights to publicly bear arms for self-defense, including the rights of the members and supporters of the associational Plaintiffs, to do so.who might otherwise lack an opportunity for legal representation due to the lack of resources.

7

Formatted: Line spacing: Exactly 8 pt

Formatted: Line spacing: Exactly 10 pt

Formatted Table

Formatted: Line spacing: single

Formatted: Footer

22.    The associational Plaintiffs also have members and supporters in other states who have CCW permits in those states, and wish to have their permits honored when they visit California. Plaintiffs thus bring this action to vindicate their own Second Amendment rights to publicly bear arms for self-defense, or the rights of their members and supporters to do so. While the associational Plaintiffs seek general injunctions on behalf of all similarly-situated Californians the challenged laws and practices affect, they also specifically seek relief on all claims as to each and every one of their members and supporters who might otherwise lack the litigation experience and resources of the associational Plaintiffs.

23.    All individual Plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law, and currently own at least one firearm. Each individual Plaintiff desires to carry a firearm in public for lawful self-defense and would do so, but for the challenged statutes, policies, and practices.

24.    All individual Plaintiffs are members of the associational Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and Gun Owners of America, Inc.

~~24.~~25. Plaintiff Erick Velasquez is a resident of Los Angeles County~~, California,~~ and a law-abiding citizen of the United States. ~~He is a member of Plaintiff California Rifle & Pistol Association, Incorporated ("CRPA").~~ Mr. Velasquez had a CCW permit issued pursuant to California Penal Code Section 26150 by Los Angeles County Sheriff's Department. He carried a handgun daily for two years, without any incident.

~~25.~~26. On April 10, 2023, Mr. Velasquez submitted his CCW permit renewal application with Los Angeles County Sheriff's Department, expecting a simple process and quick approval given there had been no issues the last two years.

~~26.~~27. Then, on May 3, 2023, Mr. Velasquez was the unfortunate victim of a crime. A burglar broke into his vehicle and stole three handguns, along with other

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

1    valuables. The handguns were stored in a range bag in the locked trunk of the car,

2    in compliance with California Penal Code section 25610(a)(1).

3        27.28. Mr. Velasquez promptly called the police to report the theft. An officer

4    from the Vernon Police Department arrived at the scene and took a report, which

5    noted that Mr. Velasquez was eager to have the thief brought to justice. But as of

6    this date, the perpetrator has not been found.

7        28.29. On August 23, 2023, Defendant Luna denied Mr. Velasquez's renewal

8    application. As a reason for denial, the letter had the box for "other" but provided

9    no further explanation for the denial. —Seeking clarity, Mr. Velasquez eventually

10   communicated with LASD Sergeant Berner, who explained that the theft of the

11   firearms was the reason for the denial. Mr. Velasquez asked how he could appeal,

12   but Sergeant Berner told him there was no appeal process. He encouraged Mr.

13   Velasquez to apply again with the City of Downey instead, as they might not have

14   similar restrictions.

15       30.   While California Penal Code sections 26202(a)(5) and 26202(a)(9)

16   were not yet in effect when Mr. Velasquez's permit was denied, to the extent

17   Defendants argue that those sections prevent them from issuing him a CCW permit

18   now, he contends they are unconstitutional as applied to him.

19       31.   Plaintiff Sherwin David Partowashraf is a resident of Los Angeles

20   County and a law-abiding citizen. After waiting over a year and a half on his

21   application, on October 3, 2023, the application for a CCW permit was denied by

22   LASD. Even though California law requires a reason for the denial be given, the

23   reasoning for the denial was nothing more than a checkmark next to "other".

24       32.   Mr. Partowashraf would come to learn that he was denied a permit

25   because a former girlfriend had filed for a temporary restraining order against him

26   the prior year, after an attempt to extort him had failed.

27       33.   At the time, Mr. Partowashraf complied with the law and turned in his

28   firearms to the police to be held while the temporary restraining order was in effect.

9

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT—FOR

1  Following a hearing, the temporary restraining order was promptly dissolved and
2  the request for a restraining order was discharged.
3      34.    Mr. Partowashraf then had to go through a tedious process to get his
4  firearms back, involving him submitting requests for *each* firearm to the California
5  Department of Justice for them to run background checks so he could have them
6  returned to him. After being approved, he scheduled a time to pick up the firearms
7  and received them without further trouble. The California DOJ has thus itself
8  confirmed Mr. Partowashraf is not dangerous. If law enforcement thought he was
9  still dangerous, they could have filed for a gun violence restraining order under
10 California Penal Code section 18100, but they did not do so.
11     35.    Mr. Partowashraf contends that his rights should not be denied
12 because of a dissolved temporary restraining order, especially following the
13 Supreme Court's ruling in *Rahimi*.
14     36.    While California Penal Code section 26202(a)(3) was not yet in effect
15 when Mr. Partowashraf's permit was denied, to the extent Defendants argue that it
16 prevents them from issuing him a CCW permit now, he contends it is
17 unconstitutional as applied to him.
18     29.37. Plaintiff Charles Messel is a resident of Los Angeles County, and a
19 law-abiding citizen, and a member of Plaintiff CRPA. Mr. Messel submitted his
20 CCW permit application to LASD on July 1, 2022. Having heard nothing by April
21 2023, he contacted the department to inquire about his application.
22     30.38. The response he received stated: "We were several months behind in
23 opening and entering applications in our tracking system. Although you applied
24 earlier, your application wasn't entered into our tracking system until 11/2/22. We
25 are currently working on applications that went into our tracking system in July of
26 2022. Thank you for your patience."
27     31.39. As of the filing of this action, Mr. Messel hashad still not been issued a
28 permit or received further communications about his application's status from

10

LASD. More than 17 months ~~have elapsed since his initial application.~~ had elapsed since his initial application. Following the filing of this action and the filing of a preliminary injunction to compel LASD to issue Mr. Messel a permit, only then did LASD finally process his application, nearly two years after he had submitted his application.

~~32.~~40.  Plaintiff Brian Weimer is a resident of Los Angeles County~~,~~ and a law-abiding citizen~~, and a member of Plaintiff CRPA~~. Mr. Weimer is employed by Los Angeles County as a firefighter on Catalina Island.

~~33.~~41.Like Mr. Messel, Mr. Weimer applied for a CCW permit with LASD and still has not been issued one. Mr. Weimer applied in January 2023, over ~~nine months~~a year ago, but still has not been issued a permit or a denial. His constitutional right to carry a firearm for self-defense has been denied to him.

42.     Plaintiff Jung Yun is a resident of Los Angeles County and a law-abiding citizen. Mr. Yun applied for his CCW permit with LASD in September of 2022. When he last followed up on December 6, 2023, he received a response saying that his application had not even been assigned to an investigator yet, and no further timeline was provided. Finally, on August 27, 2024, he received an initial telephonic interview and was told he would get additional instructions in approximately two months.

43.     Plaintiff Albert Medalla is a resident of Los Angeles County and a law-abiding citizen. He works the graveyard shift at Cedars-Sinai Medical Center as an ultrasound technologist. Due to rising crime in his area, he desires to be able to carry a firearm for self-defense. He applied for his CCW permit with LASD on October 31, 2023. His initial interview is not scheduled to occur until August 11, 2025.

~~34.~~44.Plaintiff Clarence Rigali is a resident of La Verne~~,~~ and a law-abiding citizen~~, and a member of CRPA~~. Mr. Rigali is 60 years old and disabled. He was a Union Millwright from 1981 until 2003, when he was injured in a serious power

11

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

plant accident. He possesses a Utah CCW permit, which required a criminal background check to obtain.

35.45. Mr. Rigali lives in a senior citizen mobile home park. Given his fixed income, the unreasonable and unjustifiable approximately $900 to $1100 in fees and costs to apply for and obtain a La Verne CCW permit exceeds his modest means and that has prevented him even from applying for a permit. He has been priced out of his constitutional rights.

36.46. Mr. Rigali also objects to the psychological exam LVPD requires, which is an unconstitutional suitability determination. When he sustained his work-related injury in 2003, a protracted lawsuit ensued following that injury, and Mr. Rigali was sent to several antagonistic psychologists for examination as the defense tried to disprove his injuries and claim he was a malinger. That horrible experience has made Mr. Rigali especially apprehensive about subjecting himself to another such exam, let alone as a precondition to exercising an enumerated right. Further, LVPD requires that applicants undergo psychological exams not locally, but in San Bernardino, 35 miles away. Such a travel requirement is burdensome for all applicants, but particularly so for Mr. Rigali given his disability.

37.47. Plaintiff Keith Reeves is a resident of La Verne, and a law-abiding citizen, and a member of both Plaintiff The Second Amendment Foundation and CRPA.,. He is a certified NRA pistol instructor and a range safety officer. He has CCW permits issued by both Arizona and Utah, which are honored by several states but not California. Both of Mr. Reeves' permits required a criminal background check to obtain.

38.48. Mr. Reeves applied for a CCW permit in January 2014, and was denied in May 2015 because he was deemed to lack sufficient "good cause," a criterion the Supreme Court struck down in *Bruen* seven years later. Post-*Bruen*, Mr. Reeves wishes to reapply for a permit, but cannot afford to do so due to the excessive application and issuance fees charged by LVPD.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

39.49. Mr. Reeves also refuses to subject himself to an unconstitutional psychological exam. Once the unconstitutional requirements are removed or invalidated, he will apply for a permit without delay, but has refrained from doing so due to the challenged restrictions.

40.50. Plaintiff Cynthia Gabaldon is a resident of La Verne, and a law-abiding citizen, and a member of Plaintiff CRPA. . She has trained with firearms for most of her life.

41.51. Encouraged by the Supreme Court's ruling in *Bruen*, Mrs. Gabaldon decided it was time to obtain a CCW permit. Unfortunately, the exorbitant fees LVPD charges have dissuaded her from applying. Mrs. Gabaldon is self-employed and has a son in college. Given her limited income and her expenses, she cannot afford LVPD's excessive fees to exercise an enumerated right. Mrs. Gabaldon also objects to subjecting herself to a psychological examination.

52.    Plaintiff David Broady is a resident of Nevada and a law-abiding citizen. He is a retired California prosecutor, last working as a Senior Deputy District Attorney for the Placer County DA's office from 1995 to 2020. Before that, he worked in the Riverside County DA's office from 1991 to 1995.

53.    Mr. Broady had California CCW permits in Riverside County and later Placer County, from the early 1990s until 2020 when he moved to Nevada. Since then he has had a Nevada CCW permit, but cannot obtain a California CCW permit. California does not honor his Nevada permit.

54.    This is a problem for Mr. Broady because he still frequently visits California as he owns property in this state and has family here. He also remains an active member of the California Bar. He joins this lawsuit against California Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry against citizens from other states.

55.    Mr. Broady, for himself and on behalf of other nonresidents who have out-of-state CCW permits, as well as on behalf of the members and supporters of

13

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

the associations who live outside of California, seeks to have his Nevada permit honored by the State of California.

42.56. Plaintiff Stephen Hoover is a resident of Florida, and a law-abiding citizen. He is a PhD candidate at the Center for Complex Systems and Brain Sciences in the Charles E. Schmidt College of Science at Florida Atlantic University. He owns firearms and has a Florida-issued CCW permit. He is also a member of Plaintiff CRPA and The Second Amendment Foundation.

43.57. Mr. Hoover spent a significant amount of time in California in the summer of 2023 and plans to return for work and leisure purposes in the near future.

44.58. While he was in California, he sought to obtain a California CCW permit from the Monterey County Sheriff's Department, as California would not honor his Florida CCW permit, but he still desired to be able to exercise his right to carry for self-defense. Yet in spite of otherwise meeting the criteria for eligibility, his application was denied because he was deemed ineligible for a CCW permit under Penal Code Sectionsection 26150(a)(3), as he is not a resident of the county he applied in, nor a resident of California.

45.59. Mr. Hoover joins this lawsuit against California Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry against citizens from other states.

46.60. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. SAF is dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its

14

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

1  publications and public education programs like the Gun Rights Policy Conference.
2  SAF also incurs significant expenses to sponsor public interest litigation to defend
3  its interests and to disseminate information to like-minded individuals. SAF
4  members who want CCW permits but reside in Los Angeles County or La Verne
5  are subject to lengthy wait times, exorbitant fees, and unconstitutionally subjective
6  permit issuance criteria that violate the U.S. Constitution. SAF's policies
7  specifically include the dedication of its resources, litigation experience, and
8  economies of scale for the purpose of representing people who would otherwise
9  lack the means and access to resources to successfully bring lawsuits to compel
10  state and local governments to comply with the Constitution, as intended by the
11  Fourteenth Amendment, its enforcement provisions, and Congressional statutes
12  enabling the enforcement of the Constitution by private actors.  See 42 U.S.C.
13  section 1983, 1988.
14      47.61. Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-
15  stock corporation and a not-for-profit membership organization with its principal
16  place of business in Springfield, Virginia, and is organized and operated as a non-
17  profit membership organization that is exempt from federal income taxes under
18  Section 501(c)(4) of the Internal Revenue Code. GOA was formed in 1976 to
19  preserve and defend the Second Amendment rights of gun owners. It has more than
20  2 million members and supporters across the country, including residents within
21  this judicial district and throughout the State of California. GOA members who
22  wish to obtain CCW permits but reside in Los Angeles County or La Verne are
23  subject to lengthy wait times or exorbitant fees, and also unconstitutionally
24  subjective criteria.
25      48.62. Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock
26  corporation and a not-for-profit legal defense and educational foundation with its
27  principal place of business in Springfield, Virginia and is organized and operated as
28  a non-profit legal defense and educational foundation that is exempt from federal

15

Formatted: Line spacing:  Exactly 8 pt
Formatted: Line spacing:  Exactly 10 pt
Formatted Table
Formatted: Line spacing:  single
Formatted: Footer

income taxes under Section 501(c)(3) of the Internal Revenue Code. GOF was formed in 1983 and is supported by gun owners across the country, within this judicial district, and throughout the State of California who, like the individual Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB 2. GOF supporters who wish to obtain CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms.

49.63. Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit organization incorporated under the laws of the state of California with headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of the Second Amendment in California. GOC members who wish to obtain CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria.

50.64. Plaintiff CRPA is a non-profit membership and donor-supported organization qualified as tax-exempt under Section 501(c)(4) of the Internal Revenue Code, with its headquarters in Fullerton, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the enumerated right to bear firearms for lawful purposes like self-defense. CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the general public. CRPA members who want CCW permits but reside in Los Angeles County or the City of La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria.

16

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

**Defendants**

51.65. Defendant LASD is a local government entity created under the laws of California, and it exists as an agency of Los Angeles County. LASD is a political subdivision of Los Angeles County. LASD is responsible for issuing CCW permits.

52.66. Defendant Robert Luna is the elected Sheriff of Los Angeles County. Defendant Luna is and, at all times relevant to this complaint, was one of the ultimate policy makers for Defendant LASD, and he has authority and responsibility under California Penal Code Sectionsection 26150 to issue carry permits within the county. He is directly responsible for promulgating, enforcing, and continuing the policies of his Department, including the unlawful policies and procedures complained of herein. Luna is sued solely in his official capacity.

53.67. Defendant LVPD is a local government entity created under the laws of California, and it exists as an agency and subdivision of the City of La Verne. LVPD CCW permit applications and renewals for residents of the city.

54.68. Defendant Colleen Flores is the Chief of Police of LVPD. She is sued in her official capacity. She has authority and responsibility under California Penal Code Section 26155 to issue carry permits to residents of La Vernesection 26155 to issue carry permits to residents of La Verne. Defendant Samuel Gonzalez succeeded Chief Flores following the filing of this action and the filing of a preliminary injunction motion by Plaintiffs in the action, and has assumed the rights and obligations of Chief Flores in that position, including the ability to act or refrain from acting, in providing the relief sought by Plaintiffs in this action.

55.69. Defendant Robert Bonta is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Bonta is charged by Article V, section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Bonta also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of those respective officers. Defendant Bonta's duties also

17

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

1    include informing the public, local prosecutors, and law enforcement regarding the

2    meaning of the laws of California.

3    56.70. The true names or capacities–whether individual, corporate, associate,

4    or otherwise–of the Defendants named herein as Does 1 through 10 are presently

5    unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs

6    pray for leave to amend this Complaint to show the true names or capacities of

7    these Defendants if and when they have been determined.

8                        **JURISDICTION AND VENUE**

9    57.71. The Court has original jurisdiction of this civil action under 28 U.S.C.

10   § 1331, because the action arises under the Constitution and laws of the United

11   States, thus raising federal questions. The Court also has jurisdiction under 28

12   U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the

13   deprivation, under color of the laws, statutes, ordinances, regulations, customs, and

14   usages of the State of California and political subdivisions thereof, of rights,

15   privileges or immunities secured by the United States Constitution and by Acts of

16   Congress.

17   58.72. Plaintiffs' claims for declaratory and injunctive relief are authorized by

18   28 U.S.C. §§ 2201-2202, and their claim for attorney's fees is authorized by 42

19   U.S.C. § 1988.

20   59.73. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2)

21   because the events or omissions giving rise to the claims occurred in this district.

22   Los Angeles County Sheriff's Department and La Verne Police Department are

23   both located within this district.

24                        **GENERAL ALLEGATIONS**

25   60.74. The Supreme Court has recognized that the Second Amendment

26   protects the individual right to keep and bear arms and protects, *inter alia*, the right

27   of the people to "possess and carry weapons in case of confrontation." *District of*

28   *Columbia v. Heller*, 554 U.S. 570, 592 (2008).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt

Formatted: Line spacing: Exactly 10 pt

Formatted Table

Formatted: Line spacing: single

Formatted: Footer

61.75. The Supreme Court has also held that the Second Amendment right to keep and bear arms, via Fourteenth Amendment incorporation, applies equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and **bear** arms among those fundamental rights necessary to our system of ordered liberty") (emphasis added).

62.76. *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

63.77. Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).

78.    In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

64.79. In all issues presented in this lawsuit, Plaintiffs contend that their

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

proposed course of conduct is exactly the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." *Bruen*, 597 U.S. at 32. In that case, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas". *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct, because that "showing of nonspeculative need" was the *burden* on the Second Amendment right. The burden is not part of the proposed course of conduct, it is the law or practice that is being challenged. In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense without unreasonable fees". *Bruen*'s simpler "carrying handguns publicly for self-defense" applies in this case.

### California's Law Regarding CCW Permit Issuance

~~65.~~80. Following the California Legislature's enactment of SB 2, which takes effect in January of 2024, California law imposes the following CCW permit application requirements:

(a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:

(1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

(2) The applicant is at least 21 years of age, and presents clear evidence of the person's identify and age, as defined in Section 16400.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than

20

temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a) (West 2023); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance).

66.81. Under the recently revised Penal Code Section section 26205 operative January 2024, a licensing authority:

shall give written notice to the applicant indicating if the license under this chapter is approved or denied. The licensing authority shall give this notice within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later. The licensing authority shall give this notice within 120 days[2] of receiving the completed application for a license renewal.

67.82. Under Penal Code Section section 26190(b)(2), only 50 percent[3] of the "additional local fee"—what the issuing authority may charge CCW permit applicant above the DOJ's application fees—may be charged at the time the CCW permit application is submitted. The balance may be collected only when a permit is issued. Furthermore, the additional local fee cannot exceed the actual reasonable costs incurred by the locality in processing the application.

68.83. While *Bruen* expressly forbids subjective criteria be used during a licensure process, California law does too, at least to the extent the standard DOJ CCW permit application does not require such information. According to Penal Code Section section 26175(g), "[a]n applicant shall not be required to complete any

---

[2] The 120-day time limit was 90 days prior to the passage of SB 2.

[3] This additional local fee was capped at 20 percent prior to the passage of SB 2.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

additional application or form for a license, except to clarify or interpret information provided by the applicant on the standard application form." -Thus, local requirements (such as Defendant LASD's) that an applicant produce copies of past employment files or identify a need for self-defense are not within the ambit of the DOJ's standard permit application.

69.84. California law authorizes a local issuing authority to conduct psychological testing prior to issuance of a concealed carry license. -This provision of California's CCW licensing regime manages to violate more than just the Second Amendment. It violates the presumption of sanity, it places an impressible burden on exercising a fundamental right, and violates the procedural due process guarantees of the Fourteenth Amendment.

70.85. Psychological testing has the effect of transferring the discretionary issuance of a permit to exercise an enumerated right from a government official to a psychologist. -*Bruen's* holding rejects "suitability" determinations in permit issuance schemes, and a psychological evaluation is a per se a suitability determination. Such an evaluation impermissibly introduces the subjective impressions and opinions of the person conducting the evaluation into the permit issuance determination, rather than using objective criteria such as prior mental health adjudications. -In that sense, a psychological exam to determine whether an applicant has the proper temperament to bear arms is nothing more than a requirement that an applicant demonstrate "good moral character" in order to bear arms – something that *Bruen* definitively forecloses by rejecting "suitability" determinations. -And that is to say nothing about the utter dearth of a Founding-era tradition of testing the mental condition of each and every individual seeking to exercise their rights to carry arms in public.

71.86. What is more, California law permits local issuing authorities to impose this unconstitutional and subjective psychological-suitability determination on individuals as a prerequisite to carry a firearm, even after they have already

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

demonstrated their lawful entitlement to possess a firearm. In other words, the CCW applicant has already passed a background check (including a check of a history of prior disqualifying mental health commitments or holds) as a condition of purchasing a firearm. And this already-passed background check is the same background check that a CCW permit applicant will again have to pass during the permit-issuance process, prior to any psychological evaluation being performed.

72.87. Furthermore, the excessive cost and financial burden of such a psychological test impermissibly shifts the burden to CCW applicants in violation of *Bruen*.

73.88. California law already provides for fully disarming any person subjected to a psychological hold when a qualified professional has determined that the individual is a danger to themselves or others. *See* Cal. Welf. & Inst. Code §§ 5150, 5250, 8100-8108. A person's disqualifying mental health hold is a mandatory record forwarded to and maintained by the California Department of Justice for regulating firearm possession. *Id.,* §§ 8104-06. Yet even after a mental health hold, the State of California, not the individual citizen, bears the burden of proving a threat to public safety based on evidence of psychological disqualification. *Id.,* § 8103(f)(6). SB 2 contradicts existing law in California by requiring a law-abiding resident to prove a negative – i.e., that they are not insane or psychologically impaired.

74.89. For all of these reasons, Plaintiffs also challenge the constitutionality of California Penal Code ~~Section~~section 26190(e),[4] which permits issuing authorities to mandate psychological testing. ~~That is the primary reason the Attorney General is included as a Defendant in this lawsuit.~~

75.90. SB 2 also added new subsections to the Penal Code that allow issuing authorities to disqualify a permit applicant due to loss or theft (being a victim of

---

[4] Designated 26190(f) prior to the passage of SB 2.

23

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

crime) of a firearm. Specifically, an applicant is disqualified if: "In the 10 years prior to the licensing authority receiving the completed application for a new license or a license renewal, [he] has experienced the loss or theft of multiple firearms due to the applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm. For purposes of this paragraph, "multiple firearms" includes a loss of more than one firearm on the same occasion, or the loss of a single firearm on more than one occasion." *See* Cal. Penal Code § 26202(a)(9) (West 2023).

76.91. An applicant can also be denied if he: "[f]ailed to report a loss of a firearm as required by Section 25250 or any other state, federal, or local law requiring the reporting of the loss of a firearm." *See id.* § 26202(a)(10).

92.    SB 2, which took effect following the filing of this lawsuit, also added Penal Code section 26202(a)(3), which prohibits anyone who has had a restraining order issued against them from being granted a permit for five years from the date the order expired. This law applies even to *temporary* restraining orders that were dissolved upon a hearing, such as in Plaintiff Partowashraf's situation.

93.    SB 2 also added Penal Code section 26202(a)(5), which disqualifies anyone who "Has engaged in an unlawful or reckless use, display, or brandishing of a firearm." In its opposition to Plaintiffs' motion for preliminary injunction, LASD argued this provision also barred Plaintiff Velasquez from getting his permit renewed, even though the denial occurred prior to SB 2's effective date.

77.94. None of these additional criteria imposed on license applicants comport with the Second Amendment, as there is no broad and enduring historical tradition of disarming Americans because they have been victimized by criminals, or temporarily disarmed until a hearing. Thus, Plaintiffs seek to enjoin Defendant Bonta from enforcing these statutory provisions.

95.    Both Plaintiff Velasquez and Plaintiff Partowashraf had their CCW permit applications denied before SB2 took effect. However, to the extent

24

Defendant LASD argues that its provisions bar it from issuing permits to these two Plaintiffs, Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) should be declared unconstitutional as applied to them.

**LASD Is Misled by the Attorney General and Does Not Address Lengthy Wait Times Despite Several Letters from CRPA Warning of Litigation**

78.96. Following the *Bruen* ruling, CRPA sent letters to all California sheriff's departments, including Los Angeles County. The first letter was sent the day after the June 2022 *Bruen* ruling, and explained that the "good cause" portion of California's CCW permit issuance laws was no longer enforceable.

79.97. But rather than complying with the Supreme Court's decision, the Attorney General rebelled, responding to the *Bruen* ruling by claiming that local sheriffs and police chiefs in fact could *add* more steps and impose *additional* subjective considerations to the permit application process in light of *Bruen*. On June 24, 2022, the Attorney General sent a Legal Alert to law enforcement officials across California, instructing it was proper under *Bruen* to apply a heightened "good moral character" requirement to the application process which included subjective considerations beyond the applicant passing a criminal and mental health background check.

80.98. In response to the Attorney General's malicious and intentional attempt to undermine the *Bruen* ruling, CRPA sent a second letter to several sheriff's departments, including LASD, reiterating that the Second Amendment, as clarified by the *Bruen* ruling, will only permit "narrow, objective, and definite" standards to be used in issuing permits to law-abiding citizens,[5] and that they should ignore the Attorney General's unlawful instruction to his subordinate law enforcement agencies.

---

[5] Again, Plaintiffs do not concede that any mandatory permitting scheme was found permissible by *Bruen*, as most of the states that have such objective "shall issue" schemes also allow constitutional carry or open carry without a license.

25

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

81.99. In the months following CRPA's correspondences to the county sheriffs, CRPA received responses from several departments stating that they would begin complying with *Bruen*. In contrast, LASD never responded. It did begin to process CCW permit applications, albeit at an unlawfully slow pace, with wait times routinely stretching beyond one year for many CRPA members. However, CRPA abstained from litigation, believing it best to allow the law enforcement authorities some time to adjust to the implied mandate of *Bruen*.

82.100.     In August 2022, former LASD Sheriff Alex Villanueva announced that "LASD will only accept first-time CCW applications from those who reside within our contract cities or unincorporated communities. Applicants residing in a municipality other than those served by LASD shall contact their local police department and apply for a CCW license." This meant that several cities in Los Angeles County, that had not set up a CCW permit program, like La Verne, would now need to do so, even though the Sheriff is obligated to accept and process such applications from *any* county resident—whether they live in a ""non-contract" city or not—under California Penal Code section 26150.

83.101.     This illegal LASD policy change has contributed to the high fees problem. LASD's refusal to grant permits to residents of municipalities inside the county eliminates a cheaper route to obtaining a permit for county residents, and gives them no way around the exorbitant fees that some municipalities, like LVPD, have imposed.

84.102.     As CRPA received an ever-increasing volume of complaints about waiting times and fees from its members in the months following *Bruen*, it sent a letter to newly elected Sheriff Luna on February 21, 2023. The letter advised that long wait times contravene *Bruen's* express language, violate the Second Amendment, and are unlawful under California law, and promised to forbear litigation should the Sheriff imminently address the long wait times at issue.

85.103.     Sheriff Luna's office responded by letter dated March 9, 2023,

26

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

stating that LASD was "taking steps to reduce processing times and improve our overall processes." That letter detailed how the adoption of new application processing software (Permitium) may reduce processing times and alluded to potentially increasing staffing in the CCW unit to address the backlog of applications. The Sheriff stated that he hoped the situation would be much better in six months, and he promised to provide regular progress updates (that never materialized).

86.104.    CRPA responded on March 14, 2023 writing that, while Sheriff Luna's letter was encouraging, another six months was not an acceptable timeframe, given the thousands of applications lingering for a year or more. CRPA also noted that LASD previously admitted that long wait times are unconstitutional. In a July 7, 2022, letter to the Chief of Police of San Gabriel explaining why LASD could no longer accept applications from residents of San Gabriel, the Department wrote in pertinent part:

> Although the LASD can process CCW applications, as currently staffed, there will be significant delays because we do not have sufficient personnel required for the anticipated surge. As such, any unnecessary delays would violate the SCOTUS decision, thus violating the rights of the citizens of Los Angeles County and opening the LASD and other law enforcement agencies to otherwise avoidable litigation.
>
> RECEIVED
> JUL 1 1 2022
> SAN GABRIEL PD ADMINISTRATION
>
> 211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012
> A Tradition of Service
> Since 1850

87.105.    CRPA's March 14, 2023 letter also expressed CRPA's view that adopting a policy of not processing permit applications from LA County residents living in non-contract municipalities was illegal. CRPA is unaware of any other California county sheriff that refuses to process CCW permit applications for that county's residents merely because those residents live in a "non-contract city."

88.106.    Unfortunately, in a responsive letter dated March 24, 2023, the Sheriff only repeated his vague promise to "improve efficiency and reduce processing times," but refused to resume accepting applications from residents of

27

non-contract cities.

89.107.    As of the filing of this lawsuit, the wait times for LASD permit applicants in fact have grown worse instead of better, with CRPA members complaining of wait times in excess of 15 months. Some individuals who submitted applications at the time of the *Bruen* ruling in June 2022 have not even been contacted for their initial interview, as of November 2023.

90.108.    LASD does not deny that its wait times are absurdly long. In response to a Public Records Act request by Attorney Jason Davis, the Department confirmed that applicants could expect wait times of, "from application entry to issuance . . . a year to a year and a half."

91.109.    CRPA sent a final letter to the Sheriff on September 14, 2023, warning that litigation was imminent if no immediate changes to accelerate application processing were made. A response was received from the Sheriff on November 1, 2023, making the same vague promises as before, however, no concrete steps to implement these purported fixes or timelines for doing so were identified.

**LVPD's Exorbitant Fees and Unconstitutional Psychological Exam Requirement**

*A.    A.    LVPD's Permit Application Fees Are Dramatically Higher Than Most Other Issuing Authorities in California and Elsewhere*

92.110.    Like many other municipalities in California, La Verne did not historically have a CCW permitting process, but instead referred applicants to LASD. But as discussed *supra*, after *Bruen*, LASD announced that it "will only accept first-time CCW applications from those who reside within our contract cities or unincorporated communities and encourage applicants residing in a municipality other than those served by LASD to contact their local police department and apply

for a CCW license."[6] Consequently, La Verne and other cities were forced to establish their own permitting programs.

93.111.    LVPD took several months to set up its permit process, during which time its residents had no operative permitting authority to which to apply in order to obtain a permit to exercise the constitutional right to bear arms outside the home. Eventually, LVPD announced in early 2023 that it would begin accepting applications, and published the schedule of fees.

94.112.    However, the outrageous fee schedule included $398 for "processing," $150 for "administrative" costs, $93 for "licensing," $20 for fingerprinting, $150 for a psychological exam, $20 for a card-issuance fee, and $250 for a training course. Applicants would thus have to pay *more than $1,000* merely to be approved to exercise their constitutional self-defense right. Following the filing of the original complaint, La Verne reduced its fees slightly, by $145. As of now, the total cost to the applicant will be around $750 to $950, with the variance depending on the precise cost of the training course. Renewals every two years will cost somewhere around $550 to $750, again depending on the cost of the training course.

95.113.    This cumulative fee schedule significantly exceeds what CCW applicants in other states pay. For example, in Arizona, where applying for a permit is entirely optional because Arizona is a constitutional carry state, the application fee is $60 plus the cost of fingerprinting that must be submitted with the application.[7] In Texas, the application fee is $40.[8] Florida charges $55 for its

---

[6] *See* <https://lasd.org/ccw/#ccw_fees> (as of November 30, 2023).

[7] *See* "Concealed Weapons & Permits | Arizona Department of Public Safety," <https://www.azdps.gov/services/public/cwp> (as of November 30, 2023).

[8] *See* "Licensing & Registration | Department of Public Safety," <https://www.dps.texas.gov/section/handgun-licensing/licensing-registration> (as of November 30, 2023).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

issuance fee and $42 for fingerprinting.[9] Utah charges $53.25 for Utah residents, and $63.25 for non-residents.[10] In Minnesota, the fee may not exceed $100.[11] Nevada charges $100.25.[12] Washington State charges $36 plus fingerprinting fees.[13]

~~96.~~114.    California's short two-year permit period is also an outlier that makes the average annual to exercise the carry right much greater than other states'. An Arizona CCW permit, for example, is good for five years and costs only $60. Thus, an Arizona permit costs roughly $12 a year, whereas a La Verne permit costs no less than $500 per year.

~~97.~~115.    The fees LVPD charges eclipse even other issuing authorities *within California*. Defendant LASD, for example, charges a $43 initial fee,[14] a $173 issuance fee, plus the cost of training[15] and livescan,[16] which applicants contract for on their own through a third party. The San Diego County Sheriff's

---

[9] *See* "Concealed Weapons License Fees," <https://www.fdacs.gov/content/download/7438/file/Concealed-Weapons-License-Fees-06-26-2017.pdf> (as of November 30, 2023).

[10] *See* "How do I Apply for a Concealed Firearm Permit? | DPS – Criminal Identification (BCI)," <https://bci.utah.gov/concealed-firearm/how-do-i-apply-for-a-concealed-firearm-permit> (as of November 30, 2023).

[11] *See* "Administrative Services – Permit to Carry FAQ," <https://dps.mn.gov/divisions/bca/bca-divisions/administrative/Pages/Permit-to-Carry-FAQ.aspx> (as of November 30, 2023).

[12] *See* "Concealed Firearms Permits," < https://www.lvmpd.com/en-us/RecordsFingerprintBureau/Pages/ConcealedFirearms.aspx > (as of November 30, 2023).

[13] *See* "*Fees: Firearms*" <https://www.dol.wa.gov/business/firearms/fafees.html> (as of November 30, 2023).

[14] *See* <https://lasd.permitium.com/entry> (as of November 30, 2023).

[15] Training courses are typically offered by an approved list of providers, with the class costing between $175 and $400 depending on the provider.

[16] Typically around $100, depending on the provider.

30

Department charges a $27.60 application fee,[17] a $93 livescan fee, and a $110.40 final fee, with the training provider chosen and contracted with by the applicant. The Orange County Sheriff's Department's fees total $169 for the application,[18] with applicants completing the livescan and training through third parties they choose and contract with.

98.116.    LVPD's claimed processing costs are not only excessive, but not even comparable to similar cities' fees. La Verne's next-door neighbor Glendora charges $243 in total for processing (including livescan), plus the cost of the training course.[19] Burbank charges $100, plus the cost of livescan and the training course.[20] Whittier charges $243 (including livescan), plus the cost of the training course.[21] Even the City of Los Angeles is not as expensive as La Verne, charging $268 plus the cost of livescan and the training course.[22]. Moreover, none of the examples listed here require a psychological exam, which saves applicants $150. Permit renewal fees for these localities are generally under $100.

99.117.    In general, most applicants in California will spend around $400-$600 to get their permits. While this is expensive, it is a relative bargain compared to LVPD's astronomical initial $1,000 price tag for government approval

---

[17] *See* <https://www.sdsheriff.gov/i-want-to/get-a-permit-or-license/regulatory-licenses-and-fees/concealed-weapons-license> (as of November 30, 2023).

[18] *See* <https://ocsd.permitium.com/ccw/start> (as of November 30, 2023).

[19] *See* <https://glendorapdca.permitium.com/ccw/start> (as of November 30, 2023).

[20] *See* <https://burbankpdca.permitium.com/ccw/start> (as of November 30, 2023).

[21] *See* <https://whittierpdca.permitium.com/ccw/start> (as of November 30, 2023).

[22] *See* <https://www.lapdonline.org/office-of-the-chief-of-police/office-of-special-operations/detective-bureau/detective-services-group/ccw-carry-concealed-weapon-license/> (as of November 30, 2023).

31

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

to bear arms in public. Following the filing of this complaint and a preliminary injunction challenging such a fee as constitutionally excessive, the City of La Verne voted to slightly lower the fee by reducing the psychological exam cost. As a result, the fee is now approximately $900, which is still constitutionally excessive and infringes on the exercise of the right under the test set forth in Bruen.

118.   Part of the LVPD's application process requires Plaintiffs Rigali, Reeves, and Gabaldon to pay to have LVPD Chief Gonzalez interview them for an hour as a condition of receiving a CCW permit. Plaintiffs further allege that this process applies to any member of any of the associational Plaintiffs who is a resident of La Verne who wants to receive a CCW permit, and further allege that such a process applies to any other member of the public who is a resident of La Verne who wants to receive a permit. Not only do Plaintiffs allege that paying for an hour of the Chief's time is constitutionally excessive in terms of the cost imposed for exercising Plaintiffs', associational members' and supporters, and La Verne residents' Second Amendment rights, but that the cost is for a purpose impermissible under the Second Amendment and the test set out in *Bruen*. Plaintiffs allege that any questions or criteria the Chief might ask or assess in such an interview would be necessarily subjective and give discretion to the Chief to deny a permit application in violation of *Bruen*. Plaintiffs thus allege that both the process of being interviewed itself as well as the cost of the process to be interviewed by the Chief violates the Second Amendment.

B.   *Outsourcing Application Processing to Third-party Processor MyCCW is Why LVPD -is so Much Costlier Than Other Issuing Authorities.*

100.119.     Of the 88 distinct municipalities in Los Angeles County, the only ones with grossly excessive fee schedules similar to LVPD are those cities which, like La Verne, have outsourced CCW processing to a third-party private contractor called "MyCCW." These include cities like Santa Monica, San Gabriel,

32

and Signal Hill.[23]

101.120.   To use MyCCW to process residents' CCW Permit applications, those cities, including La Verne, pass on a number of exorbitant or illegal fees charged by MyCCW, including:

a.   the entire application fee charged at the time the application is submitted, in violation of Penal Code section 26190, which caps the percentage of the total fee collected until after the application is approved;

b.   a renewal fee of $348, in excess of the current renewal fee allowed under Section 26190.[24]

102.121.   LVPD passes these unconstitutionally high and contrary to state law fees imposed by MyCCW's use onto its applicants. The $398 application fee, plus the $150 psychological examination—which most other cities and LASD do not require—explains in part why LVPD's CCW fee schedule is exorbitantly high, an outlier among outliers.

C.   *LVPD's Burdensome Psychological Examination.*

103.122.   LVPD's required psychological exam administered is invasive and burdensome, it violates procedural due process, and is fundamentally incompatible with the exercise of Second Amendment rights.

104.123.   The exam iswas originally administered at a facility in San Bernardino on weekdays. That drive takestook approximately an hour each way for

---

[23] *See* <https://www.myccw.us/> (as of November 30, 2023).

[24] It is unclear how contracting with MyCCW to perform CCW Permit application processing for LVPD is legal in any aspect because, while a licensing authority may charge an additional fee for processing an application beyond the standard DOJ charges in an amount equal to that local authority's reasonable costs for processing, the Penal Code expressly requires that the additional fee collected be deposited in the local authority's treasury, not shared with a private contractor as profit. See Cal. Penal Code § 26190(b) (West 2023). However, Plaintiffs do not challenge the legality of the use of third-party processors such as MyCCW in this action, and limit their challenge to only the costs passed along to applicants for such use.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

a typical La Verne resident. The facility applicants ~~are~~were required to use was designed to test applicants applying for roles in law enforcement, not citizens exercising their Second Amendment rights. ~~.~~ Yet, for reasons having no grounding in science or empirical evidence, LVPD ~~requires~~required CCW permit applicants to fill out a psychological exam asking applicants the same questions that are used to screen its law enforcement personnel.

124.  Following this lawsuit and Plaintiffs' filing of a motion for preliminary injunction, La Verne changed its contractor for the psychological examination to Seal Beach Consulting and reduced the associated fee from $150 to $5 according to the MyCCW website's fee schedule. La Verne has represented that there is no remaining psychological exam fee to applicants, and it covers the entire cost.

~~105.~~125.    Applicants are ~~then~~ interviewed by a psychologist, who ultimately makes a recommendation to the City with respect to whether the person should be entrusted with Second Amendment rights.

~~106.   From start to finish, including drive time, an applicant will likely spend at least four hours on this examination.~~

~~107.~~126.    ~~Furthermore, the~~The requirement that a law-abiding person affirmatively and subjectively prove that they are psychologically suitable to exercise the right of self-defense is not grounded in any history or tradition of the right to bear firearms.

~~108.~~127.    Plaintiff CRPA sent several letters to La Verne identifying these issues with their CCW Permit scheme, but never received a response.

34

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT ~~FOR~~

**California Must Honor CCW Permits Issued by Other States**

109.128.    A number of states issue permits to nonresidents. Most states require no permit at all for nonresidents to carry within their borders. Others allow open carry. Although California does not honor any other states' CCW permits, dozens of states do honor each other's permits. For example, a Utah CCW permit is valid in Nevada, Idaho, Montana, Washington, and 32 other states.

110.129.    In addition to a lack of any reciprocity for other states' permits, there is no process for nonresidents like Plaintiff Hoover and Plaintiff Broady to get a California CCW permit, even if they were willing to put up with the time and expense such a process would likely involve. In other words, if you are visiting California from another state, or if you need to cross into the state regularly for work, you check your federally enumerated right to carry for self-defense at California's border.

111.130.    California also does not honor nonresident permits even if they are held by its own residents, such as Plaintiffs Rigali and Reeves, who hold CCW permits issued by Utah and Arizona.

131.    California has no more authority to deny nonresidents' rights to public carry than it does to deny their rights to speak within its borders. On the contrary, the Second Amendment's reference to "'the people[]' … unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

112.132.    Our historical tradition of firearm regulation supports the idea that States may not impose their firearm carry requirements on nonresidents who are otherwise legally allowed to own and carry firearms in their home states. Specifically, many carry laws in the 19th century had exceptions for those traveling in the state, called "traveler's exceptions". These included, but were not limited to, an 1831 Indiana law, an 1841 Alabama law, an 1820 Arkansas law, an 1813 Kentucky law, an 1878 Tennessee law, an 1878 Mississippi law, an 1867 Nevada

35

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

law, and an 1864 California law.

113.133.    An analogous issue was already decided in 2015. Because Ohio would not allow for same sex marriages, James Obergefell and John Arthur decided to marry in Maryland. After learning that Ohio would not recognize their marriage, they filed a lawsuit. The Supreme Court ultimately held, in pertinent part, that "[t]he Fourteenth Amendment requires a State . . . to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-State." *Obergefell v. Hodges*, 576 U.S. 644, 644 (2015). In reaching this conclusion, the Court explained that:

> For some couples, even an ordinary drive into a neighboring State to visit family or friends risks causing severe hardship in the event of a spouse's hospitalization while across state lines. In light of the fact that many States already allow same-sex marriage—and hundreds of thousands of these marriages already have occurred—the disruption caused by the recognition bans is significant and ever-growing. As counsel for the respondents acknowledged at argument, if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined.

*Id*. at 680-681.

114.134.    This holding and its logic, with respect to an unenumerated right, apply just as much to the enumerated right to bear arms, and thus applies equally to CCW permits issued by other states as the Supreme Court instructs that it does to marriage licenses issued by other states. California may not completely deny Americans the right to carry for self-defense within California's borders just because they are not California residents.

115.135.    In the free speech context, an individual "faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Similarly, if a non-resident's permit is not honored in California, and there is no way for them to get a California CCW permit, their only avenue to exercise their right to carry in

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

1  defiance of California law.

2  **PLAINTIFFS SEEK DECLARATORY AND INJUNCTIVE RELIEF**

3  ~~116.~~136.    Under *Bruen*, Defendants bear the burden of proving their

4  policies comply with the Second Amendment. They will fail to do so, because their

5  practices are entirely atextual and ahistorical, novel schemes developed in recent

6  years or decades, and completely without any historical analogue.

7  ~~117.~~137.    Accordingly, Plaintiffs seek declaratory relief confirming that

8  Los Angeles County Sheriff's Department's current CCW permit application

9  regime violates the Second Amendment, imposing extraordinary delays and

10  including forbidden suitability determinations. LASD's wait times also violate

11  California Penal Code ~~Section~~section 26205 because they exceed the 90 days (or

12  120 days after January 1, 2024) permitted by statute.[25] LASD's practice of

13  exceeding this statutory time limit is facially unconstitutional, as even a mere wait

14  time of 30 days was already deemed an unconstitutional delay on acquiring

15  additional firearms after an additional purchase. *See Nguyen v. Bonta*, No.

16  320CV02470WQHMMP, 2024 WL 1057241, at *11 (S.D. Cal. Mar. 11, 2024). At

17  minimum though, it is at least unconstitutional as applied to each of the individual

18  Plaintiffs and the members and supporters of the associational Plaintiffs who have

19  waited more than 120 days for their permits since submitting their applications.[26]

20  These Plaintiffs seek declaratory relief that their rights were violated beginning on

21

22  _____

[25] Plaintiffs do not concede that either of these time periods is a permissible impediment to the exercise of an enumerated right.

[26] Contrary to representations made by Defendants at the hearing on preliminary injunction, once an applicant submits the application to LASD, there is no additional task the applicant needs to complete for LASD to start processing the application or start the running of the statutory 120-day deadline to process the application. *See* Cal. Penal Code §§ 26150, 26170. Following submission of the application, the only additional tasks an applicant must complete are dependent on LASD timely handling the application and informing the applicant that, e.g., the applicant has been preliminarily approved so he or she can now take the firearms training course required under Section 26155. Contrary to LASD's representations, nothing of LASD's unconstitutional and statutorily impermissible delay is caused by inaction by these Plaintiffs or any similarly-situated applicants.

1   the 121st day following their respective applications being submitted.

2       138.   Plaintiff Messel, who recently received his CCW permit, seeks

3   declaratory relief and nominal damages confirming his rights were violated

4   beginning on the 121st day following his application being submitted, and

5   continuing until his permit was finally issued in May of 2024.

6       118.139.   LASD also violates California Penal Code Sectionsection 26150

7   by refusing to accept applications from all residents of Los Angeles County.

8       119.140.   Plaintiffs also seek declaratory relief confirming that LVPD's

9   current CCW permit application regime violates the Second Amendment because: it

10  includes an unconstitutional psychological exam the City purports to utilize for

11  applicants under California Penal Code Sectionsection 26190(f)(1), because its fee

12  schedule is astronomicallyexorbitantly expensive, and because permit issuance is

13  conditioned upon unconstitutional suitability determinations instead of narrow,

14  objective, and definite standards. Each of these are both facially unconstitutional,

15  and unconstitutional as applied to the Plaintiffs and the members and supporters of

16  the associational Plaintiffs.

17      120.141.   LVPD also violates Penal Code Sectionsection 26190(b)(2) by

18  collecting the entire application fee upfront, prior to licensure. LVPD's use of

19  "MyCCW" violates Penal Code Sectionsection 26190(b)(1) because it does not

20  transfer its "additional fees" to the city treasury, instead paying a third-party

21  provider. By charging over $25 for a renewal application, LVPD also violates Penal

22  Code Sectionsection 26190(b) ("The licensing authority may charge an additional

23  fee, not to exceed twenty-five dollars ($25), for processing the application for a

24  license renewal, and shall transmit an additional fee, if any, to the city, city and

25  county, or county treasury.").

26      121.142.   Defendant Bonta has the burden of proving that Penal

27  Code Sectionsection 26190(f)(1)'s psychological examination requirement for

28  obtaining a CCW license comports with the Second Amendment in light of *Bruen*'s

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt

Formatted: Line spacing: Exactly 10 pt

Formatted Table

Formatted: Line spacing: single

Formatted: Footer

1  prohibition on suitability determinations for CCW licenses. He will fail to do so.

2  Constitutional rights are not conditioned on a quasi-medical professional's opinion

3  of a person's emotional bona fides.

4     143.  Plaintiffs seek a declaration that *all* "the people" have the right to bear

5  arms in public and, because of that, California must honor CCW permits issued by

6  other states orand allow residents of other states to apply for California CCW

7  permits.[27]

8     122.144.    To the extent that the Los Angeles County Defendants contend

9  they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to

10  SB 2's changes to the Penal Code even though those changes came after their

11  permits were denied, Plaintiffs seek a declaration that Penal Code sections

12  26202(a)(3), 26202(a)(5), and 26202(a)(9) are unconstitutional as applied to

13  Plaintiffs Velasquez and Partowashraf, respectively.

14     123.145.    Finally, Plaintiffs seek preliminary and permanent injunctive

15  relief to compel Defendants to comply with the Second Amendment as clarified by

16  *Bruen* and California law by correcting the violations listed above.

17     146.  As discussed previously, for each of these claims, each and every

18  Plaintiff contends, and each member of an associational Plaintiff contends, that

19  their proposed course of conduct is, as in *Bruen*, carrying handguns publicly for

20  self-defense. To the extent that such a proposed course of conduct is deemed to be

21  too general or otherwise insufficient for purposes of adjudication of their rights,

22  Plaintiffs alternatively allege and describe more specifically their proposed courses

23  of conduct as follows:

24        a.    On the issue of LASD's lengthy wait times, Plaintiffs Messel's,

25        Weimer's, and Yun's more specific proposed course of conduct, and the

26

27    [27] Again, Plaintiffs do not concede that permitting itself is constitutional, as

28  there is no broad and enduring historical tradition of government licensure to bear
arms in public.

39

**Formatted:** Line spacing: Exactly 8 pt

**Formatted:** Line spacing: Exactly 10 pt

**Formatted Table**

**Formatted:** Line spacing: single

**Formatted:** Footer

members and supporters of the associational Plaintiffs' more specific
proposed course of conduct, is lawfully carrying firearms publicly for self-
defense without an unreasonable wait time to receive a permit to lawfully
carry, which Plaintiffs define here as at least a wait time exceeding the 120
days allowed by State law. Plaintiffs allege that a wait time in excess of at
least state law's requirements for issuing a permit violate the Second
Amendment. Plaintiffs further allege that they are not aware of a historical
tradition of laws or regulations from the applicable historical period
conditioning the exercise of the right to carry for self-defense on waiting in
excess of 120 days for a permit in order to lawfully carry.

b.     On the issue of La Verne's exorbitant fees, Plaintiffs Rigali's,
Reeves's, and Gabaldon's more specific proposed course of conduct, and the
members and supporters of the associational Plaintiffs' more specific
proposed course of conduct,  is lawfully carrying firearms publicly for self-
defense without unreasonable expense to the applicant, which Plaintiffs
define here as a total expense that exceeds at least $500. Plaintiffs allege that
a fee to obtain a permit to carry in self-defense in excess of $500 violates the
Second Amendment. Plaintiffs further allege that they are not aware of a
historical tradition of laws or regulations from the applicable historical period
conditioning the exercise of the right to carry of a person who has not been
adjudicated as being dangerous to the public, to pay any amount for such
right, much less an amount in excess of $500.

c.     On the issue of nonresident carry, Plaintiffs Broady's and
Hoover's more specific proposed course of conduct, and the members and
supporters of the associational Plaintiffs' more specific proposed course of
conduct is lawfully carrying firearms publicly for self-defense in California,
primarily by having California honor the permits of other states under the
Second Amendment, and Privileges and Immunities and Equal Protection

40

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

clauses of the Fifth and Fourteenth Amendments. Plaintiffs allege that not honoring their out-of-state permits, which were obtained under the same or similar requirements or burdens that California law imposes on its permittees, or which, in the alternative, have sufficient background checks and other processes that are both constitutionally sound and adequately reflect the reasons similar historical laws and regulations from the applicable historical period allowed restrictions on public carry, violates Plaintiffs' rights under the Second Amendment, and Privileges and Immunities and Equal Protection clauses. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on being a resident of the state in which the carry is to occur.

  d. On the issue of nonresident carry, Plaintiffs Broady's and Hoover's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense in California by alternatively allowing nonresidents to obtain California CCW permits in a manner that is constitutionally sound as to both the timing and the cost for obtaining those California permits. Plaintiffs further allege that timeliness for purposes of complying with the Second Amendment, and Privileges and Immunities, Due Process, and Equal Protection clauses, is the same amount of time, or sooner, that a resident of California would receive such a permit. Plaintiffs further allege that appropriate cost for purposes of complying with the Second Amendment, and Due Process and Equal Protection clauses, is the same cost for a permit, or less, than a resident of California would pay to receive such a permit. Plaintiffs allege that not allowing nonresidents to carry in California with a California permit issued with the same costs and within

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

1   the same timeframe residents receive their permits, violates Plaintiffs' rights

2   under the Second Amendment, and Privileges and Immunities and Equal

3   Protection clauses.  Plaintiffs further allege that they are not aware of a

4   historical tradition of laws or regulations from the applicable historical period

5   conditioning the exercise of the right to carry for self-defense—either

6   generally or for the specific purposes cited above—on being a resident of the

7   state in which the carry is to occur.

8        e.    On the issue of cost for CCW applicants to be interviewed by

9   the LVPD Chief, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific

10  proposed course of conduct, and the more specific proposed course of

11  conduct of the members and supporters of the associational Plaintiffs, is

12  lawfully carrying firearms publicly for self-defense without submitting to or

13  paying for a subjective interview process by the head law enforcement

14  officer of a licensing entity like La Verne. On information and belief, there is

15  no objective fact finding purpose of the Chief's interview, as objective

16  information such as confirming the identity and residence of the applicant,

17  conducting the state-mandated background check, confirming the lack of a

18  disqualifying factor such as a disqualifying conviction, medical condition, or

19  mental health hold or commitment, or confirming that the applicant has the

20  appropriate live fire training, are all performed by other persons within the

21  LVPD, by the DOJ, or by LVPD's contractor MyCCW.us. Plaintiffs allege

22  that any CCW license approval process that allows for Chief Gonzales to

23  deny a permit application based on an applicant's responses to his questions

24  during an interview allows subjective discretion by the permit issuer in

25  violation of the Second Amendment and the Due Process Clause. Plaintiffs

26  further allege that any state law allowing a local permitting entity to impose

27  an exam requirement—including Penal Code section 26190(f)(1)—facially

28  violates the Second Amendment, insomuch as it permits unconstitutional

**Formatted:** Line spacing:  Exactly 8 pt

**Formatted:** Line spacing:  Exactly 10 pt

**Formatted Table**

**Formatted:** Line spacing:  single

**Formatted:** Footer

1 discretion by a permitting entity. Plaintiffs further allege that such statute is
2 also unconstitutional as applied to each of the individual Plaintiffs who are
3 residents of La Verne, insomuch as it acts as a barrier to applying for and
4 receiving a CCW permit. Plaintiffs further allege that such statute is also
5 unconstitutional as applied to any and all of the members and supporters of
6 the associational Plaintiffs who reside in La Verne. On information and
7 belief, one or more such members would have applied for a permit if not for
8 the unlawful examination requirement.  On information and belief, one or
9 more residents of La Verne would have applied for a permit if not for the
10 unlawful examination requirement. Plaintiffs further allege that they are not
11 aware of a single historical law or regulation from the applicable period,
12 much less a historical tradition of such laws or regulations, conditioning the
13 exercise of the right to carry for self-defense—either generally or for the
14 specific purposes cited above—on the sitting for an interview by the local
15 Chief of Police, including a law or regulation imposed by a state like
16 California or a locality like La Verne.

     f.    On the issue of psychological exams, Plaintiffs Rigali's,
18 Reeves's, and Gabaldon's more specific proposed course of conduct, and the
19 more specific proposed course of conduct of the members and supporters of
20 the associational Plaintiffs, is lawfully carrying firearms publicly for self-
21 defense without submitting to a psychological examination, insomuch as
22 Plaintiffs allege that any requirement of an exam allows subjective discretion
23 by the permit issuer or its designated examiner in violation of the Second
24 Amendment. Plaintiffs further allege that any state law allowing a local
25 permitting entity to impose an exam requirement—including Penal Code
26 section 26190(f)(1)—facially violates the Second Amendment and due
27 process rights of Plaintiffs and other applicants, insomuch as it permits
28 unconstitutional discretion by a permitting entity. Plaintiffs further allege that

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

such statute is also unconstitutional as applied to each of the individual

Plaintiffs who are residents of La Verne, insomuch as it acts as a barrier to

applying for and receiving a CCW permit. Plaintiffs further allege that such

statute is also unconstitutional as applied to any and all of the members and

supporters of the associational Plaintiffs who reside in La Verne. On

information and belief, one or more such members would have applied for a

permit if not for the unlawful examination requirement. On information and

belief, one or more residents of the State would have applied for a permit if

not for the unlawful examination requirement. Plaintiffs further allege that

they are not aware of a single historical law or regulation, much less a

historical tradition of such laws or regulations, from the applicable period

conditioning the exercise of the right to carry for self-defense—either

generally or for the specific purposes cited above—on the passing of a

psychological exam, including a law or regulation imposed by a state like

California or a locality like La Verne.

  g. Plaintiff Velasquez's more specific proposed course of conduct

is lawfully carrying firearms publicly for self-defense without being

prevented from doing so because he had firearms stolen from his locked

vehicle. Plaintiff alleges that disqualifying a person from lawfully carrying

for self-defense, where there was no charged crime, no charged crime

involving dangerousness, or no court or other adversarial proceeding,

violates his Second Amendment and due process rights. Plaintiff alleges that

he is not aware of a single law or regulation, much less a historical tradition

of such laws or regulations, from the applicable period which held that a

citizen forfeits his or her right to carry for self-defense if they had firearms

stolen from them, nor is Plaintiff aware of a single law or regulation, much

less a historical tradition of such laws or regulations, from the applicable

period which held that a disqualifying condition for carrying a firearm for

44

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

self-defense could include the allegation committing a crime of recklessness in possessing a firearm where such crime was never charged nor adjudicated by a neutral magistrate.

h.    Plaintiff Partowashraf's more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense without being prevented from doing so due to a dissolved temporary restraining order that was issued against him. Plaintiff alleges that disqualifying a person from lawfully carrying for self-defense, where there was no adversarial proceeding adjudicating that person as dangerous, violates his Second Amendment and due process rights.  Plaintiff alleges that he is not aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a citizen forfeits his or her right to carry for self-defense if they were charged in a non-adversarial, non-criminal proceeding with a crime of violence, but, upon receipt of due process in the form of a noticed hearing in front of a judge or magistrate, were determined to have not committed such a crime nor be subject to a further prohibition on their possession or ownership of firearms.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
**AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S**
**DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10**

124.147.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

148.  As described previously, LASD violated and continues to violate the rights of CCW permit applicants by taking over a year to process applications and by engaging in forbidden suitability determinations.

125.149.    To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due the

45

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

prohibitions in Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9), such provisions are unconstitutional both facially and as applied to Plaintiffs Velasquez and Partowashraf, and are not a constitutionally-permissible basis for denying a permit to carry for self-defense.

126.150.    As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

127.151.    Defendants are propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

128.152.    Defendants cannot meet their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising their enumerated rights.

129.153.    Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE COLLEEN FLORESSAMUEL GONZALEZ, AND DOES 1-10

130.154.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

131.155.    As described previously, LVPD has violated and continues to violate the rights of CCW permit applicants by charging nearly $600 in total fees (not including the cost of training, livescan, and psychological review) and by engaging in forbidden suitability determinations with its psychological examination requirement.

156.   As described previously, LVPD has violated and continues to violate the rights of CCW permit applicants by requiring them to pay for and sit for a subjective interview with the LVPD Chief that allows the Chief to exercise unconstitutional discretion to deny a permit based on such interview.

132.157.     As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

133.158.     Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

134.159.     Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising their enumerated rights.

135.160.     Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

136.161.     Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

137.162.     The Supreme Court has explained that permitting regimes which deny licenses based on a "perceived lack of need or suitability" are unconstitutional. *Bruen*, 142 S. Ct. at 2123.

138.163.     As described previously, California violates the right of CCW permit applicants by allowing issuing authorities to demand psychological exams at their discretion under California Penal Code Section 26190(f) (soon to be section 26190(g) under SB2).

47

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

1    139.164.    California also refuses to recognize CCW permits issued by

2    other states, whether they are held by residents or nonresidents. California also

3    refuses to grant CCW permits to non-residents, thus providing no way for

4    nonresidents to exercise their right to carry within its borders.

5    140.165.    As a result, Plaintiffs' Second Amendment rights, as

6    incorporated under the Fourteenth Amendment, as well as the rights of the

7    associational Plaintiffs' members and supporters, are violated.

8    166.    To the extent that the Los Angeles County Defendants contend they

9    will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's

10    changes to the Penal Code even though those changes came after their permits were

11    denied, Plaintiffs allege that Penal Code sections 26202(a)(3), 26202(a)(5), and

12    26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez and

13    Partowashraf, respectively.

14    141.167.    The Attorney General is thus enforcing laws that violate the

15    constitutional right to bear arms outside the home for self-defense "in case of

16    confrontation," as guaranteed by the Second and Fourteenth Amendments.

17    142.168.    Plaintiffs are entitled to declaratory and injunctive relief against

18    such unconstitutional laws, customs, policies, and practices.

19
20    **FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
      **VIOLATIONS OF THE CALIFORNIA PENAL CODE**
21    AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
      DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

22    143.169.    Plaintiffs hereby re-allege and incorporate by reference the

23    allegations in the foregoing paragraphs as if set forth fully herein.

24    144.170.    LASD's CCW permit process violates California Penal Code

25    Sectionsection 26205 by taking over a year to process permit applications.

26    145.171.    Additionally, Plaintiffs' Second Amendment rights, as

27    incorporated under the Fourteenth Amendment, as well as the rights of the

28    associational Plaintiffs' members and supporters, are violated.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt

Formatted: Line spacing: Exactly 10 pt

Formatted Table

Formatted: Line spacing: single

Formatted: Footer

146.172.    Defendants LASD and Sheriff Robert Luna are thus enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

147.173.    Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE COLLEEN FLORESSAMUEL GONZALEZ, AND DOES 1-10

148.174.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

149.175.    LVPD's CCW permit process violates several portions of the California Penal Code.

150.176.    By inflating its own costs through the imposition of additional requirements beyond a simple DOJ background check and an interview with an applicant, LVPD charges more than its reasonable costs for permit processing and violates California Penal Code Sectionsection 26190(b)(1).

151.177.    By collecting the entirety of its fees at the time the application is submitted, LVPD violates California Penal Code Sectionsection 26190(b)(2).

152.178.    Additionally, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

153.179.    The La Verne defendants are enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

154.180.    Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**EQUAL PROTECTION**
**42 U.S.C. § 1983**

AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

155.181.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

156.182.    Plaintiff Steven Hoover is a Florida resident. He does not have residency in California, and thus cannot obtain a California identification card or driver's license. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

157.183.    Nevertheless, heBoth Plaintiffs often visitsvisit California and desiresdesire to be able to lawfully conceal-carry a firearm when visiting the State.

158.184.    HePlaintiff Hoover applied to the Monterey County Sheriff for a CCW permit but the Sheriff rejected his application because he is not a California resident. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

159.185.    Indeed, California law does not allow a resident of another state to apply for and obtain a CCW permit whatsoever.

160.186.    This policy violates Plaintiff Hoover'sPlaintiffs' right to equal protection of the law as guaranteed and protected under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it favors California residents and discriminates against non-California residents like Hoover and Broady. The policy also violates the Equal Protection Clause because California refuses to honor permits issued by other states, including Florida or Nevada, the home states of Plaintiffs Hoover and Broady, respectively.

161.187.    This policy is especially egregious because here California's policy prevents Plaintiff Hoover from exercising the constitutionally protected right to be armed in public recognized in *Bruen*. It also violates the constitutionally protected right to travel under the Equal Protection Clause of the Fourteenth

50

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Amendment, and forces Hoover to choose between exercising his Second Amendment right to be armed and his constitutional right to travel. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *United States v. Guest*, 383 U.S. 745 (1966); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Zobel v. Williams*, 457 U.S. 55 (1981).

**SEVENTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. IV, § 2**
**PRIVILEGES AND IMMUNITIES CLAUSE**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

~~162.~~188.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

~~163.~~189.    The Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." This Constitutional provision removes "from the citizens of each State the disabilities of alienage in the other States." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1868)). The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

~~164.~~190.    Plaintiff Steven Hoover is a Florida resident who desires to lawfully conceal-carry a firearm when visiting California. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

~~165.~~191.    ~~He does~~These Plaintiffs do not have residency in California, and thus cannot obtain a California identification card or driver's license.

~~166.~~192.    Hoover applied for a CCW with the Monterey County Sheriff but was denied because of his Florida Residency. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT ~~FOR~~

1   Hoover was.

2      193.  California's law of refusing to accept CCW applications from citizens

3   of other states, like Plaintiff Hoover, violates this constitutional provision because

4   California's policy discriminates against out of state residents solely because they

5   are out-of-state residents. This policy does not even offer a non-resident a chance at

6   applying for a permit. This policy denies a non-resident the ability to exercise the

7   enumerated right to be armed in public, and thus violates the privilege and

8   immunities clause.

9      194.  The law also violates the Privileges and Immunities Clause by refusing

10  to recognize the permits issued by other states, such as Florida and Nevada.

11       167.

**EIGHTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDMENT XIV**
**DUE PROCESS OF LAW**
**42 U.S.C. § 1983**
AGAINST LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF
ROBERT LUNA, LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF
POLICE SAMUEL GONZALEZ, ATTORNEY GENERAL ROB BONTA,  AND
DOES 1-10

16      168.195.   The psychological testing component of California's CCW

17  permit regime violates both the substantive and procedural due process of law

18  mandate set forth in Amendment XIV, Sec. 1, of the U.S. Constitution.

19      169.196.   California's law violates substantive due process because it

20  arbitrarily and capriciously imposes a presumption of psychological unfitness to

21  exercise a fundamental right, and requires the individuals seeking to exercise that

22  fundamental right to bear the burden of proving a negative. Furthermore, by

23  presuming that all CCW applicants should be subject to psychological screening,

24  the requirement is overinclusive. Furthermore this state law, by allowing individual

25  issuing authorities to require psychological testing or not, makes the law arbitrary

26  and underinclusive. Furthermore, by failing to legislate objective standards for

27  psychological testing, the law empowers government bureaucrats to exercise

28  subjective discretion in regulating a fundamental right.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

1    ~~170.~~197.    California Penal Code ~~Section~~section 26190(f) (soon to be

2    26190(g) under SB2) violates procedural ~~due process~~Due Process rights because it

3    impermissibly shifts the burden of proof of a constitutionally significant fact to an

4    individual seeking to exercise a fundamental right. Furthermore, the psychological

5    testing regime does not permit an adversarial process to adjudicate the scientific

6    validity of the underlying test or the validity of the psychologists' opinions and

7    conclusions. Furthermore, there is no provision in this law for a right to appeal the

8    results of the psychological testing. Furthermore, there is no provision in this law to

9    discover or test the impartiality of the personnel administering the psychological

10   testing. Furthermore, there is no provision in this law allowing the CCW applicant

11   to submit evidence from their own medical expert to rebut the government's

12   evidence, on a crucial question that might result in denial of a constitutional right.

13       198.   To the extent that the Los Angeles County Defendants contend they

14   will not issue a CCW permit to Plaintiff Velasquez due to the theft of his firearms

15   or alleged reckless use of a firearm, which they contend constituted a Penal Code

16   violation, such denial, without a process for adjudicating or an actual adjudication

17   of Velasquez having committed a crime, is unconstitutional as a violation of

18   Velasquez's due process rights.

19       199.   To the extent that the Los Angeles County Defendants contend they

20   will not issue a CCW permit to Plaintiff Partowashraf due to Plaintiff having been

21   the subject of an ex parte restraining order which was dissolved upon adjudication

22   in an adversarial setting, without a process for adjudicating or an actual

23   adjudication of Velasquez being dangerous such that he should be denied his right

24   to carry for self-defense, is as a violation of Partowashraf's due process rights. To

25   the extent the Los Angeles County Defendants rely as a basis for denying Plaintiff a

26   permit upon SB 2's prohibition on issuing a CCW to a person like Plaintiff who

27   was the subject of an ex parte restraining order without an adversarial proceeding or

28   adjudication of dangerousness in such an adversarial proceeding, such law, as set

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

forth above, violates due process and the Second Amendment, and reliance by Defendants upon that law to deny a permit to lawfully carry, absent some other process that affords Partowashraf adequate process, further violates Plaintiff's due process rights.

171.200.    Finally, the CCW psychological testing requirement contradicts existing law in California that already regulates firearms possession in the context of mental health holds and mental health adjudications. *See* California Welfare and Institutions Code §§ 5150, 5250, 8100-8108.

**PRAYER**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    A declaration that LASD taking over a year120 days to process permits violates the constitutional right to carry;

2.    A declaration that these delays also violate California Penal Code Sectionsection 26205;

3.    A declaration that LASD's denial of Plaintiff Velasquez's CCW permit renewal application violates his constitutional right to carry;

4.    A declaration that LVPD charging nearly $1,000900 for CCW permits violates the constitutional right to carry;

5.    A declaration that, by inflating its own costs through the imposition of additional requirements beyond a simple DOJ background check and an interview with an applicant, LVPD charges more than its reasonable costs for permit processing and violates California Penal Code Sectionsection 26190(b)(1);

6.    A declaration that, by collecting the entirety of its fees at the time the application is submitted, LVPD violates California Penal Code Sectionsection 26190(b)(2).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

**Formatted:** Line spacing: Exactly 8 pt

**Formatted:** Line spacing: Exactly 10 pt

**Formatted Table**

**Formatted:** Line spacing: single

**Formatted:** Footer

7.    A declaration that LVPD's psychological examination requirement violates *Bruen's* prohibition on using "suitability" criteria when it comes to Second Amendment rights.

8.    A declaration that California Penal Code ~~Section 26190(f) (soon to be revised to~~ section 26190(g)~~),~~. in allowing psychological examinations, is unconstitutional as a constitutionally-forbidden suitability determination;

9.    A declaration that the Attorney General must honor CCW permits issued by other states, whether the permit holder is a resident of California or not, and/or a declaration that the Attorney General must permit residents of other states to acquire CCW permits in California;

10.    A declaration that Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9), as applied to Plaintiffs Partowashraf and Velasquez, violate the Second Amendment and violate the Due Process Clause;

11.    A declaration that the associational Plaintiffs' resources and litigation experience are necessary to vindicate the Second Amendment rights of individual Plaintiffs who lack the means and capacity to challenge the constitutionally of the practices of LASD and the Sheriff, the fees and policies of LVPD and the Chief, and of the non-resident prohibition on carry and psychological examination requirements of California law.

~~10.~~12.    An order preliminarily and permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing California Penal Code Section 26190(f);

~~11.~~13.    An order preliminarily and permanently enjoining Los Angeles LASD, and Sheriff Luna in his official capacity, from refusing to process or issue a CCW Permit to any qualified applicant 120 days after ~~receipt~~submission of such applicant's initial application for a new license or a license renewal, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later;

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT ~~FOR~~

12.14. An order preliminarily and permanently enjoining LASD, and Sheriff Luna in his official capacity, from requiring more information from applicants in the CCW permitting process that are not based on "narrow, objective, and definite" standards;

13.15. An order preliminarily and permanently enjoining LVPD and La Verne Chief of Police Colleen Flores Samuel Gonzalez in her his official capacity, from charging applicants nearly $1,000 for processing CCW Permit applications;

14.16. An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing all laws prohibiting concealed carry if the person accused of that crime has an otherwise-valid CCW permit issued by any state, and is not otherwise prohibited from owning firearms;

15.17. An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Equal Protection Clause;

16.18. An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Privileges and Immunities Clause;

17.19. Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

18.20. Nominal damages; and

19.21. All other relief the court deems appropriate.

Respectfully Submitted,

Dated: September 4, 2024            **MICHEL & ASSOCIATES, P.C.**

                                    */s/ C.D. Michel*
                                    C.D. Michel
                                    Counsel for Plaintiffs

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR

Formatted: Line spacing: Exactly 8 pt
Formatted: Line spacing: Exactly 10 pt
Formatted Table
Formatted: Line spacing: single
Formatted: Footer

Dated: September 4, 2024

**LAW OFFICES OF DON KILMER**

*/s/ Don Kilmer*

Don Kilmer
Counsel for Plaintiff The Second Amendment Foundation

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Formatted: Line spacing: Exactly 8 pt

Formatted: Line spacing: Exactly 10 pt

Formatted Table

Formatted: Line spacing: single

Formatted: Footer

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT ~~FOR~~

# EXHIBIT B

1  C. D. Michel – SBN 144258
   cmichel@michellawyers.com
2  Joshua Robert Dale – SBN 209942
   jdale@michellawyers.com
3  Konstadinos T. Moros – SBN 306610
   kmoros@michellawyers.com
4  Alexander A. Frank – SBN 311718
   afrank@michellawyers.com
5  MICHEL & ASSOCIATES, P.C.
   180 E. Ocean Blvd., Suite 200
6  Long Beach, CA 90802
   Telephone: (562) 216-4444
7
8  Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, Gun
   Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc.,
9  Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer,
   Jung Yun, Albert Medalla, Clarence Rigali, Keith Reeves, Cynthia Gabaldon,
10 David Broady, and Stephen Hoover

11  *Additional Counsel listed on the next page.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; ERICK VELASQUEZ, an individual; CHARLES MESSEL, an individual; BRIAN WEIMER, an individual; CLARENCE RIGALI, an individual; KEITH REEVES, an individual, and CYNTHIA GABALDON, an individual; STEPHEN HOOVER, an individual, | CASE NO: 2:23-cv-10169-SPG-ADS<br><br>**FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**42 U.S.C. §§ 1983 & 1988** |
| Plaintiffs, | |
| v. | |
| LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT LUNA, in his official capacity; LA VERNE POLICE DEPARTMENT; LA VERNE CHIEF OF POLICE COLLEEN FLORES, in her official capacity; ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10, | |
| Defendants. | |

1

1

2
Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
3
14085 Silver Ridge Road
Caldwell, Idaho 83607
4
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com
5
Attorney for Plaintiff The Second Amendment Foundation
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer, Jung Yun, Albert Medalla, Clarence Rigali, Keith Reeves, Cynthia Gabaldon, David Broady, and Stephen Hoover and, through their respective counsel, bring this action against Defendants Los Angeles County Sheriff's Department, Sheriff Robert Luna in his official capacity as Los Angeles County Sheriff, La Verne Police Department, former La Verne Chief of Police, current La Verne Chief of Police Samuel Gonzalez, California Attorney General Robert Bonta in his official capacity, and Does 1-10, inclusive, and make the following supplemental and amended allegations:

## INTRODUCTION

1.      This action challenges the constitutionality of carry permit issuance policies and laws that make it extremely difficult, if not outright impossible or impermissibly time consuming, for Plaintiffs to obtain permits to carry a concealed firearm in public and therefore to exercise their right to be armed in public, as guaranteed by the Second Amendment's text "bear arms," and as recognized by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

2.      The main policies that Plaintiffs target here are: 1) Defendants' failure to timely process carry permit applications, 2) the grossly excessive fees Defendants are charging to process permit applications and satisfy various permit requirements, 3) the use of highly subjective suitability criteria in evaluating applicants, and 4) the refusal to honor permits issued by other states and/or accept applications for permits from non-residents. These practices and policies, some of which are enabled by state law, violate the Second and Fourteenth Amendments.

3.      Some Constitutional rights have a preliminary step required before their exercise, such as permitting (e.g., parades, demonstrations) or registration

3

(e.g., voting, lobbying). But the administration of such permits or registration requirements may not be so onerous as to exclude whole demographics due to expense or subjectivity, nor may it force them to wait inordinate amounts of time.[1]

4.    In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry**." *Id*. (emphasis added).

5.    The policies that Plaintiffs challenge have gone far beyond "abus[ing]" constitutional rights. Defendants have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with exorbitant poll tax-like fees, egregious wait times lasting well over a year, and nefarious discretionary requirements designed to flout the Supreme Court's precedents.

6.    This suit challenges whether Defendants are engaged in a permit process that subjects applicants seeking to lawfully carry for self-defense in California by the only manner allowed under law—with a concealed carry weapons permit ("CCW permit") issued by a local jurisdiction, to excessive wait times,

---

[1] It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926). "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

exorbitant fees, and suitability criteria that are unnecessary, burdensome, and subjective; and whether those permit processes violate the right to bear arms in public as explained by the Supreme Court in *Bruen*. Examples abound.

7.      For starters, Los Angeles County Sheriff's Department ("LASD") admits that it takes "a year to a year and a half" to process CCW applications.

8.      While the La Verne Police Department's ("LVPD") permit application processing wait time is not as severe as LASD's, its application process is cost prohibitive. Applicants pay approximately $900 depending on the varying costs that third parties charge for the mandatory training course and live scan services. And even after obtaining a permit, LVPD even charges over $500 for renewal applications every two years ($250 per year to exercise an enumerated right).

9.      In stark contrast, applicants in other California counties can avoid high local-municipality fees by applying with their county's sheriff's department instead of the city where they reside, as California law provides — But LASD Sheriff Luna has refused to process CCW permit applications for Los Angeles County residents who live in one of that county's many distinct "non-contract" municipalities.

10.     Because La Verne is a "non-contract" city, residents who want to exercise their right to carry have no alternative; they must pay LVPD's exorbitant fees if they wish to lawfully carry a concealed firearm.

11.     Additionally, both LASD and LVPD impose subjective permit-issuance criteria, in open defiance of *Bruen* which rejected such unmoored standards for determining who gets the privilege of exercising an enumerated right For example, LVPD subjects applicants to an invasive psychological examination. This absurd policy is an outlier, even in California.

12.     Yet under Senate Bill 2 ("SB 2"), effective January 2024, issuing authorities that opt to require the psychological exam may charge the applicant the actual cost of the exam. Whereas under prior law, that expense was capped at $150,

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

and left the issuing authority responsible for paying the balance if it chose to require an examination, now the full cost will be borne by the applicant.

13.     LASD's adopted policies in issuing and renewing CCW permits also include impermissible subjective criteria, including punishing victims of crimes.

14.     Even if Plaintiffs wanted to avoid delay, expense, and suitability requirements from LASD and LVPD by simply obtaining a carry permit from another state, as some of these Plaintiffs have done, California does not honor permits issued by *any* other state.

15.     In fact, nonresidents have no way to lawfully carry firearms in California, even if they are willing to apply to a California issuing authority for a permit, because California law does not permit in-state issuing authorities to issue permits to nonresidents.

16.     This is plainly unconstitutional under both *Bruen* and the precedent established in *Obergefell v. Hodges*, 576 U.S. 644, 648 (2015). If California must honor a broad right to marry, which is unenumerated, then it must also honor the right to carry firearms, which is enumerated.

17.     Separately from Plaintiffs' Second Amendment claim, the United States Supreme Court has consistently held that regulations and classifications that impose a penalty or an impermissible burden on the right to travel violate the Equal Protection Clause of the Fourteenth Amendment, unless absolutely necessary to promote a compelling government interest. *Saenz v. Roe*, 526 U.S. 489 (1999); *Shapiro v. Thompson*, 394 U.S. 618 (1969). Accordingly, California's policy of denying out-of-state residents the ability to lawfully exercise their constitutionally protected right to be armed in public for self-defense inhibits the free interstate passage of citizens and violates equal protection doctrines by treating Americans differently merely on account of their state of residency.

18.     Furthermore, the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "The Citizens of each State shall be

6

entitled to all privileges and immunities of Citizens in the several States." The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

19.    Plaintiffs seek to enjoin Defendants' flagrantly unconstitutional practices and uphold Plaintiffs' Second Amendment rights.

**PARTIES**

**Plaintiffs**

20.    The individual Plaintiffs are ordinary, law-abiding, adult residents of either Los Angeles County or the City of La Verne, who have applied for CCW permits but have not received them, or have been dissuaded or prevented from applying due to the high fees or the psychological examination requirement.

21.    The associational Plaintiffs are non-profit organizations dedicated to the preservation of the Second Amendment and other enumerated constitutional rights. These associational Plaintiffs use their resources and economies of scale to ensure the broadest possible protection for their members and supporters by bringing suits on behalf of individual plaintiffs — who are also members — who would otherwise lack the financial resources and litigation experience to bring cases like this themselves. The associational Plaintiffs are representing their members and supporters who reside in Los Angeles County or La Verne and have either: (1) already applied for a CCW permit and are faced with a lengthy wait time; (2) would apply for a permit if not for the high fees and psychological examination requirement; and/or (3) have CCW permits that were issued by other states and wish to have their permits honored when they visit California. The associational Plaintiffs thus bring this action to vindicate their members' and supporters' Second Amendment rights to publicly bear arms for self-defense, including the rights of the members and supporters of the associational Plaintiffs, who might otherwise lack an opportunity for legal representation due to the lack of resources.

7

22.     The associational Plaintiffs also have members and supporters in other states who have CCW permits in those states, and wish to have their permits honored when they visit California. Plaintiffs thus bring this action to vindicate their own Second Amendment rights to publicly bear arms for self-defense, or the rights of their members and supporters to do so. While the associational Plaintiffs seek general injunctions on behalf of all similarly-situated Californians the challenged laws and practices affect, they also specifically seek relief on all claims as to each and every one of their members and supporters who might otherwise lack the litigation experience and resources of the associational Plaintiffs.

23.     All individual Plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law, and currently own at least one firearm. Each individual Plaintiff desires to carry a firearm in public for lawful self-defense and would do so, but for the challenged statutes, policies, and practices.

24.     All individual Plaintiffs are members of the associational Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and Gun Owners of America, Inc.

25.     Plaintiff Erick Velasquez is a resident of Los Angeles County and a law-abiding citizen of the United States. Mr. Velasquez had a CCW permit issued pursuant to California Penal Code Section 26150 by Los Angeles County Sheriff's Department. He carried a handgun daily for two years, without any incident.

26.     On April 10, 2023, Mr. Velasquez submitted his CCW permit renewal application with Los Angeles County Sheriff's Department, expecting a simple process and quick approval given there had been no issues the last two years.

27.     Then, on May 3, 2023, Mr. Velasquez was the unfortunate victim of a crime. A burglar broke into his vehicle and stole three handguns, along with other valuables. The handguns were stored in a range bag in the locked trunk of the car, in compliance with California Penal Code section 25610(a)(1).

8

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

28.    Mr. Velasquez promptly called the police to report the theft. An officer from the Vernon Police Department arrived at the scene and took a report, which noted that Mr. Velasquez was eager to have the thief brought to justice. But as of this date, the perpetrator has not been found.

29.    On August 23, 2023, Defendant Luna denied Mr. Velasquez's renewal application. As a reason for denial, the letter had the box for "other" but provided no further explanation for the denial. Seeking clarity, Mr. Velasquez eventually communicated with LASD Sergeant Berner, who explained that the theft of the firearms was the reason for the denial. Mr. Velasquez asked how he could appeal, but Sergeant Berner told him there was no appeal process. He encouraged Mr. Velasquez to apply again with the City of Downey instead, as they might not have similar restrictions.

30.    While California Penal Code sections 26202(a)(5) and 26202(a)(9) were not yet in effect when Mr. Velasquez's permit was denied, to the extent Defendants argue that those sections prevent them from issuing him a CCW permit now, he contends they are unconstitutional as applied to him.

31.    Plaintiff Sherwin David Partowashraf is a resident of Los Angeles County and a law-abiding citizen. After waiting over a year and a half on his application, on October 3, 2023, the application for a CCW permit was denied by LASD. Even though California law requires a reason for the denial be given, the reasoning for the denial was nothing more than a checkmark next to "other".

32.    Mr. Partowashraf would come to learn that he was denied a permit because a former girlfriend had filed for a temporary restraining order against him the prior year, after an attempt to extort him had failed.

33.    At the time, Mr. Partowashraf complied with the law and turned in his firearms to the police to be held while the temporary restraining order was in effect. Following a hearing, the temporary restraining order was promptly dissolved and the request for a restraining order was discharged.

9

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

34.     Mr. Partowashraf then had to go through a tedious process to get his firearms back, involving him submitting requests for *each* firearm to the California Department of Justice for them to run background checks so he could have them returned to him. After being approved, he scheduled a time to pick up the firearms and received them without further trouble. The California DOJ has thus itself confirmed Mr. Partowashraf is not dangerous. If law enforcement thought he was still dangerous, they could have filed for a gun violence restraining order under California Penal Code section 18100, but they did not do so.

35.     Mr. Partowashraf contends that his rights should not be denied because of a dissolved temporary restraining order, especially following the Supreme Court's ruling in *Rahimi*.

36.     While California Penal Code section 26202(a)(3) was not yet in effect when Mr. Partowashraf's permit was denied, to the extent Defendants argue that it prevents them from issuing him a CCW permit now, he contends it is unconstitutional as applied to him.

37.     Plaintiff Charles Messel is a resident of Los Angeles County and a law-abiding citizen. Mr. Messel submitted his CCW permit application to LASD on July 1, 2022. Having heard nothing by April 2023, he contacted the department to inquire about his application.

38.     The response he received stated: "We were several months behind in opening and entering applications in our tracking system. Although you applied earlier, your application wasn't entered into our tracking system until 11/2/22. We are currently working on applications that went into our tracking system in July of 2022. Thank you for your patience."

39.     As of the filing of this action, Mr. Messel had still not been issued a permit or received further communications about his application's status from LASD. More than 17 months had elapsed since his initial application. Following the filing of this action and the filing of a preliminary injunction to compel LASD

10

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

1  to issue Mr. Messel a permit, only then did LASD finally process his application,
2  nearly two years after he had submitted his application.

3      40.    Plaintiff Brian Weimer is a resident of Los Angeles County and a law-
4  abiding citizen. Mr. Weimer is employed by Los Angeles County as a firefighter on
5  Catalina Island.

6      41.    Like Mr. Messel, Mr. Weimer applied for a CCW permit with LASD
7  and still has not been issued one. Mr. Weimer applied in January 2023, over a year
8  ago, but still has not been issued a permit or a denial. His constitutional right to
9  carry a firearm for self-defense has been denied to him.

10     42.    Plaintiff Jung Yun is a resident of Los Angeles County and a law-
11 abiding citizen. Mr. Yun applied for his CCW permit with LASD in September of
12 2022. When he last followed up on December 6, 2023, he received a response
13 saying that his application had not even been assigned to an investigator yet, and no
14 further timeline was provided. Finally, on August 27, 2024, he received an initial
15 telephonic interview and was told he would get additional instructions in
16 approximately two months.

17     43.    Plaintiff Albert Medalla is a resident of Los Angeles County and a
18 law-abiding citizen. He works the graveyard shift at Cedars-Sinai Medical Center
19 as an ultrasound technologist. Due to rising crime in his area, he desires to be able
20 to carry a firearm for self-defense. He applied for his CCW permit with LASD on
21 October 31, 2023. His initial interview is not scheduled to occur until August 11,
22 2025.

23     44.    Plaintiff Clarence Rigali is a resident of La Verne and a law-abiding
24 citizen. Mr. Rigali is 60 years old and disabled. He was a Union Millwright from
25 1981 until 2003, when he was injured in a serious power plant accident. He
26 possesses a Utah CCW permit, which required a criminal background check to
27 obtain.

28     45.    Mr. Rigali lives in a senior citizen mobile home park. Given his fixed

11

1   income, the unreasonable and unjustifiable approximately $900 in fees and costs to

2   apply for and obtain a La Verne CCW permit exceeds his modest means and that

3   has prevented him even from applying for a permit. He has been priced out of his

4   constitutional rights.

5   46.     Mr. Rigali also objects to the psychological exam LVPD requires,

6   which is an unconstitutional suitability determination. When he sustained his work-

7   related injury in 2003, a protracted lawsuit ensued following that injury, and Mr.

8   Rigali was sent to several antagonistic psychologists for examination as the defense

9   tried to disprove his injuries and claim he was a malinger. That horrible experience

10  has made Mr. Rigali especially apprehensive about subjecting himself to another

11  such exam, let alone as a precondition to exercising an enumerated right.

12  47.     Plaintiff Keith Reeves is a resident of La Verne and a law-abiding

13  citizen,. He is a certified NRA pistol instructor and a range safety officer. He has

14  CCW permits issued by both Arizona and Utah, which are honored by several states

15  but not California. Both of Mr. Reeves' permits required a criminal background

16  check to obtain.

17  48.     Mr. Reeves applied for a CCW permit in January 2014, and was

18  denied in May 2015 because he was deemed to lack sufficient "good cause," a

19  criterion the Supreme Court struck down in *Bruen* seven years later. Post-*Bruen*,

20  Mr. Reeves wishes to reapply for a permit, but cannot afford to do so due to the

21  excessive application and issuance fees charged by LVPD.

22  49.     Mr. Reeves also refuses to subject himself to an unconstitutional

23  psychological exam. Once the unconstitutional requirements are removed or

24  invalidated, he will apply for a permit without delay, but has refrained from doing

25  so due to the challenged restrictions.

26  50.     Plaintiff Cynthia Gabaldon is a resident of La Verne and a law-abiding

27  citizen. She has trained with firearms for most of her life.

28  51.     Encouraged by the Supreme Court's ruling in *Bruen*, Mrs. Gabaldon

12

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

1  decided it was time to obtain a CCW permit. Unfortunately, the exorbitant fees

2  LVPD charges have dissuaded her from applying. Mrs. Gabaldon is self-employed

3  and has a son in college. Given her limited income and her expenses, she cannot

4  afford LVPD's excessive fees to exercise an enumerated right. Mrs. Gabaldon also

5  objects to subjecting herself to a psychological examination.

6      52.   Plaintiff David Broady is a resident of Nevada and a law-abiding

7  citizen. He is a retired California prosecutor, last working as a Senior Deputy

8  District Attorney for the Placer County DA's office from 1995 to 2020. Before that,

9  he worked in the Riverside County DA's office from 1991 to 1995.

10      53.   Mr. Broady had California CCW permits in Riverside County and later

11  Placer County, from the early 1990s until 2020 when he moved to Nevada. Since

12  then he has had a Nevada CCW permit, but cannot obtain a California CCW permit.

13  California does not honor his Nevada permit.

14      54.   This is a problem for Mr. Broady because he still frequently visits

15  California as he owns property in this state and has family here. He also remains an

16  active member of the California Bar. He joins this lawsuit against California

17  Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition

18  on the right to carry against citizens from other states.

19      55.   Mr. Broady, for himself and on behalf of other nonresidents who have

20  out-of-state CCW permits, as well as on behalf of the members and supporters of

21  the associations who live outside of California, seeks to have his Nevada permit

22  honored by the State of California.

23      56.   Plaintiff Stephen Hoover is a resident of Florida, and a law-abiding

24  citizen. He is a PhD candidate at the Center for Complex Systems and Brain

25  Sciences in the Charles E. Schmidt College of Science at Florida Atlantic

26  University. He owns firearms and has a Florida-issued CCW permit.

27      57.   Mr. Hoover spent a significant amount of time in California in the

28  summer of 2023 and plans to return for work and leisure purposes in the near

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

future.

58.   While he was in California, he sought to obtain a California CCW permit from the Monterey County Sheriff's Department, as California would not honor his Florida CCW permit, but he still desired to be able to exercise his right to carry for self-defense. Yet in spite of otherwise meeting the criteria for eligibility, his application was denied because he was deemed ineligible for a CCW permit under Penal Code section 26150(a)(3), as he is not a resident of the county he applied in, nor a resident of California.

59.   Mr. Hoover joins this lawsuit against California Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry against citizens from other states.

60.   Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. SAF is dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also incurs significant expenses to sponsor public interest litigation to defend its interests and to disseminate information to like-minded individuals. SAF members who want CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times, exorbitant fees, and unconstitutionally subjective permit issuance criteria that violate the U.S. Constitution. SAF's policies specifically include the dedication of its resources, litigation experience, and economies of scale for the purpose of representing people who would otherwise lack the means and access to resources to successfully bring lawsuits to compel

14

state and local governments to comply with the Constitution, as intended by the Fourteenth Amendment, its enforcement provisions, and Congressional statutes enabling the enforcement of the Constitution by private actors.  See: 42 U.S.C. section 1983, 1988.

61.    Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation and a not-for-profit membership organization with its principal place of business in Springfield, Virginia, and is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. It has more than 2 million members and supporters across the country, including residents within this judicial district and throughout the State of California. GOA members who wish to obtain CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria.

62.    Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation and a not-for-profit legal defense and educational foundation with its principal place of business in Springfield, Virginia and is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code. GOF was formed in 1983 and is supported by gun owners across the country, within this judicial district, and throughout the State of California who, like the individual Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB 2. GOF supporters who wish to obtain CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear

15

arms.

63.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit organization incorporated under the laws of the state of California with headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of the Second Amendment in California. GOC members who wish to obtain CCW permits but reside in Los Angeles County or La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria.

64.    Plaintiff CRPA is a non-profit membership and donor-supported organization qualified as tax-exempt under Section 501(c)(4) of the Internal Revenue Code, with its headquarters in Fullerton, California. Founded in 1875, CRPA seeks to defend the civil rights of all law-abiding individuals, including the enumerated right to bear firearms for lawful purposes like self-defense. CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the general public. CRPA members who want CCW permits but reside in Los Angeles County or the City of La Verne are subject to lengthy wait times or exorbitant fees, and also unconstitutionally subjective criteria.

**Defendants**

65.    Defendant LASD is a local government entity created under the laws of California, and it exists as an agency of Los Angeles County. LASD is a political subdivision of Los Angeles County. LASD is responsible for issuing CCW permits.

66.    Defendant Robert Luna is the elected Sheriff of Los Angeles County. Defendant Luna is and, at all times relevant to this complaint, was one of the ultimate policy makers for Defendant LASD, and he has authority and responsibility under California Penal Code section 26150 to issue carry permits within the county. He is directly responsible for promulgating, enforcing, and

16

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

continuing the policies of his Department, including the unlawful policies and procedures complained of herein. Luna is sued solely in his official capacity.

67.     Defendant LVPD is a local government entity created under the laws of California, and it exists as an agency and subdivision of the City of La Verne. LVPD CCW permit applications and renewals for residents of the city.

68.     Defendant Colleen Flores is the Chief of Police of LVPD. She is sued in her official capacity. She has authority and responsibility under California Penal Code section 26155 to issue carry permits to residents of La Verne. Defendant Samuel Gonzalez succeeded Chief Flores following the filing of this action and the filing of a preliminary injunction motion by Plaintiffs in the action, and has assumed the rights and obligations of Chief Flores in that position, including the ability to act or refrain from acting, in providing the relief sought by Plaintiffs in this action.

69.     Defendant Robert Bonta is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Bonta is charged by Article V, section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Bonta also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of those respective officers. Defendant Bonta's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California.

70.     The true names or capacities–whether individual, corporate, associate, or otherwise–of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

## JURISDICTION AND VENUE

71.     The Court has original jurisdiction of this civil action under 28 U.S.C.

17

§ 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

72.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and their claim for attorney's fees is authorized by 42 U.S.C. § 1988.

73.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district. Los Angeles County Sheriff's Department and La Verne Police Department are both located within this district.

## GENERAL ALLEGATIONS

74.     The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms and protects, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

75.     The Supreme Court has also held that the Second Amendment right to keep and bear arms, via Fourteenth Amendment incorporation, applies equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty") (emphasis added).

76.     *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical

evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

77.    Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).

78.    In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

79.    In all issues presented in this lawsuit, Plaintiffs contend that their proposed course of conduct is exactly the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." *Bruen*, 597 U.S. at 32. In that case, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas". *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct, because that "showing of nonspeculative need" was the <u>*burden*</u> on the Second <u>Amendment right</u>. The burden is not part of the proposed course of conduct, it is

19

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

the law or practice that is being challenged. In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense without unreasonable fees". *Bruen*'s simpler "carrying handguns publicly for self-defense" applies in this case.

## California's Law Regarding CCW Permit Issuance

80.    Following the California Legislature's enactment of SB 2, which takes effect in January of 2024, California law imposes the following CCW permit application requirements:

(a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:

(1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

(2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a) (West 2023); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance).

81.    Under the recently revised Penal Code section 26205 operative

20

January 2024, a licensing authority:

> shall give written notice to the applicant indicating if the license under this chapter is approved or denied. The licensing authority shall give this notice within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later. The licensing authority shall give this notice within 120 days[2] of receiving the completed application for a license renewal.

82.    Under Penal Code section 26190(b)(2), only 50 percent[3] of the "additional local fee"—what the issuing authority may charge CCW permit applicant above the DOJ's application fees—may be charged at the time the CCW permit application is submitted. The balance may be collected only when a permit is issued. Furthermore, the additional local fee cannot exceed the actual reasonable costs incurred by the locality in processing the application.

83.    While *Bruen* expressly forbids subjective criteria be used during a licensure process, California law does too, at least to the extent the standard DOJ CCW permit application does not require such information. According to Penal Code section 26175(g), "[a]n applicant shall not be required to complete any additional application or form for a license, except to clarify or interpret information provided by the applicant on the standard application form." Thus, local requirements (such as Defendant LASD's) that an applicant produce copies of past employment files or identify a need for self-defense are not within the ambit of the DOJ's standard permit application.

84.    California law authorizes a local issuing authority to conduct psychological testing prior to issuance of a concealed carry license. This provision of California's CCW licensing regime manages to violate more than just the Second Amendment. It violates the presumption of sanity, it places an impressible burden

---

[2] The 120-day time limit was 90 days prior to the passage of SB 2.

[3] This additional local fee was capped at 20 percent prior to the passage of SB 2.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

1  on exercising a fundamental right, and violates the procedural due process

2  guarantees of the Fourteenth Amendment.

3      85.    Psychological testing has the effect of transferring the discretionary

4  issuance of a permit to exercise an enumerated right from a government official to a

5  psychologist. *Bruen's* holding rejects "suitability" determinations in permit

6  issuance schemes, and a psychological evaluation is a per se a suitability

7  determination. Such an evaluation impermissibly introduces the subjective

8  impressions and opinions of the person conducting the evaluation into the permit

9  issuance determination, rather than using objective criteria such as prior mental

10  health adjudications. In that sense, a psychological exam to determine whether an

11  applicant has the proper temperament to bear arms is nothing more than a

12  requirement that an applicant demonstrate "good moral character" in order to bear

13  arms – something that *Bruen* definitively forecloses by rejecting "suitability"

14  determinations. And that is to say nothing about the utter dearth of a Founding-era

15  tradition of testing the mental condition of each and every individual seeking to

16  exercise their rights to carry arms in public.

17      86.    What is more, California law permits local issuing authorities to

18  impose this unconstitutional and subjective psychological-suitability determination

19  on individuals as a prerequisite to carry a firearm, even after they have already

20  demonstrated their lawful entitlement to possess a firearm. In other words, the

21  CCW applicant has already passed a background check (including a check of a

22  history of prior disqualifying mental health commitments or holds) as a condition of

23  purchasing a firearm. And this already-passed background check is the same

24  background check that a CCW permit applicant will again have to pass during the

25  permit-issuance process, prior to any psychological evaluation being performed.

26      87.    Furthermore, the excessive cost and financial burden of such a

27  psychological test impermissibly shifts the burden to CCW applicants in violation

28  of *Bruen.*

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

88.     California law already provides for fully disarming any person subjected to a psychological hold when a qualified professional has determined that the individual is a danger to themselves or others. *See* Cal. Welf. & Inst. Code §§ 5150, 5250, 8100-8108. A person's disqualifying mental health hold is a mandatory record forwarded to and maintained by the California Department of Justice for regulating firearm possession. *Id.,* §§ 8104-06. Yet even after a mental health hold, the State of California, not the individual citizen, bears the burden of proving a threat to public safety based on evidence of psychological disqualification. *Id.,* § 8103(f)(6). SB 2 contradicts existing law in California by requiring a law-abiding resident to prove a negative – i.e., that they are not insane or psychologically impaired.

89.     For all of these reasons, Plaintiffs also challenge the constitutionality of California Penal Code section 26190(e),[4] which permits issuing authorities to mandate psychological testing.

90.     SB 2 also added new subsections to the Penal Code that allow issuing authorities to disqualify a permit applicant due to loss or theft (being a victim of crime) of a firearm. Specifically, an applicant is disqualified if: "In the 10 years prior to the licensing authority receiving the completed application for a new license or a license renewal, [he] has experienced the loss or theft of multiple firearms due to the applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm. For purposes of this paragraph, "multiple firearms" includes a loss of more than one firearm on the same occasion, or the loss of a single firearm on more than one occasion." *See* Cal. Penal Code § 26202(a)(9) (West 2023).

91.     An applicant can also be denied if he: "[f]ailed to report a loss of a firearm as required by Section 25250 or any other state, federal, or local law

---

[4] Designated 26190(f) prior to the passage of SB 2.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

1  requiring the reporting of the loss of a firearm." *See id.* § 26202(a)(10).

2      92.    SB 2, which took effect following the filing of this lawsuit, also added

3  Penal Code section 26202(a)(3), which prohibits anyone who has had a restraining

4  order issued against them from being granted a permit for five years from the date

5  the order expired. This law applies even to *temporary* restraining orders that were

6  dissolved upon a hearing, such as in Plaintiff Partowashraf's situation.

7      93.    SB 2 also added Penal Code section 26202(a)(5), which disqualifies

8  anyone who "Has engaged in an unlawful or reckless use, display, or brandishing of

9  a firearm." In its opposition to Plaintiffs' motion for preliminary injunction, LASD

10  argued this provision also barred Plaintiff Velasquez from getting his permit

11  renewed, even though the denial occurred prior to SB 2's effective date.

12      94.    None of these additional criteria imposed on license applicants

13  comport with the Second Amendment, as there is no broad and enduring historical

14  tradition of disarming Americans because they have been victimized by criminals,

15  or temporarily disarmed until a hearing. Thus, Plaintiffs seek to enjoin Defendant

16  Bonta from enforcing these statutory provisions.

17      95.    Both Plaintiff Velasquez and Plaintiff Partowashraf had their CCW

18  permit applications denied before SB2 took effect. However, to the extent

19  Defendant LASD argues that its provisions bar it from issuing permits to these two

20  Plaintiffs, Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) should be

21  declared unconstitutional as applied to them.

22

23  **LASD Is Misled by the Attorney General and Does Not Address Lengthy Wait Times Despite Several Letters from CRPA Warning of Litigation**

24      96.    Following the *Bruen* ruling, CRPA sent letters to all California

25  sheriff's departments, including Los Angeles County. The first letter was sent the

26  day after the June 2022 *Bruen* ruling, and explained that the "good cause" portion

27  of California's CCW permit issuance laws was no longer enforceable.

28      97.    But rather than complying with the Supreme Court's decision, the

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Attorney General rebelled, responding to the *Bruen* ruling by claiming that local sheriffs and police chiefs in fact could *add* more steps and impose *additional* subjective considerations to the permit application process in light of *Bruen*. On June 24, 2022, the Attorney General sent a Legal Alert to law enforcement officials across California, instructing it was proper under *Bruen* to apply a heightened "good moral character" requirement to the application process which included subjective considerations beyond the applicant passing a criminal and mental health background check.

98.    In response to the Attorney General's malicious and intentional attempt to undermine the *Bruen* ruling, CRPA sent a second letter to several sheriff's departments, including LASD, reiterating that the Second Amendment, as clarified by the *Bruen* ruling, will only permit "narrow, objective, and definite" standards to be used in issuing permits to law-abiding citizens,[5] and that they should ignore the Attorney General's unlawful instruction to his subordinate law enforcement agencies.

99.    In the months following CRPA's correspondences to the county sheriffs, CRPA received responses from several departments stating that they would begin complying with *Bruen*. In contrast, LASD never responded. It did begin to process CCW permit applications, albeit at an unlawfully slow pace, with wait times routinely stretching beyond one year for many CRPA members. However, CRPA abstained from litigation, believing it best to allow the law enforcement authorities some time to adjust to the implied mandate of *Bruen*.

100.    In August 2022, former LASD Sheriff Alex Villanueva announced that "LASD will only accept first-time CCW applications from those who reside within our contract cities or unincorporated communities. Applicants residing in a

_____

[5] Again, Plaintiffs do not concede that any mandatory permitting scheme was found permissible by *Bruen*, as most of the states that have such objective "shall issue" schemes also allow constitutional carry or open carry without a license.

25

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

municipality other than those served by LASD shall contact their local police department and apply for a CCW license." This meant that several cities in Los Angeles County, that had not set up a CCW permit program, like La Verne, would now need to do so, even though the Sheriff is obligated to accept and process such applications from *any* county resident—whether they live in a "non-contract" city or not—under California Penal Code section 26150.

101.   This illegal LASD policy change has contributed to the high fees problem. LASD's refusal to grant permits to residents of municipalities inside the county eliminates a cheaper route to obtaining a permit for county residents, and gives them no way around the exorbitant fees that some municipalities, like LVPD, have imposed.

102.   As CRPA received an ever-increasing volume of complaints about waiting times and fees from its members in the months following *Bruen*, it sent a letter to newly elected Sheriff Luna on February 21, 2023. The letter advised that long wait times contravene *Bruen's* express language, violate the Second Amendment, and are unlawful under California law, and promised to forbear litigation should the Sheriff imminently address the long wait times at issue.

103.   Sheriff Luna's office responded by letter dated March 9, 2023, stating that LASD was "taking steps to reduce processing times and improve our overall processes." That letter detailed how the adoption of new application processing software (Permitium) may reduce processing times and alluded to potentially increasing staffing in the CCW unit to address the backlog of applications. The Sheriff stated that he hoped the situation would be much better in six months, and he promised to provide regular progress updates (that never materialized).

104.   CRPA responded on March 14, 2023 writing that, while Sheriff Luna's letter was encouraging, another six months was not an acceptable timeframe, given the thousands of applications lingering for a year or more. CRPA also noted that LASD previously admitted that long wait times are unconstitutional. In a July 7,

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

2022, letter to the Chief of Police of San Gabriel explaining why LASD could no longer accept applications from residents of San Gabriel, the Department wrote in pertinent part:

> Although the LASD can process CCW applications, as currently staffed, there will be significant delays because we do not have sufficient personnel required for the anticipated surge. As such, any unnecessary delays would violate the SCOTUS decision, thus violating the rights of the citizens of Los Angeles County and opening the LASD and other law enforcement agencies to otherwise avoidable litigation.
>
> RECEIVED
> JUL 1 1 2022
> SAN GABRIEL PD
> ADMINISTRATION
>
> 211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012
> A Tradition of Service
> ~ Since 1850 ~

105.    CRPA's March 14, 2023 letter also expressed CRPA's view that adopting a policy of not processing permit applications from LA County residents living in non-contract municipalities was illegal. CRPA is unaware of any other California county sheriff that refuses to process CCW permit applications for that county's residents merely because those residents live in a "non-contract city."

106.    Unfortunately, in a responsive letter dated March 24, 2023, the Sheriff only repeated his vague promise to "improve efficiency and reduce processing times," but refused to resume accepting applications from residents of non-contract cities.

107.    As of the filing of this lawsuit, the wait times for LASD permit applicants in fact have grown worse instead of better, with CRPA members complaining of wait times in excess of 15 months. Some individuals who submitted applications at the time of the *Bruen* ruling in June 2022 have not even been contacted for their initial interview, as of November 2023.

108.    LASD does not deny that its wait times are absurdly long. In response to a Public Records Act request by Attorney Jason Davis, the Department confirmed that applicants could expect wait times of, "from application entry to issuance . . . a year to a year and a half."

109.    CRPA sent a final letter to the Sheriff on September 14, 2023, warning

27

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

that litigation was imminent if no immediate changes to accelerate application processing were made. A response was received from the Sheriff on November 1, 2023, making the same vague promises as before, however, no concrete steps to implement these purported fixes or timelines for doing so were identified.

### LVPD's Exorbitant Fees and Unconstitutional Psychological Exam Requirement

A.    *LVPD's Permit Application Fees Are Dramatically Higher Than Most Other Issuing Authorities in California and Elsewhere*

110.    Like many other municipalities in California, La Verne did not historically have a CCW permitting process, but instead referred applicants to LASD. But as discussed *supra*, after *Bruen*, LASD announced that it "will only accept first-time CCW applications from those who reside within our contract cities or unincorporated communities and encourage applicants residing in a municipality other than those served by LASD to contact their local police department and apply for a CCW license."[6] Consequently, La Verne and other cities were forced to establish their own permitting programs.

111.    LVPD took several months to set up its permit process, during which time its residents had no operative permitting authority to which to apply in order to obtain a permit to exercise the constitutional right to bear arms outside the home. Eventually, LVPD announced in early 2023 that it would begin accepting applications, and published the schedule of fees.

112.    However, the outrageous fee schedule included $398 for "processing," $150 for "administrative" costs, $93 for "licensing," $20 for fingerprinting, $150 for a psychological exam, $20 for a card-issuance fee, and $250 for a training course. Applicants would thus have to pay *more than $1,000* merely to be approved to exercise their constitutional self-defense right. Following the filing of the

---

[6] *See* <https://lasd.org/ccw/#ccw_fees> (as of November 30, 2023).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

original complaint, La Verne reduced its fees slightly, by $145. As of now, the total cost to the applicant will be around $750 to $950, with the variance depending on the precise cost of the training course. Renewals every two years will cost somewhere around $550 to $750, again depending on the cost of the training course.

113.    This cumulative fee schedule significantly exceeds what CCW applicants in other states pay. For example, in Arizona, where applying for a permit is entirely optional because Arizona is a constitutional carry state, the application fee is $60 plus the cost of fingerprinting that must be submitted with the application.[7] In Texas, the application fee is $40.[8] Florida charges $55 for its issuance fee and $42 for fingerprinting.[9] Utah charges $53.25 for Utah residents, and $63.25 for non-residents.[10] In Minnesota, the fee may not exceed $100.[11] Nevada charges $100.25.[12] Washington State charges $36 plus fingerprinting fees.[13]

---

[7] *See* "Concealed Weapons & Permits | Arizona Department of Public Safety," <https://www.azdps.gov/services/public/cwp> (as of November 30, 2023).

[8] *See* "Licensing & Registration | Department of Public Safety," <https://www.dps.texas.gov/section/handgun-licensing/licensing-registration> (as of November 30, 2023).

[9] *See* "Concealed Weapons License Fees," <https://www.fdacs.gov/content/download/7438/file/Concealed-Weapons-License-Fees-06-26-2017.pdf> (as of November 30, 2023).

[10] *See* "How do I Apply for a Concealed Firearm Permit? | DPS – Criminal Identification (BCI)," <https://bci.utah.gov/concealed-firearm/how-do-i-apply-for-a-concealed-firearm-permit> (as of November 30, 2023).

[11] *See* "Administrative Services – Permit to Carry FAQ," <https://dps.mn.gov/divisions/bca/bca-divisions/administrative/Pages/Permit-to-Carry-FAQ.aspx> (as of November 30, 2023).

[12] *See* "Concealed Firearms Permits," < https://www.lvmpd.com/en-us/RecordsFingerprintBureau/Pages/ConcealedFirearms.aspx > (as of November 30, 2023).

[13] *See* "*Fees: Firearms*" <https://www.dol.wa.gov/business/firearms/fafees.html> (as of November 30, 2023).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

114.    California's short two-year permit period is also an outlier that makes the average annual to exercise the carry right much greater than other states'. An Arizona CCW permit, for example, is good for five years and costs only $60. Thus, an Arizona permit costs roughly $12 a year, whereas a La Verne permit costs no less than $500 per year.

115.    The fees LVPD charges eclipse even other issuing authorities *within California*. Defendant LASD, for example, charges a $43 initial fee, [14] a $173 issuance fee, plus the cost of training[15] and livescan,[16] which applicants contract for on their own through a third party. The San Diego County Sheriff's Department charges a $27.60 application fee,[17] a $93 livescan fee, and a $110.40 final fee, with the training provider chosen and contracted with by the applicant. The Orange County Sheriff's Department's fees total $169 for the application, [18] with applicants completing the livescan and training through third parties they choose and contract with.

116.    LVPD's claimed processing costs are not only excessive, but not even comparable to similar cities' fees. La Verne's next-door neighbor Glendora charges $243 in total for processing (including livescan), plus the cost of the training course. [19] Burbank charges $100, plus the cost of livescan and the training course.[20]

---

[14] *See* <https://lasd.permitium.com/entry> (as of November 30, 2023).

[15] Training courses are typically offered by an approved list of providers, with the class costing between $175 and $400 depending on the provider.

[16] Typically around $100, depending on the provider.

[17] *See* <https://www.sdsheriff.gov/i-want-to/get-a-permit-or-license/regulatory-licenses-and-fees/concealed-weapons-license> (as of November 30, 2023).

[18] *See* <https://ocsd.permitium.com/ccw/start> (as of November 30, 2023).

[19] *See* <https://glendorapdca.permitium.com/ccw/start> (as of November 30, 2023).

[20] *See* <https://burbankpdca.permitium.com/ccw/start> (as of November 30, 2023).

30

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Whittier charges $243 (including livescan), plus the cost of the training course.[21] Even the City of Los Angeles is not as expensive as La Verne, charging $268 plus the cost of livescan and the training course.[22] Moreover, none of the examples listed here require a psychological exam, which saves applicants $150. Permit renewal fees for these localities are generally under $100.

117. In general, most applicants in California will spend around $400-$600 to get their permits. While this is expensive, it is a relative bargain compared to LVPD's astronomical initial $1,000 price tag for government approval to bear arms in public. Following the filing of this complaint and a preliminary injunction challenging such a fee as constitutionally excessive, the City of La Verne voted to slightly lower the fee by reducing the psychological exam cost. As a result, the fee is now approximately $900, which is still constitutionally excessive and infringes on the exercise of the right under the test set forth in Bruen.

118. Part of the LVPD's application process requires Plaintiffs Rigali, Reeves, and Gabaldon to pay to have LVPD Chief Gonzalez interview them for an hour as a condition of receiving a CCW permit. Plaintiffs further allege that this process applies to any member of any of the associational Plaintiffs who is a resident of La Verne who wants to receive a CCW permit, and further allege that such a process applies to any other member of the public who is a resident of La Verne who wants to receive a permit. Not only do Plaintiffs allege that paying for an hour of the Chief's time is constitutionally excessive in terms of the cost imposed for exercising Plaintiffs', associational members' and supporters, and La Verne residents' Second Amendment rights, but that the cost is for a purpose

---

[21] *See* <https://whittierpdca.permitium.com/ccw/start> (as of November 30, 2023).

[22] *See* <https://www.lapdonline.org/office-of-the-chief-of-police/office-of-special-operations/detective-bureau/detective-services-group/ccw-carry-concealed-weapon-license/> (as of November 30, 2023).

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

impermissible under the Second Amendment and the test set out in *Bruen*. Plaintiffs allege that any questions or criteria the Chief might ask or assess in such an interview would be necessarily subjective and give discretion to the Chief to deny a permit application in violation of *Bruen*. Plaintiffs thus allege that both the process of being interviewed itself as well as the cost of the process to be interviewed by the Chief violates the Second Amendment.

      B.     *Outsourcing Application Processing to Third-party Processor MyCCW is Why LVPD is so Much Costlier Than Other Issuing Authorities.*

     119.   Of the 88 distinct municipalities in Los Angeles County, the only ones with grossly excessive fee schedules similar to LVPD are those cities which, like La Verne, have outsourced CCW processing to a third-party private contractor called "MyCCW." These include cities like Santa Monica, San Gabriel, and Signal Hill.[23]

     120.   To use MyCCW to process residents' CCW Permit applications, those cities, including La Verne, pass on a number of exorbitant or illegal fees charged by MyCCW, including:

     a.    the entire application fee charged at the time the application is submitted, in violation of Penal Code section 26190, which caps the percentage of the total fee collected until after the application is approved;

     b.    a renewal fee of $348, in excess of the current renewal fee allowed under Section 26190.[24]

---

[23] *See* <https://www.myccw.us/> (as of November 30, 2023).

[24] It is unclear how contracting with MyCCW to perform CCW Permit application processing for LVPD is legal in any aspect because, while a licensing authority may charge an additional fee for processing an application beyond the standard DOJ charges in an amount equal to that local authority's reasonable costs for processing, the Penal Code expressly requires that the additional fee collected be deposited in the local authority's treasury, not shared with a private contractor as profit. See Cal. Penal Code § 26190(b) (West 2023). However, Plaintiffs do not challenge the legality of the use of third-party processors such as MyCCW in this action, and limit their challenge to only the costs passed along to applicants for such use.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

121.    LVPD passes these unconstitutionally high and contrary to state law fees imposed by MyCCW's use onto its applicants. The $398 application fee, plus the $150 psychological examination—which most other cities and LASD do not require—explains in part why LVPD's CCW fee schedule is exorbitantly high, an outlier among outliers.

C.    *LVPD's Burdensome Psychological Examination.*

122.    LVPD's required psychological exam administered is invasive and burdensome, it violates procedural due process, and is fundamentally incompatible with the exercise of Second Amendment rights.

123.    The exam was originally administered at a facility in San Bernardino on weekdays. That drive took approximately an hour each way for a typical La Verne resident. The facility applicants were required to use was designed to test applicants applying for roles in law enforcement, not citizens exercising their Second Amendment rights. Yet, for reasons having no grounding in science or empirical evidence, LVPD required CCW permit applicants to fill out a psychological exam asking applicants the same questions that are used to screen its law enforcement personnel.

124.    Following this lawsuit and Plaintiffs' filing of a motion for preliminary injunction, La Verne changed its contractor for the psychological examination to Seal Beach Consulting and reduced the associated fee from $150 to $5 according to the MyCCW website's fee schedule. La Verne has represented that there is no remaining psychological exam fee to applicants, and it covers the entire cost.

125.    Applicants are interviewed by a psychologist, who ultimately makes a recommendation to the City with respect to whether the person should be entrusted with Second Amendment rights.

126.    The requirement that a law-abiding person affirmatively and

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

subjectively prove that they are psychologically suitable to exercise the right of self-defense is not grounded in any history or tradition of the right to bear firearms.

127.   Plaintiff CRPA sent several letters to La Verne identifying these issues with their CCW Permit scheme, but never received a response.

## California Must Honor CCW Permits Issued by Other States

128.   A number of states issue permits to nonresidents. Most states require no permit at all for nonresidents to carry within their borders. Others allow open carry. Although California does not honor any other states' CCW permits, dozens of states do honor each other's permits. For example, a Utah CCW permit is valid in Nevada, Idaho, Montana, Washington, and 32 other states.

129.   In addition to a lack of any reciprocity for other states' permits, there is no process for nonresidents like Plaintiff Hoover and Plaintiff Broady to get a California CCW permit, even if they were willing to put up with the time and expense such a process would likely involve. In other words, if you are visiting California from another state, or if you need to cross into the state regularly for work, you check your federally enumerated right to carry for self-defense at California's border.

130.   California also does not honor nonresident permits even if they are held by its own residents, such as Plaintiffs Rigali and Reeves, who hold CCW permits issued by Utah and Arizona.

131.   California has no more authority to deny nonresidents' rights to public carry than it does to deny their rights to speak within its borders. On the contrary, the Second Amendment's reference to "'the people[]' … unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

132.   Our historical tradition of firearm regulation supports the idea that States may not impose their firearm carry requirements on nonresidents who are

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

otherwise legally allowed to own and carry firearms in their home states. Specifically, many carry laws in the 19th century had exceptions for those traveling in the state, called "traveler's exceptions". These included, but were not limited to, an 1831 Indiana law, an 1841 Alabama law, an 1820 Arkansas law, an 1813 Kentucky law, an 1878 Tennessee law, an 1878 Mississippi law, an 1867 Nevada law, and an 1864 California law.

133.    An analogous issue was already decided in 2015. Because Ohio would not allow for same sex marriages, James Obergefell and John Arthur decided to marry in Maryland. After learning that Ohio would not recognize their marriage, they filed a lawsuit. The Supreme Court ultimately held, in pertinent part, that "[t]he Fourteenth Amendment requires a State . . . to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-State." *Obergefell v. Hodges*, 576 U.S. 644, 644 (2015). In reaching this conclusion, the Court explained that:

> For some couples, even an ordinary drive into a neighboring State to visit family or friends risks causing severe hardship in the event of a spouse's hospitalization while across state lines. In light of the fact that many States already allow same-sex marriage—and hundreds of thousands of these marriages already have occurred—the disruption caused by the recognition bans is significant and ever-growing. As counsel for the respondents acknowledged at argument, if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined.

*Id*. at 680-681.

134.    This holding and its logic, with respect to an unenumerated right, apply just as much to the enumerated right to bear arms, and thus applies equally to CCW permits issued by other states as the Supreme Court instructs that it does to marriage licenses issued by other states. California may not completely deny Americans the right to carry for self-defense within California's borders just because they are not California residents.

135.    In the free speech context, an individual "faced with such an

35

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Similarly, if a non-resident's permit is not honored in California, and there is no way for them to get a California CCW permit, their only avenue to exercise their right to carry in defiance of California law.

### PLAINTIFFS SEEK DECLARATORY AND INJUNCTIVE RELIEF

136. Under *Bruen*, Defendants bear the burden of proving their policies comply with the Second Amendment. They will fail to do so, because their practices are entirely atextual and ahistorical, novel schemes developed in recent years or decades, and completely without any historical analogue.

137. Accordingly, Plaintiffs seek declaratory relief confirming that Los Angeles County Sheriff's Department's current CCW permit application regime violates the Second Amendment, imposing extraordinary delays and including forbidden suitability determinations. LASD's wait times also violate California Penal Code section 26205 because they exceed the 90 days (or 120 days after January 1, 2024) permitted by statute.[25] LASD's practice of exceeding this statutory time limit is facially unconstitutional, as even a mere wait time of 30 days was already deemed an unconstitutional delay on acquiring additional firearms after an additional purchase. *See* Nguyen v. Bonta, No. 320CV02470WQHMMP, 2024 WL 1057241, at *11 (S.D. Cal. Mar. 11, 2024). At minimum though, it is at least unconstitutional as applied to each of the individual Plaintiffs and the members and supporters of the associational Plaintiffs who have waited more than 120 days for their permits since submitting their applications.[26] These Plaintiffs seek declaratory

---

[25] Plaintiffs do not concede that either of these time periods is a permissible impediment to the exercise of an enumerated right.

[26] Contrary to representations made by Defendants at the hearing on preliminary injunction, once an applicant submits the application to LASD, there is no additional task the applicant needs to complete for LASD to start processing the

36

relief that their rights were violated beginning on the 121st day following their respective applications being submitted.

138.   Plaintiff Messel, who recently received his CCW permit, seeks declaratory relief and nominal damages confirming his rights were violated beginning on the 121st day following his application being submitted, and continuing until his permit was finally issued in May of 2024.

139.   LASD also violates California Penal Code section 26150 by refusing to accept applications from all residents of Los Angeles County.

140.   Plaintiffs also seek declaratory relief confirming that LVPD's current CCW permit application regime violates the Second Amendment because: it includes an unconstitutional psychological exam the City purports to utilize for applicants under California Penal Code section 26190(f)(1), because its fee schedule is exorbitantly expensive, and because permit issuance is conditioned upon unconstitutional suitability determinations instead of narrow, objective, and definite standards. Each of these are both facially unconstitutional, and unconstitutional as applied to the Plaintiffs and the members and supporters of the associational Plaintiffs.

141.   LVPD also violates Penal Code section 26190(b)(2) by collecting the entire application fee upfront, prior to licensure. LVPD's use of "MyCCW" violates Penal Code section 26190(b)(1) because it does not transfer its "additional fees" to the city treasury, instead paying a third-party provider. By charging over $25 for a renewal application, LVPD also violates Penal Code section 26190(b) ("The licensing authority may charge an additional fee, not to exceed twenty-five dollars

---

application or start the running of the statutory 120-day deadline to process the application. *See* Cal. Penal Code §§ 26150, 26170. Following submission of the application, the only additional tasks an applicant must complete are dependent on LASD timely handling the application and informing the applicant that, e.g., the applicant has been preliminarily approved so he or she can now take the firearms training course required under Section 26155. Contrary to LASD's representations, nothing of LASD's unconstitutional and statutorily impermissible delay is caused by inaction by these Plaintiffs or any similarly-situated applicants.

37

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

($25), for processing the application for a license renewal, and shall transmit an additional fee, if any, to the city, city and county, or county treasury.").

142.    Defendant Bonta has the burden of proving that Penal Code section 26190(f)(1)'s psychological examination requirement for obtaining a CCW license comports with the Second Amendment in light of *Bruen*'s prohibition on suitability determinations for CCW licenses. He will fail to do so. Constitutional rights are not conditioned on a quasi-medical professional's opinion of a person's emotional bona fides.

143.    Plaintiffs seek a declaration that *all* "the people" have the right to bear arms in public and, because of that, California must honor CCW permits issued by other states and allow residents of other states to apply for California CCW permits.[27]

144.    To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's changes to the Penal Code even though those changes came after their permits were denied, Plaintiffs seek a declaration that Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez and Partowashraf, respectively.

145.    Finally, Plaintiffs seek preliminary and permanent injunctive relief to compel Defendants to comply with the Second Amendment as clarified by *Bruen* and California law by correcting the violations listed above.

146.    As discussed previously, for each of these claims, each and every Plaintiff contends, and each member of an associational Plaintiff contends, that their proposed course of conduct is, as in *Bruen*, carrying handguns publicly for self-defense. To the extent that such a proposed course of conduct is deemed to be

---

[27] Again, Plaintiffs do not concede that permitting itself is constitutional, as there is no broad and enduring historical tradition of government licensure to bear arms in public.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

too general or otherwise insufficient for purposes of adjudication of their rights, Plaintiffs alternatively allege and describe more specifically their proposed courses of conduct as follows:

a.      On the issue of LASD's lengthy wait times, Plaintiffs Messel's, Weimer's, and Yun's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct, is lawfully carrying firearms publicly for self-defense without an unreasonable wait time to receive a permit to lawfully carry, which Plaintiffs define here as at least a wait time exceeding the 120 days allowed by State law. Plaintiffs allege that a wait time in excess of at least state law's requirements for issuing a permit violate the Second Amendment. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense on waiting in excess of 120 days for a permit in order to lawfully carry.

b.      On the issue of La Verne's exorbitant fees, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct,  is lawfully carrying firearms publicly for self-defense without unreasonable expense to the applicant, which Plaintiffs define here as a total expense that exceeds at least $500. Plaintiffs allege that a fee to obtain a permit to carry in self-defense in excess of $500 violates the Second Amendment. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry of a person who has not been adjudicated as being dangerous to the public, to pay any amount for such right, much less an amount in excess of $500.

c.     On the issue of nonresident carry, Plaintiffs Broady's and Hoover's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense in California, primarily by having California honor the permits of other states under the Second Amendment, and Privileges and Immunities and Equal Protection clauses of the Fifth and Fourteenth Amendments. Plaintiffs allege that not honoring their out-of-state permits, which were obtained under the same or similar requirements or burdens that California law imposes on its permittees, or which, in the alternative, have sufficient background checks and other processes that are both constitutionally sound and adequately reflect the reasons similar historical laws and regulations from the applicable historical period allowed restrictions on public carry, violates Plaintiffs' rights under the Second Amendment, and Privileges and Immunities and Equal Protection clauses. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on being a resident of the state in which the carry is to occur.

d.     On the issue of nonresident carry, Plaintiffs Broady's and Hoover's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense in California by alternatively allowing nonresidents to obtain California CCW permits in a manner that is constitutionally sound as to both the timing and the cost for obtaining those California permits. Plaintiffs further allege that timeliness for purposes of complying with the Second Amendment, and Privileges and Immunities, Due Process, and Equal Protection clauses, is the same amount

40

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

of time, or sooner, that a resident of California would receive such a permit. Plaintiffs further allege that appropriate cost for purposes of complying with the Second Amendment, and Due Process and Equal Protection clauses, is the same cost for a permit, or less, than a resident of California would pay to receive such a permit. Plaintiffs allege that not allowing nonresidents to carry in California with a California permit issued with the same costs and within the same timeframe residents receive their permits, violates Plaintiffs' rights under the Second Amendment, and Privileges and Immunities and Equal Protection clauses.  Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on being a resident of the state in which the carry is to occur.

e.    On the issue of cost for CCW applicants to be interviewed by the LVPD Chief, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific proposed course of conduct, and the more specific proposed course of conduct of the members and supporters of the associational Plaintiffs, is lawfully carrying firearms publicly for self-defense without submitting to or paying for a subjective interview process by the head law enforcement officer of a licensing entity like La Verne. On information and belief, there is no objective fact finding purpose of the Chief's interview, as objective information such as confirming the identity and residence of the applicant, conducting the state-mandated background check, confirming the lack of a disqualifying factor such as a disqualifying conviction, medical condition, or mental health hold or commitment, or confirming that the applicant has the appropriate live fire training, are all performed by other persons within the LVPD, by the DOJ, or by LVPD's contractor MyCCW.us. Plaintiffs allege that any CCW license approval process that allows for Chief Gonzales to

41

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

deny a permit application based on an applicant's responses to his questions during an interview allows subjective discretion by the permit issuer in violation of the Second Amendment and the Due Process Clause. Plaintiffs further allege that any state law allowing a local permitting entity to impose an exam requirement—including Penal Code section 26190(f)(1)—facially violates the Second Amendment, insomuch as it permits unconstitutional discretion by a permitting entity. Plaintiffs further allege that such statute is also unconstitutional as applied to each of the individual Plaintiffs who are residents of La Verne, insomuch as it acts as a barrier to applying for and receiving a CCW permit. Plaintiffs further allege that such statute is also unconstitutional as applied to any and all of the members and supporters of the associational Plaintiffs who reside in La Verne. On information and belief, one or more such members would have applied for a permit if not for the unlawful examination requirement.  On information and belief, one or more residents of La Verne would have applied for a permit if not for the unlawful examination requirement. Plaintiffs further allege that they are not aware of a single historical law or regulation from the applicable period, much less a historical tradition of such laws or regulations, conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on the sitting for an interview by the local Chief of Police, including a law or regulation imposed by a state like California or a locality like La Verne.

   f.  On the issue of psychological exams, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific proposed course of conduct, and the more specific proposed course of conduct of the members and supporters of the associational Plaintiffs, is lawfully carrying firearms publicly for self-defense without submitting to a psychological examination, insomuch as Plaintiffs allege that any requirement of an exam allows subjective discretion

42

by the permit issuer or its designated examiner in violation of the Second Amendment. Plaintiffs further allege that any state law allowing a local permitting entity to impose an exam requirement—including Penal Code section 26190(f)(1)—facially violates the Second Amendment and due process rights of Plaintiffs and other applicants, insomuch as it permits unconstitutional discretion by a permitting entity. Plaintiffs further allege that such statute is also unconstitutional as applied to each of the individual Plaintiffs who are residents of La Verne, insomuch as it acts as a barrier to applying for and receiving a CCW permit. Plaintiffs further allege that such statute is also unconstitutional as applied to any and all of the members and supporters of the associational Plaintiffs who reside in La Verne. On information and belief, one or more such members would have applied for a permit if not for the unlawful examination requirement. On information and belief, one or more residents of the State would have applied for a permit if not for the unlawful examination requirement. Plaintiffs further allege that they are not aware of a single historical law or regulation, much less a historical tradition of such laws or regulations, from the applicable period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on the passing of a psychological exam, including a law or regulation imposed by a state like California or a locality like La Verne.

       g.    Plaintiff Velasquez's more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense without being prevented from doing so because he had firearms stolen from his locked vehicle. Plaintiff alleges that disqualifying a person from lawfully carrying for self-defense, where there was no charged crime, no charged crime involving dangerousness, or no court or other adversarial proceeding, violates his Second Amendment and due process rights. Plaintiff alleges that

43

he is not aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a citizen forfeits his or her right to carry for self-defense if they had firearms stolen from them, nor is Plaintiff aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a disqualifying condition for carrying a firearm for self-defense could include the allegation committing a crime of recklessness in possessing a firearm where such crime was never charged nor adjudicated by a neutral magistrate.

h.    Plaintiff Partowashraf's more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense without being prevented from doing so due to a dissolved temporary restraining order that was issued against him. Plaintiff alleges that disqualifying a person from lawfully carrying for self-defense, where there was no adversarial proceeding adjudicating that person as dangerous, violates his Second Amendment and due process rights.  Plaintiff alleges that he is not aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a citizen forfeits his or her right to carry for self-defense if they were charged in a non-adversarial, non-criminal proceeding with a crime of violence, but, upon receipt of due process in the form of a noticed hearing in front of a judge or magistrate, were determined to have not committed such a crime nor be subject to a further prohibition on their possession or ownership of firearms.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

147.   Plaintiffs hereby re-allege and incorporate by reference the allegations

44

1    in the foregoing paragraphs as if set forth fully herein.

2    148.   As described previously, LASD violated and continues to violate the

3    rights of CCW permit applicants by taking over a year to process applications and

4    by engaging in forbidden suitability determinations.

5    149.   To the extent that the Los Angeles County Defendants contend they

6    will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due the

7    prohibitions in Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9),

8    such provisions are unconstitutional both facially and as applied to Plaintiffs

9    Velasquez and Partowashraf, and are not a constitutionally-permissible basis for

10   denying a permit to carry for self-defense.

11   150.   As a result, Plaintiffs' Second Amendment rights, as incorporated

12   under the Fourteenth Amendment, as well as the rights of the associational

13   Plaintiffs' members and supporters, are violated.

14   151.   Defendants are propagating customs, policies, and practices that

15   deprive or delay California residents, including Plaintiffs, of their constitutional

16   right to bear arms outside the home for self-defense "in case of confrontation," as

17   guaranteed by the Second and Fourteenth Amendments.

18   152.   Defendants cannot meet their burden to justify these customs, policies,

19   and practices that preclude Plaintiffs from exercising their enumerated rights.

20   153.   Plaintiffs are thus entitled to declaratory and injunctive relief against

21   such unconstitutional customs, policies, and practices.

22   **SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
23   **U.S. CONST. AMENDS. II, XIV**
     **RIGHT TO BEAR ARMS**
24   **42 U.S.C. § 1983**
     AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE
25   CHIEF OF POLICE SAMUEL GONZALEZ, AND DOES 1-10

26   154.   Plaintiffs hereby re-allege and incorporate by reference the allegations

27   in the foregoing paragraphs as if set forth fully herein.

28   155.   As described previously, LVPD has violated and continues to violate

45

the rights of CCW permit applicants by charging nearly $600 in total fees (not including the cost of training, livescan, and psychological review) and by engaging in forbidden suitability determinations with its psychological examination requirement.

156.   As described previously, LVPD has violated and continues to violate the rights of CCW permit applicants by requiring them to pay for and sit for a subjective interview with the LVPD Chief that allows the Chief to exercise unconstitutional discretion to deny a permit based on such interview.

157.   As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

158.   Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

159.   Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising their enumerated rights.

160.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

**THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

161. Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

162. The Supreme Court has explained that permitting regimes which deny licenses based on a "perceived lack of need or suitability" are unconstitutional. *Bruen*, 142 S. Ct. at 2123.

163. As described previously, California violates the right of CCW permit applicants by allowing issuing authorities to demand psychological exams at their discretion under California Penal Code section 26190(g).

164. California also refuses to recognize CCW permits issued by other states, whether they are held by residents or nonresidents. California also refuses to grant CCW permits to non-residents, thus providing no way for nonresidents to exercise their right to carry within its borders.

165. As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

166. To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's changes to the Penal Code even though those changes came after their permits were denied, Plaintiffs allege that Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez and Partowashraf, respectively.

167. The Attorney General is thus enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

168. Plaintiffs are entitled to declaratory and injunctive relief against such

47

unconstitutional laws, customs, policies, and practices.

**FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

169.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

170.    LASD's CCW permit process violates California Penal Code section 26205 by taking over a year to process permit applications.

171.    Additionally, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

172.    Defendants LASD and Sheriff Robert Luna are thus enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

173.    Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE
CHIEF OF POLICE SAMUEL GONZALEZ, AND DOES 1-10

174.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

175.    LVPD's CCW permit process violates several portions of the California Penal Code.

176.    By inflating its own costs through the imposition of additional requirements beyond a simple DOJ background check and an interview with an applicant, LVPD charges more than its reasonable costs for permit processing and violates California Penal Code section 26190(b)(1).

48

177.   By collecting the entirety of its fees at the time the application is submitted, LVPD violates California Penal Code section 26190(b)(2).

178.   Additionally, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

179.   The La Verne defendants are enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

180.   Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMEND. XIV**
**EQUAL PROTECTION**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

181.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

182.   Plaintiff Steven Hoover is a Florida resident. He does not have residency in California, and thus cannot obtain a California identification card or driver's license. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

183.   Both Plaintiffs often visit California and desire to be able to lawfully conceal-carry a firearm when visiting the State.

184.   Plaintiff Hoover applied to the Monterey County Sheriff for a CCW permit but the Sheriff rejected his application because he is not a California resident. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

185.   Indeed, California law does not allow a resident of another state to apply for and obtain a CCW permit whatsoever.

186.   This policy violates Plaintiffs' right to equal protection of the law as

49

guaranteed and protected under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it favors California residents and discriminates against non-California residents like Hoover and Broady. The policy also violates the Equal Protection Clause because California refuses to honor permits issued by other states, including Florida or Nevada, the home states of Plaintiffs Hoover and Broady, respectively.

187.   This policy is especially egregious because here California's policy prevents Plaintiff Hoover from exercising the constitutionally protected right to be armed in public recognized in *Bruen.* It also violates the constitutionally protected right to travel under the Equal Protection Clause of the Fourteenth Amendment, and forces Hoover to choose between exercising his Second Amendment right to be armed and his constitutional right to travel. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *United States v. Guest*, 383 U.S. 745 (1966); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Zobel v. Williams*, 457 U.S. 55 (1981).

**SEVENTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. IV, § 2**
**PRIVILEGES AND IMMUNITIES CLAUSE**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

188.  Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

189.  The Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." This Constitutional provision removes "from the citizens of each State the disabilities of alienage in the other States." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1868)). The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v.*

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

*Witsell*, 334 U.S. 385 (1948).

190.  Plaintiff Steven Hoover is a Florida resident who desires to lawfully conceal-carry a firearm when visiting California. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

191.  These Plaintiffs do not have residency in California, and thus cannot obtain a California identification card or driver's license.

192.   Hoover applied for a CCW with the Monterey County Sheriff but was denied because of his Florida Residency. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

193.  California's law of refusing to accept CCW applications from citizens of other states, like Plaintiff Hoover, violates this constitutional provision because California's policy discriminates against out of state residents solely because they are out-of-state residents. This policy does not even offer a non-resident a chance at applying for a permit. This policy denies a non-resident the ability to exercise the enumerated right to be armed in public, and thus violates the privilege and immunities clause.

194.  The law also violates the Privileges and Immunities Clause by refusing to recognize the permits issued by other states, such as Florida and Nevada.

**EIGHTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDMENT XIV**
**DUE PROCESS OF LAW**
**42 U.S.C. § 1983**
AGAINST LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ROBERT LUNA, LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE SAMUEL GONZALEZ, ATTORNEY GENERAL ROB BONTA,  AND DOES 1-10

195.   The psychological testing component of California's CCW permit regime violates both the substantive and procedural due process of law mandate set forth in Amendment XIV, Sec. 1, of the U.S. Constitution.

196.   California's law violates substantive due process because it arbitrarily and capriciously imposes a presumption of psychological unfitness to exercise a fundamental right, and requires the individuals seeking to exercise that fundamental right to bear the burden of proving a negative. Furthermore, by presuming that all CCW applicants should be subject to psychological screening, the requirement is overinclusive. Furthermore this state law, by allowing individual issuing authorities to require psychological testing or not, makes the law arbitrary and underinclusive. Furthermore, by failing to legislate objective standards for psychological testing, the law empowers government bureaucrats to exercise subjective discretion in regulating a fundamental right.

197.   California Penal Code section 26190(f) (soon to be 26190(g) under SB2) violates procedural Due Process rights because it impermissibly shifts the burden of proof of a constitutionally significant fact to an individual seeking to exercise a fundamental right. Furthermore, the psychological testing regime does not permit an adversarial process to adjudicate the scientific validity of the underlying test or the validity of the psychologists' opinions and conclusions. Furthermore, there is no provision in this law for a right to appeal the results of the psychological testing. Furthermore, there is no provision in this law to discover or test the impartiality of the personnel administering the psychological testing. Furthermore, there is no provision in this law allowing the CCW applicant to submit evidence from their own medical expert to rebut the government's evidence, on a crucial question that might result in denial of a constitutional right.

198.   To the extent that the Los Angeles County Defendants contend they will not issue a CCW permit to Plaintiff Velasquez due to the theft of his firearms or alleged reckless use of a firearm, which they contend constituted a Penal Code violation, such denial, without a process for adjudicating or an actual adjudication of Velasquez having committed a crime, is unconstitutional as a violation of Velasquez's due process rights.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

199.   To the extent that the Los Angeles County Defendants contend they will not issue a CCW permit to Plaintiff Partowashraf due to Plaintiff having been the subject of an ex parte restraining order which was dissolved upon adjudication in an adversarial setting, without a process for adjudicating or an actual adjudication of Velasquez being dangerous such that he should be denied his right to carry for self-defense, is as a violation of Partowashraf's due process rights. To the extent the Los Angeles County Defendants rely as a basis for denying Plaintiff a permit upon SB 2's prohibition on issuing a CCW to a person like Plaintiff who was the subject of an ex parte restraining order without an adversarial proceeding or adjudication of dangerousness in such an adversarial proceeding, such law, as set forth above, violates due process and the Second Amendment, and reliance by Defendants upon that law to deny a permit to lawfully carry, absent some other process that affords Partowashraf adequate process, further violates Plaintiff's due process rights.

200.   Finally, the CCW psychological testing requirement contradicts existing law in California that already regulates firearms possession in the context of mental health holds and mental health adjudications. *See* California Welfare and Institutions Code §§ 5150, 5250, 8100-8108.

### PRAYER

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.      A declaration that LASD taking over 120 days to process permits violates the constitutional right to carry;

2.      A declaration that these delays also violate California Penal Code section 26205;

3.      A declaration that LASD's denial of Plaintiff Velasquez's CCW permit renewal application violates his constitutional right to carry;

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

4.     A declaration that LVPD charging nearly $900 for CCW permits violates the constitutional right to carry;

5.     A declaration that, by inflating its own costs through the imposition of additional requirements beyond a simple DOJ background check and an interview with an applicant, LVPD charges more than its reasonable costs for permit processing and violates California Penal Code section 26190(b)(1);

6.     A declaration that, by collecting the entirety of its fees at the time the application is submitted, LVPD violates California Penal Code section 26190(b)(2).

7.     A declaration that LVPD's psychological examination requirement violates *Bruen's* prohibition on using "suitability" criteria when it comes to Second Amendment rights.

8.     A declaration that California Penal Code section 26190(g), in allowing psychological examinations, is unconstitutional as a constitutionally-forbidden suitability determination;

9.     A declaration that the Attorney General must honor CCW permits issued by other states, whether the permit holder is a resident of California or not, and/or a declaration that the Attorney General must permit residents of other states to acquire CCW permits in California;

10.     A declaration that Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9), as applied to Plaintiffs Partowashraf and Velasquez, violate the Second Amendment and violate the Due Process Clause;

11.     A declaration that the associational Plaintiffs' resources and litigation experience are necessary to vindicate the Second Amendment rights of individual Plaintiffs who lack the means and capacity to challenge the constitutionally of the practices of LASD and the Sheriff, the fees and policies of LVPD and the Chief, and of the non-resident prohibition on carry and psychological examination requirements of California law.

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

12.     An order preliminarily and permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing California Penal Code Section 26190(f);

13.     An order preliminarily and permanently enjoining Los Angeles LASD, and Sheriff Luna in his official capacity, from refusing to process or issue a CCW Permit to any qualified applicant 120 days after submission of such applicant's initial application for a new license or a license renewal, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later;

14.     An order preliminarily and permanently enjoining LASD, and Sheriff Luna in his official capacity, from requiring more information from applicants in the CCW permitting process that are not based on "narrow, objective, and definite" standards;

15.     An order preliminarily and permanently enjoining LVPD and La Verne Chief of Police Samuel Gonzalez in his official capacity, from charging applicants nearly $1,000 for processing CCW Permit applications;

16.     An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing all laws prohibiting concealed carry if the person accused of that crime has an otherwise-valid CCW permit issued by any state, and is not otherwise prohibited from owning firearms;

17.     An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Equal Protection Clause;

18.     An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Privileges and Immunities Clause;

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

19.    Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

20.    Nominal damages; and

21.    All other relief the court deems appropriate.

Respectfully Submitted,

Dated: September 5, 2024          **MICHEL & ASSOCIATES, P.C.**


                                 */s/ C.D. Michel*
                                 C.D. Michel
                                 Counsel for Plaintiffs

Dated: September 5, 2024          **LAW OFFICES OF DON KILMER**

                                 */s/ Don Kilmer*
                                 Don Kilmer
                                 Counsel for Plaintiff The Second Amendment
                                 Foundation

FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

1
2

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

3
4

Case Name: *California Rifle and Pistol Association, et al., v. Los Angeles County Sheriff's Dept., et al.*

5

Case No.:    2:23-cv-10169-SPG (ADSx)

6

IT IS HEREBY CERTIFIED THAT:

7
8

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

9

I am not a party to the above-entitled action. I have caused service of:

10

**STIPULATION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

11

on the following parties, as follows:

12

See attached Service List.

13
14

by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

15
16

I declare under penalty of perjury that the foregoing is true and correct.

17

Executed September 5, 2024.

18
19
20

_____
Laura Palmerin

21
22
23
24
25
26
27
28

1

## <u>SERVICE LIST</u>

2
3
4
5
6

Mark R Beckington
Jane E. Reilley
jane.reilley@doj.ca.gov
Christina R.B. Lopez,
christina.lopez@doj.ca.gov
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230

7
    *Attorneys for Defendant Rob Bonta*

8

9
10
11

Mark Selwyn
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Road
Palo Alto, CA 94306

12
13
14
15
16

Alan Schoenfeld
alan.schoenfeld@wilmerhale.com
Noah Levine
noah.levine@wilmerhale.com
Ryan Chabot
ryan.chabot@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

17
18
    *Attorneys for Defendants Los Angeles County Sheriff's Department and Sheriff Robert Luna*

19
20
21
22

Bruce A. Lindsay
bal@jones-mayer.com
Monica Choi Arredondo
mca@jones-mayer.com
JONES MAYER
3777 N. Harbor Blvd.
Fullerton, CA 92835

23
24
    *Attorneys for Defendants La Verne Police Department and La Verne Chief of Police Colleen Flores*

25
26
27
28

CERTIFICATE OF SERVICE
