C. D. Michel – SBN 144258
cmichel@michellawyers.com
Joshua Robert Dale – SBN 209942
jdale@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
Alexander A. Frank – SBN 311718
afrank@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, et al., <br><br> Defendants. | Case No.: 2:23-cv-10169-SPG (ADSx) <br><br> **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S AND SHERIFF ROBERT LUNA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** <br><br> Hearing Date: January 15, 2025 <br> Hearing Time: 1:30 p.m. <br> Courtroom:  5C <br> Judge: Hon. Sherilyn Peace Garnett <br><br> Action Filed: December 4, 2023 <br> Trial Date: November 17, 2025 |

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................................................. iii

I.  Introduction ...................................................................................................... 1

II. Argument .......................................................................................................... 2

    A.  Plaintiffs' facial challenges to excessive CCW permit application processing times are valid ................................................................................................ 2

    B.  Nominal damages are available against Sheriff Luna and the Los Angeles County Sheriff's Department ........................................................................ 8

    C.  This Court may exercise supplemental jurisdiction over plaintiffs' Penal Code Section 26205 claim because Sheriff Luna is not a state official ........ 11

    D.  The Los Angeles Defendants' *Monell* argument fails .................................. 13

    E.  Messel and Weimer's claims are not moot .................................................. 15

    F.  The Associational Plaintiffs' standing is not limited to the as-applied challenges of their individual Plaintiff members .......................................... 17

III. Conclusion ...................................................................................................... 20

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ah Chong v. McManaman*,
  154 F. Supp. 3d 1043 (D. Haw. 2015) ................................................. 16

*Alter by & through Alter v. Cnty. of San Diego*,
  635 F. Supp. 3d 1048 (S.D. Cal. 2022) ............................................... 15

*Arcia v. Sec'y of Fla.*,
  772 F.3d 1335 (11th Cir. 2014) .......................................................... 17

*Bellant v. Snyder*,
  338 F. Supp. 3d 651 (E.D. Mich. 2018) ............................................... 5

*Birdt v. San Bernardino Sheriff's Dep't*,
  No. EDCV-13-0673-VAP (JEM), 2013 WL 12474134 (C.D. Cal. Sept. 30,
  2013) ..................................................................................................... 9

*Bucklew v. Precythe*,
  587 U.S. 119 (2019) ............................................................................. 3

*Buffin v. City & Cnty. of San Francisco*,
  No. 15-cv-04959-YGR, 2016 WL 6025486 (N.D. Cal. Oct. 14, 2016) ........ 10, 11

*Cardew v. Bellnier*,
  No. 9:09-CV-775 GLS/ATB, 2010 WL 7139218 (N.D.N.Y. Dec. 9, 2010) .......... 4

*Chafin v. Chafin*,
  568 U.S. 165 (2013) ........................................................................... 16

*Ctr. for Biological Diversity v. Lohn*,
  511 F.3d 960 (9th Cir. 2007) ............................................................. 16

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) ............................................................. 20

*E. Bay Sanctuary Covenant v. Trump*,
  909 F.3d 1219 (9th Cir. 2018) ........................................................... 18

TABLE OF AUTHORITIES

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011)..................................................................................18

*Faustin v. City & Cnty. of Denver, Colo.*,
  423 F.3d 1192 (10th Cir. 2005)................................................................................3

*FBI v. Fikre*,
  601 U.S. 234 (2024) ................................................................................................17

*FEC v. Wis. Right to Life, Inc.*,
  551 U.S. 449 (2007) ................................................................................................16

*Floyd v. Laws*,
  929 F.2d 1390 (9th Cir. 1991)................................................................................15

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998)....................................................................................5

*Green Party of Tenn. v. Hargett*,
  791 F.3d 684 (6th Cir. 2015)....................................................................................6

*Hazle v. Crofoot*,
  727 F.3d 983 (9th Cir. 2013)..................................................................................15

*Hooks v. Nexstar Broad., Inc.*,
  54 F.4th 1101 (9th Cir. 2022)................................................................................16

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ................................................................................................19

*Jacobs v. Clark Cnty. Sch. Dist.*,
  526 F.3d 419 (9th Cir. 2008)..................................................................................11

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010) ..................................................................................................6

*Knox v. Serv. Emps. Int'l Union, Loc., 1000*,
  567 U.S. 298 (2012) ................................................................................................15

*Kyriacou v. Peralta Cmty. Coll. Dist.*,
  No. C 08-4630 SI, 2009 WL 890887 (N.D. Cal. Mar. 31, 2009) ..........................4

iv

TABLE OF AUTHORITIES

*Lightfoot v. D.C.*,
   273 F.R.D. 314 (D.D.C. 2011) ................................................................. 4

*Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*,
   500 F. Supp. 3d 1075 (C.D. Cal. 2020) .................................................. 7

*Lu v. Hawaiian Gardens Casino, Inc.*,
   50 Cal. 4th 592 (2010) .......................................................................... 12

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ............................................................................... 6

*N.Y. State Rifle & Pistol Ass´n v. Bruen*,
   597 U.S. 1 (2022) ....................................................................... 1, 2, 10

*Nguyen v. Bonta*,
   No. 3:20-cv-02470-WQH-MMP, 2024 WL 1057241 (S.D. Cal. Mar. 11, 2024) .. 2

*Nordstrom v. Dean*,
   No. CV-157607 DMG (FFMX), 2016 WL 10933077 (C.D. Cal. Jan. 8, 2016) .. 10

*Penrod v. Cnty. of San Bernardino*,
   126 Cal. App. 4th 185 (2005) ............................................................... 11

*People v. Tice*,
   89 Cal. App. 5th 246 (2023) ................................................................. 11

*Rodriguez v. City of San Jose*,
   930 F.3d 1123 (9th Cir. 2019) .............................................................. 18

*Roe v. County of Lake*,
   107 F. Supp. 2d 1146 (N.D. Cal. 2000) ............................................... 11

*S. Bay Rod & Gun Club, Inc. v. Bonta*,
   646 F. Supp. 3d 1232 ........................................................................... 13

*Scocca v. Smith*,
   912 F. Supp. 2d 875 (N.D. Cal. 2012) ............................................... 8, 9

*Sentinel Commc´ns Co. v. Watts*,
   936 F.2d 1189 (11th Cir. 1991) ............................................................. 3

v

TABLE OF AUTHORITIES

*Streit v. County of Los Angeles*,
    236 F.3d 552 (9th Cir. 2001)...............................................................................8, 9

*Tipton v. Univ. of Hawaii*,
    15 F.3d 922 (9th Cir. 1994)......................................................................................3

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996).....................................................................................14

*Von Colln v. Cnty. of Ventura*,
    189 F.R.D. 583 (C.D. Cal. 1999) .............................................................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................................................19

*Welchen v. Cnty. of Sacramento*,
    343 F. Supp. 3d 924 (E.D. Cal. 2018).....................................................................10

*Williams v. McFadden*,
    No. 3:22-cv-630-MOC-SCR (W.D.N.C. Sept. 4, 2024)..........................................10

**Statutes**

Cal. Gov. Code § 815.6 ...........................................................................................12

Cal. Penal Code § 26205 ....................................................................................8, 11

Cal. Penal Code § 26220 ........................................................................................16

**Other Authorities**

Parker, Jordan, *Jury finds retired Santa Clara County sheriff Laurie Smith guilty of
    civil corruption*, S.F. Chron., Nov. 4, 2022,
    https://www.sfchronicle.com/bayarea/article/Jury-finds-retired-Santa-Clara-
    County-sheriff-17557296.php (last visited Nov. 20, 2024)...................................10

TABLE OF AUTHORITIES

## I.    INTRODUCTION

The motion to dismiss brought by the Los Angeles County Sheriff's Department and Sheriff Robert Luna ("the Los Angeles Defendants") is a transparent effort to sanction their unconstitutional two-year wait times for a concealed handgun license ("CCW permit"). If the Los Angeles Defendants succeed in carrying on with their unconstitutional delays, the courts will become the defacto issuing agencies for permits as new plaintiffs bring their cases to court to obtain relief from these delays.

The U.S. Supreme Court made clear that the Second Amendment "naturally encompasses public carry," and that "law-abiding citizens with ordinary self-defense needs" cannot be "prevent[ed]" from "exercising their right to keep and bear arms." *N.Y. State Rifle & Pistol Ass´n v. Bruen*, 597 U.S. 1, 32, 71 (2022). Accordingly, the Court repudiated licensing schemes employing "suitability" criteria or "requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion'" as ahistorical, and further welcomed "constitutional challenges to shall-issue regimes where . . . lengthy wait times in processing license applications . . . deny ordinary citizens their right to public carry." *Id.* at 13, 38 n.9.

If governments insist on exercising their power to license an enumerated right, they must issue those licenses quickly and without subjective discretion, because they do not have the power to "prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.* at 38 n.9. The facts pled are all but undisputed; the Los Angeles Defendants *have prevented* all eligible applicants from exercising their rights for well in excess of a year. For purposes of the instant motion, this Court must accept that these delays are happening, and not just to the plaintiffs of this case. Defendants therefore have no legal basis for limiting this Court's relief to the individually named Plaintiffs.

/ / /

/ / /

## II.  ARGUMENT

### A.    Plaintiffs' facial challenges to excessive CCW permit application processing times are valid.

Plaintiffs' First Amended Complaint ("FAC") clearly alleges that "LASD's practice of exceeding [the 120-day] statutory time limit is facially unconstitutional, as even a mere wait time of 30 days was already deemed an unconstitutional delay on acquiring additional firearms after an [initial] purchase." FAC at ¶ 137 (citing *Nguyen v. Bonta*, No. 3:20-cv-02470-WQH-MMP, 2024 WL 1057241, at *11 (S.D. Cal. Mar. 11, 2024)). These egregious delays are endemic to the Los Angeles Defendants' local practice, and they affect far more people than just the individually named Plaintiffs. FAC at ¶ 7 (LASD admitting "it takes 'a year to a year and a half' to process CCW applications" generally). The Supreme Court *expressly* blessed delay challenges such as this in *Bruen*, 597 U.S. 1, 38 n.9 (2022), "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." In no way did the *Bruen* majority limit challenges to widespread, "abusive" practices to 'as-applied' only. *See id.* Indeed, it is not until one reaches a two-Justice concurrence merely recounting the petitioners' statements at oral argument where one even finds such a suggestion. *See id.* at 80 (Kavanaugh, J., concurring) ("As petitioners acknowledge, shall-issue licensing regimes are . . . subject . . . to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice. Tr. of Oral Arg. 50-51."). But the *Bruen* petitioners' statements are not the law.

The Los Angeles Defendants argue that because Plaintiffs are not challenging the California CCW licensing regime on its face, but rather just how Sheriff Luna implements it, they can only assert an as-applied challenge. *See* LASD and Sheriff Luna's Mot. to Dismiss First Am. Compl. ("MTD") at 5-6. But they argue against

2

themselves in the same breath: "To assert a facial challenge to the constitutionality of a statute, a plaintiff must show 'that the law **or policy** at issue is unconstitutional in all its applications.'" MTD at 5 (citing *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019)) (emphasis added). Here, Plaintiffs challenge the *policy or practice* of the Los Angeles Defendants, whether official or unwritten,[1] to take two years or more to process CCW permit applications. This challenge is patent. FAC at ¶¶ 2, 22-23, 137, 151, 158, and "Prayer for Relief" ¶ 11 (referring to LASD "practices" and/or "policies" that are being challenged). <u>Everyone</u> who applies with LASD for a CCW permit will wait an unconstitutional amount of time to exercise an enumerated right and far in excess of the 120-day time limit of state law.[2] For purposes of a Rule 12 motion, the FAC alleges a facially unconstitutional practice (or policy). The Defendants are free to refute that with evidence, but it is too early at this stage in this case to determine whether the practice (or policy) is subject to only an as-applied challenge.

A number of cases have allowed facial challenges against unwritten practices or policies, sometimes even requiring them to proceed with a facial challenge. *See, e.g.*, *Tipton v. Univ. of Hawaii*, 15 F.3d 922, 925 (9th Cir. 1994) ("Because Tipton attacks written and unwritten policies without identifying a particular future funding request, his claims present only facial challenges to the policies at issue."); *Faustin v. City & County of Denver, Colo.*, 423 F.3d 1192, 1196 (10th Cir. 2005) ("Our precedent allows facial challenges to unwritten policies."); *Sentinel*

---

[1] Having not had the chance to conduct discovery at this early stage, Plaintiffs are not yet aware if there is any *written* policy or memorandum from Sheriff Luna directing long wait times, or alternatively, if the wait times are the result of an unwritten policy or practice of simply taking much longer to process applications than state law allows in response to a shortage of personnel or funding.

[2] Plaintiffs do not concede that 120 days is a constitutional timeframe to make someone wait to exercise a constitutional right. But they do not challenge that requirement in this lawsuit, and instead treat it as a useful yardstick for what even the state Legislature has concluded would be an impermissible wait time.

3

*Commc'ns Co. v. Watts*, 936 F.2d 1189, 1207 (11th Cir. 1991) (allowing "a facial challenge to the constitutionality of Florida's unwritten 'scheme' for permitting placement of newsracks at interstate rest areas"); *Kyriacou v. Peralta Cmty. Coll. Dist.*, No. C 08-4630 SI, 2009 WL 890887, at *7 (N.D. Cal. Mar. 31, 2009) ("[P]laintiffs have alleged facts sufficient to sustain a facial challenge to defendants' policies. Plaintiffs allege that defendants have implemented a policy—whether unwritten, impromptu, or by treating prayer as per se disruptive speech—that prohibits non-disruptive prayer in faculty offices."); *Cardew v. Bellnier*, No. 9:09-CV-775 GLS/ATB, 2010 WL 7139218, at *12 (N.D.N.Y. Dec. 9, 2010) ("Plaintiffs also allege . . . that there is an unwritten policy to apply the DOHU screening process in such a way that segregates inmates by race. . . . [I]n the context of a motion for judgment on the pleadings without adequate briefing by the defendants, this court cannot recommend granting defendants' motion with respect to plaintiff's facial challenge."), *report and recommendation adopted*, No. 9:09-CV-775 GLS/ATB, 2011 WL 3328632 (N.D.N.Y. Aug. 2, 2011).

Courts generally do not allow facial challenges to proceed when the circumstances do not suggest uniform application. "In contrast to a uniform facial challenge, a more amorphous claim of systemic or widespread misconduct, such as the claim in this action, is not as obviously susceptible to class-wide treatment." *Lightfoot v. D.C.*, 273 F.R.D. 314, 327 (D.D.C. 2011). But that is not the case here. It is not as if some CCW permit applicants complete the process in two months, while others take two years. The process is unconstitutionally long for everyone, and the Los Angeles Defendants have not argued otherwise in their motion. More tellingly, when given an opportunity to present *evidence* that their excessive wait times were only intermittent or not applied uniformly to all applicants, Defendants admitted that all applicants were subject to excessive wait times based on staffing, budgetary, and other constraints. It is undisputed that every applicant will face the same reprehensibly long wait time to exercise a constitutional right until the Los

4

Angeles Defendants deign to finally process their application.

But even if this Court were to accept the Los Angeles Defendants' argument, Plaintiffs also alleged that LASD's practice of two-year wait times is "at least unconstitutional as applied to each of the individual Plaintiffs *and the members and supporters of the associational Plaintiffs who have waited more than 120 days for their permits since submitting their applications*." FAC at ¶ 137 (emphasis added). Even this is a distinction without a difference. Whether it is facially unconstitutional to make an applicant wait more than 120 days to exercise the right to carry, or whether it is unconstitutional as applied to such applicants who have already waited that long or more, the result is the same: a wait time of over four months is too much for a constitutional right, and always unconstitutional regardless of the applicant it is applied to. Thus, "Plaintiffs seek declaratory relief that their rights were violated [at least] beginning on the 121st day following their respective applications being submitted." *Id.*

The Los Angeles Defendants also argue that "[t]he scope of relief for as-applied challenges is limited to the party asserting the claim," and does not apply to third parties. MTD at 15 (citing *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)). However, "[a] successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Foti*, 146 F.3d at 635. Here, the "particular application of the law" in question is the Los Angeles Defendants' uniform practice of taking more than 120 days to process CCW permit applications. All such instances of this "particular application" are unconstitutional. That this would effectively apply to *all* applications is why Plaintiffs' facial challenge is appropriate.

Some courts have recognized the line between as-applied and facial challenges can sometimes be blurred. "In fact, a claim can have characteristics of as-applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications." *Bellant v.*

5

*Snyder*, 338 F. Supp. 3d 651, 659 (E.D. Mich. 2018); *see also Green Party of Tennessee v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015) (saying the same). Indeed, the Supreme Court has addressed this gray area head on:

> The parties disagree about whether Count I is properly viewed as a facial or as-applied challenge. [Citation omitted.] It obviously has characteristics of both: The claim is "as applied" in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is "facial" in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.
>
> **The label is not what matters**. The important point is that plaintiffs' claim and the relief that would follow … reach beyond the particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge **to the extent of that reach**.

*John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (emphasis added).

Here, Plaintiffs do satisfy the standards of a facial challenge to anyone in the same situation as Plaintiffs, i.e., people who have waited more than 120 days for a CCW permit after applying for one with LASD. That is the extent of the reach here.

That this even needs to be argued is disappointingly cynical. The Los Angeles Defendants are well aware that most applicants whose rights are being violated with long wait times do not have the knowledge or resources to bring a federal lawsuit, so they want this Court to limit relief to the named Plaintiffs such that they do not have to change their practices and process applications faster for the other members of the Associational Plaintiffs. No Court would go along with this charade and limit relief to the named plaintiffs if voter registration applications were taking two years to process, and this Court should not treat the Second Amendment as "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

This Court already concluded as much with respect to Plaintiffs Weimer and

6

Messel. *See* Order Granting Pls.' Mot. for Prelim. Inj. ("Order") at 22, *Cal. Rifle & Pistol Ass´n v. L.A. Cnty. Sheriff's Dep´t ("CRPA")*, No. 2:23-cv-10169-SPG-ADS (C.D. Cal. Aug. 20, 2024), ECF. No. 52. Applying at the time a "heightened standard for mandatory preliminary injunctions" and citing its understanding of statements made by Plaintiffs' counsel at oral argument,[3] this Court declined to extend preliminary relief to the Associational Plaintiffs' unnamed members, much less "all individuals that have applications pending with LASD for a CCW license." *Id.* at 14-15. However, for purposes of the instant motion, "the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, 500 F. Supp. 3d 1075, 1077 (C.D. Cal. 2020). In other words, "the wait times for LASD permit applicants in fact have grown worse instead of better, with CRPA members complaining of wait times in excess of 15 months," and "the Department confirmed that applicants could expect wait times of, 'from application entry to issuance . . . a year to a year and a half.'" FAC at ¶¶ 107, 108. Accepting as true that *all applicants* suffer the wait times Plaintiffs Weimer and Messel suffered, the Los Angeles Defendants cannot seek dismissal *except as to* the named Plaintiffs individually.

Indeed, all applicants – and certainly all of Plaintiffs' member applicants – suffer the same delays which this Court found as to the named Plaintiffs. Thus, all applicants seek to "carry a firearm in public for self-defense without unreasonable delay" and therefore fall well within the Second Amendment's plain text. Order at 17, *CRPA,* ECF No. 52. Likewise, the same lack of historical record applies, and nothing in the nation's historical tradition of firearm regulation "involve[s] lengthy delays—let alone delays of 18 months or more." *Id.* at 22. The Los Angeles Defendants' practice of slow-rolling all applicants' permits is facially

---

[3] Plaintiffs clarify their position as to their desired scope of relief in Section II(F), *infra*.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

unconstitutional, and Plaintiffs pleadings say so, in many words.

### B. Nominal damages are available against Sheriff Luna and the Los Angeles County Sheriff's Department.

The Los Angeles Defendants argue that because Sheriff Luna and LASD are acting as an "arm of the state," the lawsuit may only proceed against Sheriff Luna in his official capacity for declaratory relief and prospective injunctive relief, but not nominal damages. MTD at 7-8 (citing *Scocca v. Smith*, 912 F. Supp. 2d 875, 882-885 (N.D. Cal. 2012)). This would be correct if the Los Angeles Defendants were processing CCW permit applications within the 120-day time limit of state law, but Plaintiffs sued claiming compliance with the statutory time limit was still too long. Sheriff Luna arguably would be operating within the confines of state law as a state actor, and perhaps immune from nominal damages. But here, the Los Angeles Defendants are not following state law – taking approximately *five times* that long to process permits – and that is where the compensable Constitutional violation arises.

The state is not the "real, substantial party in interest" (*Streit v. County of Los Angeles*, 236 F.3d 552, 566 (9th Cir. 2001)), because no state law is being challenged. Plaintiffs do not assert in this lawsuit that the Los Angeles Defendants' compliance with California Penal Code section 26205 is unconstitutional. Instead, they assert that violating state law, as the Los Angeles Defendants are doing, is what is unconstitutional. Sheriff Luna cannot claim to be acting as an "arm of the state" while so blatantly violating state law.

In addition, the factors to consider when determining whether a governmental agency is an "arm of the state" lean heavily against the Los Angeles Defendants here. "We consider five factors when determining whether a governmental agency is an arm of the state: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the

8

power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Streit*, 236 F.3d at 567.

The first factor, "which weighs against the LASD's position, is the most important factor in identifying an arm of the state." *Id.* The third factor was also already found in *Streit* to go against LASD, because "a local law enforcement agency can be considered a separably suable entity." *Id.*

Arguably only the second factor[4] is in favor of the Los Angeles Defendants, to the extent that CCW permit issuance is considered a central government function. But again, even to the extent that it is, *violating* the Constitution is not. The Los Angeles Defendants lean heavily on a district court decision[5] in *Scocca v. Smith,* but that case is easily distinguishable. For one, that court seemed to erroneously disregard the *Streit* factors entirely. Perhaps that could have been corrected on appeal, but no appeal appears to have occurred. But more importantly, in *Scocca* the plaintiffs alleged that Sheriff Laurie Smith of Santa Clara was issuing permits unfairly by disregarding that they felt they had established both "good cause" and "good moral character." 912 F. Supp. 2d at 878. That is much different because the old "good cause" requirement *did* grant unbridled discretion to local Sheriffs. That's why a very similar provision in New York law was struck down in

---

[4] It is not clear what the "corporate status" of LASD is, nor whether it can take property in its own name. The *Streit* court also was unsure of this but deemed the other factors sufficient to weigh against LASD. *Streit*, 236 F.3d at 567. Another court said the Ventura County Sheriff's Department "cannot hold property, nor does it have a corporate status," but also explained that these factors are "the least instructive." *Von Colln v. County of Ventura*, 189 F.R.D. 583, 602 (C.D. Cal. 1999).

[5] Another district court ruling which came after *Scocca* noted that it could find no authority to suggest that the San Bernardino County Sheriff's Department acts as an "arm of the state" when enforcing CCW permit policies. *See Birdt v. San Bernardino Sheriff's Dep't (Birdt),* No. EDCV-13-0673-VAP (JEM), 2013 WL 12474134, at *6 (C.D. Cal. Sept. 30, 2013), *report and recommendation adopted*, No. EDCV-13-0673-VAP(JEM), 2013 WL 12474133 (C.D. Cal. Oct. 31, 2013). While it would later rule otherwise on a subsequent motion to dismiss, it only cited *Scocca* in doing so, not any higher authority. *Birdt* at *2.

9

*Bruen.* At the time, Sheriff Smith was exercising the high level of discretion state law granted to her.[6] The same analysis applies to the two other district court rulings the Los Angeles Defendants cite, which similarly rested on the discretion granted to Sheriff's Department in issuing permits at the time. *See Birdt* at *2; *Nordstrom v. Dean*, No. CV-157607 DMG (FFMX), 2016 WL 10933077, at *10 (C.D. Cal. Jan. 8, 2016), *aff'd*, 700 F. App´x 764 (9th Cir. 2017).

    Here, there is no discretion or any other authority for the Los Angeles Defendants to take longer than 120 days to process CCW applications. For starters, the Penal Code sets that as the time limit, and they are ignoring it. But more importantly, the Second Amendment does not allow a two-year delay to exercise an enumerated right and the Supreme Court has expressly contemplated challenges to such a delay.[7] The cases that have found Sheriffs to be arms of the state are in the context of Sheriffs who are <u>following</u> state law or court orders, not <u>defying</u> them. *See, e.g.*, *Welchen v. County of Sacramento*, 343 F. Supp. 3d 924, 934 (E.D. Cal. 2018) ("federal district courts determined sheriffs act on behalf of the state when they are detaining an individual based on court orders."). In fact, in *Buffin v. City &*

---

    [6] Ironically, Sheriff Smith was later indicted for issuing CCW permits on a "pay to play" basis, granting permits only to those who donated money to her campaign. *See* Jordan Parker, *Jury finds retired Santa Clara County sheriff Laurie Smith guilty of civil corruption*, S.F. Chron., Nov. 4, 2022, https://www.sfchronicle.com/bayarea/article/Jury-finds-retired-Santa-Clara-County-sheriff-17557296.php (last visited Nov. 20, 2024).

    While *Bruen* has thankfully made this sort of blatant corruption and biased issuance more difficult, issuing authorities have turned to long wait times, high fees, and other cynical tactics to frustrate the right to carry for regular citizens. *See, e.g.,* Consent Decree, *Williams v. McFadden*, No. 3:22-cv-630-MOC-SCR (W.D.N.C. Sept. 4, 2024), ECF No. 42 (consent decree ordering Sheriff to issue or deny permits within 45 days and stopping the practice of the Sheriff requesting mental health records from facilities where applicants had never been treated, thus delaying the permitting process).

    [7] *See Bruen*, 597 U.S. at 38 n.9 ("[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry.").

10

*County of San Francisco*, No. 15-cv-04959-YGR, 2016 WL 6025486, at *7 (N.D.
Cal. Oct. 14, 2016), the court, analyzing a constitutional challenge to the
enforcement of the Bail Law, stated that district courts draw a line "when
the sheriff detains someone pursuant to state law **rather than under an
administrative policy set by the sheriff herself**." *Id.* at *7 (emphasis added). That
is exactly what Plaintiffs allege here; Sheriff Luna has a written or unwritten policy
or practice of taking much longer than 120 days to process CCW permit
applications. He cannot pretend to be an arm of the state in doing so, and so
nominal damages are available to Plaintiffs.[8] The same applies to LASD, as the Los
Angeles Defendants' arguments as to LASD are identical. MTD at 8.

    **C.**    **This Court may exercise supplemental jurisdiction over plaintiffs'
Penal Code Section 26205 claim because Sheriff Luna is not a state
official.**

    The "Eleventh Amendment bars any claim in federal court that a state official
purportedly violated state law." MTD at 9. However, Sheriff Luna is not a state
official. "While the office of sheriff is an independent office created by the state
constitution . . . '[t]he sheriff is a county officer, not a state official.'" *People v.
Tice*, 89 Cal. App. 5th 246, 254 (2023) (quoting *Penrod v. County of San
Bernardino*, 126 Cal. App. 4th 185, 190 (2005)).

    Granted, "[a]n exception exists when the sheriff is performing law
enforcement functions." *Id.* at 254 n.7. And federal courts have held the same. *See,
e.g.*, *Roe v. County of Lake*, 107 F. Supp. 2d 1146, 1148 (N.D. Cal. 2000) ("the
inquiry depends upon an analysis of state law that looks beyond how the State
labels a sheriff and to the definition of a sheriff's actual functions under the relevant
state law."). But as Plaintiffs explained *supra*, the Los Angeles Defendants cannot

---

    [8] *See also Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 426 (9th Cir. 2008)
("When a plaintiff alleges violation of a constitutional right, the Supreme Court has
held that . . . nominal damages are . . . available in order to 'mak[e] the deprivation
of such right[] actionable' and to thereby acknowledge the 'importance to organized
society that [the] right[] be scrupulously observed.'").

11

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

claim to be acting as an arm of the state when they are blatantly violating state law and enforcing their own written or unwritten policy of unconstitutionally long wait times in violation of the Constitution.

The Los Angeles Defendants also argue that Penal Code section 26205 has no private right of action. MTD at 9-10. That's incorrect because as California Government Code section 815.6 explains, "[when] a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." *See also Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 602 n.7 (2010) (citing Rest.2d Torts, § 874A) (Where there is no civil remedy for a legislative provision meant to protect a certain class of persons or requiring certain conduct, courts may allow private right of action when it is "appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision.").

Section 815.6 thus provides an avenue for the waiting-time Plaintiffs to enforce Penal Code section 26205 with this action, because they are quite obviously the exact class of persons that provision is meant to protect: people who have waited more than 120 days for a CCW permit after submitting their application.

No doubt Plaintiffs would have preferred the California Department of Justice ("DOJ") to enforce the Penal Code against the Los Angeles Defendants, and Plaintiffs sent the Attorney General a letter about the wait times issue hoping he would do just that before they filed this lawsuit.[9] It was disappointing that the Attorney General never even bothered to respond. Through recent efforts to stifle litigation challenging state laws asserting Second Amendment violations, and even defending firearms laws he later admitted to federal judges violated the

---

[9] That letter is available online here: https://crpa.org/wp-content/uploads/2023/07/2023-07-25-Ltr-to-DOJ-re-CCW-Issues2257263.1.pdf.

12

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1  Constitution,[10] the Attorney General has repeatedly staked a position that is

2  anathema to the Second Amendment right to carry. That he will not enforce

3  California's own statutory time limits for CCW permit processing is therefore

4  unsurprising, but unfortunately leaves Plaintiffs with this lawsuit as the only way to

5  enforce Penal Code section 26205. Thus, if this Court agrees with the Los Angeles

6  Defendants that there is no private right of action to enforce it, then that law is

7  effectively a dead letter given the Attorney General's inaction.

8        **D.  The Los Angeles Defendants' *Monell* argument fails.**

9        The Los Angeles Defendants next argue that they cannot be liable under

10  *Monell* because the delays are not official policy, and they have made efforts to

11  address the wait time problem. MTD at 11. But these efforts, such as adopting new

12  software and the vague statement in a letter that LASD was "taking steps to reduce

13  processing times and improve our overall processes" (FAC at ¶ 103), are unserious.

14        For evidence of that, look no further than the total lack of improvement in the

15  wait time situation in the year since this lawsuit was filed. Plaintiff Messel applied

16  for a permit on July, 1, 2022, and only finally had one issued to him in May of

17  2024, nearly two years later. FAC at ¶ 39. Plaintiff Weimer applied in January of

18  2023, *and still does not have a permit even after this Court granted a preliminary*

19  *injunction in his favor four months ago*. *See* Order at 22, *CRPA,* ECF No. 52; and

20  FAC at ¶ 41. Given that he has not even had his initial phone interview yet, Mr.

21  Weimer will easily exceed a two-year wait by the time he finally has a permit in

22  hand. Plaintiff Yun applied in September 2022, and finally got his initial interview

23  on August 27, 2024, though he still does not have a permit. FAC at ¶ 42. Plaintiff

24  Medalla applied for a permit on October 31, 2023, and his initial interview is

25  scheduled for August 11, *2025*. FAC at ¶ 43.

26

27      [10] *See S. Bay Rod & Gun Club, Inc. v. Bonta*, 646 F. Supp. 3d 1232, 1235 n. 1

28  (S.D. Cal. 2022) ("To his credit, given the obvious, the Attorney General has
refused to defend § 1021.11.")

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Had the Los Angeles Defendants been gradually improving the wait time situation such that the processing time had been reduced to less than one year by now, their argument of making every effort to resolve the situation would have more merit. Instead, the wait times seem to be getting *worse* instead of better. Whether intentional or otherwise, the clear practice of the Los Angeles Defendants is to take two years (and sometimes more) to process applications.

Their argument that Plaintiffs "assert varying wait periods for their CCW applications" (MTD at 12) is misleading. Yes, different Plaintiffs applied at different times and so have different total wait times as of this date, but all of them are well in excess of the 120 days California law allows, and all have been waiting over a year. Only one Plaintiff finally got his permit, after just under a two-year wait. FAC at ¶ 39.

The Los Angeles Defendants do not argue that some applicants take far less time and Plaintiffs all somehow have complicated applications, because they cannot. Everyone who applies for a permit with LASD will wait approximately two years for a permit, individual circumstances do not matter because applicants do not even get an initial interview until well over a year has passed so the "unique facts and circumstances" that the Los Angeles Defendants refer to are irrelevant. MTD at 12.

The long wait time is a uniform practice that applies to everyone, not a "case-by-case basis." *Id*. (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)). And it has persisted for nearly two-and-a-half years since *Bruen* was issued, making it so "persistent and widespread that it constitutes a permanent and well settled [municipal] policy." *Trevino*, 99 F.3d at 918. This is enough to meet the standard of a "pervasive practice and custom" found in *Monell* for purposes of this motion. As Plaintiffs allege in their complaint, "Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense

14

'in case of confrontation,' as guaranteed by the Second and Fourteenth
Amendments." FAC at ¶ 158. Similar pleading language was deemed sufficient in
*Alter by & through Alter v. County of San Diego,* 635 F. Supp. 3d 1048, 1058 (S.D.
Cal. 2022).

### E.    Messel and Weimer's claims are not moot.

The Los Angeles Defendants claim that Plaintiffs Messel and Weimer cannot
proceed further because their claims are moot.  Plaintiff Weimer's claims are not
moot because he still does not have a permit. Counsel for the Los Angeles
Defendants has indicated he will finally get his initial interview in early December,
but that is just the first step in receiving his permit. Until he has a permit in hand (or
alternatively, is denied, if there are grounds to deny him), the wait time issue
remains a live controversy for him. In fact, as noted, Plaintiff Weimar still has not
received the preliminary injunction relief ostensibly granted to him in August. *See*
Order at 22, *CRPA,* ECF No. 52. And even if he had, the Los Angeles Defendants
must actually comply with it before his claims would arguably become moot.

Yet, even if Plaintiff Weimer were issued a permit tomorrow, his claims
would in fact not be moot for the same reasons Plaintiff Messel's claims are
currently not moot. For one, Plaintiff Messel is entitled to nominal damages for
LASD taking so long to issue him a permit, as argued extensively *supra*.[11] But even
if this Court sides with the Los Angeles Defendants as to nominal damages,
Plaintiff Messel's claims are still not moot.

According to the Supreme Court, a case becomes moot only when it is
impossible for a court to grant any effectual relief whatever to the prevailing party.
*Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012). "As long as

---

[11] *See also Hazle v. Crofoot*, 727 F.3d 983, 991 n.6 (9th Cir. 2013) ("Our
circuit's case law makes clear that 'neither the judge nor the jury has any discretion
in this matter,' and that the rule entitling a plaintiff to nominal damages applies
with equal force to violations of substantive constitutional rights." (quoting *Floyd v.
Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991)).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Ah Chong v. McManaman*, 154 F. Supp. 3d 1043, 1050 (D. Haw. 2015) (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). "[E]ven if the request for injunctive relief is moot, if the claim also seeks declaratory relief, 'the case is not moot if declaratory relief would nevertheless provide meaningful relief.'" *Id.* (citing *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 963-64 (9th Cir. 2007)).

Plaintiff Messel desires declaratory and injunctive relief on behalf of all members of the associational Plaintiffs that wait times in excess of 120 days are unconstitutional, and that is meaningful relief as it would help countless others who are experiencing the wait times issue and having their right to carry violated.[12]

But he has a personal stake too. Under California law, CCW permits are good for just two years, then expire and need to be renewed. *See* Cal. Penal Code § 26220(a) (West 2024). Plaintiff Messel does not want to face the same long wait times in excess of 120 days when he renews his permit.[13] Indeed, if the renewal were to take as long as his original permit, he should have immediately begun his renewal application upon receiving it! Declaratory relief confirming a wait time of more than 120 days is unconstitutional would help assure that his renewal

---

[12] While other Plaintiffs exist, all will likely get their permits before this litigation is concluded. If this Court agrees with the Los Angeles Defendants on this issue, then Plaintiffs will need to keep amending their complaint to add "fresh" waiting time plaintiffs.

[13] There is an "established exception to mootness for disputes capable of repetition, yet evading review." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (citation omitted). And "evading review" means "evading Supreme Court review[.]" *Hooks v. Nexstar Broad., Inc.*, 54 F.4th 1101, 1112 (9th Cir. 2022) (citation omitted). Since Plaintiffs will have to renew their permits within two years, this is another reason to deny mootness as Plaintiffs will be unable to have meaningful judicial review of the Defendants' delays.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

application will also be timely processed.

As a unanimous Supreme Court recently recounted in a different mootness context, "[e]ventually . . . the government notified Mr. Fikre that it had removed him from the No Fly List. No explanation accompanied the decision. . . . But, in court, the government argued that its administrative action rendered his lawsuit moot. . . ." *FBI v. Fikre*, 601 U.S. 234, 239 (2024). After the Ninth Circuit flatly rejected that claim, the government offered a declaration that the plaintiff "'will not be placed on the No Fly List in the future based on the currently available information.'" *Id.* The Ninth Circuit again found (and the Supreme Court affirmed) that this statement "does not ensure that he will 'not be placed on the List if . . . he . . . engag[es] in the same or similar conduct' in the future." *Id.* at 240. *See also Arcia v. Sec'y of Fla.*, 772 F.3d 1335, 1343 (11th Cir. 2014) ("The Secretary has also not offered to refrain from similar [activity] in the future. Thus, there is a reasonable expectation that the plaintiffs will be subject to the same action again.").

Here, none of the Defendants has even made the argument that they will timely issue permits in the future. Defendants' actions therefore "fall[] short of demonstrating that [they] cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Fikre*, 601 U.S. at 243. As the Supreme Court stated, "it is the defendant's 'burden to establish' that it cannot reasonably be expected to resume its challenged conduct – whether the suit [is] new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment." *Id.* At bottom, "[w]hat matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct. It is on that consideration alone — the potential for a defendant's future conduct — that we rest our judgment." *Id.* at 244.

**F.    The Associational Plaintiffs' standing is not limited to the as-applied challenges of their individual Plaintiff members.**

Finally, in an attempt to avoid wider relief that would actually make them

17

cease violating the constitutional rights of anyone but a few named Plaintiffs, the
Los Angeles Defendants argue that the associational standing of Plaintiffs CRPA,
SAF, and GOA is limited to the as-applied challenges of the individual Plaintiffs.

Plaintiffs already extensively explained why they are entitled to facial relief
*supra*, and do not repeat those arguments here.[14] But the Los Angeles Defendants'
argument that the "as-applied challenges in this case require precisely the kind of
fact-intensive inquiry that limits associational standing to the named plaintiffs" is
dead wrong. MTD at 17. While it is true that "[e]ach application is . . . granted or
denied on an individual basis, and a unique explanation is provided for each CCW
application determination" (*Id.* at 18), it is <u>not</u> the granting or denying that is the
subject of this lawsuit when it comes to the waiting times that Plaintiffs (and
everyone else subject to these Defendants' policies) have been suffering. Rather, it
is the lack of any decision, whether it be a grant or denial, in a timeframe that
comports with the Constitution and the time limit of state law. Plaintiffs Medalla
and Weimer have not even had an initial phone interview yet, so it's disingenuous
to point to their individual circumstances when the Los Angeles Defendants have
yet to even *look* at those individual circumstances.

The Associational Plaintiffs agree that when it comes to the as-applied
challenges of Plaintiffs Velasquez and Partowashraf, there is no wider relief to be
had for other members. But as to the waiting-time Plaintiffs, every other member of
theirs who has applied (or will apply) for a CCW permit will face the same long
wait time, regardless of their individual circumstances. "In a facial constitutional
challenge, individual application facts do not matter" and "[o]nce standing is
established, the plaintiff's personal situation becomes irrelevant." *Ezell v. City of*

---

[14] The Associational Plaintiffs proceed on associational standing and have
never alleged direct standing. *See, e.g., E. Bay Sanctuary Covenant v. Trump*, 909
F.3d 1219, 1242-43 (9th Cir. 2018); and *Rodriguez v. City of San Jose*, 930 F.3d
1123,1135 n.10 (9th Cir. 2019)).

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1   *Chicago*, 651 F.3d 684, 697 (7th Cir. 2011).

2          That allows the Associational Plaintiffs to seek relief on behalf of their other

3   members facing the same long wait times with LASD. To hold otherwise – and

4   limit relief to named members only – would defeat the purpose of representational

5   standing altogether, where an association acts "solely as the representative of its

6   members" in order to vindicate their shared interests. *Warth v. Seldin*, 422 U.S. 490,

7   511 (1975). Indeed, if the Associational Plaintiffs cannot challenge unconstitutional

8   delays suffered by similarly situated members on those members' behalf, then those

9   members' only recourse would be to flood the courts with individual lawsuits, all of

10  a similar nature, and strain judicial resources even further. This is precisely what the

11  doctrine of representational standing was intended to prevent. *Hunt v. Wash. State*

12  *Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("[N]either the claim asserted nor

13  the relief requested requires the participation of individual members in the

14  lawsuit.").

15         Lastly, Plaintiffs would be remiss if they failed to address what they believe

16  is a misunderstanding by this Court in its preliminary injunction ruling. In

17  explaining why it would not grant relief on the waiting-time issue to other members

18  of the Associational Plaintiffs, this Court wrote that:

19              Even if the Association Plaintiffs have standing to challenge LASD's
                delays as to the Association Plaintiffs' members, Plaintiffs have
20              specifically rejected this far narrower relief. Instead, during the
                hearing, Plaintiffs' Counsel reaffirmed the broad scope of Plaintiffs'
21              request, saying a "general injunction is called for here" and stated, "it
                would be sort of confusing" to "limit relief to just the members of the
22              association" because "the application would have to say are you a
                member of CRPA or something like that."
23

24  Order at 15, *CRPA*, ECF No. 52. Plaintiffs apologize for not being clearer; they

25  would, of course, be thrilled to see injunctive relief for all members of the

26  Associational Plaintiffs and never meant to argue otherwise. At the hearing, their

27  counsel was arguing for wider relief that was not limited just to members of the

28  associations, but that would instead apply to everyone facing unconstitutional wait

                                            19

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

times. Counsel did not intend to argue that Plaintiffs do not desire associational

relief if that is the maximum this Court believes it is authorized to issue – they do.

### III.    CONCLUSION

For these reasons, Plaintiffs urge this Court to deny the Los Angeles

Defendants' motion to dismiss, except as to a few specific issues in which they

agree the Los Angeles Defendants should prevail. Where appropriate, Plaintiffs

request leave to amend if any deficiencies could be corrected with an amended

complaint. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Respectfully submitted,

Dated: December 2, 2024          **MICHEL & ASSOCIATES, P.C.**

*/s/ C.D. Michel*
C.D. Michel
Counsel for Plaintiffs

Dated: December 2, 2024          **LAW OFFICES OF DON KILMER**

*/s/ Don Kilmer*
Don Kilmer
Counsel for Plaintiff The Second Amendment
Foundation

### CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief

contains 20 pages, which complies with the page limit set by court order dated

October 24, 2023.

Dated: December 2, 2024          */s/ C.D. Michel*
C.D. Michel

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

**ATTESTATION OF E-FILED SIGNATURES**

I, C.D. Michel, am the ECF User whose ID and password are being used to file this PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S AND SHERIFF ROBERT LUNA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: December 2, 2024         */s/ C.D. Michel*
                                 C.D. Michel

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *California Rifle and Pistol Association, et al., v. Los Angeles County Sheriff's Dept., et al.*

Case No.:    2:23-cv-10169-SPG (ADSx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S AND SHERIFF ROBERT LUNA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

on the following parties, as follows:

See attached Service List.

by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed December 2, 2024.

Laura Fera

CERTIFICATE OF SERVICE

## SERVICE LIST

Mark R Beckington
Jane E. Reilley
jane.reilley@doj.ca.gov
Christina R.B. Lopez,
christina.lopez@doj.ca.gov
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230

Nicholas R. Green
nicholas.green@doj.ca.gov
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

*Attorneys for Defendant Rob Bonta*

Mark Selwyn
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Road
Palo Alto, CA 94306

Alan Schoenfeld
alan.schoenfeld@wilmerhale.com
Noah Levine
noah.levine@wilmerhale.com
Ryan Chabot
ryan.chabot@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Joshua A. Vittor
joshua.vittor@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grande Ave., Suite 2400
Los Angeles, CA 90071

*Attorneys for Defendants Los Angeles County Sheriff's
Department and Sheriff Robert Luna*

Bruce A. Lindsay
bal@jones-mayer.com

---

SERVICE LIST

1

Monica Choi Arredondo
mca@jones-mayer.com

2

JONES MAYER
3777 N. Harbor Blvd.

3

Fullerton, CA 92835

4

*Attorneys for Defendants La Verne Police Department*

5

*and La Verne Chief of Police Colleen Flores*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SERVICE LIST