1   C. D. Michel – SBN 144258
    cmichel@michellawyers.com
2   Joshua Robert Dale – SBN 209942
    jdale@michellawyers.com
3   Anna M. Barvir – SBN 268728
    Konstadinos T. Moros – SBN 306610
4   kmoros@michellawyers.com
    Alexander A. Frank – SBN 311718
5   afrank@michellawyers.com
    MICHEL & ASSOCIATES, P.C.
6   180 E. Ocean Blvd., Suite 200
    Long Beach, CA 90802
7   Telephone: (562) 216-4444

8   Donald Kilmer-SBN 179986
    Law Offices of Donald Kilmer, APC
9   14085 Silver Ridge Road
    Caldwell, Idaho 83607
10  Telephone: (408) 264-8489
    Email: Don@DKLawOffice.com

11
    Attorneys for Plaintiffs
12
                    **UNITED STATES DISTRICT COURT**
13
                   **CENTRAL DISTRICT OF CALIFORNIA**
14

15  CALIFORNIA RIFLE & PISTOL              Case No.: 2:23-cv-10169-SPG (ADSx)
    ASSOCIATION, INCORPORATED; et al.,
16                                          **STIPULATION FOR LEAVE TO**
                          Plaintiffs,       **FILE SECOND AMENDED AND**
17                                          **SUPPLEMENTAL COMPLAINT**
                                            **AND TO CONTINUE CASE**
             v.                             **DEADLINES**
18
    LOS ANGELES COUNTY SHERIFF'S            Sherilyn Peace Garnett,
19  DEPARTMENT; et al.,                     United States District Judge

20                        Defendants.       Action Filed: December 5, 2023

21

22

23

24

25

26

27

28

                                    1

1    TO THE HONORABLE COURT: Plaintiffs, along with Defendant Rob Bonta,

2    in his official capacity as Attorney General of the State of California, and

3    Defendants Los Angeles County Sheriff's Department and Sheriff Robert Luna, in

4    his official capacity (collectively the "Parties"), by and through their respective

5    attorneys of record, hereby jointly stipulate as follows:

6    WHEREAS, Plaintiffs desire to add additional waiting-time plaintiffs to their

7    claims against the Los Angeles County Defendants, given that all of the prior

8    waiting-time plaintiffs save for Plaintiff Medalla have since received their concealed

9    handgun licenses ("CCW permits");[1]

10   WHEREAS, the Los Angeles Defendants do not oppose leave to amend, but

11   wish to avoid refiling their motion to dismiss, and will require time to conduct

12   discovery on the newly added Plaintiffs;

13   WHEREAS, the Parties do not want to burden the Court with either extra work

14   or administrative confusion that could result from refiling the same pending motion

15   to dismiss briefing and respective opposition briefing; and

16   WHEREAS, the Plaintiffs have recently settled their claims against the La

17   Verne Defendants, so an amended complaint is appropriate to simplify the case and

18   remove references to Plaintiffs' now-settled claims about La Verne's fee structure

19   and psychological examination;

20   WHEREAS, the proposed Second Amended and Supplemental Complaint does

21   not change anything from the current complaint except to (1) add three new

22   individual waiting-time plaintiffs and allegations about their applications, and (2)

23   remove all portions of the complaint that were relevant to the now-settled claims

24   against the La Verne Defendants;

25   WHEREAS, Defendant Rob Bonta does not oppose leave to amend given that

26   ───────────
[1] Plaintiffs contend that standing remains for nominal damages, as they have
27   argued in their opposition to the Los Angeles Defendants' pending motion to
dismiss. Dkt No. 74. Nevertheless, because this Court may ultimately disagree with
Plaintiffs and grant that motion, Plaintiffs must preserve their standing with new
28   waiting-time Plaintiffs who have much more recently applied for a CCW permit.

1    none of the claims against him are affected;

2        WHEREAS, the Parties currently have a settlement conference with Judge

3    Spaeth scheduled for June 24, 2025, which may help to narrow or clarify the issues

4    remaining;

5        WHEREAS, Assembly Bill 1078, a bill currently pending before the California

6    legislature and supported by the California Department of Justice, would potentially

7    affect portions of this case if passed as currently written. First, it amends existing

8    law to provide an avenue for nonresidents to apply for California CCW permits,

9    which would potentially affect the alternative relief the nonresident Plaintiffs

10   requested in their lawsuit.[2] Second, another change to the law in the bill could

11   potentially affect Plaintiff Partowashraf's individual permit-denial claims as well.

12   As AB 1078 may potentially affect this matter, the Parties agree that it is sensible to

13   continue the cutoff date to hear motions until after it passes and is signed into law,

14   or not, which should be known by October 12, 2025. The current motion cutoff is

15   October 8, 2025;

16       WHEREAS, in light of the foregoing, the Parties agree that it is in the interests

17   of efficiency, judicial economy, and preservation of resources, and not for the

18   purpose of undue delay, to grant a modest extension of pending deadlines;

19       WHEREAS, good cause therefore exists for all pending deadlines to be

20   extended for approximately 30 days, including the deadlines for discovery, expert

21   discovery, trial and corresponding pre-trial deadlines, with the final date to hear

22   motions extended to December 3, 2025, in order to allow time for the Parties to see

23   if AB 1078 is enacted before preparing summary judgment briefing; and

24       WHEREAS, the Parties have requested and received one 60-day extension of

25   the pending deadlines.

26       NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by the

27

28   _____
     [2] The primary relief requested, that California be compelled by this Court
     recognize the permits issued by their home states, would remain unaffected.

STIPULATION FOR LEAVE TO FILE SECOND AM. & SUPP. COMPLAINT

Parties through their undersigned counsel of record, and subject to the approval of this Court, that:

1.     Plaintiffs may file their Second Amended and Supplemental Complaint, and by this stipulation, request the Court's leave and order to do so. A proposed Second Amended and Supplemental Complaint with changes from the original tracked is included as **Exhibit A** to this stipulation. A clean copy of the proposed Second Amended and Supplemental Complaint is included as **Exhibit B**.

2.     The pending motion to dismiss filed by the Los Angeles Defendants (Dkt. No. 60) shall be deemed applicable to the Second Amended Complaint and need not be refiled, with the same applying to Plaintiffs' opposition brief and the Los Angeles Defendants' reply briefing. The Los Angeles Defendants are not obligated to file any further responsive pleading until the pending motion to dismiss is decided.

3.     Defendant Bonta shall have up to 15 days from the date the Second Amended and Supplemental Complaint is filed to file his responsive pleading, and by this stipulation, seek the Court's order setting such deadline.

4.     The following pre-trial deadlines should be continued as follows:

    a.     The date for Fact Discovery Cut-Off is extended to August 1, 2025;

    b.     The date for Initial Expert Disclosure is extended to July 14, 2025;

    c.     The date for Rebuttal Expert Disclosure is extended to August 21, 2025;

    d.     The date for Expert Discovery Cut-Off is extended to August 28, 2025;

    e.     Last date to hear motions is extended to December 3, 2025;

    f.     Last date to hear *Daubert* motions is extended to December 10, 2025;

    g.     Deadline to Complete Settlement Conference is extended to

4

1                 December 23, 2025;

2        h.     Deadline for First Round of Trial Filings is extended to January

3              12, 2026;

4        i.     Deadline for Second Round of Trial Filings is extended to January

5              26, 2026;

6        j.     The date for Final Pretrial Conference is extended to February 11,

7              2026, at 11:00 a.m.; and

8        k.     The date for Trial is extended to March 3, 2026, or the next

9              available date on the court's calendar.

10 **IT IS SO STIPULATED.**

11 Dated:  June 9, 2025           Respectfully submitted,

12                     MICHEL & ASSOCIATES, P.C.

13                     *s/ Anna M. Barvir*

14                     Anna M. Barvir
                    *Attorneys for Plaintiffs*

15

16 Dated:  June 9, 2025           ROB BONTA
                    Attorney General of California
                    MARK R. BECKINGTON

17                     Supervising Deputy Attorney General
                    KRISTI HUGHES

18                     Deputy Attorney General

19                     *s/ Robert William Setrakian*

20                     ROBERT WILLIAM SETRAKIAN
                    Deputy Attorney General

21                     *Attorneys for Defendant Robert Bonta*

22 Dated:  June 9, 2025           WILMER CUTLER PICKERING HALE AND
                    DORR LLP

23

24                     *s/ Ryan Chabot*

                    Ryan Chabot

25                     *Attorneys for Defendants Los Angeles
                    County Sheriff's Department and Sheriff
                    Robert Luna*

26

27

28

STIPULATION FOR LEAVE TO FILE SECOND AM. & SUPP. COMPLAINT

## ATTESTATION OF E-FILED SIGNATURES

I, Anna M. Barvir, am the ECF User whose ID and password are being used to file this STIPULATION FOR LEAVE TO FILE FIRST AMENDED AND SUPPLEMENTAL COMPLAINT. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Date: June 9, 2025                              *s/ Anna M. Barvir*
                                                Anna M. Barvir

# EXHIBIT A

1
C. D. Michel – SBN 144258
cmichel@michellawyers.com

2
~~Joshua Robert Dale~~Anna M. Barvir – SBN ~~209942~~268728
~~jdale~~abarvir@michellawyers.com

3
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com

4
~~Alexander A. Frank – SBN 311718~~
~~afrank@michellawyers.com~~

5
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200

6
Long Beach, CA 90802
Telephone: (562) 216-4444

7
Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, Gun

8
Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc.,
Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer,

9
Jung Yun, Albert Medalla, Zhao Lin Chen, Eric Stratton, Farzad Nezam, ~~Clarence~~
~~Rigali, Keith Reeves, Cynthia Gabaldon,~~ David Broady, and Stephen Hoover

10
*Additional Counsel listed on the next page.*

11
**UNITED STATES DISTRICT COURT**

12
**CENTRAL DISTRICT OF CALIFORNIA**

13
CALIFORNIA RIFLE & PISTOL
ASSOCIATION, INCORPORATED;

14
THE SECOND AMENDMENT
FOUNDATION; GUN OWNERS OF

15
AMERICA, INC.; GUN OWNERS
FOUNDATION; GUN OWNERS OF

16
CALIFORNIA, INC.; ERICK
VELASQUEZ, an individual; SHERWIN

17
DAVID PARTOWASHRAF, an
individual; CHARLES MESSEL, an

18
individual; BRIAN WEIMER, an
individual; JUNG YUN, an individual;

19
ALBERT MEDALLA, an individual;
ZHAO LIN CHEN, an individual; ERIC

20
STRATTON, an individual; FARZAD
NEZAM, an individual;~~CLARENCE~~

21
~~RIGALI, an individual; KEITH~~
~~REEVES, an individual, and CYNTHIA~~

22
~~GABALDON, an individual;~~ DAVID
BROADY, an individual; STEPHEN

23
HOOVER, an individual,

24
            Plaintiffs,

25
      v.

26
LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT; SHERIFF ROBERT

27
LUNA, in his official capacity; ~~LA~~
~~VERNE POLICE DEPARTMENT; LA~~

28
~~VERNE CHIEF OF POLICE COLLEEN~~

CASE NO: 2:23-cv-10169-SPG-ADS

~~FIRST~~ SECOND AMENDED AND
SUPPLEMENTAL COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

**42 U.S.C. §§ 1983 & 1988**

| 1 | ~~FLORES, in her official capacity;~~
ROBERT BONTA, in his official
| 2 | capacity as Attorney General of the State
of California; and DOES 1-10,
| 3 |                    Defendants.
| 4 |
| 5 |
| 6 | Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
| 7 | 14085 Silver Ridge Road
Caldwell, Idaho 83607
| 8 | Telephone: (408) 264-8489
Email: Don@DKLawOffice.com
| 9 | Attorney for Plaintiff The Second Amendment Foundation
| 10 |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
| 26 |
| 27 |
| 28 |

~~FIRST~~ SECOND AMENDED AND SUPPLEME~~T~~N~~T~~AL COMPLAINT

NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer, Jung Yun, Albert Medalla, Zhao Lin Chen, Eric Stratton, Farzad Nezam, Clarence Rigali, Keith Reeves, Cynthia Gabaldon, David Broady, and Stephen Hoover and, through their respective counsel, bring this action against Defendants Los Angeles County Sheriff's Department, Sheriff Robert Luna in his official capacity as Los Angeles County Sheriff, La Verne Police Department, former La Verne Chief of Police, current La Verne Chief of Police Samuel Gonzalez, California Attorney General Robert Bonta in his official capacity, and Does 1-10, inclusive, and make the following supplemental and amended allegations:

## INTRODUCTION

1.     This action challenges the constitutionality of carry permit issuance policies and laws that make it extremely difficult, if not outright impossible or impermissibly time consuming, for Plaintiffs to obtain permits to carry a concealed firearm in public and therefore to exercise their right to be armed in public, as guaranteed by the Second Amendment's text "bear arms," and as recognized by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

2.     The main policies that Plaintiffs target here are: 1) Defendants' failure to timely process carry permit applications, 2) the grossly excessive fees Defendants are charging to process permit applications and satisfy various permit requirements, 23) the use of highly subjective suitability criteria in evaluating applicants, and 34) the refusal to honor permits issued by other states and/or accept applications for permits from non-residents. These practices and policies, some of which are enabled by state law, violate the Second and Fourteenth Amendments.

3.     Some Constitutional rights have a preliminary step required before

their exercise, such as permitting (e.g., parades, demonstrations) or registration (e.g., voting, lobbying). But the administration of such permits or registration requirements may not be so onerous as to exclude whole demographics due to expense or subjectivity, nor may it force them to wait inordinate amounts of time.[1]

4.      In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry**." *Id.* (emphasis added).

5.      The policies that Plaintiffs challenge have gone far beyond "abus[ing]" constitutional rights. Defendants have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with ~~exorbitant poll tax-like fees,~~ egregious wait times lasting well over a year~~,~~ and nefarious discretionary requirements designed to flout the Supreme Court's precedents.

6.      This suit challenges whether Defendants are engaged in a permit process that subjects applicants seeking to lawfully carry for self-defense in California by the only manner allowed under law—with a concealed carry weapons

---

[1] It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926). "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275.

permit ("CCW permit") issued by a local jurisdiction, to excessive wait times, exorbitant fees, and suitability criteria that are unnecessary, burdensome, and subjective; and whether those permit processes violate the right to bear arms in public as explained by the Supreme Court in *Bruen.* Examples abound.

7.    For starters, Los Angeles County Sheriff's Department ("LASD") admits that it takes "a year to a year and a half" to process CCW applications.

8.    While the La Verne Police Department's ("LVPD") permit application processing wait time is not as severe as LASD's, its application process is cost prohibitive. Applicants pay approximately $900 depending on the varying costs that third parties charge for the mandatory training course and live scan services. And even after obtaining a permit, LVPD even charges over $500 for renewal applications every two years ($250 per year to exercise an enumerated right).

9.    In stark contrast, applicants in other California counties can avoid high local-municipality fees by applying with their county's sheriff's department instead of the city where they reside, as California law provides    But LASD Sheriff Luna has refused to process CCW permit applications for Los Angeles County residents who live in one of that county's many distinct "non-contract" municipalities.

10.    Because La Verne is a "non-contract" city, residents who want to exercise their right to carry have no alternative; they must pay LVPD's exorbitant fees if they wish to lawfully carry a concealed firearm.

11. 8.  Additionally, both LASD and LVPD imposes subjective permit-issuance criteria, in open defiance of *Bruen* which rejected such unmoored standards for determining who gets the privilege of exercising an enumerated right. For example, LVPD subjects applicants to an invasive psychological examination. This absurd policy is an outlier, even in California.

12.    Yet under Senate Bill 2 ("SB 2"), effective January 2024, issuing authorities that opt to require the psychological exam may charge the applicant the actual cost of the exam. Whereas under prior law, that expense was capped at $150,

1 ~~and left the issuing authority responsible for paying the balance if it chose to~~

2 ~~require an examination, now the full cost will be borne by the applicant.~~

3 ~~13.    LASD's adopted policies in issuing and renewing CCW permits also~~

4 ~~include impermissible subjective criteria, including punishing victims of crimes.~~

5 ~~14.~~9.  Even if Plaintiffs wanted to avoid the delay ~~, expense,~~ and suitability

6 requirements from LASD ~~and LVPD~~ by simply obtaining a carry permit from

7 another state, ~~as some of these Plaintiffs have done,~~ California does not honor

8 permits issued by *any* other state.

9 ~~15.~~10. In fact, nonresidents have no way to lawfully carry firearms in

10 California, even if they are willing to apply to a California issuing authority for a

11 permit, because California law does not permit in-state issuing authorities to issue

12 permits to nonresidents.

13 ~~16.~~11. This is plainly unconstitutional under both *Bruen* and the precedent

14 established in *Obergefell v. Hodges*, 576 U.S. 644, 648 (2015). If California must

15 honor a broad right to marry, which is unenumerated, then it must also honor the

16 right to carry firearms, which is enumerated.

17 ~~17.~~12. Separately from Plaintiffs' Second Amendment claim, the United

18 States Supreme Court has consistently held that regulations and classifications that

19 impose a penalty or an impermissible burden on the right to travel violate the Equal

20 Protection Clause of the Fourteenth Amendment, unless absolutely necessary to

21 promote a compelling government interest. *Saenz v. Roe*, 526 U.S. 489 (1999);

22 *Shapiro v. Thompson*, 394 U.S. 618 (1969). Accordingly, California's policy of

23 denying out-of-state residents the ability to lawfully exercise their constitutionally

24 protected right to be armed in public for self-defense inhibits the free interstate

25 passage of citizens and violates equal protection doctrines by treating Americans

26 differently merely on account of their state of residency.

27 ~~18.~~13. Furthermore, the Privileges and Immunities Clause of Article IV, § 2

28 of the United States Constitution provides that "The Citizens of each State shall be

~~FIRST~~ SECOND AMENDED AND SUPPLEM~~ET~~NTAL COMPLAINT

1   entitled to all privileges and immunities of Citizens in the several States." The

2   Privileges and Immunities Clause bars discrimination against citizens of other states

3   based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385

4   (1948).

5       ~~19.~~14. Plaintiffs seek to enjoin Defendants' flagrantly unconstitutional

6   practices and uphold Plaintiffs' Second Amendment rights.

**PARTIES**

**Plaintiffs**

9       ~~20.~~15. The individual Plaintiffs are ordinary, law-abiding, adult residents of

10  ~~either~~ Los Angeles County ~~or the City of La Verne,~~ who have applied for CCW

11  permits but have not received them, or ~~have been dissuaded or prevented from~~

12  ~~applying due to the high fees or the psychological examination requirement~~they are

13  residents of other states who wish to carry in California, but have no legal way to

14  do so.

15      ~~21.~~16. The associational Plaintiffs are non-profit organizations dedicated to

16  the preservation of the Second Amendment and other enumerated constitutional

17  rights. These associational Plaintiffs use their resources and economies of scale to

18  ensure the broadest possible protection for their members and supporters by

19  bringing suits on behalf of individual plaintiffs — who are also members — who

20  would otherwise lack the financial resources and litigation experience to bring cases

21  like this themselves. The associational Plaintiffs are representing their members and

22  supporters who ~~reside in Los Angeles County or La Verne and have either~~: (1)

23  already applied for a CCW permit and are faced with a lengthy wait time; ~~(2) would~~

24  ~~apply for a permit if not for the high fees and psychological examination~~

25  ~~requirement; and/~~or (2~~3~~) have CCW permits that were issued by other states and

26  wish to have their permits honored when they visit California. The associational

27  Plaintiffs thus bring this action to vindicate their members' and supporters' Second

28  Amendment rights to publicly bear arms for self-defense, including the rights of the

1   members and supporters of the associational Plaintiffs, who might otherwise lack

2   an opportunity for legal representation due to the lack of resources.

3       22.17.The associational Plaintiffs also have members and supporters in other

4   states who have CCW permits in those states, and wish to have their permits

5   honored when they visit California. Plaintiffs thus bring this action to vindicate

6   their own Second Amendment rights to publicly bear arms for self-defense, or the

7   rights of their members and supporters to do so. While the associational Plaintiffs

8   seek general injunctions on behalf of all similarly-situated Californians the

9   challenged laws and practices affect, they also specifically seek relief on all claims

10  as to each and every one of their members and supporters who might otherwise lack

11  the litigation experience and resources of the associational Plaintiffs.

12      23.18.All individual Plaintiffs are natural persons and citizens of the United

13  States and are eligible to possess firearms under state and federal law, and currently

14  own at least one firearm. Each individual Plaintiff desires to carry a firearm in

15  public for lawful self-defense and would do so, but for the challenged statutes,

16  policies, and practices.

17      24.19.All individual Plaintiffs are members of the associational Plaintiffs

18  California Rifle & Pistol Association, Incorporated, The Second Amendment

19  Foundation, and Gun Owners of America, Inc.

20      25.20.Plaintiff Erick Velasquez is a resident of Los Angeles County and a

21  law-abiding citizen of the United States. Mr. Velasquez had a CCW permit issued

22  pursuant to California Penal Code Section 26150 by Los Angeles County Sheriff's

23  Department. He carried a handgun daily for two years, without any incident.

24      26.21.On April 10, 2023, Mr. Velasquez submitted his CCW permit renewal

25  application with Los Angeles County Sheriff's Department, expecting a simple

26  process and quick approval given there had been no issues the last two years.

27      27.22.Then, on May 3, 2023, Mr. Velasquez was the unfortunate victim of a

28  crime. A burglar broke into his vehicle and stole three handguns, along with other

valuables. The handguns were stored in a range bag in the locked trunk of the car, in compliance with California Penal Code section 25610(a)(1).

28.23. Mr. Velasquez promptly called the police to report the theft. An officer from the Vernon Police Department arrived at the scene and took a report, which noted that Mr. Velasquez was eager to have the thief brought to justice. But as of this date, the perpetrator has not been found.

29.24. On August 23, 2023, Defendant Luna denied Mr. Velasquez's renewal application. As a reason for denial, the letter had the box for "other" but provided no further explanation for the denial. Seeking clarity, Mr. Velasquez eventually communicated with LASD Sergeant Berner, who explained that the theft of the firearms was the reason for the denial. Mr. Velasquez asked how he could appeal, but Sergeant Berner told him there was no appeal process. He encouraged Mr. Velasquez to apply again with the City of Downey instead, as they might not have similar restrictions.

30.25. While California Penal Code sections 26202(a)(5) and 26202(a)(9) were not yet in effect when Mr. Velasquez's permit was denied, to the extent Defendants argue that those sections prevent them from issuing him a CCW permit now, he contends they are unconstitutional as applied to him.

31.26. Plaintiff Sherwin David Partowashraf is a resident of Los Angeles County and a law-abiding citizen. After waiting over a year and a half on his application, on October 3, 2023, the application for a CCW permit was denied by LASD. Even though California law requires a reason for the denial be given, the reasoning for the denial was nothing more than a checkmark next to "other".

32.27. Mr. Partowashraf would come to learn that he was denied a permit because a former girlfriend had filed for a temporary restraining order against him the prior year, after an attempt to extort him had failed.

33.28. At the time, Mr. Partowashraf complied with the law and turned in his firearms to the police to be held while the temporary restraining order was in effect.

1    Following a hearing, the temporary restraining order was promptly dissolved and

2    the request for a restraining order was discharged.

3    ~~34.~~29.Mr. Partowashraf then had to go through a tedious process to get his

4    firearms back, involving him submitting requests for *each* firearm to the California

5    Department of Justice for them to run background checks so he could have them

6    returned to him. After being approved, he scheduled a time to pick up the firearms

7    and received them without further trouble. The California DOJ has thus itself

8    confirmed Mr. Partowashraf is not dangerous. If law enforcement thought he was

9    still dangerous, they could have filed for a gun violence restraining order under

10   California Penal Code section 18100, but they did not do so.

11   ~~35.~~30. Mr. Partowashraf contends that his rights should not be denied

12   because of a dissolved temporary restraining order, especially following the

13   Supreme Court's ruling in *Rahimi*.

14   ~~36.~~31.While California Penal Code section 26202(a)(3) was not yet in effect

15   when Mr. Partowashraf's permit was denied, to the extent Defendants argue that it

16   prevents them from issuing him a CCW permit now, he contends it is

17   unconstitutional as applied to him.

18   ~~37.~~32.Plaintiff Charles Messel is a resident of Los Angeles County and a

19   law-abiding citizen. Mr. Messel submitted his CCW permit application to LASD on

20   July 1, 2022. Having heard nothing by April 2023, he contacted the department to

21   inquire about his application.

22   ~~38.~~33.The response he received stated: "We were several months behind in

23   opening and entering applications in our tracking system. Although you applied

24   earlier, your application wasn't entered into our tracking system until 11/2/22. We

25   are currently working on applications that went into our tracking system in July of

26   2022. Thank you for your patience."

27   ~~39.~~34.As of the filing of this action, Mr. Messel had still not been issued a

28   permit or received further communications about his application's status from

1  LASD. More than 17 months had elapsed since his initial application. Following

2  the filing of this action and the filing of a preliminary injunction to compel LASD

3  to issue Mr. Messel a permit, only then did LASD finally process his application,

4  nearly two years after he had submitted his application.

5      40.35. Plaintiff Brian Weimer is a resident of Los Angeles County and a law-

6  abiding citizen. Mr. Weimer is employed by Los Angeles County as a firefighter on

7  Catalina Island.

8      41.36.Like Mr. Messel, Mr. Weimer applied for a CCW permit with LASD

9  and still has not been issued one. Mr. Weimer applied in January 2023, over a year

10  ago, but still has not been issued a permit or a denial. His constitutional right to

11  carry a firearm for self-defense has been denied to him.

12      42.37.Plaintiff Jung Yun is a resident of Los Angeles County and a law-

13  abiding citizen. Mr. Yun applied for his CCW permit with LASD in September of

14  2022. When he last followed up on December 6, 2023, he received a response

15  saying that his application had not even been assigned to an investigator yet, and no

16  further timeline was provided. Finally, on August 27, 2024, he received an initial

17  telephonic interview and was told he would get additional instructions in

18  approximately two months.

19      38.    Plaintiff Albert Medalla is a resident of Los Angeles County and a

20  law-abiding citizen. He works the graveyard shift at Cedars-Sinai Medical Center

21  as an ultrasound technologist. Due to rising crime in his area, he desires to be able

22  to carry a firearm for self-defense. He applied for his CCW permit with LASD on

23  October 31, 2023. His initial interview is not scheduled to occur until August 11,

24  2025.

25      39.    Plaintiff Zao Lin Chen is a resident of Los Angeles County and a law-

26  abiding citizen. He is a federal employee and holds an FFL-03 license, both of

27  which speak to his good standing as a citizen. He applied for a CCW permit with

28  LASD on April 3, 2025, but the earliest appointment time he could reserve for his

1    initial interview was April 9, 2026.

2        40.    Plaintiff Eric Stratton is a resident of Los Angeles County and a law-

3    abiding citizen. He holds CCW permits from two other states, and is a retired Los

4    Angeles firefighter. He applied for a CCW permit with LASD on May 28, 2025,

5    but the earliest appointment time he could reserve for his initial interview was June

6    2, 2026.

7        43.41. Plaintiff Farzad Nezam is a resident of Los Angeles County and a law-

8    abiding citizen. He is a licensed California attorney who decided to apply for a

9    CCW permit following the murder of one of his clients, which made him fear for

10    his own safety. He applied for a CCW permit with LASD on December 7, 2024, but

11    the earliest appointment time he could reserve for his initial interview was

12    December 16, 2025.

13        44.    Plaintiff Clarence Rigali is a resident of La Verne and a law-abiding

14    citizen. Mr. Rigali is 60 years old and disabled. He was a Union Millwright from

15    1981 until 2003, when he was injured in a serious power plant accident. He

16    possesses a Utah CCW permit, which required a criminal background check to

17    obtain.

18        45.    Mr. Rigali lives in a senior citizen mobile home park. Given his fixed

19    income, the unreasonable and unjustifiable approximately $900 in fees and costs to

20    apply for and obtain a La Verne CCW permit exceeds his modest means and that

21    has prevented him even from applying for a permit. He has been priced out of his

22    constitutional rights.

23        46.    Mr. Rigali also objects to the psychological exam LVPD requires,

24    which is an unconstitutional suitability determination. When he sustained his work-

25    related injury in 2003, a protracted lawsuit ensued following that injury, and Mr.

26    Rigali was sent to several antagonistic psychologists for examination as the defense

27    tried to disprove his injuries and claim he was a malinger. That horrible experience

28    has made Mr. Rigali especially apprehensive about subjecting himself to another

1    such exam, let alone as a precondition to exercising an enumerated right.

2    47.    Plaintiff Keith Reeves is a resident of La Verne and a law-abiding

3    citizen,. He is a certified NRA pistol instructor and a range safety officer. He has

4    CCW permits issued by both Arizona and Utah, which are honored by several states

5    but not California. Both of Mr. Reeves' permits required a criminal background

6    check to obtain.

7    48.    Mr. Reeves applied for a CCW permit in January 2014, and was

8    denied in May 2015 because he was deemed to lack sufficient "good cause," a

9    criterion the Supreme Court struck down in *Bruen* seven years later. Post-*Bruen*,

10    Mr. Reeves wishes to reapply for a permit, but cannot afford to do so due to the

11    excessive application and issuance fees charged by LVPD.

12    49.    Mr. Reeves also refuses to subject himself to an unconstitutional

13    psychological exam. Once the unconstitutional requirements are removed or

14    invalidated, he will apply for a permit without delay, but has refrained from doing

15    so due to the challenged restrictions.

16    50.    Plaintiff Cynthia Gabaldon is a resident of La Verne and a law-abiding

17    citizen. She has trained with firearms for most of her life.

18    51.    Encouraged by the Supreme Court's ruling in *Bruen*, Mrs. Gabaldon

19    decided it was time to obtain a CCW permit. Unfortunately, the exorbitant fees

20    LVPD charges have dissuaded her from applying. Mrs. Gabaldon is self-employed

21    and has a son in college. Given her limited income and her expenses, she cannot

22    afford LVPD's excessive fees to exercise an enumerated right. Mrs. Gabaldon also

23    objects to subjecting herself to a psychological examination.

24    52.42. Plaintiff David Broady is a resident of Nevada and a law-abiding

25    citizen. He is a retired California prosecutor, last working as a Senior Deputy

26    District Attorney for the Placer County DA's office from 1995 to 2020. Before that,

27    he worked in the Riverside County DA's office from 1991 to 1995.

28    53.43. Mr. Broady had California CCW permits in Riverside County and later

1    Placer County, from the early 1990s until 2020 when he moved to Nevada. Since

2    then he has had a Nevada CCW permit, but cannot obtain a California CCW permit.

3    California does not honor his Nevada permit.

4        54.44.This is a problem for Mr. Broady because he still frequently visits

5    California as he owns property in this state and has family here. He also remains an

6    active member of the California Bar. He joins this lawsuit against California

7    Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition

8    on the right to carry against citizens from other states.

9        55.45.Mr. Broady, for himself and on behalf of other nonresidents who have

10   out-of-state CCW permits, as well as on behalf of the members and supporters of

11   the associations who live outside of California, seeks to have his Nevada permit

12   honored by the State of California.

13       56.46.Plaintiff Stephen Hoover is a resident of Florida, and a law-abiding

14   citizen. He is a PhD candidate at the Center for Complex Systems and Brain

15   Sciences in the Charles E. Schmidt College of Science at Florida Atlantic

16   University. He owns firearms and has a Florida-issued CCW permit.

17       57.47.Mr. Hoover spent a significant amount of time in California in the

18   summer of 2023 and plans to return for work and leisure purposes in the near

19   future.

20       58.48.While he was in California, he sought to obtain a California CCW

21   permit from the Monterey County Sheriff's Department, as California would not

22   honor his Florida CCW permit, but he still desired to be able to exercise his right to

23   carry for self-defense. Yet in spite of otherwise meeting the criteria for eligibility,

24   his application was denied because he was deemed ineligible for a CCW permit

25   under Penal Code section 26150(a)(3), as he is not a resident of the county he

26   applied in, nor a resident of California.

27       59.49.Mr. Hoover joins this lawsuit against California Attorney General Rob

28   Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry

FIRST SECOND AMENDED AND SUPPLEMETNTAL COMPLAINT

1    against citizens from other states.

2          60.50. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit

3    membership organization. It is incorporated under the laws of the state of

4    Washington and was founded in 1974. SAF has over 720,000 members and

5    supporters nationwide, including thousands of members in California. SAF is

6    dedicated to promoting a better understanding of the nation's constitutional heritage

7    and tradition of privately owning, possessing, and carrying firearms, through

8    educational and legal action programs designed to better inform the public. SAF is

9    a pioneer and innovator in defending the right to keep and bear arms, through its

10   publications and public education programs like the Gun Rights Policy Conference.

11   SAF also incurs significant expenses to sponsor public interest litigation to defend

12   its interests and to disseminate information to like-minded individuals. SAF

13   members who want CCW permits but reside in Los Angeles County or La Verne

14   are subject to lengthy wait times, exorbitant fees, and unconstitutionally subjective

15   permit issuance criteria that violate the U.S. Constitution. SAF's policies

16   specifically include the dedication of its resources, litigation experience, and

17   economies of scale for the purpose of representing people who would otherwise

18   lack the means and access to resources to successfully bring lawsuits to compel

19   state and local governments to comply with the Constitution, as intended by the

20   Fourteenth Amendment, its enforcement provisions, and Congressional statutes

21   enabling the enforcement of the Constitution by private actors.  See: 42 U.S.C.

22   section 1983, 1988.

23         61.51. Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-

24   stock corporation and a not-for-profit membership organization with its principal

25   place of business in Springfield, Virginia, and is organized and operated as a non-

26   profit membership organization that is exempt from federal income taxes under

27   Section 501(c)(4) of the Internal Revenue Code. GOA was formed in 1976 to

28   preserve and defend the Second Amendment rights of gun owners. It has more than

1  2 million members and supporters across the country, including residents within

2  this judicial district and throughout the State of California. GOA members who

3  wish to obtain CCW permits but reside in Los Angeles County ~~or La Verne~~ are

4  subject to lengthy wait times ~~or exorbitant fees,~~ and also unconstitutionally

5  subjective criteria.

6  ~~62.~~52. Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock

7  corporation and a not-for-profit legal defense and educational foundation with its

8  principal place of business in Springfield, Virginia and is organized and operated as

9  a non-profit legal defense and educational foundation that is exempt from federal

10 income taxes under Section 501(c)(3) of the Internal Revenue Code. GOF was

11 formed in 1983 and is supported by gun owners across the country, within this

12 judicial district, and throughout the State of California who, like the individual

13 Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB

14 2. GOF supporters who wish to obtain CCW permits but reside in Los Angeles

15 County ~~or La Verne~~ are subject to lengthy wait times ~~or exorbitant fees,~~ and also

16 unconstitutionally subjective criteria. GOF is supported by gun owners across the

17 country, who fund the organization's activities so that it can, *inter alia*, file

18 litigation such as this to preserve, protect, and defend their right to keep and bear

19 arms.

20 ~~63.~~53. Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit

21 organization incorporated under the laws of the state of California with

22 headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of

23 the Second Amendment in California. GOC members who wish to obtain CCW

24 permits but reside in Los Angeles County ~~or La Verne~~ are subject to lengthy wait

25 times ~~or exorbitant fees,~~ and also unconstitutionally subjective criteria.

26 ~~64.~~54. Plaintiff CRPA is a non-profit membership and donor-supported

27 organization qualified as tax-exempt under Section 501(c)(4) of the Internal

28 Revenue Code, with its headquarters in Fullerton, California. Founded in 1875,

CRPA seeks to defend the civil rights of all law-abiding individuals, including the enumerated right to bear firearms for lawful purposes like self-defense. CRPA regularly participates as a party or amicus in litigation challenging unlawful restrictions on the right to keep and bear arms. It also provides guidance to California gun owners regarding their legal rights and responsibilities. CRPA members include law enforcement officers, prosecutors, professionals, firearm experts, and the general public. CRPA members who want CCW permits but reside in Los Angeles County ~~or the City of La Verne~~ are subject to lengthy wait times ~~or exorbitant fees,~~ and also unconstitutionally subjective criteria.

**Defendants**

~~65.~~55. Defendant LASD is a local government entity created under the laws of California, and it exists as an agency of Los Angeles County. LASD is a political subdivision of Los Angeles County. LASD is responsible for issuing CCW permits.

~~66.~~56. Defendant Robert Luna is the elected Sheriff of Los Angeles County. Defendant Luna is and, at all times relevant to this complaint, was one of the ultimate policy makers for Defendant LASD, and he has authority and responsibility under California Penal Code section 26150 to issue carry permits within the county. He is directly responsible for promulgating, enforcing, and continuing the policies of his Department, including the unlawful policies and procedures complained of herein. Luna is sued solely in his official capacity.

~~67.   Defendant LVPD is a local government entity created under the laws of California, and it exists as an agency and subdivision of the City of La Verne. LVPD CCW permit applications and renewals for residents of the city.~~

~~68.   Defendant Colleen Flores is the Chief of Police of LVPD. She is sued in her official capacity. She has authority and responsibility under California Penal Code section 26155 to issue carry permits to residents of La Verne. Defendant Samuel Gonzalez succeeded Chief Flores following the filing of this action and the filing of a preliminary injunction motion by Plaintiffs in the action, and has~~

~~FIRST~~ SECOND AMENDED AND SUPPLEM~~ET~~NTAL COMPLAINT

1   assumed the rights and obligations of Chief Flores in that position, including the

2   ability to act or refrain from acting, in providing the relief sought by Plaintiffs in

3   this action.

4       69.57. Defendant Robert Bonta is the Attorney General of California. He is

5   the chief law enforcement officer of California. Defendant Bonta is charged by

6   Article V, section 13 of the California Constitution with the duty to see that the

7   laws of California are uniformly and adequately enforced. Defendant Bonta also

8   has direct supervision over every district attorney and sheriff in all matters

9   pertaining to the duties of those respective officers. Defendant Bonta's duties also

10  include informing the public, local prosecutors, and law enforcement regarding the

11  meaning of the laws of California.

12      70.58. The true names or capacities–whether individual, corporate, associate,

13  or otherwise–of the Defendants named herein as Does 1 through 10 are presently

14  unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs

15  pray for leave to amend this Complaint to show the true names or capacities of

16  these Defendants if and when they have been determined.

17                      **JURISDICTION AND VENUE**

18      71.59. The Court has original jurisdiction of this civil action under 28 U.S.C.

19  § 1331, because the action arises under the Constitution and laws of the United

20  States, thus raising federal questions. The Court also has jurisdiction under 28

21  U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the

22  deprivation, under color of the laws, statutes, ordinances, regulations, customs, and

23  usages of the State of California and political subdivisions thereof, of rights,

24  privileges or immunities secured by the United States Constitution and by Acts of

25  Congress.

26      72.60. Plaintiffs' claims for declaratory and injunctive relief are authorized by

27  28 U.S.C. §§ 2201-2202, and their claim for attorney's fees is authorized by 42

28  U.S.C. § 1988.

73.61. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district. The Los Angeles County Sheriff's Department and La Verne Police Department are bothis located within this district.

**GENERAL ALLEGATIONS**

74.62. The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms and protects, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

75.63. The Supreme Court has also held that the Second Amendment right to keep and bear arms, via Fourteenth Amendment incorporation, applies equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty") (emphasis added).

76.64. *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

77.65. Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that

1
2
3

> conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

4
5

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).

6        ~~78.~~66.In applying that test, the *Bruen* Court confirmed "that the Second and

7    Fourteenth Amendments protect an individual's right to carry a handgun for self-

8    defense outside the home." 142 S. Ct. at 2122.

9        ~~79.~~67. In all issues presented in this lawsuit, Plaintiffs contend that their

10    proposed course of conduct is exactly the same as the proposed course of conduct

11    in *Bruen*: "carrying handguns publicly for self-defense." <u>*Bruen*</u>, 597 U.S. at 32. In

12    that case, New York argued that the Second Amendment "permits a State to

13    condition handgun carrying in areas 'frequented by the general public' on a

14    showing of a nonspeculative need for armed self-defense in those areas". *Id*. at 33.

15    The Supreme Court did not say that "carrying handguns publicly for self-defense

16    without a showing of nonspeculative need" was the proposed course of conduct,

17    because that "showing of nonspeculative need" was the <u>*burden* on the Second</u>

18    <u>Amendment right</u>. The burden is not part of the proposed course of conduct, it is

19    the law or practice that is being challenged. In the same way, Plaintiffs here need

20    not define their proposed course of conduct as, for example, "carrying handguns

21    publicly for self-defense without unreasonable ~~fees~~<u>wait times.</u>"~~.~~ *Bruen*'s simpler

22    "carrying handguns publicly for self-defense" applies in this case.

23                        **California's Law Regarding CCW Permit Issuance**

24        ~~80.~~68.Following the California Legislature's enactment of SB 2, which takes

25    effect in January of 2024, California law imposes the following CCW permit

26    application requirements:

27

28

> (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that

---

~~FIRST~~ <u>SECOND</u> AMENDED AND SUPPLEME~~TT~~N<u>T</u>AL COMPLAINT

person upon proof of all of the following:

(1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

(2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a) (West 2023); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance).

~~81.~~ 69. Under the recently revised Penal Code section 26205 operative January 2024, a licensing authority:

shall give written notice to the applicant indicating if the license under this chapter is approved or denied. The licensing authority shall give this notice within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later. The licensing authority shall give this notice within 120 days[2] of receiving the completed application for a license renewal.

~~82.    Under Penal Code section 26190(b)(2), only 50 percent[3] of the~~

---

[2] The 120-day time limit was 90 days prior to the passage of SB 2.

~~[3] This additional local fee was capped at 20 percent prior to the passage of SB 2.~~

~~FIRST~~ SECOND AMENDED AND SUPPLEM~~E~~NTAL COMPLAINT

1  "additional local fee"—what the issuing authority may charge CCW permit

2  applicant above the DOJ's application fees—may be charged at the time the CCW

3  permit application is submitted. The balance may be collected only when a permit

4  is issued. Furthermore, the additional local fee cannot exceed the actual reasonable

5  costs incurred by the locality in processing the application.

6  83.70. While *Bruen* expressly forbids subjective criteria be used during a

7  licensure process, California law does too, at least to the extent the standard DOJ

8  CCW permit application does not require such information. According to Penal

9  Code section 26175(g), "[a]n applicant shall not be required to complete any

10  additional application or form for a license, except to clarify or interpret

11  information provided by the applicant on the standard application form." Thus,

12  local requirements (such as Defendant LASD's) that an applicant produce copies of

13  past employment files or identify a need for self-defense are not within the ambit of

14  the DOJ's standard permit application.

15  84.   California law authorizes a local issuing authority to conduct

16  psychological testing prior to issuance of a concealed carry license. This provision

17  of California's CCW licensing regime manages to violate more than just the Second

18  Amendment. It violates the presumption of sanity, it places an impressible burden

19  on exercising a fundamental right, and violates the procedural due process

20  guarantees of the Fourteenth Amendment.

21  85.   Psychological testing has the effect of transferring the discretionary

22  issuance of a permit to exercise an enumerated right from a government official to a

23  psychologist. *Bruen's* holding rejects "suitability" determinations in permit

24  issuance schemes, and a psychological evaluation is a per se a suitability

25  determination. Such an evaluation impermissibly introduces the subjective

26  impressions and opinions of the person conducting the evaluation into the permit

27  issuance determination, rather than using objective criteria such as prior mental

28  health adjudications. In that sense, a psychological exam to determine whether an

1    applicant has the proper temperament to bear arms is nothing more than a

2    requirement that an applicant demonstrate "good moral character" in order to bear

3    arms—something that *Bruen* definitively forecloses by rejecting "suitability"

4    determinations. And that is to say nothing about the utter dearth of a Founding-era

5    tradition of testing the mental condition of each and every individual seeking to

6    exercise their rights to carry arms in public.

7            86.    What is more, California law permits local issuing authorities to

8    impose this unconstitutional and subjective psychological-suitability determination

9    on individuals as a prerequisite to carry a firearm, even after they have already

10    demonstrated their lawful entitlement to possess a firearm. In other words, the

11    CCW applicant has already passed a background check (including a check of a

12    history of prior disqualifying mental health commitments or holds) as a condition of

13    purchasing a firearm. And this already-passed background check is the same

14    background check that a CCW permit applicant will again have to pass during the

15    permit-issuance process, prior to any psychological evaluation being performed.

16            87.    Furthermore, the excessive cost and financial burden of such a

17    psychological test impermissibly shifts the burden to CCW applicants in violation

18    of *Bruen*.

19            88.    California law already provides for fully disarming any person

20    subjected to a psychological hold when a qualified professional has determined that

21    the individual is a danger to themselves or others. *See* Cal. Welf. & Inst. Code §§

22    5150, 5250, 8100-8108. A person's disqualifying mental health hold is a mandatory

23    record forwarded to and maintained by the California Department of Justice for

24    regulating firearm possession. *Id.,* §§ 8104-06. Yet even after a mental health hold,

25    the State of California, not the individual citizen, bears the burden of proving a

26    threat to public safety based on evidence of psychological disqualification. *Id.,* §

27    8103(f)(6). SB 2 contradicts existing law in California by requiring a law-abiding

28    resident to prove a negative—i.e., that they are not insane or psychologically

FIRST SECOND AMENDED AND SUPPLEMETNTAL COMPLAINT

1    ~~impaired.~~

2    ~~89.    For all of these reasons, Plaintiffs also challenge the constitutionality~~

3    ~~of California Penal Code section 26190(e),[4] which permits issuing authorities to~~

4    ~~mandate psychological testing.~~

5    ~~90.~~71. SB 2 also added new subsections to the Penal Code that allow issuing

6    authorities to disqualify a permit applicant due to loss or theft (being a victim of

7    crime) of a firearm. Specifically, an applicant is disqualified if: "In the 10 years

8    prior to the licensing authority receiving the completed application for a new

9    license or a license renewal, [he] has experienced the loss or theft of multiple

10   firearms due to the applicant's lack of compliance with federal, state, or local law

11   regarding storing, transporting, or securing the firearm. For purposes of this

12   paragraph, "multiple firearms" includes a loss of more than one firearm on the same

13   occasion, or the loss of a single firearm on more than one occasion." *See* Cal. Penal

14   Code § 26202(a)(9) (West 2023).

15   ~~91.~~72. An applicant can also be denied if he: "[f]ailed to report a loss of a

16   firearm as required by Section 25250 or any other state, federal, or local law

17   requiring the reporting of the loss of a firearm." *See id.* § 26202(a)(10).

18   ~~92.~~73. SB 2, which took effect following the filing of this lawsuit, also added

19   Penal Code section 26202(a)(3), which prohibits anyone who has had a restraining

20   order issued against them from being granted a permit for five years from the date

21   the order expired. This law applies even to *temporary* restraining orders that were

22   dissolved upon a hearing, such as in Plaintiff Partowashraf's situation.

23   ~~93.~~74. SB 2 also added Penal Code section 26202(a)(5), which disqualifies

24   anyone who "Has engaged in an unlawful or reckless use, display, or brandishing of

25   a firearm." In its opposition to Plaintiffs' motion for preliminary injunction, LASD

26   argued this provision also barred Plaintiff Velasquez from getting his permit

27   renewed, even though the denial occurred prior to SB 2's effective date.

28   ---

     [4] ~~Designated 26190(f) prior to the passage of SB 2.~~

~~FIRST~~ <u>SECOND</u> AMENDED AND SUPPLEM~~E~~<u>N</u>T~~N~~AL COMPLAINT

94.75. None of these additional criteria imposed on license applicants comport with the Second Amendment, as there is no broad and enduring historical tradition of disarming Americans because they have been victimized by criminals, or temporarily disarmed until a hearing. Thus, Plaintiffs seek to enjoin Defendant Bonta from enforcing these statutory provisions.

95.76. Both Plaintiff Velasquez and Plaintiff Partowashraf had their CCW permit applications denied before SB2 took effect. However, to the extent Defendant LASD argues that its provisions bar it from issuing permits to these two Plaintiffs, Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) should be declared unconstitutional as applied to them.

**LASD Is Misled by the Attorney General and Does Not Address Lengthy Wait Times Despite Several Letters from CRPA Warning of Litigation**

96.77. Following the *Bruen* ruling, CRPA sent letters to all California sheriff's departments, including Los Angeles County. The first letter was sent the day after the June 2022 *Bruen* ruling, and explained that the "good cause" portion of California's CCW permit issuance laws was no longer enforceable.

97.78. But rather than complying with the Supreme Court's decision, the Attorney General rebelled, responding to the *Bruen* ruling by claiming that local sheriffs and police chiefs in fact could *add* more steps and impose *additional* subjective considerations to the permit application process in light of *Bruen*. On June 24, 2022, the Attorney General sent a Legal Alert to law enforcement officials across California, instructing it was proper under *Bruen* to apply a heightened "good moral character" requirement to the application process which included subjective considerations beyond the applicant passing a criminal and mental health background check.

98.79. In response to the Attorney General's malicious and intentional attempt to undermine the *Bruen* ruling, CRPA sent a second letter to several sheriff's departments, including LASD, reiterating that the Second Amendment, as

1  clarified by the *Bruen* ruling, will only permit "narrow, objective, and definite"

2  standards to be used in issuing permits to law-abiding citizens,[5] and that they

3  should ignore the Attorney General's unlawful instruction to his subordinate law

4  enforcement agencies.

5      ~~99.~~80. In the months following CRPA's correspondences to the county

6  sheriffs, CRPA received responses from several departments stating that they

7  would begin complying with *Bruen*. In contrast, LASD never responded. It did

8  begin to process CCW permit applications, albeit at an unlawfully slow pace, with

9  wait times routinely stretching beyond one year for many CRPA members.

10  However, CRPA abstained from litigation, believing it best to allow the law

11  enforcement authorities some time to adjust to the implied mandate of *Bruen*.

12     ~~100.   In August 2022, former LASD Sheriff Alex Villanueva announced that~~

13  ~~"LASD will only accept first-time CCW applications from those who reside within~~

14  ~~our contract cities or unincorporated communities. Applicants residing in a~~

15  ~~municipality other than those served by LASD shall contact their local police~~

16  ~~department and apply for a CCW license." This meant that several cities in Los~~

17  ~~Angeles County, that had not set up a CCW permit program, like La Verne, would~~

18  ~~now need to do so, even though the Sheriff is obligated to accept and process such~~

19  ~~applications from *any* county resident—whether they live in a "non-contract" city~~

20  ~~or not—under California Penal Code section 26150.~~

21     ~~101.   This illegal LASD policy change has contributed to the high fees~~

22  ~~problem. LASD's refusal to grant permits to residents of municipalities inside the~~

23  ~~county eliminates a cheaper route to obtaining a permit for county residents, and~~

24  ~~gives them no way around the exorbitant fees that some municipalities, like LVPD,~~

25  ~~have imposed.~~

26     ~~102.~~81.    As CRPA received an ever-increasing volume of complaints

27  _____

28  [5] Again, Plaintiffs do not concede that any mandatory permitting scheme was found permissible by *Bruen*, as most of the states that have such objective "shall issue" schemes also allow constitutional carry or open carry without a license.

about waiting times ~~and fees~~ from its members in the months following *Bruen*, it sent a letter to newly elected Sheriff Luna on February 21, 2023. The letter advised that long wait times contravene *Bruen's* express language, violate the Second Amendment, and are unlawful under California law, and promised to forbear litigation should the Sheriff imminently address the long wait times at issue.

~~103.~~82.    Sheriff Luna's office responded by letter dated March 9, 2023, stating that LASD was "taking steps to reduce processing times and improve our overall processes." That letter detailed how the adoption of new application processing software (Permitium) may reduce processing times and alluded to potentially increasing staffing in the CCW unit to address the backlog of applications. The Sheriff stated that he hoped the situation would be much better in six months, and he promised to provide regular progress updates (that never materialized).

~~104.~~83.    CRPA responded on March 14, 2023 writing that, while Sheriff Luna's letter was encouraging, another six months was not an acceptable timeframe, given the thousands of applications lingering for a year or more. CRPA also noted that LASD previously admitted that long wait times are unconstitutional. In a July 7, 2022, letter to the Chief of Police of San Gabriel explaining why LASD could no longer accept applications from residents of San Gabriel, the Department wrote in pertinent part:

> Although the LASD can process CCW applications, as currently staffed, there will be significant delays because we do not have sufficient personnel required for the anticipated surge. As such, any unnecessary delays would violate the SCOTUS decision, thus violating the rights of the citizens of Los Angeles County and opening the LASD and other law enforcement agencies to otherwise avoidable litigation.

RECEIVED
JUL 1 1 2022
SAN GABRIEL PD
ADMINISTRATION

211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012

*A Tradition of Service*
~ Since 1850 ~

~~105.~~84.    CRPA's March 14, 2023 letter also expressed CRPA's view that adopting a policy of not processing permit applications from LA County residents

1  living in non-contract municipalities was illegal. CRPA is unaware of any other

2  California county sheriff that refuses to process CCW permit applications for that

3  county's residents merely because those residents live in a "non-contract city."

4      ~~106.~~85.    Unfortunately, in a responsive letter dated March 24, 2023, the

5  Sheriff only repeated his vague promise to "improve efficiency and reduce

6  processing times," but refused to resume accepting applications from residents of

7  non-contract cities.

8      ~~107.~~86.    As of the filing of this lawsuit, the wait times for LASD permit

9  applicants in fact have grown worse instead of better, with CRPA members

10  complaining of wait times in excess of 15 months. Some individuals who submitted

11  applications at the time of the *Bruen* ruling in June 2022 have not even been

12  contacted for their initial interview, as of November 2023.

13      ~~108.~~87.    LASD does not deny that its wait times are absurdly long. In

14  response to a Public Records Act request by Attorney Jason Davis, the Department

15  confirmed that applicants could expect wait times of, "from application entry to

16  issuance . . . a year to a year and a half."

17      ~~109.~~88.    CRPA sent a final letter to the Sheriff on September 14, 2023,

18  warning that litigation was imminent if no immediate changes to accelerate

19  application processing were made. A response was received from the Sheriff on

20  November 1, 2023, making the same vague promises as before, however, no

21  concrete steps to implement these purported fixes or timelines for doing so were

22  identified.

23  ~~**LVPD's Exorbitant Fees and Unconstitutional Psychological Exam**~~
~~**Requirement**~~

24

25      ~~*A.    LVPD's Permit Application Fees Are Dramatically Higher*~~
~~*Than Most Other Issuing Authorities in California and*~~
~~*Elsewhere*~~

26

27  ~~110.   Like many other municipalities in California, La Verne did not~~

28  ~~historically have a CCW permitting process, but instead referred applicants to~~

1    LASD. But as discussed *supra*, after *Bruen*, LASD announced that it "will only

2    accept first-time CCW applications from those who reside within our contract cities

3    or unincorporated communities and encourage applicants residing in a municipality

4    other than those served by LASD to contact their local police department and apply

5    for a CCW license."[6] Consequently, La Verne and other cities were forced to

6    establish their own permitting programs.

7        111.   LVPD took several months to set up its permit process, during which

8    time its residents had no operative permitting authority to which to apply in order to

9    obtain a permit to exercise the constitutional right to bear arms outside the home.

10   Eventually, LVPD announced in early 2023 that it would begin accepting

11   applications, and published the schedule of fees.

12       112.   However, the outrageous fee schedule included $398 for "processing,"

13   $150 for "administrative" costs, $93 for "licensing," $20 for fingerprinting, $150

14   for a psychological exam, $20 for a card-issuance fee, and $250 for a training

15   course. Applicants would thus have to pay *more than $1,000* merely to be approved

16   to exercise their constitutional self-defense right. Following the filing of the

17   original complaint, La Verne reduced its fees slightly, by $145. As of now, the total

18   cost to the applicant will be around $750 to $950, with the variance depending on

19   the precise cost of the training course. Renewals every two years will cost

20   somewhere around $550 to $750, again depending on the cost of the training

21   course.

22       113.   This cumulative fee schedule significantly exceeds what CCW

23   applicants in other states pay. For example, in Arizona, where applying for a permit

24   is entirely optional because Arizona is a constitutional carry state, the application

25   fee is $60 plus the cost of fingerprinting that must be submitted with the

26

27

28       [6] *See* <https://lasd.org/ccw/#ccw_fees> (as of November 30, 2023).

FIRST SECOND AMENDED AND SUPPLEMEETNTAL COMPLAINT

application.[7] In Texas, the application fee is $40.[8] Florida charges $55 for its issuance fee and $42 for fingerprinting.[9] Utah charges $53.25 for Utah residents, and $63.25 for non-residents.[10] In Minnesota, the fee may not exceed $100.[11] Nevada charges $100.25.[12] Washington State charges $36 plus fingerprinting fees.[13]

114.  California's short two-year permit period is also an outlier that makes the average annual to exercise the carry right much greater than other states'. An Arizona CCW permit, for example, is good for five years and costs only $60. Thus, an Arizona permit costs roughly $12 a year, whereas a La Verne permit costs no less than $500 per year.

115.  The fees LVPD charges eclipse even other issuing authorities *within California*. Defendant LASD, for example, charges a $43 initial fee,[14] a $173

---

[7] *See* "Concealed Weapons & Permits | Arizona Department of Public Safety," <https://www.azdps.gov/services/public/cwp> (as of November 30, 2023).

[8] *See* "Licensing & Registration | Department of Public Safety," <https://www.dps.texas.gov/section/handgun-licensing/licensing-registration> (as of November 30, 2023).

[9] *See* "Concealed Weapons License Fees," <https://www.fdacs.gov/content/download/7438/file/Concealed-Weapons-License-Fees-06-26-2017.pdf> (as of November 30, 2023).

[10] *See* "How do I Apply for a Concealed Firearm Permit? | DPS – Criminal Identification (BCI)," <https://bci.utah.gov/concealed-firearm/how-do-i-apply-for-a-concealed-firearm-permit> (as of November 30, 2023).

[11] *See* "Administrative Services – Permit to Carry FAQ," <https://dps.mn.gov/divisions/bca/bca-divisions/administrative/Pages/Permit-to-Carry-FAQ.aspx> (as of November 30, 2023).

[12] *See* "Concealed Firearms Permits," < https://www.lvmpd.com/en-us/RecordsFingerprintBureau/Pages/ConcealedFirearms.aspx > (as of November 30, 2023).

[13] *See* "*Fees: Firearms*" <https://www.dol.wa.gov/business/firearms/fafees.html> (as of November 30, 2023).

[14] *See* <https://lasd.permitium.com/entry> (as of November 30, 2023).

issuance fee, plus the cost of training[15] and livescan,[16] which applicants contract for on their own through a third party. The San Diego County Sheriff's Department charges a $27.60 application fee,[17] a $93 livescan fee, and a $110.40 final fee, with the training provider chosen and contracted with by the applicant. The Orange County Sheriff's Department's fees total $169 for the application,[18] with applicants completing the livescan and training through third parties they choose and contract with.

116.    LVPD's claimed processing costs are not only excessive, but not even comparable to similar cities' fees. La Verne's next-door neighbor Glendora charges $243 in total for processing (including livescan), plus the cost of the training course.[19] Burbank charges $100, plus the cost of livescan and the training course.[20] Whittier charges $243 (including livescan), plus the cost of the training course.[21] Even the City of Los Angeles is not as expensive as La Verne, charging $268 plus the cost of livescan and the training course.[22] Moreover, none of the examples listed here require a psychological exam, which saves applicants $150.  Permit renewal

---

[15] Training courses are typically offered by an approved list of providers, with the class costing between $175 and $400 depending on the provider.

[16] Typically around $100, depending on the provider.

[17] *See* <https://www.sdsheriff.gov/i-want-to/get-a-permit-or-license/regulatory-licenses-and-fees/concealed-weapons-license> (as of November 30, 2023).

[18] *See* <https://ocsd.permitium.com/ccw/start> (as of November 30, 2023).

[19] *See* <https://glendorapdca.permitium.com/ccw/start> (as of November 30, 2023).

[20] *See* <https://burbankpdca.permitium.com/ccw/start> (as of November 30, 2023).

[21] *See* <https://whittierpdca.permitium.com/ccw/start> (as of November 30, 2023).

[22] *See* <https://www.lapdonline.org/office-of-the-chief-of-police/office-of-special-operations/detective-bureau/detective-services-group/ccw-carry-concealed-weapon-license/> (as of November 30, 2023).

---

1    fees for these localities are generally under $100.

2        117.   In general, most applicants in California will spend around $400-$600

3    to get their permits. While this is expensive, it is a relative bargain compared to

4    LVPD's astronomical initial $1,000 price tag for government approval to bear arms

5    in public. Following the filing of this complaint and a preliminary injunction

6    challenging such a fee as constitutionally excessive, the City of La Verne voted to

7    slightly lower the fee by reducing the psychological exam cost. As a result, the fee

8    is now approximately $900, which is still constitutionally excessive and infringes

9    on the exercise of the right under the test set forth in Bruen.

10        118.   Part of the LVPD's application process requires Plaintiffs Rigali,

11   Reeves, and Gabaldon to pay to have LVPD Chief Gonzalez interview them for an

12   hour as a condition of receiving a CCW permit. Plaintiffs further allege that this

13   process applies to any member of any of the associational Plaintiffs who is a

14   resident of La Verne who wants to receive a CCW permit, and further allege that

15   such a process applies to any other member of the public who is a resident of La

16   Verne who wants to receive a permit. Not only do Plaintiffs allege that paying for

17   an hour of the Chief's time is constitutionally excessive in terms of the cost

18   imposed for exercising Plaintiffs', associational members' and supporters, and La

19   Verne residents' Second Amendment rights, but that the cost is for a purpose

20   impermissible under the Second Amendment and the test set out in *Bruen*. Plaintiffs

21   allege that any questions or criteria the Chief might ask or assess in such an

22   interview would be necessarily subjective and give discretion to the Chief to deny a

23   permit application in violation of *Bruen*. Plaintiffs thus allege that both the process

24   of being interviewed itself as well as the cost of the process to be interviewed by

25   the Chief violates the Second Amendment.

26        *B.    Outsourcing Application Processing to Third-party Processor*
              *MyCCW is Why LVPD is so Much Costlier Than Other Issuing*
27            *Authorities.*

28        119.   Of the 88 distinct municipalities in Los Angeles County, the only ones

FIRST SECOND AMENDED AND SUPPLEMETNAL COMPLAINT

1   with grossly excessive fee schedules similar to LVPD are those cities which, like

2   La Verne, have outsourced CCW processing to a third-party private contractor

3   called "MyCCW." These include cities like Santa Monica, San Gabriel, and Signal

4   Hill.[23]

5        120.   To use MyCCW to process residents' CCW Permit applications, those

6   cities, including La Verne, pass on a number of exorbitant or illegal fees charged by

7   MyCCW, including:

8        a.     the entire application fee charged at the time the application is

9   submitted, in violation of Penal Code section 26190, which caps the percentage of

10  the total fee collected until after the application is approved;

11       b.     a renewal fee of $348, in excess of the current renewal fee allowed

12  under Section 26190.[24]

13       121.   LVPD passes these unconstitutionally high and contrary to state law

14  fees imposed by MyCCW's use onto its applicants. The $398 application fee, plus

15  the $150 psychological examination—which most other cities and LASD do not

16  require—explains in part why LVPD's CCW fee schedule is exorbitantly high, an

17  outlier among outliers.

18       *C.     LVPD's Burdensome Psychological Examination.*

19       122.   LVPD's required psychological exam administered is invasive and

20  burdensome, it violates procedural due process, and is fundamentally incompatible

21  with the exercise of Second Amendment rights.

22  _____

    [23] *See* <https://www.myccw.us/> (as of November 30, 2023).

23
24  [24] It is unclear how contracting with MyCCW to perform CCW Permit
    application processing for LVPD is legal in any aspect because, while a licensing
    authority may charge an additional fee for processing an application beyond the
25  standard DOJ charges in an amount equal to that local authority's reasonable costs
    for processing, the Penal Code expressly requires that the additional fee collected
26  be deposited in the local authority's treasury, not shared with a private contractor as
    profit. See Cal. Penal Code § 26190(b) (West 2023). However, Plaintiffs do not
27  challenge the legality of the use of third-party processors such as MyCCW in this
    action, and limit their challenge to only the costs passed along to applicants for
28  such use.

123.   The exam was originally administered at a facility in San Bernardino on weekdays. That drive took approximately an hour each way for a typical La Verne resident. The facility applicants were required to use was designed to test applicants applying for roles in law enforcement, not citizens exercising their Second Amendment rights. Yet, for reasons having no grounding in science or empirical evidence, LVPD required CCW permit applicants to fill out a psychological exam asking applicants the same questions that are used to screen its law enforcement personnel.

124.   Following this lawsuit and Plaintiffs' filing of a motion for preliminary injunction, La Verne changed its contractor for the psychological examination to Seal Beach Consulting and reduced the associated fee from $150 to $5 according to the MyCCW website's fee schedule. La Verne has represented that there is no remaining psychological exam fee to applicants, and it covers the entire cost.

125.   Applicants are interviewed by a psychologist, who ultimately makes a recommendation to the City with respect to whether the person should be entrusted with Second Amendment rights.

126.   The requirement that a law-abiding person affirmatively and subjectively prove that they are psychologically suitable to exercise the right of self-defense is not grounded in any history or tradition of the right to bear firearms.

127.   Plaintiff CRPA sent several letters to La Verne identifying these issues with their CCW Permit scheme, but never received a response.

**California Must Honor CCW Permits Issued by Other States**

128.89.      A number of states issue permits to nonresidents. Most states
require no permit at all for nonresidents to carry within their borders. Others allow
open carry. Although California does not honor any other states' CCW permits,
dozens of states do honor each other's permits. For example, a Utah CCW permit is
valid in Nevada, Idaho, Montana, Washington, and 32 other states.

129.90.      In addition to a lack of any reciprocity for other states' permits,
there is no process for nonresidents like Plaintiff Hoover and Plaintiff Broady to get
a California CCW permit, even if they were willing to put up with the time and
expense such a process would likely involve. In other words, if you are visiting
California from another state, or if you need to cross into the state regularly for
work, you check your federally enumerated right to carry for self-defense at
California's border.

130.91.      California also does not honor nonresident permits even if they
are held by its own residents, such as Plaintiffs Rigali and Reeves, who hold CCW
permits issued by Utah and Arizona.

131.92.      California has no more authority to deny nonresidents' rights to
public carry than it does to deny their rights to speak within its borders. On the
contrary, the Second Amendment's reference to "'the people[]' … unambiguously
refers to all members of the political community, not an unspecified subset." *Heller*,
554 U.S. at 580.

132.93.      Our historical tradition of firearm regulation supports the idea
that States may not impose their firearm carry requirements on nonresidents who
are otherwise legally allowed to own and carry firearms in their home states.
Specifically, many carry laws in the 19th century had exceptions for those traveling
in the state, called "traveler's exceptions". These included, but were not limited to,
an 1831 Indiana law, an 1841 Alabama law, an 1820 Arkansas law, an 1813
Kentucky law, an 1878 Tennessee law, an 1878 Mississippi law, an 1867 Nevada

1    law, and an 1864 California law.

2        ~~133.~~94.        An analogous issue was already decided in 2015. Because Ohio

3    would not allow for same sex marriages, James Obergefell and John Arthur decided

4    to marry in Maryland. After learning that Ohio would not recognize their marriage,

5    they filed a lawsuit. The Supreme Court ultimately held, in pertinent part, that

6    "[t]he Fourteenth Amendment requires a State . . . to recognize a marriage between

7    two people of the same sex when their marriage was lawfully licensed and

8    performed out-of-State." *Obergefell v. Hodges*, 576 U.S. 644, 644 (2015). In

9    reaching this conclusion, the Court explained that:

> For some couples, even an ordinary drive into a neighboring State to
> visit family or friends risks causing severe hardship in the event of a
> spouse's hospitalization while across state lines. In light of the fact that
> many States already allow same-sex marriage—and hundreds of
> thousands of these marriages already have occurred—the disruption
> caused by the recognition bans is significant and ever-growing. As
> counsel for the respondents acknowledged at argument, if States are
> required by the Constitution to issue marriage licenses to same-sex
> couples, the justifications for refusing to recognize those marriages
> performed elsewhere are undermined.

*Id*. at 680-681.

17        ~~134.~~95.        This holding and its logic, with respect to an unenumerated

18    right, apply just as much to the enumerated right to bear arms, and thus applies

19    equally to CCW permits issued by other states as the Supreme Court instructs that it

20    does to marriage licenses issued by other states. California may not completely

21    deny Americans the right to carry for self-defense within California's borders just

22    because they are not California residents.

23        ~~135.~~96.        In the free speech context, an individual "faced with such an

24    unconstitutional licensing law may ignore it and engage with impunity in the

25    exercise of the right of free expression for which the law purports to require a

26    license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Similarly,

27    if a non-resident's permit is not honored in California, and there is no way for them

28    to get a California CCW permit, their only avenue to exercise their right to carry in

1    defiance of California law.

2    **PLAINTIFFS SEEK DECLARATORY AND INJUNCTIVE RELIEF**

3    ~~136.~~97.    Under *Bruen*, Defendants bear the burden of proving their

4    policies comply with the Second Amendment. They will fail to do so, because their

5    practices are entirely atextual and ahistorical, novel schemes developed in recent

6    years or decades, and completely without any historical analogue.

7    ~~137.~~98.    Accordingly, Plaintiffs seek declaratory relief confirming that

8    Los Angeles County Sheriff's Department's current CCW permit application

9    regime violates the Second Amendment, imposing extraordinary delays and

10    including forbidden suitability determinations. LASD's wait times also violate

11    California Penal Code section 26205 because they exceed the 90 days (or 120 days

12    after January 1, 2024) permitted by statute.[25] LASD's practice of exceeding this

13    statutory time limit is facially unconstitutional, as even a mere wait time of 30 days

14    was already deemed an unconstitutional delay on acquiring additional firearms after

15    an additional purchase. *See* <u>*Nguyen v. Bonta*</u>, No. 320CV02470WQHMMP, 2024

16    WL 1057241, at *11 (S.D. Cal. Mar. 11, 2024). At minimum though, it is at least

17    unconstitutional as applied to each of the individual Plaintiffs and the members and

18    supporters of the associational Plaintiffs who have waited more than 120 days for

19    their permits since submitting their applications.[26] These Plaintiffs seek declaratory

20    relief that their rights were violated beginning on the 121st day following their

21

22    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [25] Plaintiffs do not concede that either of these time periods is a permissible
      impediment to the exercise of an enumerated right.

23

24    [26] Contrary to representations made by Defendants at the hearing on
      preliminary injunction, once an applicant submits the application to LASD, there is
      no additional task the applicant needs to complete for LASD to start processing the
25    application or start the running of the statutory 120-day deadline to process the
      application. *See* Cal. Penal Code §§ 26150, 26170. Following submission of the
26    application, the only additional tasks an applicant must complete are dependent on
      LASD timely handling the application and informing the applicant that, e.g., the
27    applicant has been preliminarily approved so he or she can now take the firearms
      training course required under Section 26155. Contrary to LASD's representations,
28    nothing of LASD's unconstitutional and statutorily impermissible delay is caused
      by inaction by these Plaintiffs or any similarly-situated applicants.

respective applications being submitted.

138.99.      Plaintiff Messel, who recently received his CCW permit, seeks declaratory relief and nominal damages confirming his rights were violated beginning on the 121st day following his application being submitted, and continuing until his permit was finally issued in May of 2024.

139.100.      LASD also violates California Penal Code section 26150 by refusing to accept applications from all residents of Los Angeles County.

140.   Plaintiffs also seek declaratory relief confirming that LVPD's current CCW permit application regime violates the Second Amendment because: it includes an unconstitutional psychological exam the City purports to utilize for applicants under California Penal Code section 26190(f)(1), because its fee schedule is exorbitantly expensive, and because permit issuance is conditioned upon unconstitutional suitability determinations instead of narrow, objective, and definite standards. Each of these are both facially unconstitutional, and unconstitutional as applied to the Plaintiffs and the members and supporters of the associational Plaintiffs.

141.   LVPD also violates Penal Code section 26190(b)(2) by collecting the entire application fee upfront, prior to licensure. LVPD's use of "MyCCW" violates Penal Code section 26190(b)(1) because it does not transfer its "additional fees" to the city treasury, instead paying a third-party provider. By charging over $25 for a renewal application, LVPD also violates Penal Code section 26190(b) ("The licensing authority may charge an additional fee, not to exceed twenty-five dollars ($25), for processing the application for a license renewal, and shall transmit an additional fee, if any, to the city, city and county, or county treasury.").

142.   Defendant Bonta has the burden of proving that Penal Code section 26190(f)(1)'s psychological examination requirement for obtaining a CCW license comports with the Second Amendment in light of *Bruen*'s prohibition on suitability determinations for CCW licenses. He will fail to do so.  Constitutional rights are

1  not conditioned on a quasi-medical professional's opinion of a person's emotional
2  bona fides.

3  143.101.  Plaintiffs seek a declaration that *all* "the people" have the right
4  to bear arms in public and, because of that, California must honor CCW permits
5  issued by other states and allow residents of other states to apply for California
6  CCW permits.[27]

7  144.102.  To the extent that the Los Angeles County Defendants contend
8  they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to
9  SB 2's changes to the Penal Code even though those changes came after their
10 permits were denied, Plaintiffs seek a declaration that Penal Code sections
11 26202(a)(3), 26202(a)(5), and 26202(a)(9) are unconstitutional as applied to
12 Plaintiffs Velasquez and Partowashraf, respectively.

13 145.103.  Finally, Plaintiffs seek preliminary and permanent injunctive
14 relief to compel Defendants to comply with the Second Amendment as clarified by
15 *Bruen* and California law by correcting the violations listed above.

16 146.104.  As discussed previously, for each of these claims, each and
17 every Plaintiff contends, and each member of an associational Plaintiff contends,
18 that their proposed course of conduct is, as in *Bruen*, carrying handguns publicly
19 for self-defense. To the extent that such a proposed course of conduct is deemed to
20 be too general or otherwise insufficient for purposes of adjudication of their rights,
21 Plaintiffs alternatively allege and describe more specifically their proposed courses
22 of conduct as follows:

23      a.    On the issue of LASD's lengthy wait times, Plaintiffs Messel's,
24            Weimer's, and Yun's more specific proposed course of conduct, and the
25            members and supporters of the associational Plaintiffs' more specific
26            proposed course of conduct, is lawfully carrying firearms publicly for self-

27
       [27] Again, Plaintiffs do not concede that permitting itself is constitutional, as
28 there is no broad and enduring historical tradition of government licensure to bear
   arms in public.

FIRST SECOND AMENDED AND SUPPLEMETNTAL COMPLAINT

defense without an unreasonable wait time to receive a permit to lawfully carry, which Plaintiffs define here as at least a wait time exceeding the 120 days allowed by State law. Plaintiffs allege that a wait time in excess of at least state law's requirements for issuing a permit violate the Second Amendment. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense on waiting in excess of 120 days for a permit in order to lawfully carry.

b. On the issue of La Verne's exorbitant fees, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct, is lawfully carrying firearms publicly for self-defense without unreasonable expense to the applicant, which Plaintiffs define here as a total expense that exceeds at least $500. Plaintiffs allege that a fee to obtain a permit to carry in self-defense in excess of $500 violates the Second Amendment. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry of a person who has not been adjudicated as being dangerous to the public, to pay any amount for such right, much less an amount in excess of $500.

c.b. On the issue of nonresident carry, Plaintiffs Broady's and Hoover's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense in California, primarily by having California honor the permits of other states under the Second Amendment, and Privileges and Immunities and Equal Protection clauses of the Fifth and Fourteenth Amendments. Plaintiffs allege that not honoring their out-of-state permits, which were obtained under the same or

1    similar requirements or burdens that California law imposes on its

2    permittees, or which, in the alternative, have sufficient background checks

3    and other processes that are both constitutionally sound and adequately

4    reflect the reasons similar historical laws and regulations from the applicable

5    historical period allowed restrictions on public carry, violates Plaintiffs'

6    rights under the Second Amendment, and Privileges and Immunities and

7    Equal Protection clauses. Plaintiffs further allege that they are not aware of a

8    historical tradition of laws or regulations from the applicable historical period

9    conditioning the exercise of the right to carry for self-defense—either

10   generally or for the specific purposes cited above—on being a resident of the

11   state in which the carry is to occur.

12       d.c.   On the issue of nonresident carry, Plaintiffs Broady's and

13   Hoover's more specific proposed course of conduct, and the members and

14   supporters of the associational Plaintiffs' more specific proposed course of

15   conduct is lawfully carrying firearms publicly for self-defense in California

16   by alternatively allowing nonresidents to obtain California CCW permits in a

17   manner that is constitutionally sound as to both the timing and the cost for

18   obtaining those California permits. Plaintiffs further allege that timeliness for

19   purposes of complying with the Second Amendment, and Privileges and

20   Immunities, Due Process, and Equal Protection clauses, is the same amount

21   of time, or sooner, that a resident of California would receive such a permit.

22   Plaintiffs further allege that appropriate cost for purposes of complying with

23   the Second Amendment, and Due Process and Equal Protection clauses, is

24   the same cost for a permit, or less, than a resident of California would pay to

25   receive such a permit. Plaintiffs allege that not allowing nonresidents to carry

26   in California with a California permit issued with the same costs and within

27   the same timeframe residents receive their permits, violates Plaintiffs' rights

28   under the Second Amendment, and Privileges and Immunities and Equal

Protection clauses.  Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on being a resident of the state in which the carry is to occur.

e.    On the issue of cost for CCW applicants to be interviewed by the LVPD Chief, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific proposed course of conduct, and the more specific proposed course of conduct of the members and supporters of the associational Plaintiffs, is lawfully carrying firearms publicly for self-defense without submitting to or paying for a subjective interview process by the head law enforcement officer of a licensing entity like La Verne. On information and belief, there is no objective fact finding purpose of the Chief's interview, as objective information such as confirming the identity and residence of the applicant, conducting the state-mandated background check, confirming the lack of a disqualifying factor such as a disqualifying conviction, medical condition, or mental health hold or commitment, or confirming that the applicant has the appropriate live fire training, are all performed by other persons within the LVPD, by the DOJ, or by LVPD's contractor MyCCW.us. Plaintiffs allege that any CCW license approval process that allows for Chief Gonzales to deny a permit application based on an applicant's responses to his questions during an interview allows subjective discretion by the permit issuer in violation of the Second Amendment and the Due Process Clause. Plaintiffs further allege that any state law allowing a local permitting entity to impose an exam requirement—including Penal Code section 26190(f)(1)—facially violates the Second Amendment, insomuch as it permits unconstitutional discretion by a permitting entity. Plaintiffs further allege that such statute is also unconstitutional as applied to each of the individual Plaintiffs who are

residents of La Verne, insomuch as it acts as a barrier to applying for and receiving a CCW permit. Plaintiffs further allege that such statute is also unconstitutional as applied to any and all of the members and supporters of the associational Plaintiffs who reside in La Verne. On information and belief, one or more such members would have applied for a permit if not for the unlawful examination requirement.  On information and belief, one or more residents of La Verne would have applied for a permit if not for the unlawful examination requirement. Plaintiffs further allege that they are not aware of a single historical law or regulation from the applicable period, much less a historical tradition of such laws or regulations, conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on the sitting for an interview by the local Chief of Police, including a law or regulation imposed by a state like California or a locality like La Verne.

f.    On the issue of psychological exams, Plaintiffs Rigali's, Reeves's, and Gabaldon's more specific proposed course of conduct, and the more specific proposed course of conduct of the members and supporters of the associational Plaintiffs, is lawfully carrying firearms publicly for self-defense without submitting to a psychological examination, insomuch as Plaintiffs allege that any requirement of an exam allows subjective discretion by the permit issuer or its designated examiner in violation of the Second Amendment. Plaintiffs further allege that any state law allowing a local permitting entity to impose an exam requirement—including Penal Code section 26190(f)(1)—facially violates the Second Amendment and due process rights of Plaintiffs and other applicants, insomuch as it permits unconstitutional discretion by a permitting entity. Plaintiffs further allege that such statute is also unconstitutional as applied to each of the individual Plaintiffs who are residents of La Verne, insomuch as it acts as a barrier to

1  ~~applying for and receiving a CCW permit. Plaintiffs further allege that such~~
2  ~~statute is also unconstitutional as applied to any and all of the members and~~
3  ~~supporters of the associational Plaintiffs who reside in La Verne. On~~
4  ~~information and belief, one or more such members would have applied for a~~
5  ~~permit if not for the unlawful examination requirement. On information and~~
6  ~~belief, one or more residents of the State would have applied for a permit if~~
7  ~~not for the unlawful examination requirement. Plaintiffs further allege that~~
8  ~~they are not aware of a single historical law or regulation, much less a~~
9  ~~historical tradition of such laws or regulations, from the applicable period~~
10  ~~conditioning the exercise of the right to carry for self-defense—either~~
11  ~~generally or for the specific purposes cited above—on the passing of a~~
12  ~~psychological exam, including a law or regulation imposed by a state like~~
13  ~~California or a locality like La Verne.~~

14          g.d.   Plaintiff Velasquez's more specific proposed course of conduct

15  is lawfully carrying firearms publicly for self-defense without being

16  prevented from doing so because he had firearms stolen from his locked

17  vehicle. Plaintiff alleges that disqualifying a person from lawfully carrying

18  for self-defense, where there was no charged crime, no charged crime

19  involving dangerousness, or no court or other adversarial proceeding,

20  violates his Second Amendment and due process rights. Plaintiff alleges that

21  he is not aware of a single law or regulation, much less a historical tradition

22  of such laws or regulations, from the applicable period which held that a

23  citizen forfeits his or her right to carry for self-defense if they had firearms

24  stolen from them, nor is Plaintiff aware of a single law or regulation, much

25  less a historical tradition of such laws or regulations, from the applicable

26  period which held that a disqualifying condition for carrying a firearm for

27  self-defense could include the allegation committing a crime of recklessness

28

in possessing a firearm where such crime was never charged nor adjudicated
by a neutral magistrate.

h.c.    Plaintiff Partowashraf's more specific proposed course of
conduct is lawfully carrying firearms publicly for self-defense without being
prevented from doing so due to a dissolved temporary restraining order that
was issued against him. Plaintiff alleges that disqualifying a person from
lawfully carrying for self-defense, where there was no adversarial proceeding
adjudicating that person as dangerous, violates his Second Amendment and
due process rights.  Plaintiff alleges that he is not aware of a single law or
regulation, much less a historical tradition of such laws or regulations, from
the applicable period which held that a citizen forfeits his or her right to carry
for self-defense if they were charged in a non-adversarial, non-criminal
proceeding with a crime of violence, but, upon receipt of due process in the
form of a noticed hearing in front of a judge or magistrate, were determined
to have not committed such a crime nor be subject to a further prohibition on
their possession or ownership of firearms.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

147.105.    Plaintiffs hereby re-allege and incorporate by reference the
allegations in the foregoing paragraphs as if set forth fully herein.

148.106.    As described previously, LASD violated and continues to
violate the rights of CCW permit applicants by taking over a year to process
applications and by engaging in forbidden suitability determinations.

149.107.    To the extent that the Los Angeles County Defendants contend
they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due the
prohibitions in Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9),

1  such provisions are unconstitutional both facially and as applied to Plaintiffs

2  Velasquez and Partowashraf, and are not a constitutionally-permissible basis for

3  denying a permit to carry for self-defense.

4      ~~150.~~108.    As a result, Plaintiffs' Second Amendment rights, as

5  incorporated under the Fourteenth Amendment, as well as the rights of the

6  associational Plaintiffs' members and supporters, are violated.

7      ~~151.~~109.    Defendants are propagating customs, policies, and practices that

8  deprive or delay California residents, including Plaintiffs, of their constitutional

9  right to bear arms outside the home for self-defense "in case of confrontation," as

10  guaranteed by the Second and Fourteenth Amendments.

11      ~~152.~~110.    Defendants cannot meet their burden to justify these customs,

12  policies, and practices that preclude Plaintiffs from exercising their enumerated

13  rights.

14      ~~153.~~111.    Plaintiffs are thus entitled to declaratory and injunctive relief

15  against such unconstitutional customs, policies, and practices.

16

17  ~~**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**~~
   ~~**U.S. CONST. AMENDS. II, XIV**~~
18  ~~**RIGHT TO BEAR ARMS**~~
   ~~**42 U.S.C. § 1983**~~
19  ~~**AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE SAMUEL GONZALEZ, AND DOES 1-10**~~

20  ~~154.   Plaintiffs hereby re-allege and incorporate by reference the allegations~~

21  ~~in the foregoing paragraphs as if set forth fully herein.~~

22  ~~155.   As described previously, LVPD has violated and continues to violate~~

23  ~~the rights of CCW permit applicants by charging nearly $600 in total fees (not~~

24  ~~including the cost of training, livescan, and psychological review) and by engaging~~

25  ~~in forbidden suitability determinations with its psychological examination~~

26  ~~requirement.~~

27  ~~156.   As described previously, LVPD has violated and continues to violate~~

28  ~~the rights of CCW permit applicants by requiring them to pay for and sit for a~~

1    subjective interview with the LVPD Chief that allows the Chief to exercise
2    unconstitutional discretion to deny a permit based on such interview.

3        157.   As a result, Plaintiffs' Second Amendment rights, as incorporated
4    under the Fourteenth Amendment, as well as the rights of the associational
5    Plaintiffs' members and supporters, are violated.

6        158.   Defendants are thus propagating customs, policies, and practices that
7    deprive or delay California residents, including Plaintiffs, of their constitutional
8    right to bear arms outside the home for self-defense "in case of confrontation," as
9    guaranteed by the Second and Fourteenth Amendments.

10       159.   Defendants cannot satisfy their burden to justify these customs,
11   policies, and practices that preclude Plaintiffs from exercising their enumerated
12   rights.

13       160.   Plaintiffs are thus entitled to declaratory and injunctive relief against
14   such unconstitutional customs, policies, and practices.

15                   **THIRD SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE**
                                      **RELIEF**
16                          **U.S. CONST. AMENDS. II, XIV**
                            **RIGHT TO BEAR ARMS**
17                          **42 U.S.C. § 1983**
                   AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10
18

19       161.112.    Plaintiffs hereby re-allege and incorporate by reference the
20   allegations in the foregoing paragraphs as if set forth fully herein.

21       162.113.    The Supreme Court has explained that permitting regimes which
22   deny licenses based on a "perceived lack of need or suitability" are
23   unconstitutional. *Bruen*, 142 S. Ct. at 2123.

24       163.114.    As described previously, California violates the right of CCW
25   permit applicants by allowing issuing authorities to demand psychological exams at
26   their discretion under California Penal Code section 26190(g).

27       164.115.    California also refuses to recognize CCW permits issued by
28   other states, whether they are held by residents or nonresidents. California also

1  refuses to grant CCW permits to non-residents, thus providing no way for

2  nonresidents to exercise their right to carry within its borders.

3  ~~165.~~116.   As a result, Plaintiffs' Second Amendment rights, as

4  incorporated under the Fourteenth Amendment, as well as the rights of the

5  associational Plaintiffs' members and supporters, are violated.

6  ~~166.~~117.   To the extent that the Los Angeles County Defendants contend

7  they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to

8  SB 2's changes to the Penal Code even though those changes came after their

9  permits were denied, Plaintiffs allege that Penal Code sections 26202(a)(3),

10  26202(a)(5), and 26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez

11  and Partowashraf, respectively.

12  ~~167.~~118.   The Attorney General is thus enforcing laws that violate the

13  constitutional right to bear arms outside the home for self-defense "in case of

14  confrontation," as guaranteed by the Second and Fourteenth Amendments.

15  ~~168.~~119.   Plaintiffs are entitled to declaratory and injunctive relief against

16  such unconstitutional laws, customs, policies, and practices.

17
18  **~~FOURTH~~ THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE
RELIEF**
19  **VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
20  DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

21  ~~169.~~120.   Plaintiffs hereby re-allege and incorporate by reference the
allegations in the foregoing paragraphs as if set forth fully herein.
22
23  ~~170.~~121.   LASD's CCW permit process violates California Penal Code
section 26205 by taking over a year to process permit applications.
24
25  ~~171.~~122.   Additionally, Plaintiffs' Second Amendment rights, as
incorporated under the Fourteenth Amendment, as well as the rights of the
26  associational Plaintiffs' members and supporters, are violated.
27
28  ~~172.~~123.   Defendants LASD and Sheriff Robert Luna are thus enforcing

laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

173.124.     Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**VIOLATIONS OF THE CALIFORNIA PENAL CODE**
AGAINST DEFENDANTS LA VERNE POLICE DEPARTMENT, LA VERNE
CHIEF OF POLICE SAMUEL GONZALEZ, AND DOES 1-10

174.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

175.   LVPD's CCW permit process violates several portions of the California Penal Code.

176.   By inflating its own costs through the imposition of additional requirements beyond a simple DOJ background check and an interview with an applicant, LVPD charges more than its reasonable costs for permit processing and violates California Penal Code section 26190(b)(1).

177.   By collecting the entirety of its fees at the time the application is submitted, LVPD violates California Penal Code section 26190(b)(2).

178.   Additionally, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

179.   The La Verne defendants are enforcing laws that violate the constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

180.   Plaintiffs are thus entitled to declaratory and injunctive relief against these illegal customs, policies, and practices.

## ~~SIXTH~~ FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### U.S. CONST. AMEND. XIV
### EQUAL PROTECTION
### 42 U.S.C. § 1983
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

~~181.~~125.    Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

~~182.~~126.    Plaintiff Steven Hoover is a Florida resident. He does not have residency in California, and thus cannot obtain a California identification card or driver's license. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

~~183.~~127.    Both Plaintiffs often visit California and desire to be able to lawfully conceal-carry a firearm when visiting the State.

~~184.~~128.    Plaintiff Hoover applied to the Monterey County Sheriff for a CCW permit but the Sheriff rejected his application because he is not a California resident. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

~~185.~~129.    Indeed, California law does not allow a resident of another state to apply for and obtain a CCW permit whatsoever.

~~186.~~130.    This policy violates Plaintiffs' right to equal protection of the law as guaranteed and protected under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it favors California residents and discriminates against non-California residents like Hoover and Broady. The policy also violates the Equal Protection Clause because California refuses to honor permits issued by other states, including Florida or Nevada, the home states of Plaintiffs Hoover and Broady, respectively.

~~187.~~131.    This policy is especially egregious because here California's policy prevents Plaintiff Hoover from exercising the constitutionally protected right to be armed in public recognized in *Bruen*. It also violates the constitutionally protected right to travel under the Equal Protection Clause of the Fourteenth

1    Amendment, and forces Hoover to choose between exercising his Second

2    Amendment right to be armed and his constitutional right to travel. *Harper v.*

3    *Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *United States v. Guest*, 383

4    U.S. 745 (1966); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Zobel v. Williams*,

5    457 U.S. 55 (1981).

6
7    **SEVENTH FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
      **U.S. CONST. ART. IV, § 2**
8    **PRIVILEGES AND IMMUNITIES CLAUSE**
      **42 U.S.C. § 1983**
9    AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

10   188.132.    Plaintiffs hereby re-allege and incorporate by reference the

11   allegations in the foregoing paragraphs as if set forth fully herein.

12   189.133.    The Privileges and Immunities Clause of Article IV, § 2 of the

13   United States Constitution provides that "the Citizens of each State shall be entitled

14   to all Privileges and Immunities of Citizens in the several states." This

15   Constitutional provision removes "from the citizens of each State the disabilities of

16   alienage in the other States." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *Paul v.*

17   *Virginia*, 8 Wall. 168, 180 (1868)). The Privileges and Immunities Clause bars

18   discrimination against citizens of other states based on their status as a citizen of

19   another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

20   190.134.    Plaintiff Steven Hoover is a Florida resident who desires to

21   lawfully conceal-carry a firearm when visiting California. Plaintiff Broady is a

22   former California resident who previously held California CCW permits, but now

23   lives in Nevada.

24   191.135.    These Plaintiffs do not have residency in California, and thus

25   cannot obtain a California identification card or driver's license.

26   192.136.    Hoover applied for a CCW with the Monterey County Sheriff

27   but was denied because of his Florida Residency. Plaintiff Broady did not attempt

28   to apply, realizing it would be futile to do so and he would be rejected as Plaintiff

Hoover was.

~~193.~~ 137.    California's law of refusing to accept CCW applications from citizens of other states, like Plaintiff Hoover, violates this constitutional provision because California's policy discriminates against out of state residents solely because they are out-of-state residents. This policy does not even offer a non-resident a chance at applying for a permit. This policy denies a non-resident the ability to exercise the enumerated right to be armed in public, and thus violates the privilege and immunities clause.

~~194.~~ 138.    The law also violates the Privileges and Immunities Clause by refusing to recognize the permits issued by other states, such as Florida and Nevada.

### ~~EIGHTH~~ SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### U.S. CONST. AMENDMENT XIV
### DUE PROCESS OF LAW
### 42 U.S.C. § 1983
AGAINST LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ROBERT LUNA, ~~LA VERNE POLICE DEPARTMENT, LA VERNE CHIEF OF POLICE SAMUEL GONZALEZ,~~ ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

~~195.   The psychological testing component of California's CCW permit regime violates both the substantive and procedural due process of law mandate set forth in Amendment XIV, Sec. 1, of the U.S. Constitution.~~

~~196.   California's law violates substantive due process because it arbitrarily and capriciously imposes a presumption of psychological unfitness to exercise a fundamental right, and requires the individuals seeking to exercise that fundamental right to bear the burden of proving a negative. Furthermore, by presuming that all CCW applicants should be subject to psychological screening, the requirement is overinclusive. Furthermore this state law, by allowing individual issuing authorities to require psychological testing or not, makes the law arbitrary and underinclusive. Furthermore, by failing to legislate objective standards for psychological testing,~~

1    the law empowers government bureaucrats to exercise subjective discretion in

2    regulating a fundamental right.

3         197.    California Penal Code section 26190(f) (soon to be 26190(g) under

4    SB2) violates procedural Due Process rights because it impermissibly shifts the

5    burden of proof of a constitutionally significant fact to an individual seeking to

6    exercise a fundamental right. Furthermore, the psychological testing regime does

7    not permit an adversarial process to adjudicate the scientific validity of the

8    underlying test or the validity of the psychologists' opinions and conclusions.

9    Furthermore, there is no provision in this law for a right to appeal the results of the

10   psychological testing. Furthermore, there is no provision in this law to discover or

11   test the impartiality of the personnel administering the psychological testing.

12   Furthermore, there is no provision in this law allowing the CCW applicant to

13   submit evidence from their own medical expert to rebut the government's evidence,

14   on a crucial question that might result in denial of a constitutional right.

15        198.139.    To the extent that the Los Angeles County Defendants contend

16   they will not issue a CCW permit to Plaintiff Velasquez due to the theft of his

17   firearms or alleged reckless use of a firearm, which they contend constituted a

18   Penal Code violation, such denial, without a process for adjudicating or an actual

19   adjudication of Velasquez having committed a crime, is unconstitutional as a

20   violation of Velasquez's due process rights.

21        199.140.    To the extent that the Los Angeles County Defendants contend

22   they will not issue a CCW permit to Plaintiff Partowashraf due to Plaintiff having

23   been the subject of an ex parte restraining order which was dissolved upon

24   adjudication in an adversarial setting, without a process for adjudicating or an

25   actual adjudication of Velasquez being dangerous such that he should be denied his

26   right to carry for self-defense, is as a violation of Partowashraf's due process rights.

27   To the extent the Los Angeles County Defendants rely as a basis for denying

28   Plaintiff a permit upon SB 2's prohibition on issuing a CCW to a person like

1  Plaintiff who was the subject of an ex parte restraining order without an adversarial
2  proceeding or adjudication of dangerousness in such an adversarial proceeding,
3  such law, as set forth above, violates due process and the Second Amendment, and
4  reliance by Defendants upon that law to deny a permit to lawfully carry, absent
5  some other process that affords Partowashraf adequate process, further violates
6  Plaintiff's due process rights.

7  ~~200.   Finally, the CCW psychological testing requirement contradicts~~
8  ~~existing law in California that already regulates firearms possession in the context~~
9  ~~of mental health holds and mental health adjudications. *See* California Welfare and~~
10  ~~Institutions Code §§ 5150, 5250, 8100-8108.~~

11  **PRAYER**

12       WHEREFORE, Plaintiffs request that judgment be entered in their favor and
13  against Defendants as follows:

14       1.     A declaration that LASD taking over 120 days to process permits
15  violates the constitutional right to carry;

16       2.     A declaration that these delays also violate California Penal Code
17  section 26205;

18       3.     A declaration that LASD's denial of Plaintiff Velasquez's CCW
19  permit renewal application violates his constitutional right to carry;

20       ~~4.     A declaration that LVPD charging nearly $900 for CCW permits~~
21  ~~violates the constitutional right to carry;~~

22       ~~5.     A declaration that, by inflating its own costs through the imposition of~~
23  ~~additional requirements beyond a simple DOJ background check and an interview~~
24  ~~with an applicant, LVPD charges more than its reasonable costs for permit~~
25  ~~processing and violates California Penal Code section 26190(b)(1);~~

26       ~~6.     A declaration that, by collecting the entirety of its fees at the time the~~
27  ~~application is submitted, LVPD violates California Penal Code section 26190(b)(2).~~

28

1      ~~7.      A declaration that LVPD's psychological examination requirement~~

2      ~~violates *Bruen's* prohibition on using "suitability" criteria when it comes to Second~~

3      ~~Amendment rights.~~

4      ~~8.      A declaration that California Penal Code section 26190(g), in allowing~~

5      ~~psychological examinations, is unconstitutional as a constitutionally-forbidden~~

6      ~~suitability determination;~~

7      ~~9.~~4.   A declaration that the Attorney General must honor CCW permits

8      issued by other states, whether the permit holder is a resident of California or not,

9      and/or a declaration that the Attorney General must permit residents of other states

10     to acquire CCW permits in California;

11     ~~10.~~5.  A declaration that Penal Code sections 26202(a)(3), 26202(a)(5), and

12     26202(a)(9), as applied to Plaintiffs Partowashraf and Velasquez, violate the

13     Second Amendment and violate the Due Process Clause;

14     ~~11.~~6.  A declaration that the associational Plaintiffs' resources and litigation

15     experience are necessary to vindicate the Second Amendment rights of individual

16     Plaintiffs who lack the means and capacity to challenge the constitutionally of the

17     practices of LASD and the Sheriff, ~~the fees and policies of LVPD and the Chief,~~

18     and of the non-resident prohibition on carry and psychological examination

19     requirements of California law.

20     ~~12.      An order preliminarily and permanently enjoining all Defendants and~~

21     ~~all other officers, agents, servants, employees, and persons under the authority of~~

22     ~~the State, from enforcing California Penal Code Section 26190(f);~~

23     ~~13.~~7.  An order preliminarily and permanently enjoining Los Angeles LASD,

24     and Sheriff Luna in his official capacity, from refusing to process or issue a CCW

25     Permit to any qualified applicant 120 days after submission of such applicant's

26     initial application for a new license or a license renewal, or 30 days after receipt of

27     the applicant's criminal background check from the Department of Justice,

28     whichever is later;

1    ~~14.~~8.  An order preliminarily and permanently enjoining LASD, and Sheriff

2    Luna in his official capacity, from requiring more information from applicants in

3    the CCW permitting process that are not based on "narrow, objective, and definite"

4    standards;

5    ~~15.   An order preliminarily and permanently enjoining LVPD and La~~

6    ~~Verne Chief of Police Samuel Gonzalez in his official capacity, from charging~~

7    ~~applicants nearly $1,000 for processing CCW Permit applications;~~

8    ~~16.~~9.  An order permanently enjoining all Defendants and all other officers,

9    agents, servants, employees, and persons under the authority of the State, from

10   enforcing all laws prohibiting concealed carry if the person accused of that crime

11   has an otherwise-valid CCW permit issued by any state, and is not otherwise

12   prohibited from owning firearms;

13   ~~17.~~10. An order declaring that California's policy of not accepting

14   applications or issuing permits to out of state residents violates the Equal Protection

15   Clause;

16   ~~18.~~11. An order declaring that California's policy of not accepting

17   applications or issuing permits to out of state residents violates the Privileges and

18   Immunities Clause;

19   ~~19.~~12. Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C.

20   § 1988;

21   ~~20.~~13. Nominal damages; and

22   ~~21.~~14. All other relief the court deems appropriate.

23   Respectfully Submitted,

24   Dated: June 9, 2025~~June 9, 2025~~~~May 27, 2025~~          _____ **MICHEL &**
     **ASSOCIATES, P.C.**

25

26                                                    */s/ C.D. Michel*
                                                     _____
27                                                   C.D. Michel
                                                     Counsel for Plaintiffs

28

---

~~FIRST~~ SECOND AMENDED AND SUPPLEM~~E~~NTAL COMPLAINT

1

Dated: June 9, 2025~~June 9, 2025~~~~May 27, 2025~~

**LAW OFFICES OF DON KILMER**

2

3

*/s/ Don Kilmer*
Don Kilmer
Counsel for Plaintiff The Second Amendment
Foundation

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~FIRST~~ SECOND AMENDED AND SUPPLEME~~T~~NTAL COMPLAINT

1

**ATTESTATION OF E-FILED SIGNATURES**

2          I, C. D. Michel, am the ECF User whose ID and password are being used to file this

3     FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND

4     INJUNCTIVE RELIEF. In compliance with Central District of California L.R. 5-4.3.4, I attest

5     that all signatories are registered CM/ECF filers and have concurred in this filing.

6

7     Dated: June 9, 2025~~June 9, 2025~~~~May 27, 2025~~                    *s/ C. D. Michel*

8                                                              C. D. Michel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

C. D. Michel – SBN 144258
cmichel@michellawyers.com
Anna M. Barvir – SBN 268728
abarvir@michellawyers.com
Konstadinos T. Moros – SBN 306610
kmoros@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444

Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer, Jung Yun, Albert Medalla, Zhao Lin Chen, Eric Stratton, Farzad Nezam, David Broady, and Stephen Hoover

*Additional Counsel listed on the next page.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; ERICK VELASQUEZ, an individual; SHERWIN DAVID PARTOWASHRAF, an individual; CHARLES MESSEL, an individual; BRIAN WEIMER, an individual; JUNG YUN, an individual; ALBERT MEDALLA, an individual; ZHAO LIN CHEN, an individual; ERIC STRATTON, an individual; FARZAD NEZAM, an individual; DAVID BROADY, an individual; STEPHEN HOOVER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT LUNA, in his official capacity; ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>Defendants. | CASE NO: 2:23-cv-10169-SPG-ADS<br><br>**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**42 U.S.C. §§ 1983 & 1988** |

1    Donald Kilmer-SBN 179986
     Law Offices of Donald Kilmer, APC
2    14085 Silver Ridge Road
     Caldwell, Idaho 83607
3    Telephone: (408) 264-8489
     Email: Don@DKLawOffice.com
4
     Attorney for Plaintiff The Second Amendment Foundation
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer, Jung Yun, Albert Medalla, Zhao Lin Chen, Eric Stratton, Farzad Nezam, David Broady, and Stephen Hoover and, through their respective counsel, bring this action against Defendants Los Angeles County Sheriff's Department, Sheriff Robert Luna in his official capacity as Los Angeles County Sheriff, California Attorney General Robert Bonta in his official capacity, and Does 1-10, inclusive, and make the following supplemental and amended allegations:

## INTRODUCTION

1.      This action challenges the constitutionality of carry permit issuance policies and laws that make it extremely difficult, if not outright impossible or impermissibly time consuming, for Plaintiffs to obtain permits to carry a concealed firearm in public and therefore to exercise their right to be armed in public, as guaranteed by the Second Amendment's text "bear arms," and as recognized by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

2.      The main policies that Plaintiffs target here are: 1) Defendants' failure to timely process carry permit applications, 2) the use of highly subjective suitability criteria in evaluating applicants, and 3) the refusal to honor permits issued by other states and/or accept applications for permits from non-residents. These practices and policies, some of which are enabled by state law, violate the Second and Fourteenth Amendments.

3.      Some Constitutional rights have a preliminary step required before their exercise, such as permitting (e.g., parades, demonstrations) or registration (e.g., voting, lobbying). But the administration of such permits or registration requirements may not be so onerous as to exclude whole demographics due to

expense or subjectivity, nor may it force them to wait inordinate amounts of time.[1]

4.      In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry**." *Id.* (emphasis added).

5.      The policies that Plaintiffs challenge have gone far beyond "abus[ing]" constitutional rights. Defendants have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with egregious wait times lasting well over a year and nefarious discretionary requirements designed to flout the Supreme Court's precedents.

6.      This suit challenges whether Defendants are engaged in a permit process that subjects applicants seeking to lawfully carry for self-defense in California by the only manner allowed under law—with a concealed carry weapons permit ("CCW permit") issued by a local jurisdiction, to excessive wait times, suitability criteria that are unnecessary, burdensome, and subjective; and whether those permit processes violate the right to bear arms in public as explained by the Supreme Court in *Bruen.* Examples abound.

---

[1] It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926). "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275.

7.      For starters, Los Angeles County Sheriff's Department ("LASD") admits that it takes "a year to a year and a half" to process CCW applications.

8.      Additionally, LASD imposes subjective permit-issuance criteria, in open defiance of *Bruen* which rejected such unmoored standards for determining who gets the privilege of exercising an enumerated right.

9.      Even if Plaintiffs wanted to avoid the delay and suitability requirements from LASD by simply obtaining a carry permit from another state, California does not honor permits issued by *any* other state.

10.     In fact, nonresidents have no way to lawfully carry firearms in California, even if they are willing to apply to a California issuing authority for a permit, because California law does not permit in-state issuing authorities to issue permits to nonresidents.

11.     This is plainly unconstitutional under both *Bruen* and the precedent established in *Obergefell v. Hodges*, 576 U.S. 644, 648 (2015). If California must honor a broad right to marry, which is unenumerated, then it must also honor the right to carry firearms, which is enumerated.

12.     Separately from Plaintiffs' Second Amendment claim, the United States Supreme Court has consistently held that regulations and classifications that impose a penalty or an impermissible burden on the right to travel violate the Equal Protection Clause of the Fourteenth Amendment, unless absolutely necessary to promote a compelling government interest. *Saenz v. Roe*, 526 U.S. 489 (1999); *Shapiro v. Thompson*, 394 U.S. 618 (1969). Accordingly, California's policy of denying out-of-state residents the ability to lawfully exercise their constitutionally protected right to be armed in public for self-defense inhibits the free interstate passage of citizens and violates equal protection doctrines by treating Americans differently merely on account of their state of residency.

13.     Furthermore, the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "The Citizens of each State shall be

entitled to all privileges and immunities of Citizens in the several States." The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

14.    Plaintiffs seek to enjoin Defendants' flagrantly unconstitutional practices and uphold Plaintiffs' Second Amendment rights.

## PARTIES

**Plaintiffs**

15.    The individual Plaintiffs are ordinary, law-abiding, adult residents of Los Angeles County who have applied for CCW permits but have not received them, or they are residents of other states who wish to carry in California, but have no legal way to do so.

16.    The associational Plaintiffs are non-profit organizations dedicated to the preservation of the Second Amendment and other enumerated constitutional rights. These associational Plaintiffs use their resources and economies of scale to ensure the broadest possible protection for their members and supporters by bringing suits on behalf of individual plaintiffs — who are also members — who would otherwise lack the financial resources and litigation experience to bring cases like this themselves. The associational Plaintiffs are representing their members and supporters who: (1) already applied for a CCW permit and are faced with a lengthy wait time; or (2) have CCW permits that were issued by other states and wish to have their permits honored when they visit California. The associational Plaintiffs thus bring this action to vindicate their members' and supporters' Second Amendment rights to publicly bear arms for self-defense, including the rights of the members and supporters of the associational Plaintiffs, who might otherwise lack an opportunity for legal representation due to the lack of resources.

17.    The associational Plaintiffs also have members and supporters in other states who have CCW permits in those states, and wish to have their permits

honored when they visit California. Plaintiffs thus bring this action to vindicate their own Second Amendment rights to publicly bear arms for self-defense, or the rights of their members and supporters to do so. While the associational Plaintiffs seek general injunctions on behalf of all similarly-situated Californians the challenged laws and practices affect, they also specifically seek relief on all claims as to each and every one of their members and supporters who might otherwise lack the litigation experience and resources of the associational Plaintiffs.

18.    All individual Plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law, and currently own at least one firearm. Each individual Plaintiff desires to carry a firearm in public for lawful self-defense and would do so, but for the challenged statutes, policies, and practices.

19.    All individual Plaintiffs are members of the associational Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and Gun Owners of America, Inc.

20.    Plaintiff Erick Velasquez is a resident of Los Angeles County and a law-abiding citizen of the United States. Mr. Velasquez had a CCW permit issued pursuant to California Penal Code Section 26150 by Los Angeles County Sheriff's Department. He carried a handgun daily for two years, without any incident.

21.    On April 10, 2023, Mr. Velasquez submitted his CCW permit renewal application with Los Angeles County Sheriff's Department, expecting a simple process and quick approval given there had been no issues the last two years.

22.    Then, on May 3, 2023, Mr. Velasquez was the unfortunate victim of a crime. A burglar broke into his vehicle and stole three handguns, along with other valuables. The handguns were stored in a range bag in the locked trunk of the car, in compliance with California Penal Code section 25610(a)(1).

23.    Mr. Velasquez promptly called the police to report the theft. An officer from the Vernon Police Department arrived at the scene and took a report, which

1   noted that Mr. Velasquez was eager to have the thief brought to justice. But as of

2   this date, the perpetrator has not been found.

3       24.     On August 23, 2023, Defendant Luna denied Mr. Velasquez's renewal

4   application. As a reason for denial, the letter had the box for "other" but provided

5   no further explanation for the denial. Seeking clarity, Mr. Velasquez eventually

6   communicated with LASD Sergeant Berner, who explained that the theft of the

7   firearms was the reason for the denial. Mr. Velasquez asked how he could appeal,

8   but Sergeant Berner told him there was no appeal process. He encouraged Mr.

9   Velasquez to apply again with the City of Downey instead, as they might not have

10  similar restrictions.

11      25.     While California Penal Code sections 26202(a)(5) and 26202(a)(9)

12  were not yet in effect when Mr. Velasquez's permit was denied, to the extent

13  Defendants argue that those sections prevent them from issuing him a CCW permit

14  now, he contends they are unconstitutional as applied to him.

15      26.     Plaintiff Sherwin David Partowashraf is a resident of Los Angeles

16  County and a law-abiding citizen. After waiting over a year and a half on his

17  application, on October 3, 2023, the application for a CCW permit was denied by

18  LASD. Even though California law requires a reason for the denial be given, the

19  reasoning for the denial was nothing more than a checkmark next to "other".

20      27.     Mr. Partowashraf would come to learn that he was denied a permit

21  because a former girlfriend had filed for a temporary restraining order against him

22  the prior year, after an attempt to extort him had failed.

23      28.     At the time, Mr. Partowashraf complied with the law and turned in his

24  firearms to the police to be held while the temporary restraining order was in effect.

25  Following a hearing, the temporary restraining order was promptly dissolved and

26  the request for a restraining order was discharged.

27      29.     Mr. Partowashraf then had to go through a tedious process to get his

28  firearms back, involving him submitting requests for *each* firearm to the California

1    Department of Justice for them to run background checks so he could have them
2    returned to him. After being approved, he scheduled a time to pick up the firearms
3    and received them without further trouble. The California DOJ has thus itself
4    confirmed Mr. Partowashraf is not dangerous. If law enforcement thought he was
5    still dangerous, they could have filed for a gun violence restraining order under
6    California Penal Code section 18100, but they did not do so.

7        30.    Mr. Partowashraf contends that his rights should not be denied
8    because of a dissolved temporary restraining order, especially following the
9    Supreme Court's ruling in *Rahimi*.

10        31.    While California Penal Code section 26202(a)(3) was not yet in effect
11    when Mr. Partowashraf's permit was denied, to the extent Defendants argue that it
12    prevents them from issuing him a CCW permit now, he contends it is
13    unconstitutional as applied to him.

14        32.    Plaintiff Charles Messel is a resident of Los Angeles County and a
15    law-abiding citizen. Mr. Messel submitted his CCW permit application to LASD on
16    July 1, 2022. Having heard nothing by April 2023, he contacted the department to
17    inquire about his application.

18        33.    The response he received stated: "We were several months behind in
19    opening and entering applications in our tracking system. Although you applied
20    earlier, your application wasn't entered into our tracking system until 11/2/22. We
21    are currently working on applications that went into our tracking system in July of
22    2022. Thank you for your patience."

23        34.    As of the filing of this action, Mr. Messel had still not been issued a
24    permit or received further communications about his application's status from
25    LASD. More than 17 months had elapsed since his initial application. Following
26    the filing of this action and the filing of a preliminary injunction to compel LASD
27    to issue Mr. Messel a permit, only then did LASD finally process his application,
28    nearly two years after he had submitted his application.

35.     Plaintiff Brian Weimer is a resident of Los Angeles County and a law-abiding citizen. Mr. Weimer is employed by Los Angeles County as a firefighter on Catalina Island.

36.     Like Mr. Messel, Mr. Weimer applied for a CCW permit with LASD and still has not been issued one. Mr. Weimer applied in January 2023, over a year ago, but still has not been issued a permit or a denial. His constitutional right to carry a firearm for self-defense has been denied to him.

37.     Plaintiff Jung Yun is a resident of Los Angeles County and a law-abiding citizen. Mr. Yun applied for his CCW permit with LASD in September of 2022. When he last followed up on December 6, 2023, he received a response saying that his application had not even been assigned to an investigator yet, and no further timeline was provided. Finally, on August 27, 2024, he received an initial telephonic interview and was told he would get additional instructions in approximately two months.

38.     Plaintiff Albert Medalla is a resident of Los Angeles County and a law-abiding citizen. He works the graveyard shift at Cedars-Sinai Medical Center as an ultrasound technologist. Due to rising crime in his area, he desires to be able to carry a firearm for self-defense. He applied for his CCW permit with LASD on October 31, 2023. His initial interview is not scheduled to occur until August 11, 2025.

39.     Plaintiff Zao Lin Chen is a resident of Los Angeles County and a law-abiding citizen. He is a federal employee and holds an FFL-03 license, both of which speak to his good standing as a citizen. He applied for a CCW permit with LASD on April 3, 2025, but the earliest appointment time he could reserve for his initial interview was April 9, 2026.

40.     Plaintiff Eric Stratton is a resident of Los Angeles County and a law-abiding citizen. He holds CCW permits from two other states, and is a retired Los Angeles firefighter. He applied for a CCW permit with LASD on May 28, 2025,

1  but the earliest appointment time he could reserve for his initial interview was June
2  2, 2026.

3       41.    Plaintiff Farzad Nezam is a resident of Los Angeles County and a law-
4  abiding citizen. He is a licensed California attorney who decided to apply for a
5  CCW permit following the murder of one of his clients, which made him fear for
6  his own safety. He applied for a CCW permit with LASD on December 7, 2024, but
7  the earliest appointment time he could reserve for his initial interview was
8  December 16, 2025.

9       42.    Plaintiff David Broady is a resident of Nevada and a law-abiding
10  citizen. He is a retired California prosecutor, last working as a Senior Deputy
11  District Attorney for the Placer County DA's office from 1995 to 2020. Before that,
12  he worked in the Riverside County DA's office from 1991 to 1995.

13       43.    Mr. Broady had California CCW permits in Riverside County and later
14  Placer County, from the early 1990s until 2020 when he moved to Nevada. Since
15  then he has had a Nevada CCW permit, but cannot obtain a California CCW permit.
16  California does not honor his Nevada permit.

17       44.    This is a problem for Mr. Broady because he still frequently visits
18  California as he owns property in this state and has family here. He also remains an
19  active member of the California Bar. He joins this lawsuit against California
20  Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition
21  on the right to carry against citizens from other states.

22       45.    Mr. Broady, for himself and on behalf of other nonresidents who have
23  out-of-state CCW permits, as well as on behalf of the members and supporters of
24  the associations who live outside of California, seeks to have his Nevada permit
25  honored by the State of California.

26       46.    Plaintiff Stephen Hoover is a resident of Florida, and a law-abiding
27  citizen. He is a PhD candidate at the Center for Complex Systems and Brain
28  Sciences in the Charles E. Schmidt College of Science at Florida Atlantic

1  University. He owns firearms and has a Florida-issued CCW permit.

2      47.    Mr. Hoover spent a significant amount of time in California in the

3  summer of 2023 and plans to return for work and leisure purposes in the near

4  future.

5      48.    While he was in California, he sought to obtain a California CCW

6  permit from the Monterey County Sheriff's Department, as California would not

7  honor his Florida CCW permit, but he still desired to be able to exercise his right to

8  carry for self-defense. Yet in spite of otherwise meeting the criteria for eligibility,

9  his application was denied because he was deemed ineligible for a CCW permit

10  under Penal Code section 26150(a)(3), as he is not a resident of the county he

11  applied in, nor a resident of California.

12      49.    Mr. Hoover joins this lawsuit against California Attorney General Rob

13  Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry

14  against citizens from other states.

15      50.    Plaintiff The Second Amendment Foundation ("SAF") is a non-profit

16  membership organization. It is incorporated under the laws of the state of

17  Washington and was founded in 1974. SAF has over 720,000 members and

18  supporters nationwide, including thousands of members in California. SAF is

19  dedicated to promoting a better understanding of the nation's constitutional heritage

20  and tradition of privately owning, possessing, and carrying firearms, through

21  educational and legal action programs designed to better inform the public. SAF is

22  a pioneer and innovator in defending the right to keep and bear arms, through its

23  publications and public education programs like the Gun Rights Policy Conference.

24  SAF also incurs significant expenses to sponsor public interest litigation to defend

25  its interests and to disseminate information to like-minded individuals. SAF

26  members who want CCW permits but reside in Los Angeles County are subject to

27  lengthy wait times and unconstitutionally subjective permit issuance criteria that

28  violate the U.S. Constitution. SAF's policies specifically include the dedication of

1    its resources, litigation experience, and economies of scale for the purpose of

2    representing people who would otherwise lack the means and access to resources to

3    successfully bring lawsuits to compel state and local governments to comply with

4    the Constitution, as intended by the Fourteenth Amendment, its enforcement

5    provisions, and Congressional statutes enabling the enforcement of the Constitution

6    by private actors.  See: 42 U.S.C. section 1983, 1988.

7        51.    Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-

8    stock corporation and a not-for-profit membership organization with its principal

9    place of business in Springfield, Virginia, and is organized and operated as a non-

10   profit membership organization that is exempt from federal income taxes under

11   Section 501(c)(4) of the Internal Revenue Code. GOA was formed in 1976 to

12   preserve and defend the Second Amendment rights of gun owners. It has more than

13   2 million members and supporters across the country, including residents within

14   this judicial district and throughout the State of California. GOA members who

15   wish to obtain CCW permits but reside in Los Angeles County are subject to

16   lengthy wait times and also unconstitutionally subjective criteria.

17       52.    Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock

18   corporation and a not-for-profit legal defense and educational foundation with its

19   principal place of business in Springfield, Virginia and is organized and operated as

20   a non-profit legal defense and educational foundation that is exempt from federal

21   income taxes under Section 501(c)(3) of the Internal Revenue Code. GOF was

22   formed in 1983 and is supported by gun owners across the country, within this

23   judicial district, and throughout the State of California who, like the individual

24   Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB

25   2. GOF supporters who wish to obtain CCW permits but reside in Los Angeles

26   County are subject to lengthy wait times and also unconstitutionally subjective

27   criteria. GOF is supported by gun owners across the country, who fund the

28   organization's activities so that it can, *inter alia*, file litigation such as this to

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1    preserve, protect, and defend their right to keep and bear arms.

2        53.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit

3    organization incorporated under the laws of the state of California with

4    headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of

5    the Second Amendment in California. GOC members who wish to obtain CCW

6    permits but reside in Los Angeles County are subject to lengthy wait times and also

7    unconstitutionally subjective criteria.

8        54.    Plaintiff CRPA is a non-profit membership and donor-supported

9    organization qualified as tax-exempt under Section 501(c)(4) of the Internal

10   Revenue Code, with its headquarters in Fullerton, California. Founded in 1875,

11   CRPA seeks to defend the civil rights of all law-abiding individuals, including the

12   enumerated right to bear firearms for lawful purposes like self-defense. CRPA

13   regularly participates as a party or amicus in litigation challenging unlawful

14   restrictions on the right to keep and bear arms. It also provides guidance to

15   California gun owners regarding their legal rights and responsibilities. CRPA

16   members include law enforcement officers, prosecutors, professionals, firearm

17   experts, and the general public. CRPA members who want CCW permits but reside

18   in Los Angeles County are subject to lengthy wait times and also unconstitutionally

19   subjective criteria.

20       **Defendants**

21       55.    Defendant LASD is a local government entity created under the laws

22   of California, and it exists as an agency of Los Angeles County. LASD is a political

23   subdivision of Los Angeles County. LASD is responsible for issuing CCW permits.

24       56.    Defendant Robert Luna is the elected Sheriff of Los Angeles County.

25   Defendant Luna is and, at all times relevant to this complaint, was one of the

26   ultimate policy makers for Defendant LASD, and he has authority and

27   responsibility under California Penal Code section 26150 to issue carry permits

28   within the county. He is directly responsible for promulgating, enforcing, and

1   continuing the policies of his Department, including the unlawful policies and

2   procedures complained of herein. Luna is sued solely in his official capacity.

3       57.    Defendant Robert Bonta is the Attorney General of California. He is

4   the chief law enforcement officer of California. Defendant Bonta is charged by

5   Article V, section 13 of the California Constitution with the duty to see that the

6   laws of California are uniformly and adequately enforced. Defendant Bonta also

7   has direct supervision over every district attorney and sheriff in all matters

8   pertaining to the duties of those respective officers. Defendant Bonta's duties also

9   include informing the public, local prosecutors, and law enforcement regarding the

10   meaning of the laws of California.

11       58.    The true names or capacities–whether individual, corporate, associate,

12   or otherwise–of the Defendants named herein as Does 1 through 10 are presently

13   unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs

14   pray for leave to amend this Complaint to show the true names or capacities of

15   these Defendants if and when they have been determined.

16   **JURISDICTION AND VENUE**

17       59.    The Court has original jurisdiction of this civil action under 28 U.S.C.

18   § 1331, because the action arises under the Constitution and laws of the United

19   States, thus raising federal questions. The Court also has jurisdiction under 28

20   U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the

21   deprivation, under color of the laws, statutes, ordinances, regulations, customs, and

22   usages of the State of California and political subdivisions thereof, of rights,

23   privileges or immunities secured by the United States Constitution and by Acts of

24   Congress.

25       60.    Plaintiffs' claims for declaratory and injunctive relief are authorized by

26   28 U.S.C. §§ 2201-2202, and their claim for attorney's fees is authorized by 42

27   U.S.C. § 1988.

28       61.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2)

because the events or omissions giving rise to the claims occurred in this district. The Los Angeles County Sheriff's Department is located within this district.

## GENERAL ALLEGATIONS

62.    The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms and protects, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

63.    The Supreme Court has also held that the Second Amendment right to keep and bear arms, via Fourteenth Amendment incorporation, applies equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty") (emphasis added).

64.    *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

65.    Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

"unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).

66.    In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

67.    In all issues presented in this lawsuit, Plaintiffs contend that their proposed course of conduct is exactly the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." <u>*Bruen*</u>, 597 U.S. at 32. In that case, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas". *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct, because that "showing of nonspeculative need" was the <u>burden on the Second Amendment right</u>. The burden is not part of the proposed course of conduct, it is the law or practice that is being challenged. In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense without unreasonable wait times." *Bruen*'s simpler "carrying handguns publicly for self-defense" applies in this case.

## California's Law Regarding CCW Permit Issuance

68.    Following the California Legislature's enactment of SB 2, which takes effect in January of 2024, California law imposes the following CCW permit application requirements:

(a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:

(1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section

26202.

(2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

(4) The applicant has completed a course of training as described in Section 26165.

(5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a) (West 2023); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance).

69.    Under the recently revised Penal Code section 26205 operative January 2024, a licensing authority:

shall give written notice to the applicant indicating if the license under this chapter is approved or denied. The licensing authority shall give this notice within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice described in paragraph (2) of subdivision (a) of Section 26185, whichever is later. The licensing authority shall give this notice within 120 days[2] of receiving the completed application for a license renewal.

70.    While *Bruen* expressly forbids subjective criteria be used during a licensure process, California law does too, at least to the extent the standard DOJ CCW permit application does not require such information. According to Penal Code section 26175(g), "[a]n applicant shall not be required to complete any

---

[2] The 120-day time limit was 90 days prior to the passage of SB 2.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1    additional application or form for a license, except to clarify or interpret
2    information provided by the applicant on the standard application form." Thus,
3    local requirements (such as Defendant LASD's) that an applicant produce copies of
4    past employment files or identify a need for self-defense are not within the ambit of
5    the DOJ's standard permit application.

6        71.    SB 2 also added new subsections to the Penal Code that allow issuing
7    authorities to disqualify a permit applicant due to loss or theft (being a victim of
8    crime) of a firearm. Specifically, an applicant is disqualified if: "In the 10 years
9    prior to the licensing authority receiving the completed application for a new
10    license or a license renewal, [he] has experienced the loss or theft of multiple
11    firearms due to the applicant's lack of compliance with federal, state, or local law
12    regarding storing, transporting, or securing the firearm. For purposes of this
13    paragraph, "multiple firearms" includes a loss of more than one firearm on the same
14    occasion, or the loss of a single firearm on more than one occasion." *See* Cal. Penal
15    Code § 26202(a)(9) (West 2023).

16        72.    An applicant can also be denied if he: "[f]ailed to report a loss of a
17    firearm as required by Section 25250 or any other state, federal, or local law
18    requiring the reporting of the loss of a firearm." *See id.* § 26202(a)(10).

19        73.    SB 2, which took effect following the filing of this lawsuit, also added
20    Penal Code section 26202(a)(3), which prohibits anyone who has had a restraining
21    order issued against them from being granted a permit for five years from the date
22    the order expired. This law applies even to *temporary* restraining orders that were
23    dissolved upon a hearing, such as in Plaintiff Partowashraf's situation.

24        74.    SB 2 also added Penal Code section 26202(a)(5), which disqualifies
25    anyone who "Has engaged in an unlawful or reckless use, display, or brandishing of
26    a firearm." In its opposition to Plaintiffs' motion for preliminary injunction, LASD
27    argued this provision also barred Plaintiff Velasquez from getting his permit
28    renewed, even though the denial occurred prior to SB 2's effective date.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

75.     None of these additional criteria imposed on license applicants comport with the Second Amendment, as there is no broad and enduring historical tradition of disarming Americans because they have been victimized by criminals, or temporarily disarmed until a hearing. Thus, Plaintiffs seek to enjoin Defendant Bonta from enforcing these statutory provisions.

76.     Both Plaintiff Velasquez and Plaintiff Partowashraf had their CCW permit applications denied before SB2 took effect. However, to the extent Defendant LASD argues that its provisions bar it from issuing permits to these two Plaintiffs, Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) should be declared unconstitutional as applied to them.

**LASD Is Misled by the Attorney General and Does Not Address Lengthy Wait Times Despite Several Letters from CRPA Warning of Litigation**

77.     Following the *Bruen* ruling, CRPA sent letters to all California sheriff's departments, including Los Angeles County. The first letter was sent the day after the June 2022 *Bruen* ruling, and explained that the "good cause" portion of California's CCW permit issuance laws was no longer enforceable.

78.     But rather than complying with the Supreme Court's decision, the Attorney General rebelled, responding to the *Bruen* ruling by claiming that local sheriffs and police chiefs in fact could *add* more steps and impose *additional* subjective considerations to the permit application process in light of *Bruen*. On June 24, 2022, the Attorney General sent a Legal Alert to law enforcement officials across California, instructing it was proper under *Bruen* to apply a heightened "good moral character" requirement to the application process which included subjective considerations beyond the applicant passing a criminal and mental health background check.

79.     In response to the Attorney General's malicious and intentional attempt to undermine the *Bruen* ruling, CRPA sent a second letter to several sheriff's departments, including LASD, reiterating that the Second Amendment, as

clarified by the *Bruen* ruling, will only permit "narrow, objective, and definite" standards to be used in issuing permits to law-abiding citizens,[3] and that they should ignore the Attorney General's unlawful instruction to his subordinate law enforcement agencies.

80.    In the months following CRPA's correspondences to the county sheriffs, CRPA received responses from several departments stating that they would begin complying with *Bruen*. In contrast, LASD never responded. It did begin to process CCW permit applications, albeit at an unlawfully slow pace, with wait times routinely stretching beyond one year for many CRPA members. However, CRPA abstained from litigation, believing it best to allow the law enforcement authorities some time to adjust to the implied mandate of *Bruen*.

81.    As CRPA received an ever-increasing volume of complaints about waiting times from its members in the months following *Bruen*, it sent a letter to newly elected Sheriff Luna on February 21, 2023. The letter advised that long wait times contravene *Bruen's* express language, violate the Second Amendment, and are unlawful under California law, and promised to forbear litigation should the Sheriff imminently address the long wait times at issue.

82.    Sheriff Luna's office responded by letter dated March 9, 2023, stating that LASD was "taking steps to reduce processing times and improve our overall processes." That letter detailed how the adoption of new application processing software (Permitium) may reduce processing times and alluded to potentially increasing staffing in the CCW unit to address the backlog of applications. The Sheriff stated that he hoped the situation would be much better in six months, and he promised to provide regular progress updates (that never materialized).

83.    CRPA responded on March 14, 2023 writing that, while Sheriff Luna's letter was encouraging, another six months was not an acceptable timeframe, given

---

[3] Again, Plaintiffs do not concede that any mandatory permitting scheme was found permissible by *Bruen*, as most of the states that have such objective "shall issue" schemes also allow constitutional carry or open carry without a license.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

the thousands of applications lingering for a year or more. CRPA also noted that LASD previously admitted that long wait times are unconstitutional. In a July 7, 2022, letter to the Chief of Police of San Gabriel explaining why LASD could no longer accept applications from residents of San Gabriel, the Department wrote in pertinent part:

> Although the LASD can process CCW applications, as currently staffed, there will be significant delays because we do not have sufficient personnel required for the anticipated surge. As such, any unnecessary delays would violate the SCOTUS decision, thus violating the rights of the citizens of Los Angeles County and opening the LASD and other law enforcement agencies to otherwise avoidable litigation.
>
> RECEIVED
> JUL 1 1 2022
> SAN GABRIEL PD
> ADMINISTRATION
>
> 211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012
> A Tradition of Service
> ~ Since 1850 ~

84.    CRPA's March 14, 2023 letter also expressed CRPA's view that adopting a policy of not processing permit applications from LA County residents living in non-contract municipalities was illegal. CRPA is unaware of any other California county sheriff that refuses to process CCW permit applications for that county's residents merely because those residents live in a "non-contract city."

85.    Unfortunately, in a responsive letter dated March 24, 2023, the Sheriff only repeated his vague promise to "improve efficiency and reduce processing times," but refused to resume accepting applications from residents of non-contract cities.

86.    As of the filing of this lawsuit, the wait times for LASD permit applicants in fact have grown worse instead of better, with CRPA members complaining of wait times in excess of 15 months. Some individuals who submitted applications at the time of the *Bruen* ruling in June 2022 have not even been contacted for their initial interview, as of November 2023.

87.    LASD does not deny that its wait times are absurdly long. In response to a Public Records Act request by Attorney Jason Davis, the Department confirmed that applicants could expect wait times of, "from application entry to

issuance . . . a year to a year and a half."

88.    CRPA sent a final letter to the Sheriff on September 14, 2023, warning that litigation was imminent if no immediate changes to accelerate application processing were made. A response was received from the Sheriff on November 1, 2023, making the same vague promises as before, however, no concrete steps to implement these purported fixes or timelines for doing so were identified.

### California Must Honor CCW Permits Issued by Other States

89.    A number of states issue permits to nonresidents. Most states require no permit at all for nonresidents to carry within their borders. Others allow open carry. Although California does not honor any other states' CCW permits, dozens of states do honor each other's permits. For example, a Utah CCW permit is valid in Nevada, Idaho, Montana, Washington, and 32 other states.

90.    In addition to a lack of any reciprocity for other states' permits, there is no process for nonresidents like Plaintiff Hoover and Plaintiff Broady to get a California CCW permit, even if they were willing to put up with the time and expense such a process would likely involve. In other words, if you are visiting California from another state, or if you need to cross into the state regularly for work, you check your federally enumerated right to carry for self-defense at California's border.

91.    California also does not honor nonresident permits even if they are held by its own residents.

92.    California has no more authority to deny nonresidents' rights to public carry than it does to deny their rights to speak within its borders. On the contrary, the Second Amendment's reference to "'the people[]' … unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

93.    Our historical tradition of firearm regulation supports the idea that

States may not impose their firearm carry requirements on nonresidents who are otherwise legally allowed to own and carry firearms in their home states. Specifically, many carry laws in the 19th century had exceptions for those traveling in the state, called "traveler's exceptions". These included, but were not limited to, an 1831 Indiana law, an 1841 Alabama law, an 1820 Arkansas law, an 1813 Kentucky law, an 1878 Tennessee law, an 1878 Mississippi law, an 1867 Nevada law, and an 1864 California law.

94.    An analogous issue was already decided in 2015. Because Ohio would not allow for same sex marriages, James Obergefell and John Arthur decided to marry in Maryland. After learning that Ohio would not recognize their marriage, they filed a lawsuit. The Supreme Court ultimately held, in pertinent part, that "[t]he Fourteenth Amendment requires a State . . . to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out-of-State." *Obergefell v. Hodges*, 576 U.S. 644, 644 (2015). In reaching this conclusion, the Court explained that:

> For some couples, even an ordinary drive into a neighboring State to visit family or friends risks causing severe hardship in the event of a spouse's hospitalization while across state lines. In light of the fact that many States already allow same-sex marriage—and hundreds of thousands of these marriages already have occurred—the disruption caused by the recognition bans is significant and ever-growing. As counsel for the respondents acknowledged at argument, if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined.

*Id*. at 680-681.

95.    This holding and its logic, with respect to an unenumerated right, apply just as much to the enumerated right to bear arms, and thus applies equally to CCW permits issued by other states as the Supreme Court instructs that it does to marriage licenses issued by other states. California may not completely deny Americans the right to carry for self-defense within California's borders just because they are not California residents.

96.    In the free speech context, an individual "faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Similarly, if a non-resident's permit is not honored in California, and there is no way for them to get a California CCW permit, their only avenue to exercise their right to carry in defiance of California law.

**PLAINTIFFS SEEK DECLARATORY AND INJUNCTIVE RELIEF**

97.    Under *Bruen*, Defendants bear the burden of proving their policies comply with the Second Amendment. They will fail to do so, because their practices are entirely atextual and ahistorical, novel schemes developed in recent years or decades, and completely without any historical analogue.

98.    Accordingly, Plaintiffs seek declaratory relief confirming that Los Angeles County Sheriff's Department's current CCW permit application regime violates the Second Amendment, imposing extraordinary delays and including forbidden suitability determinations. LASD's wait times also violate California Penal Code section 26205 because they exceed the 90 days (or 120 days after January 1, 2024) permitted by statute.[4] LASD's practice of exceeding this statutory time limit is facially unconstitutional, as even a mere wait time of 30 days was already deemed an unconstitutional delay on acquiring additional firearms after an additional purchase. *See Nguyen v. Bonta*, No. 320CV02470WQHMMP, 2024 WL 1057241, at *11 (S.D. Cal. Mar. 11, 2024). At minimum though, it is at least unconstitutional as applied to each of the individual Plaintiffs and the members and supporters of the associational Plaintiffs who have waited more than 120 days for their permits since submitting their applications.[5] These Plaintiffs seek declaratory

---

[4] Plaintiffs do not concede that either of these time periods is a permissible impediment to the exercise of an enumerated right.

[5] Contrary to representations made by Defendants at the hearing on preliminary injunction, once an applicant submits the application to LASD, there is

1    relief that their rights were violated beginning on the 121st day following their

2    respective applications being submitted.

3         99.    Plaintiff Messel, who recently received his CCW permit, seeks

4    declaratory relief and nominal damages confirming his rights were violated

5    beginning on the 121st day following his application being submitted, and

6    continuing until his permit was finally issued in May of 2024.

7         100.   LASD also violates California Penal Code section 26150 by refusing

8    to accept applications from all residents of Los Angeles County.

9         101.   Plaintiffs seek a declaration that *all* "the people" have the right to bear

10   arms in public and, because of that, California must honor CCW permits issued by

11   other states and allow residents of other states to apply for California CCW

12   permits.[6]

13        102.   To the extent that the Los Angeles County Defendants contend they

14   will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's

15   changes to the Penal Code even though those changes came after their permits were

16   denied, Plaintiffs seek a declaration that Penal Code sections 26202(a)(3),

17   26202(a)(5), and 26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez

18   and Partowashraf, respectively.

19        103.   Finally, Plaintiffs seek preliminary and permanent injunctive relief to

20   compel Defendants to comply with the Second Amendment as clarified by *Bruen*

21   and California law by correcting the violations listed above.

22

23   no additional task the applicant needs to complete for LASD to start processing the
     application or start the running of the statutory 120-day deadline to process the
24   application. *See* Cal. Penal Code §§ 26150, 26170. Following submission of the
     application, the only additional tasks an applicant must complete are dependent on
25   LASD timely handling the application and informing the applicant that, e.g., the
     applicant has been preliminarily approved so he or she can now take the firearms
26   training course required under Section 26155. Contrary to LASD's representations,
     nothing of LASD's unconstitutional and statutorily impermissible delay is caused
27   by inaction by these Plaintiffs or any similarly-situated applicants.
         [6] Again, Plaintiffs do not concede that permitting itself is constitutional, as
28   there is no broad and enduring historical tradition of government licensure to bear
     arms in public.

104.   As discussed previously, for each of these claims, each and every Plaintiff contends, and each member of an associational Plaintiff contends, that their proposed course of conduct is, as in *Bruen*, carrying handguns publicly for self-defense. To the extent that such a proposed course of conduct is deemed to be too general or otherwise insufficient for purposes of adjudication of their rights, Plaintiffs alternatively allege and describe more specifically their proposed courses of conduct as follows:

a.     On the issue of LASD's lengthy wait times, Plaintiffs Messel's, Weimer's, and Yun's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct, is lawfully carrying firearms publicly for self-defense without an unreasonable wait time to receive a permit to lawfully carry, which Plaintiffs define here as at least a wait time exceeding the 120 days allowed by State law. Plaintiffs allege that a wait time in excess of at least state law's requirements for issuing a permit violate the Second Amendment. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense on waiting in excess of 120 days for a permit in order to lawfully carry.

b.     On the issue of nonresident carry, Plaintiffs Broady's and Hoover's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense in California, primarily by having California honor the permits of other states under the Second Amendment, and Privileges and Immunities and Equal Protection clauses of the Fifth and Fourteenth Amendments. Plaintiffs allege that not honoring their out-of-state permits, which were obtained under the same or similar requirements or burdens that California law imposes on its

1    permittees, or which, in the alternative, have sufficient background checks

2    and other processes that are both constitutionally sound and adequately

3    reflect the reasons similar historical laws and regulations from the applicable

4    historical period allowed restrictions on public carry, violates Plaintiffs'

5    rights under the Second Amendment, and Privileges and Immunities and

6    Equal Protection clauses. Plaintiffs further allege that they are not aware of a

7    historical tradition of laws or regulations from the applicable historical period

8    conditioning the exercise of the right to carry for self-defense—either

9    generally or for the specific purposes cited above—on being a resident of the

10   state in which the carry is to occur.

11        c.    On the issue of nonresident carry, Plaintiffs Broady's and

12   Hoover's more specific proposed course of conduct, and the members and

13   supporters of the associational Plaintiffs' more specific proposed course of

14   conduct is lawfully carrying firearms publicly for self-defense in California

15   by alternatively allowing nonresidents to obtain California CCW permits in a

16   manner that is constitutionally sound as to both the timing and the cost for

17   obtaining those California permits. Plaintiffs further allege that timeliness for

18   purposes of complying with the Second Amendment, and Privileges and

19   Immunities, Due Process, and Equal Protection clauses, is the same amount

20   of time, or sooner, that a resident of California would receive such a permit.

21   Plaintiffs further allege that appropriate cost for purposes of complying with

22   the Second Amendment, and Due Process and Equal Protection clauses, is

23   the same cost for a permit, or less, than a resident of California would pay to

24   receive such a permit. Plaintiffs allege that not allowing nonresidents to carry

25   in California with a California permit issued with the same costs and within

26   the same timeframe residents receive their permits, violates Plaintiffs' rights

27   under the Second Amendment, and Privileges and Immunities and Equal

28   Protection clauses.  Plaintiffs further allege that they are not aware of a

historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on being a resident of the state in which the carry is to occur.

d.      Plaintiff Velasquez's more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense without being prevented from doing so because he had firearms stolen from his locked vehicle. Plaintiff alleges that disqualifying a person from lawfully carrying for self-defense, where there was no charged crime, no charged crime involving dangerousness, or no court or other adversarial proceeding, violates his Second Amendment and due process rights. Plaintiff alleges that he is not aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a citizen forfeits his or her right to carry for self-defense if they had firearms stolen from them, nor is Plaintiff aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a disqualifying condition for carrying a firearm for self-defense could include the allegation committing a crime of recklessness in possessing a firearm where such crime was never charged nor adjudicated by a neutral magistrate.

e.      Plaintiff Partowashraf's more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense without being prevented from doing so due to a dissolved temporary restraining order that was issued against him. Plaintiff alleges that disqualifying a person from lawfully carrying for self-defense, where there was no adversarial proceeding adjudicating that person as dangerous, violates his Second Amendment and due process rights.  Plaintiff alleges that he is not aware of a single law or regulation, much less a historical tradition of such laws or regulations, from

the applicable period which held that a citizen forfeits his or her right to carry for self-defense if they were charged in a non-adversarial, non-criminal proceeding with a crime of violence, but, upon receipt of due process in the form of a noticed hearing in front of a judge or magistrate, were determined to have not committed such a crime nor be subject to a further prohibition on their possession or ownership of firearms.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

105.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

106.   As described previously, LASD violated and continues to violate the rights of CCW permit applicants by taking over a year to process applications and by engaging in forbidden suitability determinations.

107.   To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due the prohibitions in Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9), such provisions are unconstitutional both facially and as applied to Plaintiffs Velasquez and Partowashraf, and are not a constitutionally-permissible basis for denying a permit to carry for self-defense.

108.   As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

109.   Defendants are propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

110.   Defendants cannot meet their burden to justify these customs, policies, and practices that preclude Plaintiffs from exercising their enumerated rights.

111.   Plaintiffs are thus entitled to declaratory and injunctive relief against such unconstitutional customs, policies, and practices.

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

112.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

113.   The Supreme Court has explained that permitting regimes which deny licenses based on a "perceived lack of need or suitability" are unconstitutional. *Bruen*, 142 S. Ct. at 2123.

114.   As described previously, California violates the right of CCW permit applicants by allowing issuing authorities to demand psychological exams at their discretion under California Penal Code section 26190(g).

115.   California also refuses to recognize CCW permits issued by other states, whether they are held by residents or nonresidents. California also refuses to grant CCW permits to non-residents, thus providing no way for nonresidents to exercise their right to carry within its borders.

116.   As a result, Plaintiffs' Second Amendment rights, as incorporated under the Fourteenth Amendment, as well as the rights of the associational Plaintiffs' members and supporters, are violated.

117.   To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's changes to the Penal Code even though those changes came after their permits were denied, Plaintiffs allege that Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez and

1    Partowashraf, respectively.

2        118.   The Attorney General is thus enforcing laws that violate the

3    constitutional right to bear arms outside the home for self-defense "in case of

4    confrontation," as guaranteed by the Second and Fourteenth Amendments.

5        119.   Plaintiffs are entitled to declaratory and injunctive relief against such

6    unconstitutional laws, customs, policies, and practices.

7

8    **THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
     **VIOLATIONS OF THE CALIFORNIA PENAL CODE**
     AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S

9    DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

10       120.    Plaintiffs hereby re-allege and incorporate by reference the allegations

11   in the foregoing paragraphs as if set forth fully herein.

12       121.   LASD's CCW permit process violates California Penal Code section

13   26205 by taking over a year to process permit applications.

14       122.   Additionally, Plaintiffs' Second Amendment rights, as incorporated

15   under the Fourteenth Amendment, as well as the rights of the associational

16   Plaintiffs' members and supporters, are violated.

17       123.   Defendants LASD and Sheriff Robert Luna are thus enforcing laws

18   that violate the constitutional right to bear arms outside the home for self-defense

19   "in case of confrontation," as guaranteed by the Second and Fourteenth

20   Amendments.

21       124.   Plaintiffs are thus entitled to declaratory and injunctive relief against

22   these illegal customs, policies, and practices.

23

24   **FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
     **U.S. CONST. AMEND. XIV**
     **EQUAL PROTECTION**
25   **42 U.S.C. § 1983**
     AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

26       125.   Plaintiffs hereby re-allege and incorporate by reference the allegations

27   in the foregoing paragraphs as if set forth fully herein.

28

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

126.   Plaintiff Steven Hoover is a Florida resident. He does not have residency in California, and thus cannot obtain a California identification card or driver's license. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

127.   Both Plaintiffs often visit California and desire to be able to lawfully conceal-carry a firearm when visiting the State.

128.   Plaintiff Hoover applied to the Monterey County Sheriff for a CCW permit but the Sheriff rejected his application because he is not a California resident. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

129.   Indeed, California law does not allow a resident of another state to apply for and obtain a CCW permit whatsoever.

130.   This policy violates Plaintiffs' right to equal protection of the law as guaranteed and protected under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it favors California residents and discriminates against non-California residents like Hoover and Broady. The policy also violates the Equal Protection Clause because California refuses to honor permits issued by other states, including Florida or Nevada, the home states of Plaintiffs Hoover and Broady, respectively.

131.   This policy is especially egregious because here California's policy prevents Plaintiff Hoover from exercising the constitutionally protected right to be armed in public recognized in *Bruen.* It also violates the constitutionally protected right to travel under the Equal Protection Clause of the Fourteenth Amendment, and forces Hoover to choose between exercising his Second Amendment right to be armed and his constitutional right to travel. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *United States v. Guest*, 383 U.S. 745 (1966); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Zobel v. Williams*, 457 U.S. 55 (1981).

1

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. IV, § 2**

2

**PRIVILEGES AND IMMUNITIES CLAUSE**
**42 U.S.C. § 1983**

3

AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

4      132.  Plaintiffs hereby re-allege and incorporate by reference the allegations

5   in the foregoing paragraphs as if set forth fully herein.

6      133.  The Privileges and Immunities Clause of Article IV, § 2 of the United

7   States Constitution provides that "the Citizens of each State shall be entitled to all

8   Privileges and Immunities of Citizens in the several states." This Constitutional

9   provision removes "from the citizens of each State the disabilities of alienage in the

10  other States." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *Paul v. Virginia*, 8 Wall.

11  168, 180 (1868)). The Privileges and Immunities Clause bars discrimination against

12  citizens of other states based on their status as a citizen of another state. *Toomer v.*

13  *Witsell*, 334 U.S. 385 (1948).

14     134.  Plaintiff Steven Hoover is a Florida resident who desires to lawfully

15  conceal-carry a firearm when visiting California. Plaintiff Broady is a former

16  California resident who previously held California CCW permits, but now lives in

17  Nevada.

18     135.  These Plaintiffs do not have residency in California, and thus cannot

19  obtain a California identification card or driver's license.

20     136.   Hoover applied for a CCW with the Monterey County Sheriff but was

21  denied because of his Florida Residency. Plaintiff Broady did not attempt to apply,

22  realizing it would be futile to do so and he would be rejected as Plaintiff Hoover

23  was.

24     137.  California's law of refusing to accept CCW applications from citizens

25  of other states, like Plaintiff Hoover, violates this constitutional provision because

26  California's policy discriminates against out of state residents solely because they

27  are out-of-state residents. This policy does not even offer a non-resident a chance at

28  applying for a permit. This policy denies a non-resident the ability to exercise the

enumerated right to be armed in public, and thus violates the privilege and immunities clause.

138.  The law also violates the Privileges and Immunities Clause by refusing to recognize the permits issued by other states, such as Florida and Nevada.

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDMENT XIV**
**DUE PROCESS OF LAW**
**42 U.S.C. § 1983**
AGAINST LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ROBERT LUNA, ATTORNEY GENERAL ROB BONTA,  AND DOES 1-10

139.   To the extent that the Los Angeles County Defendants contend they will not issue a CCW permit to Plaintiff Velasquez due to the theft of his firearms or alleged reckless use of a firearm, which they contend constituted a Penal Code violation, such denial, without a process for adjudicating or an actual adjudication of Velasquez having committed a crime, is unconstitutional as a violation of Velasquez's due process rights.

140.   To the extent that the Los Angeles County Defendants contend they will not issue a CCW permit to Plaintiff Partowashraf due to Plaintiff having been the subject of an ex parte restraining order which was dissolved upon adjudication in an adversarial setting, without a process for adjudicating or an actual adjudication of Velasquez being dangerous such that he should be denied his right to carry for self-defense, is as a violation of Partowashraf's due process rights. To the extent the Los Angeles County Defendants rely as a basis for denying Plaintiff a permit upon SB 2's prohibition on issuing a CCW to a person like Plaintiff who was the subject of an ex parte restraining order without an adversarial proceeding or adjudication of dangerousness in such an adversarial proceeding, such law, as set forth above, violates due process and the Second Amendment, and reliance by Defendants upon that law to deny a permit to lawfully carry, absent some other process that affords Partowashraf adequate process, further violates Plaintiff's due process rights.

**PRAYER**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    A declaration that LASD taking over 120 days to process permits violates the constitutional right to carry;

2.    A declaration that these delays also violate California Penal Code section 26205;

3.    A declaration that LASD's denial of Plaintiff Velasquez's CCW permit renewal application violates his constitutional right to carry;

4.    A declaration that the Attorney General must honor CCW permits issued by other states, whether the permit holder is a resident of California or not, and/or a declaration that the Attorney General must permit residents of other states to acquire CCW permits in California;

5.    A declaration that Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9), as applied to Plaintiffs Partowashraf and Velasquez, violate the Second Amendment and violate the Due Process Clause;

6.    A declaration that the associational Plaintiffs' resources and litigation experience are necessary to vindicate the Second Amendment rights of individual Plaintiffs who lack the means and capacity to challenge the constitutionally of the practices of LASD and the Sheriff, and of the non-resident prohibition on carry and psychological examination requirements of California law.

7.    An order preliminarily and permanently enjoining Los Angeles LASD, and Sheriff Luna in his official capacity, from refusing to process or issue a CCW Permit to any qualified applicant 120 days after submission of such applicant's initial application for a new license or a license renewal, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later;

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1    8.    An order preliminarily and permanently enjoining LASD, and Sheriff

2    Luna in his official capacity, from requiring more information from applicants in

3    the CCW permitting process that are not based on "narrow, objective, and definite"

4    standards;

5    9.    An order permanently enjoining all Defendants and all other officers,

6    agents, servants, employees, and persons under the authority of the State, from

7    enforcing all laws prohibiting concealed carry if the person accused of that crime

8    has an otherwise-valid CCW permit issued by any state, and is not otherwise

9    prohibited from owning firearms;

10    10.    An order declaring that California's policy of not accepting

11    applications or issuing permits to out of state residents violates the Equal Protection

12    Clause;

13    11.    An order declaring that California's policy of not accepting

14    applications or issuing permits to out of state residents violates the Privileges and

15    Immunities Clause;

16    12.    Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C.

17    § 1988;

18    13.    Nominal damages; and

19    14.    All other relief the court deems appropriate.

20    Respectfully Submitted,

21    Dated: June 9, 2025                        **MICHEL & ASSOCIATES, P.C.**

22

23                                              */s/ C.D. Michel*
                                                C.D. Michel

24                                              Counsel for Plaintiffs

25    Dated: June 9, 2025                        **LAW OFFICES OF DON KILMER**

26                                              */s/ Donald Kilmer*
                                                Donald Kilmer
27                                              Counsel for Plaintiff The Second
                                                Amendment Foundation
28

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1

**ATTESTATION OF E-FILED SIGNATURES**

2      I, C. D. Michel, am the ECF User whose ID and password are being used to

3 file this SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR

4 DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Central

5 District of California L.R. 5-4.3.4, I attest that all signatories are registered

6 CM/ECF filers and have concurred in this filing.

7

8 Dated: June 9, 2025                    _s/ C. D. Michel_____
                                        C. D. Michel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *California Rifle and Pistol Association, et al., v. Los Angeles County Sheriff's Dept., et al.*

Case No.:     2:23-cv-10169-SPG (ADSx)

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**STIPULATION FOR LEAVE TO FILE SECOND AMENDED AND SUPPLEMENTAL COMPLAINT AND TO CONTINUE CASE DEADLINES**

on the following parties, as follows:

See attached Service List.

by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 9, 2025

_____
Laura Palmerin

CERTIFICATE OF SERVICE

## SERVICE LIST

Jane E. Reilley
jane.reilley@doj.ca.gov
Robert W. Setrakian
william.setrakian@doj.ca.gov
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230

Nicholas R. Green
nicholas.green@doj.ca.gov
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

   *Attorneys for Defendant Rob Bonta*

Mark Selwyn
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Road
Palo Alto, CA 94306

Alan Schoenfeld
alan.schoenfeld@wilmerhale.com
Noah Levine
noah.levine@wilmerhale.com
Ryan Chabot
ryan.chabot@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Joshua A. Vittor
joshua.vittor@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grande Ave., Suite 2400
Los Angeles, CA 90071

   *Attorneys for Defendants Los Angeles County Sheriff's*
   *Department and Sheriff Robert Luna*

Kimberly H. Barlow
khb@jones-mayer.com

CERTIFICATE OF SERVICE

1  Wendy Gardea
   wag@jones-mayer.com
2  JONES MAYER
3  3777 N. Harbor Blvd.
   Fullerton, CA 92835
4
   *Attorneys for Defendants La Verne Police Department*
5  *and La Verne Chief of Police Colleen Flores*
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28