1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALIFORNIA RIFLE & PISTOL ASSOCIATION, INCORPORATED; THE SECOND AMENDMENT FOUNDATION; GUN OWNERS OF AMERICA, INC.; GUN OWNERS FOUNDATION; GUN OWNERS OF CALIFORNIA, INC.; ERICK VELASQUEZ, an individual; CHARLES MESSEL, an individual; BRIAN WEIMER, an individual; CLARENCE RIGALI, an individual; KEITH REEVES, an individual; CYNTHIA GABALDON, an individual; and STEPHEN HOOVER, an individual,

                Plaintiffs,

     v.

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; SHERIFF ROBERT LUNA, in his official capacity; LA VERNE POLICE DEPARTMENT; LA VERNE CHIEF OF POLICE COLLEEN FLORES, in her official capacity; ROBERT BONTA, in his official capacity

Case No. 2:23-cv-10169-SPG-ADS

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT AND SHERIFF ROBERT LUNA'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT [ECF NO. 60]**

1  as Attorney General of the State of
2  California; and DOES 1-10,
3                                Defendants.
4
5

6          Before the Court is the Motion to Dismiss Plaintiffs' First Amended and
7  Supplemental Complaint (ECF No. 60 ("Motion to Dismiss")), filed by the Defendants Los
8  Angeles County Sheriffs' Department (the "LASD") and Sheriff Robert Luna, in his
9  official capacity (together, the "Los Angeles Defendants").  Plaintiffs California Rifle &
10  Pistol Association, Incorporated ("CRPA"); the Second Amendment Foundation ("SAF");
11  Gun Owners of America, Inc. ("GOA"); Gun Owners Foundation ("GOF"); and Gun
12  Owners of California, Inc. ("GOC") (together, the "Association Plaintiffs"); and
13  individuals Erick Velasquez, Charles Messel, Brian Weimer, Clarence Rigali, Keith
14  Reeves, Cynthia Gabaldon, and Steven Hoover (the "Individual Plaintiffs," collectively
15  with Association Plaintiffs, "Plaintiffs") oppose.  *See* (ECF No. 74 ("Opp.")).  The Los
16  Angeles Defendants have filed a reply.  *See* (ECF No. 77 ("Reply")).  The Court finds this
17  matter suitable for resolution without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R.
18  7-15.  Having considered the parties' submissions, the relevant law, and the record in this
19  case, the Court DENIES, IN PART, and GRANTS, IN PART, the Motion.

20  **I.    BACKGROUND**

21          In California, it is a crime for individuals to carry on their person, in public, or in
22  their vehicle a concealed carry firearm if they do not possess a concealed carry weapon
23  ("CCW") license.  *See* Cal. Penal Code § 25400.  California's CCW licensing regime
24  requires that, for issuing a license or renewing a license, an issuing authority must
25  determine that the applicant is not a disqualified individual based on an assessment of
26  defined criteria.  Specifically, California law requires that the issuing authority "shall issue
27  or renew a license" to an applicant who (1) is not a "disqualified person to receive such a
28  license," as determined in California Penal Code § 26202; (2) is at least 21 years of age

upon "clear evidence" of a person's identity and age; (3) is a "resident of the county or a
city within the county," or the "applicant's principal place of employment or business is in
the county or a city within the county and the applicant spends a substantial period of time
in that place of employment or business"; (4) completes a course of training; and (5) is the
"recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm
for which the license will be issued."  Cal. Penal Code §§ 21650(a), 26155(a).  Within 120
days of receiving a completed application, or 30 days after receiving information from the
Department of Justice as to whether the applicant is a disqualified person to receive such a
license, whichever is later, the "licensing authority shall give written notice . . . indicating
if the license . . . is approved or denied."[1]  Cal. Penal Code § 26205(a).

On December 4, 2023, the Plaintiffs commenced this action, claiming their Second
Amendment and other constitutional rights were violated because of alleged delay, high
fees, and other licensing requirements associated with the Los Angeles and La Verne
Defendants' processing of CCW applications pursuant to the CCW licensing statues.  *See*
(ECF No. 1 ("Compl.")).  The Plaintiffs also challenged as being in violation of the Second
Amendment, the Fourteenth Amendment's Equal Protection and Due Process Clauses, and
Article IV's Privilege and Immunities Clause the California CCW statutes' prohibition of
issuing a license to an individual whose residence is outside the state of California,
regardless of whether the individual has obtained a CCW license in another state.  *See* (*id.*).

On January 26, 2024, the Plaintiffs moved for a preliminary injunction, requesting
that the Court enjoin what they characterized as certain "unconstitutional practices" under

---

[1] As detailed more fully in the Court's Order Granting in Part and Denying in Part
Plaintiffs' Request for a Preliminary Injunction, (ECF No. 52 ("PI Order")), this "shall
issue" licensing regime was enacted to replace one that required individuals to show "good
cause" before receiving a CCW license and in response to the Supreme Court's decision in
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), which held that a
New York CCW licensing statute that required CCW license applicants to show a "proper
cause" was unconstitutional under the Second Amendment.  *See* (PI Order at 2).

California's CCW licensing regime "that delay or deny Plaintiffs' constitutional right to carry." (ECF No. 20-1 ("PI Motion") at 32). These practices include:

(1)    alleged delays in processing CCW applications by the LASD;

(2)    alleged denials of CCW applications based on "forbidden suitability determinations" allegedly used by the LASD;

(3)    a psychological testing requirement implemented by the La Verne Police Department;

(4)    alleged excessive application fees instituted by the La Verne Police Department for CCW license applications; and

(5)    an in-state residency requirement for CCW licenses.

*See* (PI Motion). On August 20, 2024, the Court granted in part and denied in part Plaintiffs' PI Motion. The Court granted the PI Motion insofar as it challenged: (1) the LASD's delay in issuing permits to Individual Plaintiffs Weimer and Messel; and (5) the California residency requirement for applying for CCW licenses. (PI Order at 44). The Court denied Plaintiffs' PI Motion as to the remaining challenges. (*Id.*).

On September 13, 2024, with permission of the Court, Plaintiffs filed a First Amended and Supplemental Complaint, (ECF No. 55 ("FASC")), to, in their words, "add[] clarity to some portions of their complaint in light of the Court's [] ruling on the[] motion for preliminary injunction" and to substitute and amend parties. (ECF No. 53 ("Stipulation for Leave to File First Amended and Supplemental Complaint") at 2 ). The FASC alleges the following practices by the Defendants are unconstitutional: (1) "failure to timely process carry permit applications"; (2) "the grossly excessive fees" charged to process applications and the costs to satisfy permit requirements; (3) "highly subjective suitability criteria" for evaluating applicants; and (4) the "refusal to honor permits issued by other states" and "accept applications for permits from non-residents." (FASC ¶ 2).

The FASC alleges that the Individual Plaintiffs are "ordinary, law-abiding, adult residents" of Los Angeles County or the City of La Verne that have either applied for CCW licenses but have not yet received them or have been "dissuaded or prevented from

applying." (*Id.* ¶ 20). All of the Individual Plaintiffs have alleged they are "eligible to possess firearms" and currently own at least one firearm. (*Id.* ¶ 23). Association Plaintiffs "bring this action to vindicate their members' and supporters' Second Amendment rights" and, in particular, are "representing their members or supporters who reside in Los Angeles County or La Verne" and have either (1) "already applied for a CCW permit" but are subjected to "lengthy wait time[s]"; (2) would apply for a CCW permit "if not for the high fees" and requirement that they undergo a psychological examination; or (3) "have CCW permits that were issued by other states and wish to have their permits honored when they visits California." (*Id.* ¶ 21).

As relevant to the Motion to Dismiss, four of the Individual Plaintiffs who reside in Los Angeles County, along with the Association Plaintiffs, are challenging alleged delays in the CCW license application process by the Los Angeles Defendants. Plaintiff Charles Messel ("Plaintiff Messel") submitted a CCW license application on July 1, 2022. (*Id.* ¶ 37). At the filing of this action on December 4, 2023, Plaintiff Messel had not received a decision on his application, but after Plaintiffs' PI Motion was filed to enjoin the LASD to issue Plaintiff Messel a CCW license, the LASD processed his application, though, as Plaintiffs allege, "nearly two years after he had submitted his application." (*Id.* ¶ 39). Plaintiff Brian Weimer ("Plaintiff Weimer") applied for a CCW license with the LASD in January 2023, and, at the time of the filing of the FASC, had not received a CCW license. (*Id.* ¶ 41). On January 22, 2025, the Court issued a PI Order that, in relevant part, set a timeline for the processing of Plaintiff Weimer's CCW permit application by the Los Angeles Defendants. (ECF No. 81). Plaintiff Jung Yun ("Plaintiff Yun") applied for a CCW license in September 2022 and received an initial telephonic interview on August 27, 2024. (FASC ¶ 42). Plaintiff Albert Medalla ("Plaintiff Medalla") applied for a CCW license on October 31, 2023, and has an initial interview scheduled on August 11, 2025. (*Id.* ¶ 43). All of the Individual Plaintiffs are members of CRPA, SAF, and GOA. (*Id.* ¶ 24). The FAC does not allege that any of the Individual Plaintiffs are members of GOC or

GOF.  Plaintiffs seek injunctive relief, declaratory relief, nominal damages, and costs of the suit.  *See* (FASC Prayer ¶¶ 1–21).

The La Verne Defendants and Defendant Bonta answered the FASC.  (ECF Nos. 58, 59).  The Los Angeles Defendants did not answer, but instead brought this motion to dismiss to, in their words, "substantially narrow this case" as to the claims brought against them. (Reply at 7).  The Los Angeles Defendants' Motion relates to the following claims:

(1)  First Claim (FASC ¶¶ 147–153), for alleged violations of the Second Amendment, (as incorporated against the States by the Fourteenth Amendment under *McDonald v. Chicago*, 561 U.S. 742, 791 (2010)), relating to alleged delays in the Los Angeles Defendants' issuance of decisions on CCW permit applications, and denials to Plaintiffs Velasquez and Partowashraf;

(2)  Fourth Claim, (*id.* ¶¶ 169–173), for alleged violations of the California Penal Code, relating to alleged delays in the Los Angeles Defendants' issuance of decisions on CCW permit applications; and

(3)  Eighth Claim, (*id.* ¶¶ 195–200), for, as relevant to the Motion, alleged violations of due process guaranteed under the Fourteenth Amendment, relating to alleged denials of CCW permits to Plaintiffs Velasquez and Partowashraf.

*See* (Motion at 3).  In particular, the Los Angeles Defendants seek an order dismissing: (1) the Association Plaintiffs as lacking standing to the extent they seek relief for anyone other than the named Individual Plaintiffs; (2) "any supposedly facial challenge" contained in the First, Fourth, or Eighth Claim, related to delays in the issuance of decisions on CCW permit applications and denials of CCW permit applications;[2] (3) "all claims against [the]

---

[2] The FASC alleges in places that it brings a facial challenge against allegedly unconstitutional CCW permit application denials.  *See* (FASC ¶ 149 ("To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due [to] the prohibitions in [California law], such provisions are unconstitutional both facially and as applied to Plaintiffs Velasquez and

LASD," arguing the LASD is subject to absolute immunity, and claims for nominal damages against Sheriff Luna, arguing that Sheriff Luna may only be sued for prospective injunctive relief; (4) Plaintiffs Messel and Weimer, arguing their claims are moot; and (5) Claim Four, premised on alleged violations of state law.[3]  (Motion at 10).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a complaint for lack of subject matter jurisdiction.  If a plaintiff lacks standing, then the federal court lacks subject matter jurisdiction over the suit.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction.  *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010).

### B.    Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

---

Partowashraf.")).  The Los Angeles Defendants challenge the First Claim insofar as the FASC asserts a facial challenge to denials of CCW permit applications.  (Motion at 14–15).  Plaintiffs clarified in their Opposition, however, that they are not attempting to assert a facial challenge to alleged denials of CCW permit applications.  (Opp. at 24).  Because the FASC contains allegations that could be read to be asserting a facial challenge as to CCW permit denials and because Plaintiffs have not opposed the Los Angeles Defendants' Motion to dismiss such allegations, *see* (Opp. at 8–14), the Court GRANTS the Los Angeles Defendants' Motion insofar as it argues that the FASC does not sufficiently assert a facial challenge to the Los Angeles Defendants' denials of CCW permit applications.

[3] The Los Angeles Defendants also initially challenged that the FASC failed to sufficiently assert a claim against Sheriff Luna and the LASD for municipal liability under 42 U.S.C. § 1983, for a "policy or practice" of delay, under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978).  (Motion at 19–22).  The Los Angeles Defendants withdrew this challenge in their Reply, and so the Court does not consider it here.  (Reply at 8 n.1 ("[The] LASD and Sheriff Luna will reserve this issue for summary judgment, with the benefit of discovery, and so withdraw their motion to dismiss on this basis.")).

R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  While a plaintiff need not provide detailed factual allegations, the plaintiff must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555.  The court may not, however, accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

### III.    DISCUSSION

#### A.    Standing of the Association Plaintiffs

The Los Angeles Defendants challenge the standing of CRPA, SAF, and GOA to "secure relief for any of their members who are not parties to the litigation"—in other words, anyone other than Individual Plaintiffs Messel, Weimer, Medalla, Yun, Velasquez, and Partowashraf. (Motion at 26). The Los Angeles Defendants also argue GOC and GOF should be dismissed from the lawsuit altogether because they have not alleged they have an individual member who is a party to this lawsuit. (*Id.* at 27).

#### a)    CRPA, SAF, and GOA

The doctrine of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* U.S. Const. art. III, § 2. A plaintiff invoking federal jurisdiction must meet three requirements to establish Article III standing: (1) the plaintiff must demonstrate it suffered an "injury-in-fact," an invasion of a legally protected interest that is concrete and particularized, actual or imminent, not conjectural or hypothetical; (2) the plaintiff must establish "causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," not the result of the independent action of a third party not before the court; and (3) the plaintiff "must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (cleaned up); *Lujan*, 504 U.S. at 560–61; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013). These three "requirements together constitute the 'irreducible constitutional minimum' of standing." *Vermont Agency of Nat. Res.*, 529 U.S. 771 (quoting *Lujan*, 504 U.S. at 560). The three standing elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. The "plaintiff must demonstrate standing separately" for each type of injury and form of relief sought in the action. *See Friends of the Earth v. Laidlaw Env't Servs. (TOC)*, 528 U.S. 167, 185 (2000); *see also Lewis v. Casey*, 518 U.S.

343, 358 n.6 (1996) ("Standing is not dispensed in gross."). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at [each] successive stage[] of the litigation." *Lujan*, 504 U.S. at 561. Thus, when standing is challenged at the pleading stage on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice" because the court must accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and presume the plaintiff's general allegations embrace the specific facts that are necessary to support the claim. *Id.*

"Organizations can assert standing on behalf of their own members, or in their own right." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (citations omitted). If an organization asserts standing on behalf of its members, the organization may "sue to redress its members' injuries, even without a showing of injury to the association itself." *Ore. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (citation omitted). To assert associational standing, an organization must show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit." *Id.* (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Unlike the first two prongs of associational standing, the third "'is a prudential' requirement, rather than a constitutional requirement." *Santiago v. City of Los Angeles*, 2016 WL 7176694, at *6 (C.D. Cal. Nov. 17, 2016) (citing *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554 (1996)). The third prong "is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food & Com. Workers Union Local 751*, 517 U.S. at 554. The issue of individualized proof "arises primarily when an organization makes claims for damages." *Santiago*, 2016 WL 7176694, at *6. Often, requests for injunctive and declaratory relief "do not require individualized proof." *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001). However,

"[w]hen the claims require an ad hoc factual inquiry for each member represented by the association," they do. *See Ass'n of Christian Schools Int'l v. Stearns*, 678 F. Supp. 2d 980, 986 (C.D. Cal. 2008) (citation omitted).

Here, the Los Angeles Defendants argue that CRPA, SAF, and GOA cannot satisfy the third requirement for associational standing and cannot represent their members and supporters as to their delay claims because such claims "require precisely the kind of fact-intensive inquiry that limits associational standing to the named plaintiffs." [4] (Motion at 26). In particular, the Los Angeles Defendants argue that, because the CCW permit application process "treats each applicant separately by requiring a background check, investigating compliance with gun safety laws, and compliance with California's regulations," "[e]ach application is [] granted or denied on an individual basis, and a unique explanation is provided for each CCW application determination." (*Id.* at 27). Plaintiffs disagree that the delay claims require individual participation. They contend that, because CRPA, SAF, and GOA challenge only the delay of a decision on a CCW permit application beyond the time frame in California Penal Code § 26205, there is no need for a "'fact-intensive inquiry that limits associational standing to the named plaintiffs.'" (Opp. at 24 (citing Motion at 17)). In particular, Plaintiffs assert that "every [] member of [the Association Plaintiffs] who has applied (or will apply) for a CCW permit will face the same long wait time, regardless of their individual circumstances." (*Id.*).

As an initial matter, although the parties do not address the first two elements of organizational standing, the Court finds that CRPA, SAF, and GOA have satisfied the first two elements. *See Lujan*, 504 U.S. at 561 (each element of standing is an "irreducible constitutional minimum"). The FASC alleges that CRPA, SAF, and GOA's "members

---

[4] The Los Angeles Defendants also argue that CRPA, SAF, and GOA, have not sufficiently pleaded direct standing and thus seek an order dismissing CRPA, SAF, and GOA to the extent these Association Plaintiffs assert direct standing in the FASC. (Motion at 25). However, as Plaintiffs acknowledge, the FASC does not allege direct standing of any Association Plaintiffs. (Opp. at 24 n.14). Accordingly, the Court declines to address the Los Angeles Defendants' arguments as to direct standing.

would otherwise have standing to sue in their own right" and "the interests [CRPA, SAF, and GOA] seek to protect are germane to [their] purpose." *Ore. Advocacy Ctr.*, 322 F.3d at 1109. Specifically, the FASC alleges that the Association Plaintiffs' "members [] want CCW permits but reside in Los Angeles County," and "are subject to lengthy wait times . . . that violate the U.S. Constitution." (FASC ¶ 60 (SAF); *see id.* ¶¶ 61, 64 (similar for GOA and CRPA)). The FASC alleges these organizations seek to protect the rights guaranteed to individuals by the Second Amendment and requests this Court issue a declaratory judgment pronouncing the unconstitutionality of wait times in excess of the statutory time periods and an injunction enjoining plaintiffs from issuing permits outside of that time period. (*Id.*).

Turning to the third element of associational standing, the Court finds that the Association Plaintiffs have sufficiently pleaded that, with respect to the Los Angeles Defendants' alleged delay in issuing decisions on CCW permit applications, both "the claim asserted" and "the relief requested" do not require individual participation of their members. *Hunt*, 432 U.S. at 343.

First, the Los Angeles Defendants contend that the delay claims require individual participation because of *reasons* for delay beyond the statutory time period that may be constitutional. *See, e.g.*, (Reply at 10 ("An application that is incomplete, or an applicant who does not timely complete the steps required of them, might not be processed within 120 days for reasons not arguably unconstitutional.")). However, the Los Angeles Defendants appear to misunderstand Plaintiff's claim. *See Santiago*, 2016 WL 7176694, at *6 n.5 ("Whether every one of Unión's individual members had an umbrella seized is, of course, an individualized inquiry—but that inquiry is separate from and irrelevant to determining whether the seizure of umbrellas as a practice is unlawful."). Plaintiffs challenge the Los Angeles Defendants' alleged "*practice* of exceeding [the 120-day] statutory time limit [a]s facially unconstitutional," whatever the *reason* for the delay might be. (FASC ¶ 137 (emphasis added)). The statutory framework for the CCW licensing regime states that a "licensing authority *shall give* written notice to the applicant indicating

if the license . . . is approved or denied . . . within 120 days of receiving the completed application for a new license, or 30 days after receipt of the information and report from the Department of Justice . . ., whichever is later." California Penal Code § 26205 (emphasis added)). The FASC alleges that the issuing authority therefore has no discretion under this statutory framework as to the upward time limit for issuing decisions on licenses, and the FASC challenges *any* issuance of a decision on a completed application in excess of the statutory timeframe. *See* (FASC ¶ 137 ("[The] LASD's practice of exceeding th[e] statutory time limit [in California Penal Code § 26205] is facially unconstitutional")). Therefore, the claim itself, which is tied to issuances of decisions that exceed the time frame set by California Penal Code § 26205, does not require individual determinations. The Court, however, does not address at this time the merits of Plaintiffs' claim that any delay in issuing a decision beyond the statutory time frame is unconstitutional and unlawful. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim.").

Second, the relief requested on the delay claims does not require individual participation. The FASC requests nominal damages, injunctive relief, declaratory relief, and attorneys' fees and costs. *See generally* (FASC Prayer ¶¶ 1–21). A request for nominal damages and costs do not require individualized proof from members. *Knife Rights, Inc. v. Bonta*, 2024 WL 4224809, at *3 (S.D. Cal. Aug. 23, 2024) (neither an award of nominal damages or attorneys' fees or costs require participation of individual members); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 289 (2021) ("[A] party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage."). Turning to Plaintiffs' requests for injunctive and declaratory relief against the Los Angeles Defendants related to delay, Plaintiffs seek: (1) "[a] declaration that [the LASD] taking over 120 days to process permits violates the constitutional right to carry" and California Penal Code § 26205; and (2) "[a]n order preliminarily and permanently enjoining [the LASD] from refusing to process or issue a CCW Permit to any qualified applicant 120 days

after submission of such applicant's initial application for a new license or license renewal, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later." (FASC Prayer ¶¶ 1–2, 13). The Los Angeles Defendants argue that "CCW applications—and processing them within 120 days—require[s] individual participation." (Reply at 10). Although the CCW application process requires participation by individuals, the Association Plaintiffs' members do not need to participate individually in the lawsuit for the organizations to obtain the relief they request. *See Santiago*, 2016 WL 7176694, at *6 (while "individual inquiries" may be necessary to determine if individuals are entitled to requested injunctive relief, "that is a different inquiry that occurs outside the scope of this litigation, and not the form of relief requested by [Plaintiff] in this proceeding").

The cases cited by the Los Angeles Defendants do not support a different result. For example, in *Association of Christian Schools International v. Stearns*, the plaintiffs challenged the University of California's admissions process, which provided that only certain, approved courses may be considered when evaluating an application for admission to a University of California school. 678 F. Supp. 2d 980, 985 (C.D. Cal. 2008). On a motion for summary judgment, where the parties agreed that the claims at issue were as-applied challenges, the court found that the plaintiffs' claims for declaratory relief were individualized because the plaintiffs sought "an order that [the d]efendants must reconsider (or perhaps approve) *specific proposed* courses." *Id.* (emphasis added). The court also found that, because the process of making decisions on whether to approve courses was individualized, relief was "not common to the entire membership" of the challenging organization, because it "would not be shared by all in equal degree." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)).

In contrast, the Association Plaintiffs' requested relief is "common to the entire membership" and does not require individualized determinations. *See Warth*, 422 U.S. at 515. The Association Plaintiffs do not request that only some subset of completed CCW permit applications pending in excess of the statutory timeframe be subject to the requested

-14-

relief. They instead request that all completed CCW permit applications, submitted by eligible applicants, receive a decision within the statutory time frame. *See* (FASC ¶ 137 ("Plaintiffs seek declaratory relief confirming that Los Angeles County Sheriff's Department's current CCW permit application regime violates the Secondment Amendment, imposing extraordinary delays. . . . LASD's practice of exceeding th[e] statutory time limit [in California Penal Code § 26205] is facially unconstitutional. . . . Plaintiffs seek declaratory relief that their rights were violated beginning on the 121st day following their respective applications being submitted.")). Thus, unlike the members in *Stearns*, who were challenging a regime with individualized, particularized determinations specific to their unique circumstances, all the members of the Association Plaintiffs who are eligible applicants and have submitted completed applications are seeking the same relief—namely, to not experience delays in an issuance of a decision on a CCW permit application beyond the time frame described in California Penal Code § 26205. *Stearns*, in fact, recognizes that, like here, "associational standing is often granted where the challenge raises a pure question of law that is not specific to individual members." 678 F. Supp. 2d at 985.

Other cases cited by Plaintiffs support that as-applied challenges sometimes require individualized inquiries that defeat associational standing. *See Garcia v. City of Los Angeles*, 611 F. Supp. 3d 941, 952 (C.D. Cal. 2020) ("The Court agrees that if KFA is bringing as-applied challenges or seeks damages, participation of the individual members would be required."); *Guadalupe Police Officer's Ass'n v. City of Guadalupe*, 2011 WL 13217671, at *5 (C.D. Cal. Mar. 29, 2011) ("To the extent GPOA brings an as-applied challenge, as opposed to a facial challenge, its claims require individual members' participation." (citation omitted)). These cases, however, are inapplicable to the delay-based claims and relief requested in the FASC upon which the Association Plaintiffs seek to represent their members. As discussed above, the claim and relief requested do not require individual inquiries. And, for reasons discussed in Section III.B below, the Court finds that Plaintiffs have not asserted purely as-applied challenges that would limit their

1  entitlement to relief to their claims only.  Thus, the Court finds that CRPA, SAF, and GOA
2  have standing to pursue claims on behalf of their members related to the Los Angeles
3  Defendants' alleged delay in issuing a decision on a CCW permit application beyond the
4  time frame provided in California Penal Code § 26205.

5                      b)      GOC and GOF

6  Citing *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019), the Los
7  Angeles Defendants argue that GOC and GOF should be dismissed altogether because they
8  have not alleged that they have members who are parties to this lawsuit and are suing the
9  Los Angeles Defendants. (Motion at 27).  In *Rodriguez*, however, the court declined to
10 find that an organizational plaintiff had standing where the plaintiffs admitted that the
11 organizational plaintiff had not alleged standing on behalf of the named individual plaintiff
12 or, importantly, "any other member."  *Rodriguez*, 930 F.3d at 1134.  Here, unlike the
13 *Rodriguez* organizational plaintiff, GOC and GOF have both asserted that they have
14 supporters or members in California "who wish to obtain CCW permits but reside in Los
15 Angeles County . . . and are subject to lengthy wait times."  *See* (FASC ¶¶ 62 (GOF), 63
16 (GOC)).  Such an allegation is sufficient at the pleading stage to allege the standing of
17 GOC and GOF based on their members.  *See Nat'l Council of La Raza v. Cegavske*, 800
18 F.3d 1031, 1041 (9th Cir. 2015) ("Where it is relatively clear, rather than merely
19 speculative, that one or more members have been or will be adversely affected by a
20 defendant's action, and where defendant need not know the identity of a particular member
21 to understand and respond to an organization's claim of injury, [the Ninth Circuit] see[s]
22 no purpose to be served by requiring an organization to identify by name the member or
23 members injured.").

24 The Los Angeles Defendants also cite to *Foti v. City of Menlo Park*, 146 F.3d 629,
25 635 (9th Cir. 1998), in support of their argument that GOC and GOF should be dismissed
26 for lack of standing.  (Motion at 27).  *Foti* does not relate to associational standing at all,
27 but instead explains that an as-applied challenge asserts that a law violates the constitution
28 based on how it is applied to "the litigant's particular [] activity."  *See Foti*, 146 F.3d at

635.  For the reasons described below in Section III.B, however, the Court does not find that Plaintiffs have asserted purely as-applied challenges that would limit their entitlement to relief only to their own claims.  Thus, for the same reasons the Court has found that CRPA, SAF, and GOA have standing, the Court also finds that GOC and GOF have standing to assert claims on behalf of their members.

### B.    Plaintiffs Assert a Facial Challenge

The Los Angeles Defendants assert that the FASC should be dismissed to the extent it lodges a "facial challenge against the[] statutorily permitted response periods in California's licensing regime" because, they argue, Plaintiffs' FASC challenges only the "application of the licensing regime to [Individual Plaintiffs'] permit requests." (Motion at 14).  Plaintiffs respond that the FASC does, in fact, sufficiently mount a facially challenge to the "LASD's practice of exceeding [the 120-day] statutory time limit."  (Opp. at 8 (citing FASC ¶ 137)); *see also* (Opp. at 9 ("Here, Plaintiffs challenge the policy or practice of the Los Angeles Defendants, whether official or unwritten, to take two years or more to process CCW permit applications.") (footnotes omitted)).

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019).  This means that "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law [or policy] must be demonstrated and the corresponding 'breadth of the remedy.'" *Id.*  The "substantive rule of law is the same" for both facial and as-applied challenges. *Gross v. United States*, 771 F.3d 10, 15 (D.C. Cir. 2014).  But when a Plaintiff brings a facial challenge, they must ultimately "establish that no set of circumstances exists under which the [challenged practice] would be valid." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (cleaned up).  In other words, the fact that a challenged practice "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).  That said, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings

and disposition in every case involving a constitutional question." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).  The "distinction" between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id.*

The Court finds the FASC sufficiently alleges a facial challenge to the Los Angeles Defendants' alleged policy of issuing CCW permits in excess of the statutory framework. The Los Angeles Defendants argue that the FASC does not "affirmatively claim that the codified time periods [of the statutory regime] violate the Constitution." (Motion at 14). However, the FASC does state that the "LASD's practice of exceeding the statutory time limit is facially unconstitutional." (FASC ¶ 137).  The Los Angeles Defendants also argue that the FASC articulates a claim based on "how" Sherriff Luna "implements th[e] regime," which should be construed as an as-applied challenge. (Motion at 14).  However, Plaintiffs may assert a facial challenge by alleging that a "*policy* . . . in all its applications" is unconstitutional. *Bucklew*, 587 U.S. at 138 (emphasis added).  Here, Plaintiffs have alleged that the "LASD's *practice*" of issuing decisions on CCW permit applications beyond the time provided in the statutory framework is unconstitutional. *See* (FASC ¶ 137 (emphasis added)).  This allegation is sufficient to survive a motion to dismiss on the grounds that the pleading does not include a "short and plain" statement of a facial challenge.  Fed. R. Civ. P. 8(a).

In any event, "[t]he label is not what matters" when determining whether a challenge is facial or as-applied. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).  Claims may "obviously ha[ve] characteristics of both." *Id.*  What matters is that "plaintiff's claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs," and Plaintiffs "must therefore satisfy [the] standards for a facial challenge to the extent of that reach. *Id.*  Plaintiffs' delay claims do not seek to invalidate the CCW permit licensing regime in every application.  Instead, the delay claims seek to invalidate a broad set of applications of the CCW permit licensing regime to issuances of decisions on completed CCW permit applications in excess of the time periods set out in California

Penal Code § 26205. *Compare* (FASC ¶ 137), *with* (Prayer for Relief ¶ 13); *see John Doe No. 1*, 561 U.S. at 194 ("The claim is 'as applied' in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions."). Thus, the Court finds that Plaintiffs have sufficiently asserted a facial challenge to the Los Angeles Defendants' alleged "policy or practice" of issuing a decision on a completed CCW permit application in excess of the time frame provided in California Penal Code § 26205.

## C.    Eleventh Amendment Immunity and Municipal Liability

The Los Angeles Defendants argue that the LASD is entitled to immunity under the Eleventh Amendment and that Sheriff Luna is immune from Plaintiffs' claims for nominal damages as a state actor in his official capacity when administering the CCW licensing program. (Motion at 16). Plaintiffs disagree, arguing that because the FASC alleges "the Los Angeles Defendants are not following state law," the LASD is not immune, and Sheriff Luna is liable for nominal damages. (Opp. at 14). The Court first addresses the immunity of the LASD as an arm of the state, and next turns to whether Sheriff Luna is a "person" subject to *Monell* liability under 42 U.S.C. § 1983.

### 1.    Immunity of the LASD

The Eleventh Amendment of the Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A]gencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017). County and municipal governments, while not entitled to state sovereign immunity on their own terms, may be afforded immunity when "state law treats them as arms of the state." *Id.* In determining whether county agencies are operating as an arm of the state, courts look to: "(1) the state's intent as to the status of the entity, including the functions

1  performed by the entity; (2) the state's control of the entity; and (3) the entity's overall

2  effects on the state treasury." *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1030 (9th Cir.

3  2023) (cleaned up).[5]  In *Kohn*, the Ninth Circuit, sitting en banc, announced this Circuit

4  would take an "entity-based approach" to sovereign immunity questions, whereby district

5  courts "evaluate immunity at the level of the entity." *Id.* at 1031.  In contrast to an "activity-

6  based approach," under the entity-based approach, "[t]he status of the entity does not

7  change from one case to the next based on the nature of the suit, the state's financial

8  responsibility in one case as compared to another, or other variable factors." *Id.* (cleaned

9  up).

10        Here, the Los Angeles Defendants, at this early stage, have not met their burden to

11  demonstrate the LASD satisfies the "entity-based" test articulated in *Kohn* for application

12  of sovereign immunity.  The Los Angeles Defendants argue that the LASD acts as an arm

13  of the state when executing the CCW licensing regime because the CCW statutory

14  provisions ultimately tasks the state with administration and oversight over the CCW

15  program.  *See* (Reply at 12–13 (citing *Scocca v. Smith*, 912 F. Supp. 2d 875, 882–83 (N.D.

16  Cal. 2012)).  The LASD's argument, however, which focuses on the LASD's role and

17  relationship with the state when administering the CCW licensing regime, is foreclosed by

18  *Kohn* because it is activity based, analyzing "variable factors" that "change from one case

19  to the next based on the nature of the suit," instead of the state's characterization of LASD

20  as an entity.  *Kohn*, 87 F.4th at 1031.  As to the first *Kohn* factor, for example, the Los

21  Angeles Defendants do not provide the Court with facts or arguments to support whether,

22  looking outside the CCW licensing regime, "state law expressly characterizes the entity as

23

24  ───────────────

    [5] Plaintiffs cite to a different, five-factor test for determining whether LASD is an arm-of-

25  the-state, first articulated in *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201

26  (9th Cir. 1988).  *See* (Opp. at 14–15).  As Los Angeles Defendants correctly point out, the

    *Mitchell* test was abrogated and "reshap[ed]" by *Kohn*, "in light of developments in

27  Supreme Court doctrine and [] experience applying them."  *Kohn*, 87 F.4th at 1027.  The

    Court therefore declines to apply the *Mitchell* factors to address whether LASD is an arm

28  of the state for the purposes of this litigation.

a governmental instrumentality rather than as a local governmental or non-governmental entity; whether the entity performs state governmental functions; whether the entity is treated as a governmental instrumentality for the purposes of other state law; and state representations about the entity's status." *Id.* As to the second and third *Kohn* factors, the Los Angeles Defendants' arguments are similarly deficient.[6] *Id.* The Court thus finds that, at this stage of the proceedings, the Los Angeles Defendants have not shown under *Kohn* that LASD is an "arm[] of the state and enjoy[s]" absolute sovereign immunity under the Eleventh Amendment. *Id.* at 1037.

### 2. Immunity of Sheriff Luna

The Los Angeles Defendants argue that "[e]very court to have considered whether California Sheriffs' Departments are state actors in the context of the CCW licensing regime has concluded they are." (Reply at 11 (citing *Shilling v. Cnty. of San Diego*, 2024 WL 4611448, at *3 (S.D. Cal. Oct. 29, 2024); *Samaan v. Cnty. of Sacramento*, 2018 WL 4908171, at *5–6 (E.D. Cal. Oct. 10, 2018); *Birdt v. San Bernadino Sheriffs Dep't*, 2016 WL 8735630, at *2 (C.D. Cal. Aug. 8, 2016); *Nordstrom v. Dean*, 2016 WL 10933077, at *9–10 (C.D. Cal. Jan. 8, 2016); *Scocca*, 912 F. Supp. 2d at 882–84)). Although the Los Angeles Defendants rely on the cited decisions in making their sovereign immunity arguments under *Kohn*, these decisions, most of which pre-date *Kohn*, addressed a separate question of whether a sheriff should be considered a policymaker for the state or county for the purposes of *Monell* liability under 42 U.S.C. § 1983. *See, e.g.*, *Samaan*, 2018 WL 4908171, at *5–6 ("The County contends that Sheriff Jones acts as an agent of the state,

---

[6] Indeed, Judge Mendoza's concurrence in *Kohn* highlighted how what he described as the majority's "wholesale embrace of the [] entity-based approach to sovereign immunity" may be difficult to apply to county sheriffs' departments, like the LASD, which are "often structured as quasi-local and quasi-state entities, following mandates issued by both governments." *Kohn*, 87 F.4th at 1038, 1045 (Mendoza, J., concurring). Nevertheless, the Court is bound to apply the approach prescribed by *Kohn* and therefore determines whether the Los Angeles Defendants have met their burden to demonstrate that the LASD "is or is not an arm of the state." *Id.* at 1031.

not the County, when he grants, denies, or revokes a CCW permit; therefore the County is not a 'person' under 42 U.S.C. § 1983. . . . The court agrees.").

Here, Plaintiffs vigorously defend that the FASC asserts *Monell* claims against the Los Angeles Defendants related to Sheriff Luna's alleged policy of delaying the issuance of CCW licenses beyond the statutory time frame. *See* (Opp. at 19); *see, e.g.*, (FASC ¶ 151 ("Defendants are thus propagating customs, policies, and practices that deprive or delay California residents, including Plaintiffs, of their constitutional right to bear arms outside the home for self-defense.")). While the Los Angeles Defendants have explicitly withdrawn their challenges to the *sufficiency* of the FASC's *Monell* allegations, s*ee* (Reply at 8 n.1), they have not withdrawn their challenges to the FASC on the grounds that Sheriff Luna is a state actor and immune from a claim for damages in his actions administering the CCW licensing regime, *see* (*id.* at 11). Thus, the Court applies the framework articulated in *McMillian* to Plaintiffs' delay claims to determine whether Sheriff Luna, acting in his official capacity, is a policymaker for the state or county for the purposes of municipal liability under *Monell*.

First, and in contrast to the sovereign immunity analysis under *Kohn*, *McMillian* "caution[s] against employing a 'categorical, all or nothing' approach," and instead instruct[s] that the court must assess "'whether governmental officials are final policymakers for the local government in a particular area or on a particular issue.'" *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 560 (9th Cir. 2001) (quoting *McMillian*, 520 U.S. at 785–86). Second, the Court's "'understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.'" *Id.* (quoting *McMillian*, 520 U.S. at 786). When applying *McMillian* to California county sheriffs, the court "must conduct an independent examination of California's constitution, codes, and caselaw with respect to each particular area or each particular issue." *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (citation omitted). "[C]ircuit caselaw 'provides the starting point'" for the court's analysis. *Id.* (citing *Brewster v. Shasta Cnty.*, 275 F.3d 803, 806 (9th Cir. 2001)).

The California Constitution "does not list sheriffs as part of the state's executive department," and instead "designates sheriffs as county officers." *See Streit*, 236 F.3d at 561; *see also* Cal. Const. art. XI, § 1(b).  Therefore, as the Court in *Streit* concluded, "under the California Constitution, the LASD is generally a county, not state, agency." *Streit*, 236 F.3d at 561; *see also Scocca*, 912 F. Supp. 2d at 882 (concluding that provisions of the California Constitution do not support that, in the context of administering the CCW licensing regime, a sheriff is a state actor).  While not "dispositive" on its own, the California Constitution's determination that sheriffs are generally county, not state, officers supports that the Court should look to the specific statutory framework at-issue when Sheriff Luna administers the CCW licensing regime. *See Scocca*, 912 F. Supp. 2d at 882.

Second, the California Penal Code sections that prescribe the CCW licensing regime do evidence some control by the state over aspects of the CCW licensing regime.  For example, the California Penal Code requires that the Attorney General establish a uniform application to be used throughout the state. *See* Cal. Penal Code § 26175(a)(1)(A) (CCW permit applications "shall be uniform throughout the state, upon forms to be prescribed by the Attorney General")).  While representatives from the California State Sheriffs' Association, California Police Chief's Association, and the Department of Justice are instructed to form a "committee" to review and revise CCW permit applications on a regular basis, the ultimate authority for issuing the form of the CCW application lies with the Attorney General. *See id.* § 26175(a)(2), (3)(C).  Moreover, under California Penal Code § 26225(b), a sheriff must file with the Department of Justice any decision regarding a CCW permit application, including denials, issuances, amendments, or revocations of licenses.  California Penal Code § 26195(a) requires that a CCW license "shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm."  California's CCW licensing regime thus evidences an "oversight role" for the state in terms of determining under what circumstances an individual will be determined to be eligible to receive a CCW permit. *See Scocca*, 912 F. Supp. 2d at 883.  Finally, as the *Scocca* court points out, with limited

exceptions, the CCW licensing regime grants the sheriff the power to "grant a license which conveys a right exercisable throughout the state and thus has a statewide effect." *Id*.  It is on these bases that *Scocca*, and the other courts' decisions to which Los Angeles Defendants cite, found that a sheriff acts as a state, not county, official, when administering the CCW licensing regime.

However, there is a "critical" difference between the "particular issue" in *Scocca* and that presented in this case.  *See Streit*, 236 F.3d at 564.  In *Scocca*, along with *Shilling*, *Samaan*, *Nordstrom*, and *Birdt*, plaintiffs challenged either the *denial* of a CCW permit application or *revocation* of a CCW permit.  *See Scocca*, 912 F. Supp. 2d at 884 (determining the Santa Clara County sheriff is a policymaker for the state "when making her decisions on granting or denying CCW licenses"); *Shilling*, 2024 WL 461148, at *1 (addressing a sheriff's "revocation of Plaintiff's [CCW] license"); *Samaan*, 2018 WL 4908171, at *5 (sherriff is a state policymaker "when he grants, denies, or revokes a CCW permit"); *Birdt*, 2016 WL 8735630, at *8 (denial of a CCW permit application); *Nordstrom*, 2016 WL 1093307, at *1 (denial of a CCW permit application).  By contrast, Plaintiffs here articulate a theory of *Monell* liability premised on Sheriff Luna's alleged *delays* in the issuance of decisions on completed CCW permit applications beyond the time frame provided in California Penal Code § 26205.  *See* (FAC ¶ 137).  "Although this distinction may be perceived as subtle," the Court finds it dispositive.  *See Streit*, 236 F.3d at 564.  California's CCW licensing regime includes a time frame by which the CCW licensing authority—here, Sheriff Luna—"shall give" notice to a CCW license applicant whether a completed application was approved or denied.  *See* Cal. Penal Code § 26205(a) (requiring that notice is given the later of 120 days after receipt of a completed application or 30 days after receipt of information regarding the applicant is furnished by the Department of Justice).  Los Angeles Defendants point to no other statutory authority that would allow the LASD to issue a decision on a permit *beyond* the time frame described in California Penal Code § 26205.  Thus, on the "particular issue" that is raised by Plaintiffs' *Monell* claim—namely, any issuance of a decision on a CCW permit application in excess

of the statutory time frame—a county sheriff would necessarily act as his or her own policymaker to the extent that sheriff has a "policy or practice" of issuing decisions on CCW permit applications in excess of the time provided in the California Penal Code § 26205(a). Plaintiffs allege this statute provides no discretion to the sheriff as to when a decision on a CCW permit should be issued. *See* (FASC ¶ 137; Opp. at 16). Regardless of the merits of that allegation, Plaintiffs' theory of *Monell* liability is thus premised on Sherriff Luna acting on his own "practice of exceeding this statutory time limit" when issuing decisions on CCW permit applications. (FASC ¶ 137).

This outcome is consistent with the Ninth Circuit's decision in *Streit*. In *Streit*, the Ninth Circuit determined that the sheriff was acting in his capacity as a "final policymaker" when, as plaintiffs alleged, the sheriff instituted a policy of holding inmates in county jails after any legal justification for their seizure and detention had ended. *See* 236 F.3d at 556. In particular, Plaintiffs alleged that, before an inmate is released from prison, the LASD, acting on the sheriff's policy, would conduct a check in a law enforcement database for any outstanding wants and holds for the inmate issued up to and including the last day an inmate was scheduled for release. *Id.* Due to a "high volume of wants and holds received each day," the process of inputting wants and holds into the database would take an additional one to two days to complete and, according to the policy of the LASD sheriff, these inmates were required "to remain in jail during the inputting period, extending their release date." *Id.* In applying *McMillian*, the Ninth Circuit found that the sheriff's policy of "[s]earching for wants and holds that may or may not have been issued for persons whom the state has no legal right to detain is an administrative function of jail operations for which the LASD answers to the County." *Id.* at 564. Thus, because the "LASD [was] conducting its own administrative search for outstanding warrants, wants, or holds," the sheriff was functioning as a county-level policymaker. *See id.* So too, here. Plaintiff alleges that the LASD is acting pursuant to Sheriff Luna's policy when it delays the issuance of decisions on CCW permit applications. *See* (FASC ¶ 137). Such a policy could not find support in state law, since state law explicitly provides a timeline by which a

licensing authority, like Sheriff Luna, "shall give" notice of the decision on completed CCW permit applications. *See* Cal. Penal Code § 26205. The LASD thus answers to Sheriff Luna, in his official capacity as a county policymaker, to the extent the LASD acts pursuant to a "policy or practice" of delaying the issuance of decisions on completed CCW permit applications in excess of the statutory time frame. *See also Buffin v. City and Cnty. of San Francisco*, 2016 WL 6025486, at \*6 (N.D. Cal. Oct. 14, 2016) (identifying the "critical distinction (first raised in *Streit*) between detention caused by a sheriff's own administrative policy, on the one hand, versus detention required by state law or court order, on the other").

For the foregoing reasons, the Court concludes that the Los Angeles Defendants have not met their burden to demonstrate at this early stage that Sheriff Luna is a policymaker for the state, as opposed to the county, with respect to Plaintiffs' claims premised on the LASD's alleged delay in issuing decisions on CCW permit applications in excess of the time prescribed by California Penal Code § 26205. Thus, the Court finds that the FASC sufficiently pleads its request for nominal damages against Sheriff Luna on Plaintiffs' delay-based claims.[7] *See George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir. 1992) (nominal damages are available against a county policymaker on a *Monell* claim).

---

[7] It is not clear from the FASC that Plaintiffs assert a *Monell* claim premised on the denials of CCW permits to Plaintiffs Velasquez and Partowashraf. Nor do Plaintiffs specifically argue that the denial-based claims of Plaintiffs Velasquez and Partowashraf are premised on *Monell* liability. *See* (Opp.). However, to the extent that Plaintiffs Velasquez and Partowashraf proceed under *Monell*, the LASD is immune from suit and Sheriff Luna is immune from nominal damages. *See Scocca*, 912 F. Supp. 2d at 875 (a sheriff acts a state policymaker when granting or denying CCW licenses); *Nordstrom*, 2016 WL 10933077, at \*10 ("There is 'one vital exception' to the general rule that state officials sued in their official capacities are entitled to Eleventh Amendment immunity: when sued for declaratory or injunctive relief, an official working in his official capacity is considered a 'person' for section 1983 purposes, and is not immune from suit." (citing *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2017))).

### D.    Mootness of Plaintiff Messel and Plaintiff Weimer's Claims

The Los Angeles Defendants argue that Plaintiff Messel and Plaintiff Weimer's claims for injunctive and declaratory relief are moot. (Motion at 22). The Los Angeles Defendants argue Plaintiff Messel "already obtained full relief" when he received his CCW license in May 2024, and Plaintiff Weimer has "already obtained full relief" because the PI Order issued by the Court required Plaintiff Weimer to receive a decision on his application "on a specific timeline." (*Id.* at 23). Plaintiffs argue that Plaintiff Weimer and Plaintiff Messel's claims are not moot because, among other reasons, Plaintiff Weimer and Plaintiff Messel have requested nominal damages. (Opp. at 21). The Court agrees with Plaintiffs.

As the Los Angeles Defendants acknowledge, "[a] plaintiff's pursuit of nominal damages provides a sufficiently concrete interest in the outcome of the litigation to confer standing to pursue declaratory relief and thereby prevents mootness." *Yniguez v. State*, 975 F.2d 646, 647 (9th Cir. 1992); *see* (Motion at 24 (conceding "the availability of nominal damages might avoid mootness")). Here, Plaintiff Weimer and Plaintiff Messel seek nominal damages on their claims. *See* (FASC ¶ 138; Prayer for Relief ¶ 20). Thus, regardless of whether they have been issued decisions on their permits, their claims are not moot since nominal damages are available to them. *See Ellis v. Brotherhood of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 442 (1984) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").

### E.    Claim Four

The Los Angeles Defendants also argue that Plaintiffs' Claim Four, alleging the Los Angeles Defendants violate California Penal Code § 26205 itself when delaying the issuance of a decision on a CCW permit application beyond the statutory time frame, should be dismissed for two reasons: (1) such a state-law claim is barred under the *Pennhurst* doctrine; and (2) there is no private right of action under California Penal Code § 26205. (Motion at 18–19). The Court addresses each argument in turn.

1              1.   *Pennhurst* Doctrine

2      Under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984),

3    the Supreme Court held that the *Ex Parte Young* doctrine only allows prospective relief

4    against state officers only to vindicate rights under federal law. *See Spoklie v. Montana*,

5    411 F.3d 1051, 1060 (9th Cir. 2005). In other words, states and state agencies are immune

6    from suit under state law when sued in federal court, regardless of the relief sought.

7    *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100. Regardless of the relief sought here, for

8    the reasons stated above, the Los Angeles Defendants have failed to support that the LASD

9    is acting as an arm of the state, and Sheriff Luna is acting as a policymaker for the state,

10   for the purposes of the delay claims. Accordingly, the Court declines to apply the

11   *Pennhurst* doctrine to bar Claim Four from proceeding.

12             2.   Claim Four Fails to State a Claim

13     Los Angeles Defendants also argue that Plaintiffs have not pleaded that California

14   Penal Code § 26205 has a private right of action. (Motion at 19). Plaintiffs do not dispute

15   that California Penal Code § 26205 itself does not grant them a right to sue. (Opp. at 18).

16   Instead, Plaintiffs contend that a private right of action under California Penal Code

17   § 26205 is found in California Government Code § 815.6. (*Id.*).

18     California Government Code § 815.6 provides that, "[w]here a public entity is under

19   a mandatory duty imposed by an enactment that is designed to protect against the risk of a

20   particular kind of injury, the public entity is liable for an injury of that kind proximately

21   caused by its failure to discharge the duty unless the public entity establishes that it

22   exercised reasonable diligence to discharge the duty." The FASC, however, fails to even

23   mention California Government Code § 815.6. *See* (FASC). To plead a claim under

24   California Government Code § 815.6, the FASC must establish that California Penal Code

25   § 26205(a) is a "mandatory duty" that was "designed to protect against the risk of a

26   particular kind of injury," and that the Los Angeles Defendants failed to "exercise[]

27   reasonable diligence to discharge the duty," proximately causing that "particular kind of

28   injury" to Plaintiffs. Cal. Gov't Code § 815.6; *see Reel v. City of El Centro*, 2023 WL

1822840, at *2 (S.D. Cal. Feb. 8, 2023).   Plaintiff's Claim Four does not assert those allegations.   Instead, it alleges a violation of California Penal Code § 26205 itself.   *See* (FASC ¶ 170 ("LASD's CCW permit process violates California Penal Code section 26205 by taking over a year to process permit applications.")).   The Court thus GRANTS the Motion as to Claim Four.   Because, however, Claim Four could possibly be cured by amendment, the Court dismisses Claim Four without prejudice and with leave to amend.[8]

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES, IN PART, and GRANTS, IN PART, Los Angeles Defendants' Motion.   The Court further ORDERS that:

1.   Claim Four is hereby DISMISSED without prejudice and with leave to amend; and

2.   As to Claims One, Four, and Eight, the following allegations are DISMISSED with prejudice and without leave to amend:

  (a)   allegations purporting to assert a facial challenge to the Los Angeles Defendants' denial of CCW permit applications;

  (b)   allegations asserting a denial-based challenge premised on *Monell* against the LASD; and

  (c)   Plaintiffs Velasquez's and Partowashraf's allegations asserting a denial-based challenge premised on *Monell* against Sheriff Luna seeking nominal damages.

---

[8] The Court declines to address Los Angeles Defendants' alternative argument—raised for the first time in its Reply—that California Government Code § 818.4 "exempts public entities from liability for injuries caused by licensing regimes." (Reply at 15).  Los Angeles Defendants may raise this argument if Plaintiffs file an amended pleading, and Los Angeles Defendants choose to challenge it.

Within 21 calendar days of the entry of this Order, Plaintiffs may file a second amended and supplemental complaint curing the deficiencies identified in this Order as to those allegations for which leave to amend is granted.[9]

**IT IS SO ORDERED.**

DATED:  July 21, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[9] The Court acknowledges that the parties have filed a stipulation to file a Second Amended and Supplemental Complaint.  (ECF No. 95 ("Stipulation")).  As a result of this Order, the Court DENIES AS MOOT that Stipulation, although notes that the parties may stipulate that any pleading filed as a result of this Order may additionally include the amendments proposed in the Stipulation.