1    C. D. Michel – SBN 144258
     cmichel@michellawyers.com
2    Anna M. Barvir – SBN 268728
     abarvir@michellawyers.com
3    MICHEL & ASSOCIATES, P.C.
     180 E. Ocean Blvd., Suite 200
4    Long Beach, CA 90802
     Telephone: (562) 216-4444
5
     Attorneys for Plaintiffs California Rifle & Pistol Association, Incorporated, Gun
6    Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc.,
     Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer,
7    Jung Yun, Albert Medalla, Zhao Lin Chen, Eric Stratton, Farzad Nezam, David
     Broady, and Stephen Hoover
8
     *Additional Counsel listed on the next page.*
9
                    **UNITED STATES DISTRICT COURT**
10
                    **CENTRAL DISTRICT OF CALIFORNIA**
11

12   CALIFORNIA RIFLE & PISTOL          Case No.: 2:23-cv-10169-SPG-ADS
     ASSOCIATION, INCORPORATED;
13   THE SECOND AMENDMENT              **SECOND AMENDED AND**
     FOUNDATION; GUN OWNERS OF         **SUPPLEMENTAL COMPLAINT**
     AMERICA, INC.; GUN OWNERS         **FOR DECLARATORY AND**
14   FOUNDATION; GUN OWNERS OF         **INJUNCTIVE RELIEF**
     CALIFORNIA, INC.; ERICK
15   VELASQUEZ, an individual; SHERWIN  **42 U.S.C. §§ 1983 & 1988**
     DAVID PARTOWASHRAF, an
16   individual; CHARLES MESSEL, an
     individual; BRIAN WEIMER, an
17   individual; JUNG YUN, an individual;
     ALBERT MEDALLA, an individual;
18   ZHAO LIN CHEN, an individual; ERIC
     STRATTON, an individual; FARZAD
19   NEZAM, an individual; DAVID
     BROADY, an individual; STEPHEN
20   HOOVER, an individual,

21                   Plaintiffs,

22          v.

23   LOS ANGELES COUNTY SHERIFF'S
     DEPARTMENT; SHERIFF ROBERT
24   LUNA, in his official capacity; ROBERT
     BONTA, in his official capacity as
25   Attorney General of the State of
     California; and DOES 1-10,
26
                     Defendants.
27

28
                                      1
     ─────────────────────────────────────────────
        SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

Donald Kilmer-SBN 179986
Law Offices of Donald Kilmer, APC
14085 Silver Ridge Road
Caldwell, Idaho 83607
Telephone: (408) 264-8489
Email: Don@DKLawOffice.com

Attorney for Plaintiff The Second Amendment Foundation

2
SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

NOW COME Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., Erick Velasquez, Sherwin David Partowashraf, Charles Messel, Brian Weimer, Jung Yun, Albert Medalla, Zhao Lin Chen, Eric Stratton, Farzad Nezam, David Broady, and Stephen Hoover and, through their respective counsel, bring this action against Defendants Los Angeles County Sheriff's Department, Sheriff Robert Luna in his official capacity as Los Angeles County Sheriff, California Attorney General Robert Bonta in his official capacity, and Does 1-10, inclusive, and make the following supplemental and amended allegations:

## INTRODUCTION

1.      This action challenges the constitutionality of carry permit issuance policies and laws that make it extremely difficult, if not outright impossible or impermissibly time consuming, for Plaintiffs to obtain permits to carry a concealed firearm in public and therefore to exercise their right to be armed in public, as guaranteed by the Second Amendment's text "bear arms," and as recognized by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

2.      The main policies that Plaintiffs target here are: 1) Defendants' failure to timely process carry permit applications, 2) the use of highly subjective suitability criteria in evaluating applicants, and 3) the refusal to honor permits issued by other states and/or accept applications for permits from non-residents. These practices and policies, some of which are enabled by state law, violate the Second and Fourteenth Amendments.

3.      Some Constitutional rights have a preliminary step required before their exercise, such as permitting (e.g., parades, demonstrations) or registration (e.g., voting, lobbying). But the administration of such permits or registration requirements may not be so onerous as to exclude whole demographics due to

expense or subjectivity, nor may it force them to wait inordinate amounts of time.[1]

4.    In anticipation of bad-faith efforts to obstruct its ruling in recalcitrant jurisdictions, the *Bruen* Court expressly invited challenges such as this one, noting that, "**because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry**." *Id*. (emphasis added).

5.    The policies that Plaintiffs challenge have gone far beyond "abus[ing]" constitutional rights. Defendants have flat-out denied Plaintiffs their rights to be armed outside of their homes by establishing an onerous permitting regime replete with egregious wait times lasting well over a year and nefarious discretionary requirements designed to flout the Supreme Court's precedents.

6.    This suit challenges whether Defendants are engaged in a permit process that subjects applicants seeking to lawfully carry for self-defense in California by the only manner allowed under law—with a concealed carry weapons permit ("CCW permit") issued by a local jurisdiction, to excessive wait times, suitability criteria that are unnecessary, burdensome, and subjective; and whether those permit processes violate the right to bear arms in public as explained by the Supreme Court in *Bruen.* Examples abound.

---

[1] It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. *Frost & Frost Trucking Co. v. Railroad Comm'n of California*, 271 U.S. 583, 593-94 (1926). "Constitutional rights would be of little value if they could be . . . indirectly denied" (*Smith v. Allwright*, 321 U.S. 649, 664 (1944)), or "manipulated out of existence." *Gomillion v. Lightfoot*, 364 U.S. 339, 345 (1960). "Significantly, the Twenty-Fourth Amendment does not merely insure that the franchise shall not be 'denied' by reason of failure to pay the poll tax; it expressly guarantees that the right to vote shall not be 'denied or abridged' for that reason." *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) (citation omitted). Thus, like the Fifteenth Amendment, the Twenty-Fourth "nullifies sophisticated as well as simple-minded modes" of impairing the right guaranteed. *Lane v. Wilson*, 307 U.S. 268, 275 (1939). " 'It hits onerous procedural requirements which effectively handicap exercise of the franchise by those claiming the constitutional immunity.' " *Harman*, 380 U.S. at 540-41 (citations omitted), quoting *Lane*, at 275.

4

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

7.    Los Angeles County Sheriff's Department ("LASD") admits that it takes "a year to a year and a half" to process CCW applications.

8.    Additionally, LASD imposes subjective permit-issuance criteria, in open defiance of *Bruen*, which rejected such unmoored standards for determining who gets the privilege of exercising an enumerated right. .

9.    Even if Plaintiffs wanted to avoid the delay and suitability requirements from LASD by simply obtaining a carry permit from another state, California does not honor permits issued by *any* other state.

10.    In fact, nonresidents have no way to lawfully carry firearms in California, even if they are willing to apply to a California issuing authority for a permit, because California law does not permit in-state issuing authorities to issue permits to nonresidents.

11.    This is plainly unconstitutional under both *Bruen* and the precedent established in *Obergefell v. Hodges*, 576 U.S. 644, 648 (2015). If California must honor a broad right to marry, which is unenumerated, then it must also honor the right to carry firearms, which is enumerated.

12.    Separately from Plaintiffs' Second Amendment claim, the United States Supreme Court has consistently held that regulations and classifications that impose a penalty or an impermissible burden on the right to travel violate the Equal Protection Clause of the Fourteenth Amendment, unless absolutely necessary to promote a compelling government interest. *Saenz v. Roe*, 526 U.S. 489 (1999); *Shapiro v. Thompson*, 394 U.S. 618 (1969). Accordingly, California's policy of denying out-of-state residents the ability to lawfully exercise their constitutionally protected right to be armed in public for self-defense inhibits the free interstate passage of citizens and violates equal protection doctrines by treating Americans differently merely on account of their state of residency.

13.    Furthermore, the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "The Citizens of each State shall be

5

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

entitled to all privileges and immunities of Citizens in the several States." The

Privileges and Immunities Clause bars discrimination against citizens of other states

based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385

(1948).

14.    Plaintiffs seek to enjoin Defendants' flagrantly unconstitutional

practices and uphold Plaintiffs' Second Amendment rights.

## PARTIES

### Plaintiffs

15.    The individual Plaintiffs are ordinary, law-abiding, adult residents of

Los Angeles County who have applied for CCW permits but have not received

them, or they are residents of other states who wish to carry in California but have

no legal way to do so.

16.    The associational Plaintiffs are non-profit organizations dedicated to

the preservation of the Second Amendment and other enumerated constitutional

rights. These associational Plaintiffs use their resources and economies of scale to

ensure the broadest possible protection for their members and supporters by

bringing suits on behalf of individual plaintiffs — who are also members — who

would otherwise lack the financial resources and litigation experience to bring cases

like this themselves. The associational Plaintiffs are representing their members and

supporters who: (1) already applied for a CCW permit and are faced with a lengthy

wait time; or (2) have CCW permits that were issued by other states and wish to

have their permits honored when they visit California. The associational Plaintiffs

thus bring this action to vindicate their members' and supporters' Second

Amendment rights to publicly bear arms for self-defense, including the rights of the

members and supporters of the associational Plaintiffs, who might otherwise lack

an opportunity for legal representation due to the lack of resources.

17.    The associational Plaintiffs also have members and supporters in other

states who have CCW permits in those states, and wish to have their permits

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

honored when they visit California. Plaintiffs thus bring this action to vindicate their own Second Amendment rights to publicly bear arms for self-defense, or the rights of their members and supporters to do so. While the associational Plaintiffs seek general injunctions on behalf of all similarly-situated Californians the challenged laws and practices affect, they also specifically seek relief on all claims as to each and every one of their members and supporters who might otherwise lack the litigation experience and resources of the associational Plaintiffs.

18.    All individual Plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law, and currently own at least one firearm. Each individual Plaintiff desires to carry a firearm in public for lawful self-defense and would do so, but for the challenged statutes, policies, and practices.

19.    All individual Plaintiffs are members of the associational Plaintiffs California Rifle & Pistol Association, Incorporated, The Second Amendment Foundation, and Gun Owners of America, Inc.

20.    Plaintiff Erick Velasquez is a resident of Los Angeles County and a law-abiding citizen of the United States. Mr. Velasquez had a CCW permit issued pursuant to California Penal Code Section 26150 by Los Angeles County Sheriff's Department. He carried a handgun daily for two years, without any incident.

21.    On April 10, 2023, Mr. Velasquez submitted his CCW permit renewal application with Los Angeles County Sheriff's Department, expecting a simple process and quick approval given there had been no issues the last two years.

22.    Then, on May 3, 2023, Mr. Velasquez was the unfortunate victim of a crime. A burglar broke into his vehicle and stole three handguns, along with other valuables. The handguns were stored in a range bag in the locked trunk of the car, in compliance with California Penal Code section 25610(a)(1).

23.    Mr. Velasquez promptly called the police to report the theft. An officer from the Vernon Police Department arrived at the scene and took a report, which

noted that Mr. Velasquez was eager to have the thief brought to justice. But as of this date, the perpetrator has not been found.

24.     On August 23, 2023, Defendant Luna denied Mr. Velasquez's renewal application. As a reason for denial, the letter had the box for "other" but provided no further explanation for the denial. Seeking clarity, Mr. Velasquez eventually communicated with LASD Sergeant Berner, who explained that the theft of the firearms was the reason for the denial. Mr. Velasquez asked how he could appeal, but Sergeant Berner told him there was no appeal process. He encouraged Mr. Velasquez to apply again with the City of Downey instead, as they might not have similar restrictions.

25.     While California Penal Code sections 26202(a)(5) and 26202(a)(9) were not yet in effect when Mr. Velasquez's permit was denied, to the extent Defendants argue that those sections prevent them from issuing him a CCW permit now, he contends they are unconstitutional as applied to him.

26.     Plaintiff Sherwin David Partowashraf is a resident of Los Angeles County and a law-abiding citizen. After waiting over a year and a half on his application, on October 3, 2023, the application for a CCW permit was denied by LASD. Even though California law requires a reason for the denial be given, the reasoning for the denial was nothing more than a checkmark next to "other".

27.     Mr. Partowashraf would come to learn that he was denied a permit because a former girlfriend had filed for a temporary restraining order against him the prior year, after an attempt to extort him had failed.

28.     At the time, Mr. Partowashraf complied with the law and turned in his firearms to the police to be held while the temporary restraining order was in effect. Following a hearing, the temporary restraining order was promptly dissolved and the request for a restraining order was discharged.

29.     Mr. Partowashraf then had to go through a tedious process to get his firearms back, involving him submitting requests for *each* firearm to the California

8

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

Department of Justice for them to run background checks so he could have them returned to him. After being approved, he scheduled a time to pick up the firearms and received them without further trouble. The California DOJ has thus itself confirmed Mr. Partowashraf is not dangerous. If law enforcement thought he was still dangerous, they could have filed for a gun violence restraining order under California Penal Code section 18100, but they did not do so.

30.     Mr. Partowashraf contends that his rights should not be denied because of a dissolved temporary restraining order, especially following the Supreme Court's ruling in *Rahimi*.

31.     While California Penal Code section 26202(a)(3) was not yet in effect when Mr. Partowashraf's permit was denied, to the extent Defendants argue that it prevents them from issuing him a CCW permit now, he contends it is unconstitutional as applied to him.

32.     Plaintiff Charles Messel is a resident of Los Angeles County and a law-abiding citizen. Mr. Messel submitted his CCW permit application to LASD on July 1, 2022. Having heard nothing by April 2023, he contacted the department to inquire about his application.

33.     The response he received stated: "We were several months behind in opening and entering applications in our tracking system. Although you applied earlier, your application wasn't entered into our tracking system until 11/2/22. We are currently working on applications that went into our tracking system in July of 2022. Thank you for your patience."

34.     As of the filing of this action, Mr. Messel had still not been issued a permit or received further communications about his application's status from LASD. More than 17 months had elapsed since his initial application. Following the filing of this action and the filing of a preliminary injunction to compel LASD to issue Mr. Messel a permit, only then did LASD finally process his application, nearly two years after he had submitted his application.

35.    Plaintiff Brian Weimer is a resident of Los Angeles County and a law-abiding citizen. Mr. Weimer is employed by Los Angeles County as a firefighter on Catalina Island.

36.    Like Mr. Messel, Mr. Weimer applied for a CCW permit with LASD and still has not been issued one. Mr. Weimer applied in January 2023, over a year ago, but still has not been issued a permit or a denial. His constitutional right to carry a firearm for self-defense has been denied to him.

37.    Plaintiff Jung Yun is a resident of Los Angeles County and a law-abiding citizen. Mr. Yun applied for his CCW permit with LASD in September of 2022. When he last followed up on December 6, 2023, he received a response saying that his application had not even been assigned to an investigator yet, and no further timeline was provided. Finally, on August 27, 2024, he received an initial telephonic interview and was told he would get additional instructions in approximately two months.

38.    Plaintiff Albert Medalla is a resident of Los Angeles County and a law-abiding citizen. He works the graveyard shift at Cedars-Sinai Medical Center as an ultrasound technologist. Due to rising crime in his area, he desires to be able to carry a firearm for self-defense. He applied for his CCW permit with LASD on October 31, 2023. His initial interview is not scheduled to occur until August 11, 2025.

39.    Plaintiff Zao Lin Chen is a resident of Los Angeles County and a law-abiding citizen. He is a federal employee and holds an FFL-03 license, both of which speak to his good standing as a citizen. He applied for a CCW permit with LASD on April 3, 2025, but the earliest appointment time he could reserve for his initial interview was April 9, 2026.

40.    Plaintiff Eric Stratton is a resident of Los Angeles County and a law-abiding citizen. He holds CCW permits from two other states and is a retired Los Angeles firefighter. He applied for a CCW permit with LASD on May 28, 2025,

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

but the earliest appointment time he could reserve for his initial interview was June 2, 2026.

41.    Plaintiff Farzad Nezam is a resident of Los Angeles County and a law-abiding citizen. He is a licensed California attorney who decided to apply for a CCW permit following the murder of one of his clients, which made him fear for his own safety. He applied for a CCW permit with LASD on December 7, 2024, but the earliest appointment time he could reserve for his initial interview was December 16, 2025.

42.    Plaintiff David Broady is a resident of Nevada and a law-abiding citizen. He is a retired California prosecutor, last working as a Senior Deputy District Attorney for the Placer County DA's office from 1995 to 2020. Before that, he worked in the Riverside County DA's office from 1991 to 1995.

43.    Mr. Broady had California CCW permits in Riverside County and later Placer County, from the early 1990s until 2020 when he moved to Nevada. Since then he has had a Nevada CCW permit, but cannot obtain a California CCW permit. California does not honor his Nevada permit.

44.    This is a problem for Mr. Broady because he still frequently visits California as he owns property in this state and has family here. He also remains an active member of the California Bar. He joins this lawsuit against California Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry against citizens from other states.

45.    Mr. Broady, for himself and on behalf of other nonresidents who have out-of-state CCW permits, as well as on behalf of the members and supporters of the associations who live outside of California, seeks to have his Nevada permit honored by the State of California.

46.    Plaintiff Stephen Hoover is a resident of Florida, and a law-abiding citizen. He is a PhD candidate at the Center for Complex Systems and Brain Sciences in the Charles E. Schmidt College of Science at Florida Atlantic

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

University. He owns firearms and has a Florida-issued CCW permit.

47. Mr. Hoover spent a significant amount of time in California in the summer of 2023 and plans to return for work and leisure purposes in the near future.

48. While he was in California, he sought to obtain a California CCW permit from the Monterey County Sheriff's Department, as California would not honor his Florida CCW permit, but he still desired to be able to exercise his right to carry for self-defense. Yet in spite of otherwise meeting the criteria for eligibility, his application was denied because he was deemed ineligible for a CCW permit under Penal Code section 26150(a)(3), as he is not a resident of the county he applied in, nor a resident of California.

49. Mr. Hoover joins this lawsuit against California Attorney General Rob Bonta for Mr. Bonta's enforcement of a complete prohibition on the right to carry against citizens from other states.

50. Plaintiff The Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and supporters nationwide, including thousands of members in California. SAF is dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also incurs significant expenses to sponsor public interest litigation to defend its interests and to disseminate information to like-minded individuals. SAF members who want CCW permits but reside in Los Angeles County are subject to lengthy wait times and unconstitutionally subjective permit issuance criteria that violate the U.S. Constitution. SAF's policies specifically include the dedication of

its resources, litigation experience, and economies of scale for the purpose of representing people who would otherwise lack the means and access to resources to successfully bring lawsuits to compel state and local governments to comply with the Constitution, as intended by the Fourteenth Amendment, its enforcement provisions, and Congressional statutes enabling the enforcement of the Constitution by private actors.  See: 42 U.S.C. section 1983, 1988.

51.    Plaintiff Gun Owners of America, Inc. ("GOA") is a California non-stock corporation and a not-for-profit membership organization with its principal place of business in Springfield, Virginia, and is organized and operated as a non-profit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. It has more than 2 million members and supporters across the country, including residents within this judicial district and throughout the State of California. GOA members who wish to obtain CCW permits but reside in Los Angeles County are subject to lengthy wait times and also unconstitutionally subjective criteria.

52.    Plaintiff Gun Owners Foundation ("GOF") is a Virginia non-stock corporation and a not-for-profit legal defense and educational foundation with its principal place of business in Springfield, Virginia and is organized and operated as a non-profit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code. GOF was formed in 1983 and is supported by gun owners across the country, within this judicial district, and throughout the State of California who, like the individual Plaintiffs, will be irreparably harmed by the implementation and enforcement of SB 2. GOF supporters who wish to obtain CCW permits but reside in Los Angeles County are subject to lengthy wait times and also unconstitutionally subjective criteria. GOF is supported by gun owners across the country, who fund the organization's activities so that it can, *inter alia*, file litigation such as this to

1  preserve, protect, and defend their right to keep and bear arms.

2      53.    Plaintiff Gun Owners of California, Inc. ("GOC") is a non-profit

3  organization incorporated under the laws of the state of California with

4  headquarters in El Dorado Hills, California. GOC is dedicated to the restoration of

5  the Second Amendment in California. GOC members who wish to obtain CCW

6  permits but reside in Los Angeles County are subject to lengthy wait times and also

7  unconstitutionally subjective criteria.

8      54.    Plaintiff CRPA is a non-profit membership and donor-supported

9  organization qualified as tax-exempt under Section 501(c)(4) of the Internal

10 Revenue Code, with its headquarters in Fullerton, California. Founded in 1875,

11 CRPA seeks to defend the civil rights of all law-abiding individuals, including the

12 enumerated right to bear firearms for lawful purposes like self-defense. CRPA

13 regularly participates as a party or amicus in litigation challenging unlawful

14 restrictions on the right to keep and bear arms. It also provides guidance to

15 California gun owners regarding their legal rights and responsibilities. CRPA

16 members include law enforcement officers, prosecutors, professionals, firearm

17 experts, and the general public. CRPA members who want CCW permits but reside

18 in Los Angeles County are subject to lengthy wait times and also unconstitutionally

19 subjective criteria.

20     **Defendants**

21     55.    Defendant LASD is a local government entity created under the laws

22 of California, and it exists as an agency of Los Angeles County. LASD is a political

23 subdivision of Los Angeles County. LASD is responsible for issuing CCW permits.

24     56.    Defendant Robert Luna is the elected Sheriff of Los Angeles County.

25 Defendant Luna is and, at all times relevant to this complaint, was one of the

26 ultimate policy makers for Defendant LASD, and he has authority and

27 responsibility under California Penal Code section 26150 to issue carry permits

28 within the county. He is directly responsible for promulgating, enforcing, and

14

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

continuing the policies of his Department, including the unlawful policies and procedures complained of herein. Luna is sued solely in his official capacity.

57.     Defendant Rob Bonta is the Attorney General of California. He is the chief law enforcement officer of California. Defendant Bonta is charged by Article V, section 13 of the California Constitution with the duty to see that the laws of California are uniformly and adequately enforced. Defendant Bonta also has direct supervision over every district attorney and sheriff in all matters pertaining to the duties of those respective officers. Defendant Bonta's duties also include informing the public, local prosecutors, and law enforcement regarding the meaning of the laws of California.

58.     The true names or capacities–whether individual, corporate, associate, or otherwise–of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

## JURISDICTION AND VENUE

59.     The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

60.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, and their claim for attorney's fees is authorized by 42 U.S.C. § 1988.

61.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2)

because the events or omissions giving rise to the claims occurred in this district. The Los Angeles County Sheriff's Department is located within this district.

## GENERAL ALLEGATIONS

62.    The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms and protects, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

63.    The Supreme Court has also held that the Second Amendment right to keep and bear arms, via Fourteenth Amendment incorporation, applies equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty") (emphasis added).

64.    *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 142 S. Ct. at 2127-29, citing *Heller*, 554 U.S. at 634. Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that the District of Columbia statute which prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

65.    Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach to analyzing Second Amendment questions:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's

"unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)).

66.    In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

67.    In all issues presented in this lawsuit, Plaintiffs contend that their proposed course of conduct is exactly the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." <u>*Bruen*</u>, 597 U.S. at 32. In that case, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas". *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct, because that "showing of nonspeculative need" was the <u>*burden* on the Second Amendment right</u>. The burden is not part of the proposed course of conduct, it is the law or practice that is being challenged. In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense without unreasonable wait times." *Bruen*'s simpler "carrying handguns publicly for self-defense" applies in this case.

**California's Law Regarding CCW Permit Issuance**

68.    Following the California Legislature's enactment of SB 2, which takes effect in January of 2024, California law imposes the following CCW permit application requirements:

> (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:

> (1) The applicant is not a disqualified person to receive such a license,

1    as determined in accordance with the standards set forth in Section
     26202.

2    (2) The applicant is at least 21 years of age, and presents clear
3    evidence of the person's identity and age, as defined in Section 16400.

4    (3) The applicant is a resident of the county or a city within the county,
     or the applicant's principal place of employment or business is in the
5    county or a city within the county and the applicant spends a
     substantial period of time in that place of employment or business.
6    Prima facie evidence of residency within the county or a city within
     the county includes, but is not limited to, the address where the
7    applicant is registered to vote, the applicant's filing of a homeowner's
     property tax exemption, and other acts, occurrences, or events that
8    indicate presence in the county or a city within the county is more than
     temporary or transient. The presumption of residency in the county or
9    city within the county may be rebutted by satisfactory evidence that
     the applicant's primary residence is in another county or city within
10   the county.

11   (4) The applicant has completed a course of training as described in
     Section 26165.

12   (5) The applicant is the recorded owner, with the Department of
13   Justice, of the pistol, revolver, or other firearm for which the license
     will be issued.

14   Cal. Penal Code § 26150(a) (West 2023); *see id.* § 26155(a) (listing the same

15   requirements for when a city's Police Department conducts permit issuance).

16
17   69.    Under the recently revised Penal Code section 26205 operative

18   January 2024, a licensing authority:

19   shall give written notice to the applicant indicating if the license under
     this chapter is approved or denied. The licensing authority shall give
20   this notice within 120 days of receiving the completed application for a
     new license, or 30 days after receipt of the information and report from
21   the Department of Justice described in paragraph (2) of subdivision (a)
     of Section 26185, whichever is later. The licensing authority shall give
22   this notice within 120 days[2] of receiving the completed application for
     a license renewal.

23   70.    While *Bruen* expressly forbids subjective criteria be used during a

24   licensure process, California law does too, at least to the extent the standard DOJ

25   CCW permit application does not require such information. According to Penal

26   Code section 26175(g), "[a]n applicant shall not be required to complete any

27   additional application or form for a license, except to clarify or interpret

28
     _____
     [2] The 120-day time limit was 90 days prior to the passage of SB 2.
                                   18
     SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

information provided by the applicant on the standard application form." Thus, local requirements (such as Defendant LASD's) that an applicant produce copies of past employment files or identify a need for self-defense are not within the ambit of the DOJ's standard permit application.

71.    SB 2 also added new subsections to the Penal Code that allow issuing authorities to disqualify a permit applicant due to loss or theft (being a victim of crime) of a firearm. Specifically, an applicant is disqualified if: "In the 10 years prior to the licensing authority receiving the completed application for a new license or a license renewal, [he] has experienced the loss or theft of multiple firearms due to the applicant's lack of compliance with federal, state, or local law regarding storing, transporting, or securing the firearm. For purposes of this paragraph, "multiple firearms" includes a loss of more than one firearm on the same occasion, or the loss of a single firearm on more than one occasion." *See* Cal. Penal Code § 26202(a)(9) (West 2023).

72.    An applicant can also be denied if he: "[f]ailed to report a loss of a firearm as required by Section 25250 or any other state, federal, or local law requiring the reporting of the loss of a firearm." *See id.* § 26202(a)(10).

73.    SB 2, which took effect following the filing of this lawsuit, also added Penal Code section 26202(a)(3), which prohibits anyone who has had a restraining order issued against them from being granted a permit for five years from the date the order expired. This law applies even to *temporary* restraining orders that were dissolved upon a hearing, such as in Plaintiff Partowashraf's situation.

74.    SB 2 also added Penal Code section 26202(a)(5), which disqualifies anyone who "Has engaged in an unlawful or reckless use, display, or brandishing of a firearm." In its opposition to Plaintiffs' motion for preliminary injunction, LASD argued this provision also barred Plaintiff Velasquez from getting his permit renewed, even though the denial occurred prior to SB 2's effective date.

75.    None of these additional criteria imposed on license applicants

comport with the Second Amendment, as there is no broad and enduring historical tradition of disarming Americans because they have been victimized by criminals, or temporarily disarmed until a hearing. Thus, Plaintiffs seek to enjoin Defendant Bonta from enforcing these statutory provisions.

76.     Both Plaintiff Velasquez and Plaintiff Partowashraf had their CCW permit applications denied before SB2 took effect. However, to the extent Defendant LASD argues that its provisions bar it from issuing permits to these two Plaintiffs, Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9) should be declared unconstitutional as applied to them.

**LASD Is Misled by the Attorney General and Does Not Address Lengthy Wait Times Despite Several Letters from CRPA Warning of Litigation**

77.     Following the *Bruen* ruling, CRPA sent letters to all California sheriff's departments, including Los Angeles County. The first letter was sent the day after the June 2022 *Bruen* ruling, and explained that the "good cause" portion of California's CCW permit issuance laws was no longer enforceable.

78.     But rather than complying with the Supreme Court's decision, the Attorney General rebelled, responding to the *Bruen* ruling by claiming that local sheriffs and police chiefs in fact could *add* more steps and impose *additional* subjective considerations to the permit application process in light of *Bruen*. On June 24, 2022, the Attorney General sent a Legal Alert to law enforcement officials across California, instructing it was proper under *Bruen* to apply a heightened "good moral character" requirement to the application process which included subjective considerations beyond the applicant passing a criminal and mental health background check.

79.     In response to the Attorney General's malicious and intentional attempt to undermine the *Bruen* ruling, CRPA sent a second letter to several sheriff's departments, including LASD, reiterating that the Second Amendment, as clarified by the *Bruen* ruling, will only permit "narrow, objective, and definite"

standards to be used in issuing permits to law-abiding citizens,[3] and that they should ignore the Attorney General's unlawful instruction to his subordinate law enforcement agencies.

80.     In the months following CRPA's correspondences to the county sheriffs, CRPA received responses from several departments stating that they would begin complying with *Bruen*. In contrast, LASD never responded. It did begin to process CCW permit applications, albeit at an unlawfully slow pace, with wait times routinely stretching beyond one year for many CRPA members. However, CRPA abstained from litigation, believing it best to allow the law enforcement authorities some time to adjust to the implied mandate of *Bruen*.

81.     As CRPA received an ever-increasing volume of complaints about waiting times from its members in the months following *Bruen*, it sent a letter to newly elected Sheriff Luna on February 21, 2023. The letter advised that long wait times contravene *Bruen's* express language, violate the Second Amendment, and are unlawful under California law, and promised to forbear litigation should the Sheriff imminently address the long wait times at issue.

82.     Sheriff Luna's office responded by letter dated March 9, 2023, stating that LASD was "taking steps to reduce processing times and improve our overall processes." That letter detailed how the adoption of new application processing software (Permitium) may reduce processing times and alluded to potentially increasing staffing in the CCW unit to address the backlog of applications. The Sheriff stated that he hoped the situation would be much better in six months, and he promised to provide regular progress updates (that never materialized).

83.     CRPA responded on March 14, 2023 writing that, while Sheriff Luna's letter was encouraging, another six months was not an acceptable timeframe, given the thousands of applications lingering for a year or more. CRPA also noted that

---

[3] Again, Plaintiffs do not concede that any mandatory permitting scheme was found permissible by *Bruen*, as most of the states that have such objective "shall issue" schemes also allow constitutional carry or open carry without a license.

LASD previously admitted that long wait times are unconstitutional. In a July 7, 2022, letter to the Chief of Police of San Gabriel explaining why LASD could no longer accept applications from residents of San Gabriel, the Department wrote in pertinent part:

Although the LASD can process CCW applications, as currently staffed, there will be significant delays because we do not have sufficient personnel required for the anticipated surge. As such, any unnecessary delays would violate the SCOTUS decision, thus violating the rights of the citizens of Los Angeles County and opening the LASD and other law enforcement agencies to otherwise avoidable litigation.

RECEIVED
JUL 1 1 2022
SAN GABRIEL PD
ADMINISTRATION

211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012

A Tradition of Service
~ Since 1850 ~

84.     CRPA's March 14, 2023 letter also expressed CRPA's view that adopting a policy of not processing permit applications from LA County residents living in non-contract municipalities was illegal. CRPA is unaware of any other California county sheriff that refuses to process CCW permit applications for that county's residents merely because those residents live in a "non-contract city."

85.     Unfortunately, in a responsive letter dated March 24, 2023, the Sheriff only repeated his vague promise to "improve efficiency and reduce processing times," but refused to resume accepting applications from residents of non-contract cities.

86.     As of the filing of this lawsuit, the wait times for LASD permit applicants have fluctuated wildly, at first growing worse, with CRPA members complaining of wait times in excess of 15 months, and as the case has dragged on, some limited progress has been made.  Nevertheless, the LASD wait times still far exceed the statutory requirement of 120 days, and the constitutional requirements normally associated with regulating a fundamental right that requires a license or permit. Some individuals who submitted applications at the time of the *Bruen* ruling in June 2022 have not even been contacted for their initial interview, as of November 2023.

87.    LASD does not deny that its wait times are absurdly long. In response to a Public Records Act request by Attorney Jason Davis, the Department confirmed that applicants could expect wait times of, "from application entry to issuance . . . a year to a year and a half."

88.    CRPA sent a final letter to the Sheriff on September 14, 2023, warning that litigation was imminent if no immediate changes to accelerate application processing were made. A response was received from the Sheriff on November 1, 2023, making the same vague promises as before, however, no concrete steps to implement these purported fixes or timelines for doing so were identified.

**California Must Honor CCW Permits Issued by Other States[4]**

89.    A number of states issue permits to nonresidents. Most states require no permit at all for nonresidents to carry within their borders. Others allow open carry. Although California does not honor any other states' CCW permits, dozens of states do honor each other's permits. For example, a Utah CCW permit is valid in Nevada, Idaho, Montana, Washington, and 32 other states.

90.    In addition to a lack of any reciprocity for other states' permits, there is no process for nonresidents like Plaintiff Hoover and Plaintiff Broady to get a California CCW permit, even if they were willing to put up with the time and expense such a process would likely involve. In other words, if you are visiting California from another state, or if you need to cross into the state regularly for work, you check your federally enumerated right to carry for self-defense at California's border.

91.    California also does not honor nonresident permits even if they are held by its own residents.

92.    California has no more authority to deny nonresidents' rights to public

---

[4] The issue of non-residents obtaining a license to carry is the subject of an existing Preliminary Injnction Order (ECF Doc # 81, filed Jan. 1, 2025), and pending settlement discussions with the State Defendants, including a possible bill to address this issue.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1  carry than it does to deny their rights to speak within its borders. On the contrary,

2  the Second Amendment's reference to "'the people[]' … unambiguously refers to

3  all members of the political community, not an unspecified subset." *Heller*, 554

4  U.S. at 580.

5        93.    Our historical tradition of firearm regulation supports the idea that

6  States may not impose their firearm carry requirements on nonresidents who are

7  otherwise legally allowed to own and carry firearms in their home states.

8  Specifically, many carry laws in the 19th century had exceptions for those traveling

9  in the state, called "traveler's exceptions". These included, but were not limited to,

10  an 1831 Indiana law, an 1841 Alabama law, an 1820 Arkansas law, an 1813

11  Kentucky law, an 1878 Tennessee law, an 1878 Mississippi law, an 1867 Nevada

12  law, and an 1864 California law.

13        94.    An analogous issue was already decided in 2015. Because Ohio would

14  not allow for same sex marriages, James Obergefell and John Arthur decided to

15  marry in Maryland. After learning that Ohio would not recognize their marriage,

16  they filed a lawsuit. The Supreme Court ultimately held, in pertinent part, that

17  "[t]he Fourteenth Amendment requires a State . . . to recognize a marriage between

18  two people of the same sex when their marriage was lawfully licensed and

19  performed out-of-State." *Obergefell v. Hodges*, 576 U.S. 644, 644 (2015). In

20  reaching this conclusion, the Court explained that:

> For some couples, even an ordinary drive into a neighboring State to visit family or friends risks causing severe hardship in the event of a spouse's hospitalization while across state lines. In light of the fact that many States already allow same-sex marriage—and hundreds of thousands of these marriages already have occurred—the disruption caused by the recognition bans is significant and ever-growing. As counsel for the respondents acknowledged at argument, if States are required by the Constitution to issue marriage licenses to same-sex couples, the justifications for refusing to recognize those marriages performed elsewhere are undermined.

27  *Id*. at 680-681.

28        95.    This holding and its logic, with respect to an unenumerated right,

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

apply just as much to the enumerated right to bear arms, and thus applies equally to CCW permits issued by other states as the Supreme Court instructs that it does to marriage licenses issued by other states. California may not completely deny Americans the right to carry for self-defense within California's borders just because they are not California residents.

96.     In the free speech context, an individual "faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). Similarly, if a non-resident's permit is not honored in California, and there is no way for them to get a California CCW permit, their only avenue to exercise their right to carry in defiance of California law.

**PLAINTIFFS SEEK DECLARATORY AND INJUNCTIVE RELIEF**

97.     Under *Bruen*, Defendants bear the burden of proving their policies comply with the Second Amendment. They will fail to do so, because their practices are entirely atextual and ahistorical, novel schemes developed in recent years or decades, and completely without any historical analogue.

98.     Accordingly, Plaintiffs seek declaratory relief confirming that Los Angeles County Sheriff's Department's current CCW permit application regime violates the Second Amendment, imposing extraordinary delays and including forbidden suitability determinations. LASD's wait times also violate California Penal Code section 26205 because they exceed the 90 days (or 120 days after January 1, 2024) permitted by statute.[5] LASD's practice of exceeding this statutory time limit is facially unconstitutional, as even a mere wait time of 30 days was already deemed an unconstitutional delay on acquiring additional firearms after an additional purchase. *See Nguyen v. Bonta*, No. 320CV02470WQHMMP, 2024 WL

---

[5] Plaintiffs do not concede that either of these time periods is a permissible impediment to the exercise of an enumerated right.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1057241, at *11 (S.D. Cal. Mar. 11, 2024). At minimum though, it is at least unconstitutional as applied to each of the individual Plaintiffs and the members and supporters of the associational Plaintiffs who have waited more than 120 days for their permits since submitting their applications.[6] These Plaintiffs seek declaratory relief that their rights were violated beginning on the 121st day following their respective applications being submitted.

99.    Plaintiff Messel, who recently received his CCW permit, seeks declaratory relief and nominal damages confirming his rights were violated beginning on the 121st day following his application being submitted, and continuing until his permit was finally issued in May of 2024.

100.    LASD also violates California Penal Code section 26150 by refusing to accept applications from all residents of Los Angeles County.

101.    Plaintiffs seek a declaration that *all* "the people" have the right to bear arms in public and, because of that, California must honor CCW permits issued by other states and allow residents of other states to apply for California CCW permits.[7]

102.    To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's changes to the Penal Code even though those changes came after their permits were denied, Plaintiffs seek a declaration that Penal Code sections 26202(a)(3),

---

[6]   Contrary to representations made by Defendants at the hearing on preliminary injunction, once an applicant submits the application to LASD, there is no additional task the applicant needs to complete for LASD to start processing the application or start the running of the statutory 120-day deadline to process the application. *See* Cal. Penal Code §§ 26150, 26170. Following submission of the application, the only additional tasks an applicant must complete are dependent on LASD timely handling the application and informing the applicant that, e.g., the applicant has been preliminarily approved so he or she can now take the firearms training course required under Section 26155. Contrary to LASD's representations, nothing of LASD's unconstitutional and statutorily impermissible delay is caused by inaction by these Plaintiffs or any similarly-situated applicants.
[7]   Again, Plaintiffs do not concede that permitting itself is constitutional, as there is no broad and enduring historical tradition of government licensure to bear arms in public.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1    26202(a)(5), and 26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez

2    and Partowashraf, respectively.

3        103.   Finally, Plaintiffs seek preliminary and permanent injunctive relief to

4    compel Defendants to comply with the Second Amendment as clarified by *Bruen*

5    and California law by correcting the violations listed above.

6        104.   As discussed previously, for each of these claims, each and every

7    Plaintiff contends, and each member of an associational Plaintiff contends, that

8    their proposed course of conduct is, as in *Bruen*, carrying handguns publicly for

9    self-defense. To the extent that such a proposed course of conduct is deemed to be

10   too general or otherwise insufficient for purposes of adjudication of their rights,

11   Plaintiffs alternatively allege and describe more specifically their proposed courses

12   of conduct as follows:

13          a.    On the issue of LASD's lengthy wait times, Plaintiffs Messel's,

14   Weimer's, Yun's, Chen's, Stratton's, and Nezam's more specific proposed

15   course of conduct, and the members and supporters of the associational

16   Plaintiffs' more specific proposed course of conduct, is lawfully carrying

17   firearms publicly for self-defense without an unreasonable wait time to

18   receive a permit to lawfully carry, which Plaintiffs define here as at least a

19   wait time exceeding the 120 days allowed by State law. Plaintiffs allege that

20   a wait time in excess of at least the state law's requirements for issuing a

21   permit violates the Second Amendment. Plaintiffs further allege that they are

22   not aware of a historical tradition of laws or regulations from the applicable

23   historical period conditioning the exercise of the right to carry for self-

24   defense on waiting in excess of 120 days for a permit in order to lawfully

25   carry.

26          b.    On the issue of nonresident carry, Plaintiffs Broady's and

27   Hoover's more specific proposed course of conduct, and the members and

28   supporters of the associational Plaintiffs' more specific proposed course of

conduct is lawfully carrying firearms publicly for self-defense in California, primarily by having California honor the permits of other states under the Second Amendment, and Privileges and Immunities and Equal Protection clauses of the Fifth and Fourteenth Amendments. Plaintiffs allege that not honoring their out-of-state permits, which were obtained under the same or similar requirements or burdens that California law imposes on its permittees, or which, in the alternative, have sufficient background checks and other processes that are both constitutionally sound and adequately reflect the reasons similar historical laws and regulations from the applicable historical period allowed restrictions on public carry, violates Plaintiffs' rights under the Second Amendment, and Privileges and Immunities and Equal Protection clauses. Plaintiffs further allege that they are not aware of a historical tradition of laws or regulations from the applicable historical period conditioning the exercise of the right to carry for self-defense—either generally or for the specific purposes cited above—on being a resident of the state in which the carry is to occur.

c.    On the issue of nonresident carry, Plaintiffs Broady's and Hoover's more specific proposed course of conduct, and the members and supporters of the associational Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense in California by alternatively allowing nonresidents to obtain California CCW permits in a manner that is constitutionally sound as to both the timing and the cost for obtaining those California permits. Plaintiffs further allege that timeliness for purposes of complying with the Second Amendment, and Privileges and Immunities, Due Process, and Equal Protection clauses, is the same amount of time, or sooner, that a resident of California would receive such a permit. Plaintiffs further allege that appropriate cost for purposes of complying with the Second Amendment, and Due Process and Equal Protection clauses, is

28

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1    the same cost for a permit, or less, than a resident of California would pay to

2    receive such a permit. Plaintiffs allege that not allowing nonresidents to carry

3    in California with a California permit issued with the same costs and within

4    the same timeframe residents receive their permits, violates Plaintiffs' rights

5    under the Second Amendment, and Privileges and Immunities and Equal

6    Protection clauses.  Plaintiffs further allege that they are not aware of a

7    historical tradition of laws or regulations from the applicable historical period

8    conditioning the exercise of the right to carry for self-defense—either

9    generally or for the specific purposes cited above—on being a resident of the

10   state in which the carry is to occur.

11        d.    Plaintiff Velasquez's more specific proposed course of conduct

12   is lawfully carrying firearms publicly for self-defense without being

13   prevented from doing so because he had firearms stolen from his locked

14   vehicle. Plaintiff alleges that disqualifying a person from lawfully carrying

15   for self-defense, where there was no charged crime, no charged crime

16   involving dangerousness, or no court or other adversarial proceeding,

17   violates his Second Amendment and due process rights. Plaintiff alleges that

18   he is not aware of a single law or regulation, much less a historical tradition

19   of such laws or regulations, from the applicable period which held that a

20   citizen forfeits his or her right to carry for self-defense if they had firearms

21   stolen from them, nor is Plaintiff aware of a single law or regulation, much

22   less a historical tradition of such laws or regulations, from the applicable

23   period which held that a disqualifying condition for carrying a firearm for

24   self-defense could include the allegation committing a crime of recklessness

25   in possessing a firearm where such crime was never charged nor adjudicated

26   by a neutral magistrate.

27        e.    Plaintiff Partowashraf's more specific proposed course of

28   conduct is lawfully carrying firearms publicly for self-defense without being

29

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

prevented from doing so due to a dissolved temporary restraining order that was issued against him. Plaintiff alleges that disqualifying a person from lawfully carrying for self-defense, where there was no adversarial proceeding adjudicating that person as dangerous, violates his Second Amendment and due process rights.  Plaintiff alleges that he is not aware of a single law or regulation, much less a historical tradition of such laws or regulations, from the applicable period which held that a citizen forfeits his or her right to carry for self-defense if they were charged in a non-adversarial, non-criminal proceeding with a crime of violence, but, upon receipt of due process in the form of a noticed hearing in front of a judge or magistrate, were determined to have not committed such a crime nor be subject to a further prohibition on their possession or ownership of firearms.

**FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

105.   Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

106.   As described previously, LASD violated and continues to violate the rights of CCW permit applicants by taking over a year to process applications and by engaging in forbidden suitability determinations.

107.   To the extent that the Los Angeles County Defendants contend they will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to the prohibitions in Penal Code sections 26202(a)(3), 26202(a)(5), and 26202(a)(9), such provisions are unconstitutional both facially and as applied to Plaintiffs Velasquez and Partowashraf, and are not a constitutionally-permissible basis for denying a permit to carry for self-defense.

108.   As a result, Plaintiffs' Second Amendment rights, as incorporated

30

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

under the Fourteenth Amendment, as well as the rights of the associational

Plaintiffs' members and supporters, are violated.

109.   Defendants are propagating customs, policies, and practices that

deprive or delay California residents, including Plaintiffs, of their constitutional

right to bear arms outside the home for self-defense "in case of confrontation," as

guaranteed by the Second and Fourteenth Amendments.

110.   Defendants cannot meet their burden to justify these customs, policies,

and practices that preclude Plaintiffs from exercising their enumerated rights.

111.   Plaintiffs are thus entitled to declaratory and injunctive relief against

such unconstitutional customs, policies, and practices.

**SECOND CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDS. II, XIV**
**RIGHT TO BEAR ARMS**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

112.   Plaintiffs hereby re-allege and incorporate by reference the allegations

in the foregoing paragraphs as if set forth fully herein.

113.   The Supreme Court has explained that permitting regimes which deny

licenses based on a "perceived lack of need or suitability" are unconstitutional.

*Bruen*, 142 S. Ct. at 2123.

114.   As described previously, California violates the right of CCW permit

applicants by allowing issuing authorities to demand psychological exams at their

discretion under California Penal Code section 26190(g).

115.   California also refuses to recognize CCW permits issued by other

states, whether they are held by residents or nonresidents. California also refuses to

grant CCW permits to non-residents, thus providing no way for nonresidents to

exercise their right to carry within its borders.

116.   As a result, Plaintiffs' Second Amendment rights, as incorporated

under the Fourteenth Amendment, as well as the rights of the associational

1    Plaintiffs' members and supporters, are violated.

2    117.   To the extent that the Los Angeles County Defendants contend they

3    will not issue CCW permits to Plaintiffs Velasquez and Partowashraf due to SB 2's

4    changes to the Penal Code even though those changes came after their permits were

5    denied, Plaintiffs allege that Penal Code sections 26202(a)(3), 26202(a)(5), and

6    26202(a)(9) are unconstitutional as applied to Plaintiffs Velasquez and

7    Partowashraf, respectively.

8    118.   The Attorney General is thus enforcing laws that violate the

9    constitutional right to bear arms outside the home for self-defense "in case of

10   confrontation," as guaranteed by the Second and Fourteenth Amendments.

11   119.   Plaintiffs are entitled to declaratory and injunctive relief against such

12   unconstitutional laws, customs, policies, and practices.

### THIRD CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### VIOLATIONS OF  CALIFORNIA PENAL CODE § 26205
### CAL. GOV'T CODE § 815.6
### AGAINST DEFENDANTS LOS ANGELES COUNTY SHERIFF'S
### DEPARTMENT, SHERIFF ROBERT LUNA, AND DOES 1-10

17   120.   Plaintiffs hereby re-allege and incorporate by reference the allegations

18   in the foregoing paragraphs as if set forth fully herein.

19   121.   Under California Government Code section 815.6, if "a public entity is

20   under a mandatory duty imposed by an enactment that is designed to protect against

21   the risk of a particular kind of injury, the public entity is liable for an injury of that

22   kind proximately caused by its failure to discharge the duty unless the public entity

23   establishes that it exercised reasonable diligence to discharge the duty."

24   122.   California Penal Code section 26205(a) imposes a mandatory duty on

25   concealed carry permit licensing authorities to "give written notice to the [CCW]

26   applicant indicating if the license under this chapter is approved or denied . . .

27   within 120 days of receiving the completed application for a new license, or 30

28   days after receipt of the information and report from the Department of Justice

described in paragraph (2) of subdivision (a) of Section 26185, whichever is later."

123.   California Penal Code section 26205(a) also imposes a mandatory duty on concealed carry permit licensing authorities to "give this notice within 120 days of receiving the completed application for a license renewal."

124.   The revival of the Second Amendment began in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and its application to state action through the Fourteenth Amendment was confirmed in *McDonald v. Chicago*, 561 U.S. 742 (2010). Policymakers in state and local governments have thus had more than a decade to review weapons policies associated with the regulation of the "right to keep and bear arms," while the specific issues raised in this case were addressed by the Supreme Court in *N.Y. State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022). The complaint in this case was filed in December 2023 – a year and five months after the *Bruen* decision, which included the following language:

> "[B]ecause any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, **lengthy wait times in processing license applications** or exorbitant fees deny ordinary citizens their right to public carry."

*Id.* at 38-39, fn. 9.  Furthermore, post-*McDonald*, but pre-*Bruen* litigation here in California put state and local governments on notice that these licensing issues would continue to be brought by individuals and associational plaintiffs to right the decades of abuse in California's onerous firearm/self-defense laws. *See e.g., Richards v. County of Yolo*, 821 F. Supp. 2d 1169 (E.D. Cal. 2011*), rev'd sub nom. Richards v. Prieto,* 560 F. App'x 681 (9th Cir. 2014), *aff'd on reh'g en banc sub nom. Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (resulting in both San Diego and Sacramento Counties becoming de facto "shall issue" jurisdictions in spite of the Ninth Circuit's – ultimately abrogated – holdings on whether the Second Amendment included a right to be armed in public.)

125.   California Penal Code section 26205(a)'s clear statutory limit,

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1  especially when read in conjunction with *Bruen*'s admonition that a lengthy wait

2  time to obtain a CCW is an actionable violation of the Second Amendment,

3  establishes that exceeding 120 days to process a CCW application and notify the

4  applicant is the "particular kind of injury" for which a "public entity is liable" when

5  "an injury of that kind [is] proximately caused by its failure to discharge the duty."

6  Cal. Gov't Code § 815.6.

7      126.  Further, given the pre-existing (though developing) case law on the

8  Second Amendment, and the lapse of time since *McDonald* was decided in 2010

9  and the *Bruen* decision in 2022, Defendants LASD and Sheriff Robert Luna, cannot

10  seek refuge in a "reasonable diligence" defense for their failure to discharge their

11  statutory duties under both California law and the U.S. Constitution.

12      127.  By taking over a year to process CCW permit applications and notify

13  applicants whether their application is approved or denied, Defendants LASD and

14  Sheriff Robert Luna are violating their mandatory duty to process CCW

15  applications and notify applicants whether their application is approved or denied

16  within 120 days under California Penal Code section 26205(a)  and their

17  constitutional duty under the Second Amendment.

18      128.  Plaintiffs are entitled to declaratory and injunctive relief against these

19  illegal customs, policies, and practices.

20  **FOURTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**

21  **U.S. CONST. AMEND. XIV**
    **EQUAL PROTECTION**
    **42 U.S.C. § 1983**

22  AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

23      129.  Plaintiffs hereby re-allege and incorporate by reference the allegations

24  in the foregoing paragraphs as if set forth fully herein.

25      130.  Plaintiff Steven Hoover is a Florida resident. He does not have

26  residency in California, and thus cannot obtain a California identification card or

27  driver's license. Plaintiff Broady is a former California resident who previously

28  held California CCW permits, but now lives in Nevada.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

131.   Both Plaintiffs often visit California and desire to be able to lawfully conceal-carry a firearm when visiting the State.

132.   Plaintiff Hoover applied to the Monterey County Sheriff for a CCW permit but the Sheriff rejected his application because he is not a California resident. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

133.   Indeed, California law does not allow a resident of another state to apply for and obtain a CCW permit whatsoever.

134.   This policy violates Plaintiffs' right to equal protection of the law as guaranteed and protected under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it favors California residents and discriminates against non-California residents like Hoover and Broady. The policy also violates the Equal Protection Clause because California refuses to honor permits issued by other states, including Florida or Nevada, the home states of Plaintiffs Hoover and Broady, respectively.

135.   This policy is especially egregious because here California's policy prevents Plaintiff Hoover from exercising the constitutionally protected right to be armed in public recognized in *Bruen.* It also violates the constitutionally protected right to travel under the Equal Protection Clause of the Fourteenth Amendment, and forces Hoover to choose between exercising his Second Amendment right to be armed and his constitutional right to travel. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663 (1966); *United States v. Guest*, 383 U.S. 745 (1966); *Shapiro v. Thompson*, 394 U.S. 618 (1969); and *Zobel v. Williams*, 457 U.S. 55 (1981).

/ / /

/ / /

/ / /

/ / /

**FIFTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. ART. IV, § 2**
**PRIVILEGES AND IMMUNITIES CLAUSE**
**42 U.S.C. § 1983**
AGAINST ATTORNEY GENERAL ROB BONTA, AND DOES 1-10

136.  Plaintiffs hereby re-allege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

137.  The Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several states." This Constitutional provision removes "from the citizens of each State the disabilities of alienage in the other States." *Saenz v. Roe*, 526 U.S. 489 (1999) (quoting *Paul v. Virginia*, 8 Wall. 168, 180 (1868)). The Privileges and Immunities Clause bars discrimination against citizens of other states based on their status as a citizen of another state. *Toomer v. Witsell*, 334 U.S. 385 (1948).

138.  Plaintiff Steven Hoover is a Florida resident who desires to lawfully conceal-carry a firearm when visiting California. Plaintiff Broady is a former California resident who previously held California CCW permits, but now lives in Nevada.

139.  These Plaintiffs do not have residency in California, and thus cannot obtain a California identification card or driver's license.

140.  Hoover applied for a CCW with the Monterey County Sheriff but was denied because of his Florida Residency. Plaintiff Broady did not attempt to apply, realizing it would be futile to do so and he would be rejected as Plaintiff Hoover was.

141.  California's law of refusing to accept CCW applications from citizens of other states, like Plaintiff Hoover, violates this constitutional provision because California's policy discriminates against out of state residents solely because they are out-of-state residents. This policy does not even offer a non-resident a chance at applying for a permit. This policy denies a non-resident the ability to exercise the

36

enumerated right to be armed in public, and thus violates the privilege and immunities clause.

142.   The law also violates the Privileges and Immunities Clause by refusing to recognize the permits issued by other states, such as Florida and Nevada.

**SIXTH CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
**U.S. CONST. AMENDMENT XIV**
**DUE PROCESS OF LAW**
**42 U.S.C. § 1983**
AGAINST LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF ROBERT LUNA, ATTORNEY GENERAL ROB BONTA,  AND DOES 1-10

143.    To the extent that the Los Angeles County Defendants contend they will not issue a CCW permit to Plaintiff Velasquez due to the theft of his firearms or alleged reckless use of a firearm, which they contend constituted a Penal Code violation, such denial, without a process for adjudicating or an actual adjudication of Velasquez having committed a crime, is unconstitutional as a violation of Velasquez's due process rights.

144.    To the extent that the Los Angeles County Defendants contend they will not issue a CCW permit to Plaintiff Partowashraf due to Plaintiff having been the subject of an ex parte restraining order which was dissolved upon adjudication in an adversarial setting, without a process for adjudicating or an actual adjudication of Velasquez being dangerous such that he should be denied his right to carry for self-defense, is as a violation of Partowashraf's due process rights. To the extent the Los Angeles County Defendants rely as a basis for denying Plaintiff a permit upon SB 2's prohibition on issuing a CCW to a person like Plaintiff who was the subject of an ex parte restraining order without an adversarial proceeding or adjudication of dangerousness in such an adversarial proceeding, such law, as set forth above, violates due process and the Second Amendment, and reliance by Defendants upon that law to deny a permit to lawfully carry, absent some other process that affords Partowashraf adequate process, further violates Plaintiff's due process rights.

1

**PRAYER**

2    WHEREFORE, Plaintiffs request that judgment be entered in their favor and

3    against Defendants as follows:

4    1.    A declaration that LASD taking over 120 days to process permits

5    violates the constitutional right to carry;

6    2.    A declaration that these delays also violate California Penal Code

7    section 26205;

8    3.    A declaration that LASD's denial of Plaintiff Velasquez's CCW

9    permit renewal application violates his constitutional right to carry;

10   4.    A declaration that the Attorney General must honor CCW permits

11   issued by other states, whether the permit holder is a resident of California or not,

12   and/or a declaration that the Attorney General must permit residents of other states

13   to acquire CCW permits in California;

14   5.    A declaration that Penal Code sections 26202(a)(3), 26202(a)(5), and

15   26202(a)(9), as applied to Plaintiffs Partowashraf and Velasquez, violate the

16   Second Amendment and violate the Due Process Clause;

17   6.    A declaration that the associational Plaintiffs' resources and litigation

18   experience are necessary to vindicate the Second Amendment rights of individual

19   Plaintiffs who lack the means and capacity to challenge the constitutionally of the

20   practices of LASD and the Sheriff, and of the non-resident prohibition on carry and

21   psychological examination requirements of California law.

22   7.    An order preliminarily and permanently enjoining Los Angeles LASD,

23   and Sheriff Luna in his official capacity, from refusing to process or issue a CCW

24   Permit to any qualified applicant 120 days after submission of such applicant's

25   initial application for a new license or a license renewal, or 30 days after receipt of

26   the applicant's criminal background check from the Department of Justice,

27   whichever is later;

28

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

8.      An order preliminarily and permanently enjoining LASD, and Sheriff Luna in his official capacity, from requiring more information from applicants in the CCW permitting process that are not based on "narrow, objective, and definite" standards;

9.      An order permanently enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing all laws prohibiting concealed carry if the person accused of that crime has an otherwise-valid CCW permit issued by any state, and is not otherwise prohibited from owning firearms;

10.     An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Equal Protection Clause;

11.     An order declaring that California's policy of not accepting applications or issuing permits to out of state residents violates the Privileges and Immunities Clause;

12.     Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

13.     Nominal damages; and

14.     All other relief the court deems appropriate.

Respectfully Submitted,

Dated: August 11, 2025                  **MICHEL & ASSOCIATES, P.C.**

                                        */s/ C. D. Michel*
                                        C. D. Michel
                                        Counsel for Plaintiffs California Rifle &
                                        Pistol Association, Incorporated, Gun
                                        Owners of America, Inc., Gun Owners
                                        Foundation, Gun Owners of California, Inc.,
                                        Erick Velasquez, Sherwin David
                                        Partowashraf, Charles Messel, Brian
                                        Weimer, Jung Yun, Albert Medalla, Zhao
                                        Lin Chen, Eric Stratton, Farzad Nezam,
                                        David Broady, and Stephen Hoover

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

Dated: August 11, 2025      **LAW OFFICES OF DON KILMER**

*/s/ Don Kilmer*
Don Kilmer
Counsel for Plaintiff The Second Amendment
Foundation

## ATTESTATION OF E-FILED SIGNATURES

I, C. D. Michel, am the ECF User whose ID and password are being used to file this SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Central District of California L.R. 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: August 11, 2025      */s/ C. D. Michel*
C. D. Michel

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Case Name: *California Rifle and Pistol Association, et al., v. Los Angeles County Sheriff's Dept., et al.*
Case No.:    2:23-cv-10169-SPG (ADSx)

IT IS HEREBY CERTIFIED THAT:

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

     I am not a party to the above-entitled action. I have caused service of:

**SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

on the following parties, as follows:

See attached Service List.

by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

     Executed on August 11, 2025, in Long Beach, California.

_____
Laura Fera

CERTIFICATE OF SERVICE

**SERVICE LIST**

1
2
3
4

Jane E. Reilley
jane.reilley@doj.ca.gov
Robert W. Setrakian
william.setrakian@doj.ca.gov
California Department of Justice
Office of the Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230

5
6
7

Kristi A. Hughes
California Department of Justice
600 West Broadway, Ste. 1800
San Diego, CA 92101
kristi.hughes@doj.ca.gov

8
9
10

Nicholas R. Green
nicholas.green@doj.ca.gov
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102

11

*Attorneys for Defendant Rob Bonta*

12
13
14

Mark Selwyn
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Road
Palo Alto, CA 94306

15
16
17
18
19
20

Alan Schoenfeld
alan.schoenfeld@wilmerhale.com
Noah Levine
noah.levine@wilmerhale.com
Ryan Chabot
ryan.chabot@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

21
22
23
24

Joshua A. Vittor
joshua.vittor@wilmerhale.com
Simon Kress
simon.kress@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grande Ave., Suite 2400
Los Angeles, CA 90071

25

*Attorneys for Defendants Los Angeles County Sheriff's Department and Sheriff Robert Luna*

26
27
28